**OUTTEN & GOLDEN** LLP

*Advocates for Workplace Fairness*

June 8, 2015

**Via ECF**
Honorable Janet Bond Arterton
Richard C. Lee United States Courthouse
141 Church Street
New Haven, CT 06510

Re: <u>*Strauch v. Computer Sciences Corp.*, No. 14-cv-00956:  FLSA Notice Issues</u>

Dear Judge Arterton,

Pursuant to Plaintiffs' letter to the Court e-filed this past Tuesday, June 2, 2015 (ECF No. 166), the parties submit this joint letter regarding the FLSA certification notice documents and process.  After meeting and conferring, the parties have reached agreement about all aspects of the FLSA notice, except for the following issues:  (I) whether notice should be sent via email in addition to first-class mail, (II) whether a reminder is appropriate toward the end of the notice period, and (III) the proper time period potentially covered by Plaintiffs' FLSA claims (i.e., whether and to what extent equitable tolling should be ordered now).  The parties have agreed that Plaintiffs shall submit their argument regarding item III (tolling) in this joint letter, with CSC to file its opposition by <u>Wednesday, June 17</u>, and Plaintiffs filing their reply by <u>Friday, June 19</u>.

In addition, the parties' FLSA certification briefing raises additional issues for the Court to decide: (a) whether Senior Professional System Administrators will be in the collective (as Plaintiffs request) or not (as CSC requests), (b) whether CSC produces the class list to Plaintiffs' counsel (as Plaintiffs request) or only to a third-party administrator, which will be precluded from sharing the list with Plaintiffs' counsel (as CSC requests), and (c) whether the opt-in period will be 90 days (as Plaintiffs request), 45 days (as CSC requests), or some other length.

The parties agree about the remaining issues, including the use of a website with basic information for potential opt-ins to review, which will allow them, if they wish, to opt in via electronic submission (without printing or holographically signing a physical document).  For the Court's reference, Plaintiffs attach hereto copies of the following documents, to which the parties have agreed:

- Exhibit A – the Notice
- Exhibit B – the Consent to Join form, with the additional information form as the second page
- Exhibit C – the envelope in which the Notice and Consent to Join form will be mailed

The parties' respective positions are outlined below.

I.      **Issue One:  Email Notice**

   A.      **Plaintiffs' Position:  Notice Should Be Sent by Email as Well as Mail.**

CSC argues that notice should be sent only by mail, not by email.[1]  However, "given the reality of communications today . . . email notice in addition to notice by first class mail is entirely appropriate."  *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012); *see also Lassen v. Hoyt Livery Inc.*, No. 13 Civ. 1529, 2014 WL 4638860, at *7 (D. Conn. Sept. 17, 2014) (approving two rounds of notice via mail and email).  Email notice is particularly appropriate here, given that the workers in question here are technical support workers who are likely to be most comfortable communicating by email.  *See, e.g.*, *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128-29 (N.D. Cal. 2009) ("The potential class members, technical support workers, are likely to be particularly comfortable communicating by email and thus this form of communication is just as, if not more, likely to effectuate notice than first class mail."); *cf. Cranney v. Carriage Servs., Inc.*, No. 07 Civ. 1587, 2008 WL 608639, at *5 (D. Nev. Feb. 29, 2008) (ordering production of e-mail addresses and telephone numbers with other contact information upon FLSA certification); *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 364-65 (W.D. Mo. 2007) (same); *Underwood v. NMC Mortg. Corp.*, 245 F.R.D. 720, 724 (D. Kan. 2007) (same); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (ordering production of e-mail addresses sua sponte); *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *3 (S.D.N.Y. Feb. 19, 2008) (ordering production of e-mail addresses).

   B.      **CSC's Position**

In its Opposition, CSC offered to pay in full for a Third Party Administrator, to facilitate the Notice process without disclosing personal information that Plaintiffs might use impermissibly to solicit Opt-in Plaintiffs.  Given the potential for abuse, CSC cannot agree to disclose the e-mail addresses of its current and former employees.  Further, it cannot agree to the issuance of Notice via multiple means of communication.  If Notice is issued by first class mail, as the parties contemplate, there is no need for redundant issuance of Notice by e-mail.  (See Section II, *infra*, regarding impropriety of multiple notices.)

