UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

_____
                                :

| | |
|---|---|
| Joseph Strauch and Timothy Colby, | : |
| and on behalf of themselves and all those | : |
| similarly situated | :     CIVIL NO.: 3:14-cv-956 (JBA) |
| | : |
|             Plaintiffs, | : |
| v. | : |
| | : |
| Computer Sciences Corporation | : |
| | :     June 24, 2015 |
|         Defendant. | : |

_____:

**DEFENDANT'S OBJECTION TO THE MAGISTRATE JUDGE'S RULING
REGARDING OPT-IN PLAINTIFF DEPOSITIONS**

## I.     Introduction

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72.2, Defendant, Computer

Sciences Corporation ("CSC"), hereby respectfully objects to the Magistrate Judge's ruling dated

June 10, 2015 for two reasons.  First, the Magistrate Judge's ruling unfairly limits the total

number of depositions for non-class representatives to only 60, even though the putative class

consists of approximately 4,000 System Administrators comprised of individuals with extremely

varied work situations and experiences.  Second, the Magistrate Judge's ruling improperly puts

CSC on the horns of a dilemma: either (1) CSC chooses all the deponents but Plaintiffs can use

whoever they want for declarations and trial including people CSC does not depose, or (2) CSC

allows Plaintiffs' counsel to select a portion of the deponents and Plaintiffs can get declarants or

trial witnesses only from the individuals deposed.  Put simply, CSC is now forced to give control

to Plaintiffs of who gets deposed or get precluded from deposing a potential witness in the case.

The ruling thus infringes upon CSC's due process right to take the number of depositions

necessary to defend the claims in this case and cross-examine Plaintiffs' witnesses.

## II.     Relevant Background

On July 1, 2014, Plaintiffs filed this action as a proposed collective action under the Fair Labor Standards Act ("FLSA") and a proposed Rule 23 class action under Connecticut and California law, on behalf of System Administrators nationwide.  The putative class consists of approximately 4,000 current and former System Administrators.   This Court granted Plaintiffs' Motion for Conditional Certification.  (Dkt. No. 168.)

Previously, the Court granted, in part, CSC's Motion to Compel, ordering that CSC be permitted to issue discovery requests to 32 of the Opt-in Plaintiffs, and noting that it could seek permission to issue additional written discovery to an unspecified percentage of individuals who opt into the case in the future.  (Dkt. No. 138.)  The Court left open the question of how many Opt-in Plaintiffs may be deposed, and encouraged the parties to contact the Court regarding this issue as needed.   The parties conferred in good faith and tried to resolve this discovery dispute.  *See* Declaration of David R. Golder in Support of Defendant's Objection ("Golder Decl.") ¶ 3.  The parties exchanged correspondence on April 14, April 16, April 20, April 21, April 23, April 24, May 7, and May 11, 2015, and participated in a meet and confer discussion on May 20, 2015.  Golder Decl. ¶ 3.

Subsequently, on May 22, 2015, CSC submitted to the Magistrate Judge a reasonable proposal that consisted of three components, whereby: (1) CSC will depose any class representative identified by Plaintiffs in any amended pleading to be filed in this case; (2) CSC reserves the right to depose anyone who has submitted (or will submit) a declaration in support of Plaintiffs' motions, objections or pleadings in this case, and anyone Plaintiffs otherwise identify as a witness (e.g., at the trial of this matter); and (3) CSC reserves the right to depose up

to 100 additional Opt-in Plaintiffs, not including those falling within categories (1) and (2) above.  *See* Golder Decl. Ex. 1.

