

Jackson Lewis P.C.
90 State House Square
8th Floor
Hartford, CT 06103-3708
Tel 860 522-0404
Fax 860 247-1330
www.jacksonlewis.com

E-Discovery Management Exclusion Workplace Law and Related Litigation

| | | | |
|---|---|---|---|
| ALBANY NY | GRAND RAPIDS MI | NEW ORLEANS LA | RAPID CITY SD |
| ALBUQUERQUE NM | GREENVILLE SC | NEW YORK NY | RICHMOND VA |
| ATLANTA GA | HARTFORD CT | NORFOLK VA | SACRAMENTO CA |
| AUSTIN TX | HOUSTON TX | OMAHA NE | SAINT LOUIS MO |
| BALTIMORE MD | INDIANAPOLIS IN | ORANGE COUNTY CA | SAN DIEGO CA |
| BIRMINGHAM AL | JACKSONVILLE FL | ORLANDO FL | SAN FRANCISCO CA |
| BOSTON MA | LAS VEGAS NV | OVERLAND PARK KS | SAN JUAN PR |
| CHICAGO IL | LONG ISLAND NY | PHILADELPHIA PA | SEATTLE WA |
| CINCINNATI OH | LOS ANGELES CA | PHOENIX AZ | STAMFORD CT |
| CLEVELAND OH | MEMPHIS TN | PITTSBURGH PA | TAMPA FL |
| DALLAS TX | MIAMI FL | PORTLAND OR | WASHINGTON DC REGION |
| DAYTON OH | MILWAUKEE WI | PORTSMOUTH NH | WHITE PLAINS NY |
| DENVER CO | MINNEAPOLIS MN | PROVIDENCE RI | |
| DETROIT MI | MORRISTOWN NJ | RALEIGH-DURHAM NC | |

August 7, 2015

**VIA ECF**
Honorable Janet Bond Arterton
Richard C. Lee United States Court House
141 Church Street
New Haven, Connecticut 06510

         Re: FLSA Notice for Joseph Strauch and Timothy Colby et al on behalf of other similarly situated individuals v. Computer Sciences Corporation
            USDC Civil No. 3:14-cv-00956 (JBA)

Dear Judge Arterton:

  Pursuant to the parties' conference with your Honor on August 4, 2015, the parties submit this joint letter regarding the reminder email notice text and process. After meeting and conferring, the parties have reached agreement about all aspects of the reminder email notice, except for the text of and attachments to the email notice and the final sentence on the consent to joint form: "I also consent to join any separate or subsequent action to assert my claims against CSC, and/or any related entities or persons potentially liable," about which the Court raised a question at the conference.

  The parties' respective positions are outlined below.

  **(1) Issue One: The Text of and Attachments to the Email Notice**

    **A. Plaintiffs' Position**

  The Court has ordered Plaintiffs to send a reminder notice by postcard and email to all potential class members who have not opted in, 21 days prior to the September 14 opt-in deadline (i.e., on August 24).[1] At a telephonic conference on August 4, the Court ruled on the

---

[1] On June 30, CSC produced the class list in compliance with the Court's FLSA certification order. Notice was issued to that group on July 16. On July 17, CSC produced contact information for approximately 300 additional class members who were inadvertently excluded from the original list. The parties agreed that the 60-day opt-in

precise text to be included in the postcard, approving CSC's edits to Plaintiffs' proposed text almost in full and approving Plaintiffs' request that a smaller but identical version of the consent to join form be included. The postcard text summarizes the notice in fairly general terms, since the notice itself is four pages.

### 1. Content of the email notice

The parties have agreed that the title will be "Notice re FLSA lawsuit on behalf of CSC System Administrators." Yesterday, CSC agreed to Plaintiffs' proposed edits to the notice (attached hereto as Exhibit A), which simply reflect that the notice is being sent electronically as opposed to in hard copy form. Later in the day, CSC stated that it prefers the text of the notice to read "This email is your reminder notice for the Strauch v. CSC case. It has important instructions. Attached is a PDF with your consent to join form," apparently with two attached PDFs: the postcard summary notice text, and the consent to join form (with additional information page as approved by the Court). CSC has not responded to Plaintiffs' requests for clarification. Plaintiffs believe that language is inadequate in two respects.