Courts have repeatedly cited privacy concerns as a basis for rejecting the use of e-mail in the Notice process.  *See Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 3334784, at *9 (W.D.N.Y. Oct. 14, 2009) ("in the interest of privacy, Kaleida need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses"); *Macpherson v. Firth Rixson Ltd.*, No. 12-CV-6162 CJS, 2012 WL 2522881, at *5 (W.D.N.Y. June 28, 2012) ("The Court also declines to order Defendants to email notices to their employees").  In addition, courts have recognized the need for caution "in allowing email notification because of the potential for recipients to modify and re-distribute email messages."  *Espenscheid v. DirecStat USA, LLC*, No. 09-CV-625-BBC, 2010 WL 2330309, at *14 (W.D. Wis. June 7, 2010); *Gordon*, 2009 WL

---

[1] Although Plaintiffs' FLSA certification papers clearly noted that Plaintiffs proposed notice be sent by both mail and email, *see* ECF No. 152 at 2 (two references to "email") & ECF No. 154 at 22-24 (discussing merits of email notice), and the parties underwent several rounds of meet and confer negotiations regarding the FLSA notice plan during the past four weeks, CSC first objected to dissemination of notice by email today.

3334784, at *11 (noting concern "that notification by electronic mail could create risks of distortion or misleading notification through modification of the notice itself or the addition of commentary.").

Here, the extent to which Plaintiffs' counsel have already infringed on the privacy of the putative class members—"cold calling" them through LinkedIn, directing them to websites tailored to discuss the lawsuit, and so forth—militates against the production and use of e-mail addresses during the Notice process.  The Court must protect against further invasion of the putative class members' privacy.

Importantly, Plaintiffs have not to date proffered any reason why e-mail notification is necessary.  There is no reason to believe that notice by first class mail will be unsuccessful, which is the only logical justification for e-mail distribution of the Notice.  *See id.* (denying plaintiffs right to distribute notice by e-mail, noting that "[i]n some circumstances, email notification may be necessary to reach potential class members. Plaintiffs have provided no reason why it is necessary in this case.").

Further, in the vast majority of cases, the only e-mails that CSC will have in its records are the work e-mail addresses of its current employees.  As courts have noted, Notices of Rights issued to "employment based email addresses…carry the risk of causing disruption at the workplace…."  *Ott v. Publix Super Markets, Inc.*, 298 F.R.D. 550, 557 (M.D. Tenn. 2014).  Until such time as it is apparent that written notice has not reached, or cannot reach, the intended recipients, there is no justification for such a disruption of CSC's workplace.

II.   **Issue Two:  Reminder Notice**

   A.   **Plaintiffs' Position:  A Reminder Notice Is Appropriate To Improve the Chance that Class Members See And Consider the Notice.**

CSC also opposes reminder notices.  Reminders are increasingly common and are particularly appropriate in modern life, where the mail is sometimes missed, put aside for the future, or mislaid.  Courts routinely order reminder notices to achieve the purpose of FLSA notice, which is "to inform as many potential plaintiffs as possible of . . . their right to opt in." *Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013).  *See, e.g.*, *Lassen*, 2014 WL 4638860, at *7 (authorizing an initial notice at the outset of the notice period and a second notice to all non-opt-ins 30 days later); *Michael v. Bloomberg L.P.*, No. 14 Civ. 2657, 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) ("Plaintiff may send the notice by email and may distribute a reminder notice before the end of the opt-in period"); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 466 (E.D.N.Y. 2014) (permitting reminder notice); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 101 (E.D.N.Y. 2014) (same); *Limarvin v. Edo Rest. Corp.*, No. 11 Civ. 7356, 2013 WL 371571, at *3 (S.D.N.Y. Jan. 31, 2013) (same); *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 274-75 (S.D.N.Y. 2012) (authorizing reminder notice because the "FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in"); *Sanchez v. Sephora USA, Inc.*, No. 11 Civ. 3396, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (authorizing a reminder notice on the grounds that such notice "is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in"); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D.

Cal. 2010) (approving a postcard reminder notice "[p]articularly because the FLSA requires an opt-in procedure").