In response, Plaintiffs submitted their own limited "sliding-scale approach" that consisted of producing: (1) all class representatives, who would not count against the total number of depositions; (2) 15 percent of the current 86 Opt-in Plaintiffs; (3) 10 percent of the next 100 Opt-in Plaintiffs; and (4) five percent of the next 300 Opt-in Plaintiffs.  *See* Golder Decl. Ex. 2, p. 2.  Plaintiffs' proposal contemplated a cap of 38 depositions even though Plaintiffs had already submitted 24 declarations in support of their motion for conditional certification and noted in their letter to the Court that "Plaintiffs expect more declarants in support of their eventual Rule 23 certification motion."  *See* Golder Decl. Ex. 2, p. 2.  Plaintiffs' approach would require CSC to use up almost all of its depositions on declarants and witnesses if Plaintiffs have a similar number of new declarants for their Rule 23 certification or use additional opt-in Plaintiffs as witnesses or declarants in other filings.

The Court held a telephonic status conference on this issue on June 9, 2015.  On June 10, 2015, the Magistrate Judge issued a ruling that essentially adopted Plaintiffs' entire position, although the order raised the cap from 38 to 60.  The first tier "will consist of any class representative identified by plaintiffs in any pleading or amended pleading filed in this case, whose number would not be used in any 'cap' toward the total number of depositions."  (Dkt. No. 171.)  The second tier will consist "of anyone who has submitted, or will submit, a declaration in support of plaintiffs' motions, objections or pleadings and anyone plaintiffs otherwise identify as a witness."  *Id.*  The third tier will consist "of 10% of the first 100 opt-ins (10 deponents) and 5% of the next 300 opt-ins (15 deponents), with a total cap of 60 depositions for the second and third tiers."  *Id.*  CSC respectfully objects to this ruling because (1) the cap of

60 total depositions is too low given that the putative class is approximately 4,000 individuals and is comprised of individuals with extremely varied work situations and experiences, and (2) counting any declarants or witnesses deposed towards the 60 person cap unfairly limits CSC's ability to depose Plaintiffs' witnesses in the case.  In short, the order is prejudicial to CSC's ability to defend this action.

## III.  <u>Argument</u>

### A. Although Courts Consistently Permit Defendants To Depose All Opt-In Plaintiffs, CSC's Proposal To The Court Was Reasonably Tailored To Ensure It Examined Plaintiffs' Witnesses And Obtained The Discovery CSC Needs To Defend The Action

Courts routinely grant defendants' requests to depose all or a significant number of opt-in plaintiffs in collective actions.  *See, e.g.*, *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1244 (11th Cir. 2008) (noting that the district court permitted the defendant to depose 250 opt-in plaintiffs); *Abubakar v. City of Solano*, Civil No. S-06-2268 LKK EFB, 2008 U.S. Dist. LEXIS 17456, at *5, 9-10 (E.D. Cal. Feb. 22, 2008) (allowing defendant to depose all 160 opt-in plaintiffs); *Coldiron v. Pizza Hut, Inc.*, Civil No. CV 03-05865-TJH (Mcx), 2004 U.S. Dist. LEXIS 23610, at *6-7 (C.D. Cal. Oct. 25, 2004) (permitting individualized discovery of all 306 opt-in plaintiffs); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2014 WL 37662, at *10 (E.D. Va. Jan. 3, 2014) (granting motion to dismiss 129 opt-in plaintiffs who failed to appear for depositions, to the extent they did so without excuse and without having submitted interrogatory responses); *Kaas v. Pratt & Whitney*, Civil No. 89-8343-CIV, 1991 U.S. Dist. LEXIS 11177, at *22 (S.D. Fla. Mar. 18, 1991) (permitting defendant to depose all opt-in plaintiffs); *Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1187 (E.D. Va. 1991) (permitting defendants to depose all 127 opt-in plaintiffs); *Rosen v. Reckitt & Colman Inc.*, Civil No. 91 Civ. 1675 (LMM), 1994 U.S. Dist. LEXIS 16511, at *3, 12 (S.D.N.Y. Nov. 17, 1994) (holding that