Plaintiffs propose that (1) class members receive some statement (either as a separate email from management or as prefatory language in the body of the email) confirming the legitimacy of the email and employees' right to view and act on it, and (2) the email text include the notice documents (notice, consent to join form, and additional information sheet) and that there be two attachments (the notice as one PDF and the consent to join form and additional information sheet as another PDF), mirroring the mailed notice.

#### a. Language about legitimacy of the email and recipients' options

Plaintiffs propose that the email begin with (or CSC management simultaneously send) the following text, or something to the same effect:

> The attached notice and consent to join form are being sent to you pursuant to court order, to inform you about your right to join a lawsuit. CSC management confirms that you may view this email and the www.csclawsuit.com website at work and, if you wish, forward this email to your personal email. CSC will not monitor whether employees view, forward, or otherwise respond to the notice.

Some language to this effect is appropriate because class members will receive the reminder notice at their CSC work email addresses. It is common knowledge among class members that CSC can, and often does, track whether emails have been opened, read, forwarded, deleted, etc., and that CSC can track internet use, so that management could know whether an employee visited the Court-approved website providing information about the lawsuit. Some of the many hundreds of currently employed class members receiving the email notice at work may

---

period for that supplemental group would be measured from the actual notice mailing date, which was July 23, making the deadline for those individuals September 21.

be concerned that they should not view it, they should not forward it to their personal email, and/or they should not view the notice website at work. Without explanation, the email may raise questions, and some employees will likely be fearful of seeking guidance from the HR representatives of the very company they contemplate suing. An affirmative communication from CSC (or clarifying CSC's nonopposition to the notice) should put those reasonable questions to rest.

CSC has argued only that some class members have discussed the lawsuit among one another, so clarifying is unnecessary. The fact that some SAs have felt comfortable discussing this case while at work does not imply that all SAs would feel comfortable forwarding the email home or viewing the website at work, particularly when using a CSC email account and internet access.

Plaintiffs have asked CSC to confirm that it will not monitor whether SAs read or forward the reminder email, or otherwise monitor their use of CSC's email or computers for such purposes, and to indicate how it has communicated its policies about internet and email usage in the past. CSC has not responded.

<u>Plaintiffs respectfully request that the Court either authorize Plaintiffs to include language like the above language to allay class member fears or order CSC to send such language to class members immediately before the reminder emails are sent.</u>

### b. Content of email and attachments

After agreeing to the slightly modified full notice text, CSC appears to have retracted its agreement. (Plaintiffs asked for confirmation early this morning but have not received a response.) Plaintiffs respectfully submit that the reminder emails should include the full text of the notice documents, just like the original mailed notice. The postcard notice is a much shorter summary because of the space limitations inherent in postcards. An email has no such limitations.

<u>Plaintiffs respectfully request that the Court authorize Plaintiffs to include the full text of Exhibit A (the slightly modified notice), as well as the consent to join and additional information form, both as text in the email and as attachments.</u> This proposal maximizes clarity for the readers and gives them the flexibility to read the document in their email system and on mobile devices, as well as the ability to print all the notice documents from the body of the email or to print clean copies from the PDFs.

### B. CSC's Position

As context for CSC's position, it is important to note that courts recognize that Notices of Rights issued to "employment based email addresses…carry the risk of causing disruption at the workplace…." *Ott v. Publix Super Markets, Inc.*, 298 F.R.D. 550, 557 (M.D. Tenn. 2014). The Parties spent a significant amount of time negotiating the language of the notice and notice

process in good faith and even got guidance from the Court on areas of dispute. Similarly, the parties spent a significant amount of time negotiating the language of the reminder notice and even got guidance from the Court on areas of dispute. In CSC's submission to the Court on the reminder notice, CSC argued that "because the parties spent a significant amount of time negotiating the language of the notice in good faith, CSC's position is that the reminder notice form *should* mimic the initial notice as closely as possible." (Dkt. 174.) This Court agreed with CSC's position at the August 4, 2015 teleconference. Despite the ruling and the Court's guidance at the conference, Plaintiffs insist on including additional, unnecessary language (i.e., commentary) in the email reminder notice and even including the text of the *full* notice that initially was sent to the putative class. Plaintiffs' requests to supplement the short, reminder email notice should be rejected. The language in the reminder email notice should track the language that was ordered as appropriate by this Court, without additional commentary. Consequently, CSC's position is that the reminder email notice text should read:

> "This email is your reminder notice for the Strauch v. CSC case. It has important instructions. Attached is a PDF with your consent to join form."