A single reminder by mail and email would assist in maximizing the reach of the Court-approved notice (as it is essentially impossible to ensure 100% reach). Such a reminder will be especially valuable to the extent that the Court orders a notice period shorter than 90 days, such as 75, 60, or even CSC's proposed 45 days.

### B. CSC's Position

Consistent with the position set forth in its Opposition to Conditional Certification, CSC maintains that, with an opt-in period of conventional length, there is no need for an overly solicitous "reminder" notice. *See, e.g.*, *Villarreal v. Caremark LLC*, No. CV-14-00652-PHX-DJH, 2014 WL 7184014, at *9 (D. Ariz. Dec. 17, 2014) ("Given the reduction in the requested opt-in period from 90 to 60 days, the Court finds that sending reminder postcards is unnecessary"); *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 373 (N.D.W. Va. 2012) (holding that, with an opt-in period of 60 days, "a reminder notice in this case is both 'unnecessary' and potentially improper"). CSC's arguments on this point are detailed at length in its Opposition, and restated here for the Court's convenience:

Reminder notices are generally "unnecessary and potentially could be interpreted as encouragement by the Court to join the lawsuit." *See Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 753-54 (N.D. Ill. 2010). The proper purpose of a Notice "is simply to inform potential class members of their rights. Once they receive the information, it is their responsibility to act as they see fit." *See Witteman v. Wis. Bell, Inc.*, No. 09-cv-440-vis, 2010 U.S. Dist. LEXIS 8845, *9 (W.D. Wis. Feb. 2, 2010) (rejecting the plaintiff's application to send a reminder notice); *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 219 (E.D. Mich. 2010) (citing *Witteman* and rejecting circulation of reminder notice); *Smallwood*, 710 F. Supp. 2d 746 (same).

Critically, Plaintiffs demand permission to circulate a reminder notice but have no reason *why* a reminder notice would be appropriate or necessary in this case. *See Guzelgurgenli*, 883 F. Supp. 2d at 358 (denying "Plaintiffs' request to send a reminder notice" because they had "not identified any reason why a reminder notice is necessary in this particular case"). In their initial Motion, Plaintiffs' counsel offered their personal opinion that many people intend to opt in but neglect to do so due to "the distractions of work and everyday life." (Pl. Mem., p. 25.) The opinions of Plaintiffs' counsel are unpersuasive given the complete absence of a factual, case-specific reason to issue a reminder notice.

Moreover, a second Notice inherently suggests to the recipient that he or she did something wrong when they chose to disregard the first Notice. As such, a second Notice may bring up participation rates, but not for the right reasons. Indeed, other courts considering this issue have soundly rejected a second mailing. *See, e.g.*, *Witteman; Wlotkowski; Smallwood*; *Sharpe v. APAC Customer Servs.*, No. 09-CV-329-bbc, 2010 U.S. Dist. LEXIS 95377 (W.D. Wis. Mar. 29, 2010) ("At this stage, I will grant defendant's request and limit plaintiff's contact with potential class members to the one-time mailing of the approved notice"); *Ruggles*, 591 F. Supp. 2d 150, 164 (N.D.N.Y 2008); *Jackson v. Papa John's USA, Inc.*, No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 31887 (N.D. Ohio Apr. 15, 2009) (denying supplemental notice even as to those individuals who did not receive initial notice).

As discussed at length in CSC's Opposition, Plaintiffs' counsel have been soliciting potential plaintiffs and opt-in plaintiffs since December 2013. A reminder notice needlessly provides them with yet another opportunity to do so.

### III.     Issue Three:  Equitable Tolling

**A.     Plaintiffs' Position:  The Court Need Not Decide Equitable Tolling Now, But If It Does, Tolling Is Appropriate Due To CSC's Unusually Lengthy Delays in Discovery.**

This action has proceeded unusually slowly due to CSC's resistance to producing the very basic discovery appropriate for Plaintiffs' FLSA certification motion. CSC's delays have prejudiced the FLSA rights of potential opt-ins who, through no fault of their own, did not learn about this case and have not been able to file consents to join.

#### 1.     Factual And Procedural Background

##### a.     CSC Has Consistently Resisted Plaintiffs' Discovery Efforts Throughout the Case.

On July 1, 2014, Plaintiffs filed this action. On August 5, 2014, in advance of the initial Rule 26(f) conference, Plaintiffs asked CSC to provide contact information for potential opt-ins (the "class list") to alert them of this case and give them the opportunity to exercise their FLSA rights. In the alternative, Plaintiffs asked CSC to toll the limitations period as discovery progressed. CSC declined.