4

"fairness mandates" that defendants be permitted to take depositions of <u>all</u> 49 opt-in plaintiffs); *Andrako v. U.S. Steel Corp.*, 788 F. Supp. 2d 372, 376 (W.D. Pa. 2011) (noting that court had permitted depositions of up to 50 opt-in plaintiffs, out of a group of only 320); *Ingersoll v. Royal & Sunalliance USA, Inc.*, 2006 U.S. Dist. LEXIS 50912, at *1-2 (W.D. Wash. July 25, 2006) (allowing "written and deposition discovery as to all [36] opt-in plaintiffs").  Although some courts do not permit the deposition of every opt-in plaintiff once the number passes a certain level, the total number of depositions permitted by the Court here (60) is less than the number in many court decisions involving a limited number of opt-in plaintiffs.  *See, e.g. Abubakar*, 2008 U.S. Dist. LEXIS 17456, at *5, 9-10; *Coldiron*, 2004 U.S. Dist. LEXIS 23610, at *6-7; *LaFleur*, 2014 WL 37662, at *10.

Here, the putative class includes approximately 4,000 current and former employees, and there are already—before court-authorized notice has even been issued—89 Opt-in Plaintiffs.  In addition to deposing class representatives, CSC seeks to reserve the right to depose any Opt-in Plaintiff who has submitted or will submit a declaration or is otherwise identified as a witness, and up to 100 additional Opt-in Plaintiffs.  Given the size of the putative class and the defenses at issue, CSC's request for this individualized discovery is reasonable and fair.  *See Ashby v. McKenna*, 331 F.3d 1148, 1150 (10th Cir. 2003) ("it seems unfair and abusive for a plaintiff to file a lawsuit and then refuse to make himself available for reasonable questioning regarding his claims").

**B. The Court's Cap Of 60 Total Depositions Prejudices CSC's Right To Obtain Discovery**

The Second Circuit and DOL regulations make clear that an examination of "actual job characteristics and duties" is necessary to determine whether an employee is properly classified as exempt.  *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir.2010).  Moreover, to

determine whether an action should be maintained as a collective action, courts in this Circuit look to a "variety of factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) the defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations that counsel for or against maintaining a collective action." *Stevens v. HMSHost Corp.*, No. 10 CV 3571(ILG)(VVP), 2014 WL 4261410, at *5 (E.D.N.Y. Aug. 27, 2014) (granting motion for decertification). "[A]s numerous courts in this Circuit have held, the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012). "[I]n numerous FLSA collective action decisions, courts have concluded that blanket classification decisions do not automatically qualify [the affected employees] as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties." *Gardner v. W. Beef Props., Inc.*, No. 07–cv–2345, 2013 WL 1629299, at *7 (E.D.N.Y. Mar.25, 2013) (quotations omitted; collecting cases).

Put simply, to develop and support its defenses to this action, CSC needs to obtain testimonial evidence. CSC's need to obtain this evidence is especially crucial here in a case of computer professionals where the job title may not be indicative of the work performed. *See also* 29 C.F.R. § 541.400 (noting that "job titles vary widely and change quickly in the computer industry."). There is no question that the testimony received from Opt-in Plaintiffs will be relevant to whether they are properly classified as exempt.

Further, as CSC outlined at length in its Opposition to Conditional Certification

(Dkt. No. 160), there are System Administrators at three different experience levels, working on different technologies and for different clients, spread throughout the country, working in at least 162 different organizational units.  Some System Administrators travel with the military on active missions, while others sit at their desks working with commercial clients.  Some System Administrators earn $35,000, while others earn over $100,000, plainly suggesting that there are critical differences in the jobs they perform.  They work on different types of operating systems, and thus have different skill sets and professional certifications; some are primarily troubleshooters, while others work on high-level project work for sophisticated clients.  Given these diverse organizational units, CSC should be entitled to depose a cross section of System Administrators from different organizational units and at different levels.

Opt-in discovery is particularly critical here because there seems to be no agreement as to what the job duties of the System Administrator positions are.  Indeed, there are three different job levels with three different job descriptions at issue in this case, and the Plaintiffs do not even agree on the aspects of those job descriptions they did perform.  In the parties' conference before Judge Arterton, Plaintiffs' counsel explained to the Court that, "consistent with [his] interviews" with the Opt-in Plaintiffs, he expects *all* of them to say "No I don't do that" when questioned about the essential job functions set forth in their job description.  This highlights the individualized inquiries necessary here—if they do not do the job described in the company's Senior Professional job description, one can only learn what they *did* do by interviewing them individually.