Such introduction provides a short, straight forward description of the purpose of the email and its contents, without unnecessary commentary.

Conversely, Plaintiffs propose supplemental introductory text in the reminder email that is confusing and inappropriate and has the potential to disrupt the workplace. Specifically, Plaintiffs propose that the introduction in the email text should read:

> "The notice and consent to join form attached and reprinted below are being sent to you pursuant to court order, to inform you about your rights. CSC management confirms that you may view this email and the www.csclawsuit.com website at work and, if you wish, forward this email to your personal email. CSC will not monitor whether employees view, forward, or otherwise respond to the notice." [Then paste text of reminder notice documents]

Other than the first sentence, Plaintiffs' proposed introductory language in the email notice text is inappropriate, confusing, potentially disrupting the working environments of the putative class members. There are putative class members working at client sites (including defense contractors), and it would be improper for a court-authorized notice to instruct such individuals that CSC management "confirms" they can and cannot do with business emails. The reminder notice is very clear about the individual's rights. In addition, the reminder notice provides, in bold, direction to the csclawsuit.com website where the individual can get information about the full notice, including their rights and the lawsuit. Given that the putative class members are highly paid, computer professionals, it is certain that such people will be able to navigate to that website. While Plaintiffs argue that individuals may be worried about being allegedly punished by CSC for reading or responding to the notice, Plaintiffs provided absolutely no evidence of

this. To the contrary, there has already been discovery in this case that putative class members are openly discussing the case at work with inappropriate commentary. Even assuming the email reminder notice is not as effective as Plaintiffs contend for whatever hypothetical reason, there is also a post-card reminder notice sent to the putative class. Courts have consistently held that first-class postage is an effective form of notice, and there is no evidence to the contrary here. *See, e.g.*, *Hinterberger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 U.S. Dist. LEXIS 97944, at *42 (W.D.N.Y. Oct. 20, 2009) (holding "that first class mail is the 'best notice practicable' and should be sufficient to provide potential class members here the notice to which they are entitled.").

As an alternative, Plaintiffs suggested to CSC a "solution" even more problematic than the requested language: CSC management send a separate, affirmative email to the putative class in addition to the email reminder notice. Plaintiffs want that additional CSC management email to describe what individuals are allowed to do with the email notice. Yet, an email from management could suggest to the recipient that management endorses the action and could be confused as encouragement to join the action. Moreover, an email from CSC management would effectively serve as a *third* notice of the action (or fourth depending on whether the individual had already been contacted by Plaintiffs' counsel prior to the court-authorized notice being issued). In a similar context, as CSC argued to this Court previously, courts have rejected multiple notices as they inherently suggest to the recipient that he or she did something wrong when they chose to disregard the first Notice.[2] As such, additional communication and commentary may bring up participation rates, but not for the right reasons.

In short, the email and notice are clear that it is Court authorized, and the notice is clear about the individual's rights. CSC management is not directing the notice and should not be forced to engage in any communications that appear to endorse the lawsuit. CSC is defending the lawsuit because its position is that it is without merit. If Plaintiffs think that retaliation is an issue and have evidence of such retaliation, they can raise it with the Court at a later time.

In addition, Plaintiffs propose that the email reminder notice also include the notice document*s* (plural). In other words, Plaintiffs want to include the text of the remainder notice *and* the entire text of the original, full notice in the reminder notice. Such a position makes no sense as it is contrary to the text of the reminder notice that was negotiated (to the extent the parties agreed) and subsequently ruled on by the Court (to the extent the parties did not agree). The court-authorized notice process included a long full notice sent by mail and a shorter reminder notice sent by email *and* mail. The Court did not order that the email reminder notice

---

[2] *See, e.g.*, *Sharpe v. APAC Customer Servs.*, No. 09-CV-329-bbc, 2010 U.S. Dist. LEXIS 95377 (W.D. Wis. Mar. 29, 2010) ("At this stage, I will grant defendant's request and limit plaintiff's contact with potential class members to the one-time mailing of the approved notice"); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 164 (N.D.N.Y 2008) (emphasis added) (nothing that failure to limit notification to a **single** process would be dissonant with the intent of the FLSA statute that the Court play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action was commenced).

would be the text of the reminder notice and the text of the full notice. Thus, the email reminder notice should mimic the paper reminder notice. Further, the email reminder notice text already has a link to the website that has the full notice and directs individuals to that website if they want such information. There is simply no reason to copy and paste the full notice text into the reminder email.