On August 21, 2014, Plaintiffs served their first set of discovery responses, encompassing a broad array of topics relevant to FLSA and Rule 23 certification, liability, and damages. On August 26, 2014, Plaintiffs sent CSC a letter outlining the priority areas for discovery relevant to the FLSA certification brief, to facilitate efficient production of documents and witnesses. *See generally* ECF No. 154 at 3.

On September 10, 2014, the parties filed their first Rule 26(f) Report, noting their expectation that Plaintiffs' Rule 30(b)(6) depositions would begin by October 31, 2014, and requesting a deadline for Plaintiffs' FLSA certification motion of December 18, 2014. *See* ECF No. 75. Unfortunately, those deadlines came and went without depositions being conducted or a brief being filed, because CSC did not provide deponents (or documents) on time.

On August 21, 2014, Plaintiffs served CSC with a request for production ("RFP"), formally requesting the class list, along with other crucial discovery. CSC requested, and Plaintiffs granted, a 30-day extension to respond. CSC declined to produce the class list. On November 12, 2014, Plaintiffs moved to compel production of various requested materials, including the class list, to help them understand the organizational details regarding System Administrators' placement in the CSC structure. *See* ECF Nos. 98-101. In light of the ongoing delays, on November 24, 2014, Plaintiffs again requested that CSC agree to tolling to preserve opt-ins rights. CSC refused.

On January 6, 2015, Magistrate Judge Margolis granted Plaintiffs' motion to compel in part. ECF No. 127. A month later, on February 6, 2015, CSC produced the class list. *See* ECF

3 Park Avenue, 29th Floor, New York, NY 10016   Tel 212-245-1000   Fax 646-509-2060
161 N. Clark Street, Suite 4700, Chicago, IL 60601   312-809-7010   Fax 312-809-7011
One Embarcadero Center, 38th Floor, San Francisco, CA 94111   Tel 415-638-8800   Fax 415-638-8810
og@outtengolden.com   www.outtengolden.com

No. 164 ¶ 3. Due to gaps in the class data, Plaintiffs requested that CSC provide supplemental data, which it did on March 3 and 4, 2015. CSC showed unusual reluctance to meet and confer with Plaintiffs regarding this basic discovery. For example, starting on April 15, 2015, Plaintiffs sought to schedule a call with CSC to ask questions about apparent anomalies and ambiguities in the data. After Plaintiffs sent several reminders and got no response, CSC eventually scheduled the call for May 13. *Id.* ¶¶ 5, 7.

Meanwhile, on January 12, 2015, the parties filed a first Supplemental Rule 26(f) Report, proposing new deadlines, in light of the slow progress made. ECF No. 128. To replace the original Rule 30(b)(6) deposition commencement deadline of October 31, 2014, the parties proposed February 14, 2015. To replace the original FLSA certification motion deadline of December 18, 2014, the parties proposed March 27, 2015. Again, these deadlines proved unattainable due to CSC's failure to provide deponents (or documents) on time. In fact, CSC did not even identify any Rule 30(b)(6) witness until January 21, 2015.

On their third try, the parties proposed deadlines that worked. On March 6, 2015, the parties filed their Second Supplemental Rule 26(f) Report, noting that the three key Rule 30(b)(6) depositions (on which Plaintiffs' FLSA certification motion was in part based) had been held in late February and early March. ECF No. 148 at 7. Thus, the parties were finally able to propose a viable FLSA certification motion deadline (April 17, 2015, which Plaintiffs met). *Id.* at 4.[2]

        **b.**    **CSC Failed To Object To Equitable Tolling in Both Its Opposition Brief And First Round of Edits To Plaintiffs' Proposed Notice.**

Plaintiffs FLSA certification motion attached a proposed order (which in turn attached a proposed notice, consent to join form, and envelope) listing July 1, 2011 (three years before the filing of the complaint) as the earliest date covered by the FLSA collective in seven places. ECF No. 153. CSC's opposition did not mention or question the FLSA time period. ECF No. 160. In the meet and confer negotiations regarding the notice, CSC sent Plaintiffs a proposed notice on May 15 that did not question this time period. Plaintiffs responded with a redline. CSC then sent further redlines on May 21 that, for the first time, questioned the FLSA time period.