This case is also readily distinguishable from the *Lloyd* case, the only case upon which the Court relies for its order on this discovery issue.  (Dkt. No. 171.)  In *Lloyd*, the court resolved "the parties' dispute concerning the scope of discovery that defendants may seek from

the opt-in plaintiffs *who are not subject to any arbitration agreement*." *Lloyd v. J.P. Morgan Chase & Co.*, Nos. 11 Civ. 9305 (LTS)(HBP),12 Civ. 2197 (LTS)(HBP), 2015 U.S. Dist. LEXIS 35161, at *6 (S.D.N.Y. Mar. 20, 2015) (emphasis added).   While approximately 1,049 individuals filed consents to join the FLSA lawsuit, there were only approximately 100 individuals who did not sign arbitration agreements.  *Id.* at *7-8.  The *Lloyd* court held that "defendants are permitted to seek written discovery from the 100 opt-ins *who have not signed an arbitration agreement* and may depose 20 of *those* opt-ins."  *Id.* at *6, 16 (emphasis added).  The *Lloyd* court thus allowed depositions of 20 percent of the 100 opt-ins who did not sign arbitration agreements.

Here, the Court is permitting only 10 percent of the first 100 Opt-in Plaintiffs and five percent of the next 300 Opt-in Plaintiffs, which is much less than the 20 percent allowed in *Lloyd*.  Given the size of the putative class, CSC should be entitled to question more than a total of 60 Opt-in Plaintiffs about his or her individual claims to determine whether there is evidence supporting his or her proper exempt status or whether the claims arise from circumstances unique to that Plaintiff.  *See Abubakar*, 2008 U.S. Dist. LEXIS at *9-10 (based on "defendant's assertion that it intends to challenge whether the plaintiffs are 'similarly situated,' the court finds that individualized discovery at this phase is appropriate.").  The Court also does not specifically address how many depositions would be permitted should more than 400 individuals opt in to this case.  In the event the total number of individuals who opt in is over 400, CSC should be entitled to more than 60 depositions in the second and third tiers.  In addition, although CSC assumes that an Opt-in Plaintiff who does not show up for his or her deposition will not count against the total cap, it is not clear from the order, and CSC seeks clarification on this issue.

### C. The Court's Ruling Precludes CSC From Examining Plaintiffs' Declarants And Witnesses

Courts instruct that "defendants have the right to depose any plaintiff who will testify at trial, even if the deposition has to occur after the fact discovery deadline expires." *See, e.g., Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233 (D.N.J. 2013); *see also Russell v. Ill. Bell Tel. Co.*, No. 08 C 1871, 2009 U.S. Dist. LEXIS 37300, at *5 n.2 (N.D. Ill. Apr. 30, 2009) ("It is conceivable that if and when [defendant] files its motion to decertify the class, plaintiffs will submit affidavits in opposition to that motion from not-yet deposed class members. If that occurs, [defendant] will be permitted to depose those individuals before filing its reply brief.").

Here, CSC should be given the same right to depose Opt-in Plaintiff declarants and witnesses.   Because Plaintiffs are highly skilled, highly compensated computer professionals, Plaintiffs have resorted to a tactic of trivializing their job duties in order to make an exempt job sound non-exempt.   The Second Circuit has rejected this type of transparent attempt to color the perception of the Court, opting instead to analyze the underlying facts to gain a true understanding of the employees' job duties.   *See Pippins v. KPMG, LLP*, 759 F.3d 235, 245 (2d Cir. 2014) ("the facts presented by plaintiffs indicate a role for Audit Associates that undermines the plaintiffs' trivializing characterization of their work").   Without the ability to depose Plaintiffs' declarants and witnesses, however, CSC will not be able to test fully the basis for their statements or cross-examine them on their attempt to trivialize their work.   CSC has the fundamental right to challenge any allegations brought by Opt-in Plaintiffs in a declaration in support of Plaintiffs' motions, objections or pleadings in this case, or to depose any Opt-in Plaintiff otherwise identified as a witness in this case.   Thus, the second tier of depositions

should not be capped.