Although the parties did not discuss the issue, CSC's position is that the introductory text in the email be in New York Times, 12 point font and unbolded and without any other highlights.

**(2) Issue Two: Consent to Join Form Proposed by Plaintiffs**

    **A. Plaintiffs' Position**

Plaintiffs propose that the Court authorize the same consent to join form that the parties agreed to and the Court approved for the original mailing. At the August 4 telephonic conference, the Court expressed concern with the following sentence in the form:

> I also consent to join any separate or subsequent action to assert my claims against CSC, and/or any related entities or persons potentially liable.

The purpose of this language is to empower opt-ins to authorize litigation of their claims even if the case takes a procedural turn that takes it outside the definition of "*Strauch v. Computer Sciences Corporation*, Case No. 14 Civ. 956 (JBA) (D. Conn.)" and "this action" (which is how the earlier paragraphs in the form are framed). This could occur in a number of ways. For example, the Court could sever the case into parts, with one subgroup of System Administrators proceeding in "*Strauch*" and another proceeding in a new case with a different name and case number (and perhaps before a different judge or in a different district).

That happened in *In re Tyson Foods, Inc.*, No. 07 MD 1854, 2008 WL 4613654 (M.D. Ga. Oct. 15, 2008), which is instructive. In *Tyson Foods*, the consent to join language regarding the scope of the opt-ins' consent had an important impact on which opt-ins could proceed in the splintered cases. *See id.* at *5. There, opt-ins who had signed consent forms including the following language – "By joining this lawsuit, I designate the plaintiffs named in the complaint and listed above as my representatives, to the fullest extent possible under applicable laws, to make decisions on my behalf concerning the litigation, the method and manner of conducting and resolving the litigation, and all other matters pertaining to this lawsuit" – were deemed to be able to proceed in new "splinter" cases (i.e., new cases that originated by being severed from the original action after these individuals had opted into the original action), but not in newly filed cases (i.e., new cases that had not originated from the original action, but were simply newly filed). *Id.* at *4-5.

Here, the existing consent language would authorize both possibilities encountered in *Tyson*. Plaintiffs are particularly concerned with the first: if the Court here were to partially decertify the FLSA collective or sever the case into "splinter" cases, opt-ins who have given

authorization for "separate or subsequent" actions would, under the existing language, be able to proceed in the new "splinter" cases.

This raises an important point: The language in the form is intended to reasonably authorize procedural responses to an array of unknown future procedural outcomes. Certainly Plaintiffs share the Court's desire to limit language to authorize only *appropriate* procedural responses, and the language should not authorize anything inappropriate. Regardless, the court addressing that response in the future (whether this Court or another) will have to rule on whether the language contractually authorizes that procedural response in that particular situation, and whether such a response is legally legitimate and appropriate. If Plaintiffs fail either test, the court will reject the procedural response. The problem is that ex ante, we cannot predict all possible procedural scenarios or evaluate their reasonableness. Plaintiffs' goal is to empower class members to make decisions to authorize legitimate procedural responses to unforeseeable outcomes down the road.[3]

The task for courts is to "interpret consent forms according to the plain meaning of their language." *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1018 (11th Cir. 2007). That interpretation happens in the context of a particular procedural scenario before the court. In *Tyson Foods*, the court held that the language of the consent forms before the court permitted the opt-ins to proceed in the severed ("splintered") actions. 2008 WL 4613654, at *5. By contrast, the court did not allow the opt-ins to proceed in newly-filed cases (even though they asserted the same claims), because the consent form language was not broad enough to encompass new and separate litigation.