On May 22, the parties agreed to file a joint letter presenting their areas of agreement and disagreement by June 2. CSC requested additional time, so the parties agreed to extend the deadline for this letter to June 8.

        **2.**    **Argument**

CSC's unusually substantial delays in discovery and resistance to meeting and conferring regarding simple issues make equitable tolling appropriate. Plaintiffs have diligently pushed discovery forward in an attempt to provide potential opt-ins with notice. Plaintiffs respectfully submit that CSC's dilatory tactics to avoid notice constitute extraordinary circumstances that prevented potential opt-ins from exercising their FLSA rights. While the Court need not decide

---

[2] It is unclear why discovery has been so slow. It is not due to document production. As Plaintiffs' FLSA certification motion summarizes, CSC's production trickle has yielded approximately 786 pages of documents particularly relevant to the FLSA certification motion. ECF No. 154 at 3-4.

now whether equitable tolling applies, Plaintiffs respectfully request that the notice encompass a period from July 1, 2011 forward to ensure that potential opt-in plaintiffs who may seek equitable tolling are included in the proposed FLSA collective action.

Alternatively, if the Court deems a decision on equitable tolling appropriate now, Plaintiffs respectfully request that tolling be granted as to (1) the Associate System Administrators and Professional System Administrators (the group for whom CSC does not oppose FLSA certification) for the period July 1, 2014 to the date of issuance of notice and (2) Senior Professional System Administrators (the group for whom CSC opposes FLSA certification), for the period December 18, 2014 to April 17, 2015, to account for the delay in time from the originally proposed FLSA certification motion deadline to the eventual actual deadline.

### a. **Equitable Tolling Applies Here.**

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Asp v. Milardo Photo., Inc.*, 573 F. Supp. 2d 677, 697-98 (D. Conn. 2008) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir. 1990)) (Squatrito, J.). Equitable tolling is "sometimes necessary as a matter of fairness" when a plaintiff can show "extraordinary circumstances prevented [a plaintiff] from filing his [claim] on time, and that he acted with reasonable diligence throughout the period he seeks to toll." *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (citations and internal quotation marks omitted); *see also Veltri v. Building Servs. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing."). "A district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).

"Courts routinely grant equitable tolling in the FLSA collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions under 29 U.S.C. § 216(b)." *Antonio-Morales v. Bimbo's Best Produce, Inc.*, No. 08 Civ. 5105, 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009) (citing cases). This is because the FLSA's limitations period continues to run until an individual affirmatively joins the collective by filing a consent-to-join form. *See* 29 U.S.C. § 256(a). Courts thus hold tolling to be appropriate in various circumstances where potential opt-in plaintiffs "may not realize they have potential claims under the FLSA." *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784, 2013 WL 4834428, at *2 (S.D.N.Y. Aug. 26, 2013).

Delays in notifying potential opt-ins of their FLSA rights supports equitable tolling. For instance, courts routinely hold equitably tolling to be warranted where there are delays in resolving motions related to notifying potential opt-ins. *See, e.g.*, *Bacon v. Subway Sandwiches & Salads, LLC*, No. 14 Civ. 192, 2015 WL 1138387, at *2 (E.D. Tenn. Mar. 13, 2015) ("[O]rdinary delays to be expected as a lawsuit works its way through federal court can alone justify equitable tolling in FLSA opt-in cases."); *Hart v. Crab Addison, Inc.*, No. 13 Civ. 6458, 2015 WL 365785, at *6 (W.D.N.Y. Jan. 27, 2015) (tolling warranted based on delays in resolving conditional certification motion, "which may result in some class members not receiving notice of this action in time to file a timely request to opt into the action," warranted