In addition, CSC should retain the right to choose its deponent.  Courts have noted that they do "not believe it is appropriate to dictate to defendants who they must depose."  *See, e.g., Goodman*, 292 F.R.D. 230, 233 (holding that "defendants also have the right to depose [the opt-in plaintiffs] they want.").  In *Goodman*, the court reasoned that it did "not want to intrude on defendants' defense strategy and work-product."  *Id.  See also O'Toole v. Sears Roebuck & Co.*, No. 11 C 4611, 2014 U.S. Dist. LEXIS 49408, at *12 (N.D. Ill. Apr. 10, 2014) ("As with the written discovery, the selection of deponents will be left to the defendant, who 'ha[s] the right to depose who [it] want[s].'") (citing *Goodman*, 292 F.R.D. at 233); *Russell*, 2009 U.S. Dist. LEXIS 37300, at *5 (giving the defendant the opportunity to choose the "vast majority" of opt-ins to depose).

The Court's ruling here, however, puts CSC in a difficult position by contemplating the arrangement set forth by the *Lloyd* court, whereby, (1) CSC chooses all the deponents but Plaintiffs can use whoever they want for declarations and trial including people CSC does not depose, or (2) CSC allows Plaintiffs' counsel to select a portion of the deponents and Plaintiffs can only get declarants or trial witnesses from the individuals deposed.  The Court's suggestion infringes upon CSC's defense strategy.[1]

---

[1] Although CSC's position is that Plaintiffs should not have the ability to select the opt-in deponents or otherwise direct the course of the discovery CSC believes it needs to defend against the allegations in this case, CSC has nevertheless attempted to reach agreement with Plaintiffs regarding the deponent selection process suggested by Judge Margolis.  Plaintiffs have proposed that they will select one-third of the deponents, but that if they identify declarants, affiants or trial witnesses who have not been deposed, they will permit CSC to depose these individuals without counting these depositions against the cap set by the Court.  To the extent compromise is necessary after the decision on this Objection, CSC consents to this proposal.

IV.     <u>Conclusion</u>

        For the foregoing reasons, Defendant respectfully objects to the Magistrate Judge's ruling dated June 10, 2015.

                               Respectfully submitted,

                               DEFENDANT,
                               COMPUTER SCIENCES CORPORATION

                               By its attorneys,

                               */s/ William J. Anthony*
                               Jackson Lewis P.C.
                               William J. Anthony (ct 17865)
                               Kristi Rich Winters (ct 28066)
                               18 Corporate Woods Boulevard, 3rd floor
                               Albany, New York 12211
                               Telephone: 518-434-1300
                               Fax: 518-427-5956
                               Anthonyw@jacksonlewis.com
                               Kristi.Winters@jacksonlewis.com

                               David R. Golder (ct 27941)
                               David C. Salazar-Austin (ct 25564)
                               90 Statehouse Square, 8th Floor
                               Hartford, CT  06103
                               Tel: (860) 522-0404
                               Fax: (860) 247-1330
                               golderd@jacksonlewis.com
                               salazard@jacksonlewis.com

                               Brett M. Anders (*pro hac vice*)
                               220 Headquarters Plaza
                               East Tower, 7th Floor
                               Morristown, NJ 07960
                               Tel: (973) 538-6890
                               andersb@jacksonlewis.com

                               Cary G. Palmer (*pro hac vice*)
                               Nathan W. Austin (*pro hac vice*)
                               801 K Street, Suite 2300
                               Sacramento, CA 95814
                               Tel: (916) 341-0404

palmerc@jacksonlewis.com
AustinN@jacksonlewis.com

## CERTIFICATION OF SERVICE

I hereby certify that on June 24, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ David R. Golder*
David R. Golder