Courts have approved similar language to the existing language here. *See Palma v. MetroPCS Wireless, Inc.*, No. 13 Civ. 698, 2014 WL 9872805, at *1-2 (M.D. Fla. Feb. 18, 2014) (approving language stating, "In the event this action gets conditionally certified and then decertified, or for any reason does not proceed as a collective action, I authorize Plaintiffs' counsel to reuse this Consent Form to re-file my claims in a separate or related action against Defendant[ ]," because such language was not "overreaching or otherwise inappropriate," and defendant waived objection to it); *Clincy v. Galardi S. Enterprises, Inc.*, No. 09 Civ. 2082, 2010 WL 966639, at *4, 7 (N.D. Ga. Mar. 12, 2010) (approving language stating, "If this case does not proceed collectively, then I also consent to join any subsequent action to assert these claims against [defendant].").

If the Court is unpersuaded by Plaintiffs' argument that the language is proper, Plaintiffs respectfully request that the Court narrow the language to clarify that it only authorizes cases that naturally flow from this action, such as severed "splinter" cases. For example, the language could read, "I authorize Plaintiffs' Counsel to refile this Consent To Join Form in any action that derives from *Strauch*, such as a successor case that is severed from *Strauch*."

---

[3] Since over 600 opt-ins have already joined the litigation using this language, the Court may eventually be asked to interpret it with respect to a specific procedural situation.

In conclusion, <u>Plaintiffs respectfully request that the Court approve the original language or, in the alternative, Plaintiffs' alternative, narrowed language.</u>

### B. Defendant's Position

CSC objects to the language contained in the Plaintiffs' "Consent to Join Form" (referred to herein as the "Consent Form" or "Consent") stating that: "I also consent to join any separate or subsequent action to assert my claims against CSC, and/or any related entities or persons potentially liable." That provision should be deleted because it is unnecessary, potentially misleading, and constitutes an improper attempt on the part of Plaintiffs' counsel to solicit plaintiffs for unknown and unfiled future actions against not only CSC, but also against other unidentified "entities or persons." The broadness of the language essentially gives Plaintiffs' counsel a key to any court house door for anyone opt-in plaintiff who signs on the dotted line. Plaintiffs' counsel does not have the authority to bind class members and other courts with this Consent Form. Moreover, it is dubious that individuals who signed the Consent Form understand the scope or legal significance of that sentence. Indeed, the Court raised the issue on the August 4, 2015 call and Plaintiffs could not address the issue on the call but instead requested the opportunity to think about and brief the issue. As also discussed below, the language gives Plaintiffs' counsel the power to nullify any future decertification order by this Court.

It is well settled that district courts have wide discretion to control the notice process and to ensure that the process is balanced and fair. In exercising such discretion, federal courts have repeatedly held that consent form provisions, which give attorneys blanket authorizations to file subsequent lawsuits, are improper and should be stricken. For example, in *Huang v. Gateway Hotel Holdings*, the district court reviewed an FLSA consent form that read "[i]f this case does not proceed as a collective action, I also consent to joint [sic] a subsequent action to assert these same claims" and found that the provision was "not appropriate, and must be removed." 248 F.R.D. 225, 228 (E.D. Mo. 2008). In reaching this conclusion, the *Huang* court noted that it had "reviewed Notice examples from FLSA cases in [its] District, and around the nation, and ha[d] not found any Notice that contain[ed] such language." *Id.* Similarly, another district court reached the same conclusion and agreed with deletion of language on the consent form stating, "If this case does not proceed collectively, I also consent to join any subsequent action to assert claims against [defendant] . . . where I did not receive compensation for all my time worked" because the court found such language "not necessary" and "confusing." *Burch v. Qwest Communications Int'l*, 500 F. Supp. 2d 1181, 1191 (D. Minn. 2007); *see also Hembree v. Mid-Continent Transp., Inc.*, No. 08-CV-6094, 2010 U.S. Dist. LEXIS 105538, at *16-17 (W.D. Mo. Oct. 4, 2010) (citing *Huang* and *Burch* and excluding language from the consent form "requiring potential class members to consent to join any subsequent actions against defendants").

In other similar cases, perhaps tacitly acknowledging the relative weakness of their position and impropriety of the authorization, plaintiffs who have been presented with the same issue raised by this Court here have voluntarily agreed to the deletion of similar objectionable provisions in proposed FLSA consent forms. For instance, in *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1195 (D. Ariz. 2014), the defendant objected to such a provision on the grounds

Judge Arterton
August 7, 2015
Page 9

that it "impermissibly solicits plaintiffs for subsequent lawsuits." The plaintiffs expressly agreed to omit the objectionable statement. *Id. See also Sharpe v. APAC Customer Servs., Inc.*, No. 09-CV-329, 2010 U.S. Dist. LEXIS 95377, at *5 (W.D. Wis. Mar. 29, 2010) (noting that plaintiff agreed to deletion of similar language).