tolling); *Jackson*, 298 F.R.D. at 171 (same); *Glatt*, 2013 WL 4834428, at *2 (holding delays are an "extraordinary circumstance"). Moreover, as relevant here, a defendant's conduct that delays notification to potential opt-plaintiffs of their FLSA rights can justify equitable tolling. *See, e.g.*, *Yahraes v. Rest. Assocs. Events Corp.*, No. 10 Civ. 935, 2011 WL 844963, at *3 (E.D.N.Y. Mar. 8, 2011) (applying equitable tolling in part based on "defendants' actions [that] have frustrated plaintiffs' diligent attempts to ensure that claims did not expire"); *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 825 (S.D. Ohio 2007) (holding equitable tolling supported by, among other things, "counsels' negotiations of the issuance of notice" and the defendants "explicitly [telling] the employees to wait to participate"); *Asp*, 573 F. Supp. 2d at 697-98 (holding tolling applicable where defendant failed to "post wage and hour posters" advising potential opt-in plaintiffs of their FLSA rights) (citing cases).

The repeated delays show that the two requisite elements for equitable tolling are met.

First, extraordinary circumstances exist as CSC's intractability in discovery prevented potential opt-ins from learning about this case and the requirement that they must opt in to exercise their FLSA rights. *See, e.g.*, *Yahraes*, 2011 WL 844963, at *2-3 (noting that defendants' actions, among other things, presented "extraordinary circumstances"). While CSC failed to produce documents, information, and witnesses, Plaintiffs' FLSA collective action certification motion remained on hold. CSC produced the necessary discovery only after Magistrate Judge Margolis ordered it to do so. That discovery allowed Plaintiffs to evaluate how CSC's organizational structure relates to the actual work performed by System Administrators, such as which of the five levels of System Administrator (Associate, Professional, Senior Professional, Advisor, or Principal) each potential class member occupied. This enabled Plaintiffs to narrow the proposed collective by carving out Advisors and Principals, focusing on the lower three levels. During the time Plaintiffs fought for this basic organizational information, potential opt-ins remained largely in the dark about their FLSA rights and potential claims. CSC's discovery delays constitute extraordinary circumstances justifying tolling.

Second, Plaintiffs were diligent in pursuing discovery and attempting to file their FLSA conditional certification motion. *See, e.g.*, *Hart*, 2015 WL 365785, at *5-6 (evaluating diligence based on the plaintiffs' and their counsel's conduct); *Jackson*, 298 F.R.D. at 170 (same). Four days after CSC's counsel appeared in this case, Plaintiffs requested the class list. After CSC rejected this informal request, Plaintiffs sought formal discovery, which CSC stymied. Plaintiffs even provided CSC with a roadmap for prioritized discovery as early as August 2014. As in *Yahraes*, CSC's conduct here "frustrated plaintiffs' diligent attempts to ensure that claims did not expire," 2011 WL 844963, at *3, thereby justifying equitable tolling.

### b. The Court Need Not Decide Equitable Tolling Now.

Plaintiffs do not ask that the Court decide at this time whether equitable tolling applies. Indeed, many courts defer deciding whether equitable tolling should apply until after the opt-in period has closed. *See, e.g.*, *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (deferring deciding plaintiffs' tolling request based "on the ground that Defendants' delay in providing contact information for some potential opt-ins prevented Plaintiffs from communicating with them") (citing *Thompson v. World Alliance Fin. Corp.*, No. 08 Civ. 4951, 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010)); *cf. Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2013 WL 8367807, at *9 (E.D.N.Y. Sept. 19, 2013) (collecting cases, and ordering notice dated from the filing of the complaint, "since equitable

tolling issues often arise for prospective plaintiffs."); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (allowing notice to be sent to all employees who worked within three years prior to date complaint was filed). *Kemper v. Westbury Operating Corp.*, No. 12 Civ. 0895, 2012 WL 4976122, at *3 (E.D.N.Y. Oct. 17, 2012) (because "some plaintiffs may be eligible for equitable tolling," courts may send notice "to the larger class of prospective members" and allow individual timeliness challenges "at a later date"); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) ("It is appropriate here for the plaintiffs to send notice to all Personal Bankers employed within three years of the date the . . . complaint was filed."); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (allowing notice to be sent to all employees who worked within three years prior to date complaint was filed).

    **B.**    <u>CSC's Position</u>

Per the parties' agreement, CSC will respond to this argument in a separate filing by Wednesday, June 17, 2015.

Respectfully,

Jahan C. Sagafi

/s/ David Golder

David Golder

cc: All counsel via ECF