In light of the clear weight of authority finding that such provisions are improper and should be stricken from proposed consent forms, Plaintiffs should concede – as the plaintiffs did in *Villarreal* and *Sharpe* – that the objectionable language in their proposed Consent Form be deleted.[4] In the absence of such a concession, however, CSC respectfully submits that the Court should follow the consistent (and well-reasoned) line of authority discussed herein and should order that the contested provision be removed from the Consent Form, in its entirety. In addition, for all Consent Forms already filed with the Court, this Court should order that such sentence is void and of no legal significance. Any result to the contrary would be inconsistent with the very purpose of the Consent Form itself, which is to signify an individual's decision to join *this collective action* – not to join some hypothetical future lawsuit brought by Plaintiffs' counsel against CSC or other unidentified "entities or persons."

Indeed, as this Court pointed out in its order on conditional certification, there is another stage to this collective action: CSC's anticipated motion for decertification. At that point, this Court "will examine all evidence then in the record to determine whether there is a sufficient basis to conclude that the proposed class members are similarly situated." *Strauch v. Computer Sciences Corp.*, 2015 WL 3727804, at *2 (D.Conn. June 9, 2015). "If it is determined that they are, the case will proceed to trial; if it is determined they are not, the class is decertified and only the individual claims of the purported class representatives (here, Mr. Strauch and Mr. Colby) proceed." *Id.* Plaintiffs, however, using the broad authorization from the consent, could essentially nullify the Court's decertification order by filing individual lawsuits for every single opt-in Plaintiff. Such a strategy would put CSC on the horns of dilemma: (1) move to decertify a case that should not proceed as a collective action but be faced hundreds of individual lawsuits or (2) proceed with an enormous collective with disparate claims and significant potential liability. The objective of a collective action is to allow similarly situated individuals to proceed collectively, not to stir up litigation and aggregate as many claims as possible – whether they are similarly situated or without merit – in order to force settlement by sheer volume. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1749 (2011) ("Other courts have noted the risk of 'in terrorem' settlements that class actions entail") (citations omitted).[5]

---

[4] As the Court may recall, during the August 4, 2015 conference with the Court in which the parties addressed the Consent Form, Plaintiffs' counsel initially acknowledged that Plaintiffs would agree to the removal of the contested language if the Court found it inappropriate, but later requested the opportunity to brief the issue.

[5] As noted in CSC's Opposition to Plaintiffs' Motion for Conditional Certification, Plaintiffs spent a great deal of effort notifying putative class members of the action prior to notice issuing. (Docket No. 160 at pp. 12-13). There were 85 opt-in plaintiffs who filed consents prior to notice. *Id.* It is still unclear to what extent these ex-parte communications may have tainted the notice process or impacted the opt-in rate in the case. "[C]ourts, as well as practicing attorneys, have a responsibility to avoid 'stirring up' of litigation through unwarranted solicitation." *Kristic v. J.R. Contracting & Envtl. Consulting*, No. 09-CV-2469, 2010 U.S. Dist. LEXIS 9478, at *5 (D.N.J. Feb. 4, 2010) (quoting *Severtson v. Phillips Beverage Co.,* 137 F.R.D. 264, 266-67 (D. Minn. 1991)).

Judge Arterton
August 7, 2015
Page 10

      To the extent Plaintiffs argue, for whatever reason, that CSC or this Court already conceded to the Consent Form as proper or that it is too late to fix the improper Consent Forms, such arguments are a red herring.  The language in the Consent Form is improper.  This Court has wide discretion and power to control the notice process, strike such language from future consent forms, and rule that any such language in previously filed Consent Forms be void as improper.  Alternatively, this Court could strike the Consent Forms already filed and require those individuals to file new consent forms for current opt-in plaintiffs with the improper language removed.  Such a process would be of minimal burden given that opt-in Plaintiffs can file their consents electronically.

*   *   *

Respectfully submitted,

*/s/ David R. Golder*
David R. Golder

*/s/ Jahan C. Sagafi*
Jahan C. Sagafi

cc: Counsel of Record