UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH and TIMOTHY COLBY, individually and on behalf of all others similarly situated,<br>  *Plaintiffs*,<br>  *v.*<br>COMPUTER SCIENCES CORPORATION,<br>  *Defendant*. | Civil No. 3:14-CV-956 (JBA)<br><br>November 30, 2017 |

**RULING ON DEFENDANT'S SECOND MOTION TO DECERTIFY**

In this overtime exemption misclassification action, Defendant Computer Sciences Corporation ("CSC") moves [Doc. # 373] to decertify the certified California and Connecticut classes of Associate Professional and Professional System Administrators ("SAs") on the basis of the purported legal deficiency of Plaintiffs' trial plan. For the reasons set forth below, the Court DENIES Defendant's Motion.

**I. Background**

After oral argument held on May 10, 2017, [Doc. ## 326, 329], the Court granted in part and denied in part Plaintiffs' Motion [Doc. # 323] for Class Certification on June 30, 2017, certifying Connecticut and California Rule 23 subclasses of Professional and Associate Professional System Administrators. *See Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2017 WL 2829652, at *1 (D. Conn. June 30, 2017).

On July 14, 2017, Defendant sought to appeal this Court's Order on Class Certification to the Court of Appeals, pursuant to Fed. R. Civ. P. 23(f). (Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) at 1, *Strauch et al v. Computer Sciences Corporation*, No. 17-2185 (2d Cir.

July 14, 2017).) Defendant asked the Court of Appeals to determine "[w]hether the District Court erred in certifying a class under Rule 23 by placing improper weight on the company's uniform job titling program where the record evidence clearly demonstrated wide variation among individuals in the actual job qualifications, characteristics, and duties." (*Id.*)[1] On November 21, 2017, the Court of Appeals denied Defendant's Rule 23(f) petition, finding that "an immediate appeal is unwarranted." (Mandate Granting Mot. to File Reply and Denying Rule 23(f) Petition [Doc. # 410].)

During the pendency of the petition for interlocutory review, Defendant on August 4, 2017 moved to decertify the California class of Associate Professional and Professional System Administrators due to the purported inadequacy of Mr. Strauch as a class representative. (Mot. Decertification California Subclass [Doc. # 343].) After carefully considering that Motion to Decertify, the Court denied the motion on October 18, 2017, leaving the California class intact. *See Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2017 WL 4683993, at *1 (D. Conn. Oct. 18, 2017). On October 27, 2017, Defendant filed the instant Motion [Doc. # 373] for Decertification (hereinafter "Second Mot. to Decertify") arguing that the California and Connecticut classes should both be decertified due to a legally deficient trial plan put forward by Plaintiffs.

II.     **Discussion**

Trial plans are a useful and important tool for managing the unique challenges associated with complex class action litigation. Under Federal Rule of Civil Procedure 23(c)(1)(A), "[a]t an early practicable time after a person sues or is sued as a class representative, the court must

---

[1] Defendant withdrew another ground of appeal while its petition was pending based on a stipulation reached between the parties.

2

determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Rule 23's text contains no requirement that plaintiffs provide a trial plan as part of the class certification determination, but the Advisory Committee notes to the 2003 Amendment explain the potential usefulness of trial plans in assisting courts making class certification determinations:

> A critical need is to determine how the case will be tried. An increasing number of courts require a party requesting class certification to present a "trial plan" that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof.

Advisory Committee Notes to 2003 Amendment to Fed. R. Civ. P. 23 (citation omitted).

Rule 23 itself therefore imposes no actual requirement of a trial plan, but courts cited by Defendant have decertified or refused to certify classes where the courts determined that plaintiffs could present no manageable way of trying a class case.

While Defendant fails to provide the Court with any support for the proposition that Rule 23 imposes a formal requirement of a trial plan, much less one that meets certain enumerated criteria, Defendant is correct that in managing complex class litigation, the Court retains the responsibility of ensuring that a putative class, once certified, remains susceptible to class-wide proof at trial.

Defendant claims that Plaintiffs' trial plan is inadequate because it calls for an insufficient and arbitrarily-selected sample size of testifying witnesses, because it fails to account for variance among class members, because it fails to account for SAs in the certified classes who performed exempt job duties, and because the trial plan risks violating the parties' due process and Seventh Amendment rights.

Plaintiffs counter (1) that Defendant is attempting to relitigate the class certification order by making the same arguments but raising no previously overlooked case law or evidence, (2) that

3

Plaintiffs intend to make their case primarily based on direct, common evidence such that they need not present a statistical sample of class member live witness testimony, and (3) that Plaintiffs' trial plan poses no due process risks for either party.

As part of the process of deciding whether class certification was appropriate in this case, the Court considered and addressed Defendant's contention at that time, in opposition to the motion for class certification, that Plaintiffs' purported lack of a viable trial plan made class certification inappropriate. As the Court noted in its findings on superiority under Federal Rule of Civil Procedure 23(b)(3), Defendant "devote[d] one paragraph to arguing that a class action is not superior" because, among other reasons, "Plaintiffs lack a trial plan." *Strauch*, 2017 WL 2829652 at *30.[2] The Court rejected this argument, noting that Plaintiffs had submitted a trial plan, and found that notwithstanding Defendant's objections, "the class action [was] a superior method of adjudicating the merits of the sub-class of Associate Professional and Professional SAs[,]" given the common questions and common evidence, as well as the interests in uniformity of decision and cost-efficiency. *Id.*

Plaintiffs submitted an abbreviated trial plan in support of their motion for class certification, contemplating further refinements in their pretrial memorandum. This initial proposed trial plan [Doc. # 315-8], and Plaintiffs' Trial Memorandum [Doc. # 347], each set forth the common evidence to be used by both parties to support and contest the claims to be tried, with respect to each of the common issues described in Plaintiffs' motion for class certification.

---

[2] Defendant similarly raised its trial plan arguments at oral argument on Plaintiffs' Motion to Certify Rule 23 Classes, on May 10, 2017. (*See* Transcript of May 10, 2017 Oral Argument [Doc. # 329] at 6-8, 30-34, 50-56, 61-66.)

4

Since that time, the parties have stipulated that damages at trial would be determined based on the hours of work that Plaintiffs recorded in CSC's timekeeping system, a stipulation which the Court approved [Doc. # 357] on October 13, 2017. Plaintiffs' initial trial plan sets forth the common evidence that Plaintiffs propose to use for each of the common issues, while Plaintiffs' pretrial memorandum and its exhibits set forth the specific witnesses Plaintiffs intend to call and exhibits upon which Plaintiffs intend to rely. Plaintiffs have further refined this trial plan by offering their Amended Witness List [Doc. # 369-1] and Amended Exhibit List [Doc. # 369-2], as well as their pretrial disclosures [Doc. # 383], which note that "Plaintiffs do not expect to call a greater number of witnesses than indicated in their pretrial memorandum" but list "additional witnesses . . . who may be called to testify in the event that another witness is unavailable." The disclosures note that all of these possible substitute witnesses were deposed in the course of discovery.

The parties and the Court together have further clarified a variety of issues related to the manner in which Plaintiffs' and Defendant's respective cases-in-chief will be presented through pretrial motion practice, including the resolution of motions *in limine*, objections to specific evidence, and most recently, a motion to compel and dueling motions for protective orders related to which witnesses will present live testimony and in what order at trial. After both parties have presented their evidence, the jury will be asked to decide whether CSC properly and in good faith classified SAs as exempt from overtime pay as CSC claims, or whether CSC willfully misclassified them to avoid having to pay overtime wages, thus satisfying the requirements of both due process and the 7th Amendment.

In support of Defendant's Motion to Decertify due to a legally deficient trial plan, Defendant has not provided the Court with any controlling precedent that delineates the form that,

according to Defendant, Plaintiffs' trial plan must take. Defendant objects that Plaintiffs seek improperly to prove their class case on the basis of testimony that lacks statistical representativeness, but the cases that Defendant cites for this proposition largely involve situations where plaintiffs otherwise lacked common evidence, and where plaintiffs purportedly sought to use non-statistically representative testimony in lieu of common evidence to prove hours worked by class members and damages.[3] Here, the evidence on hours worked and damages has been

---

[3] *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1041-43 (2016) ("employer [sought] to reverse the judgment" in favor of class of employees where "the *primary method*" of proving the hours employees worked, including donning and doffing of protective gear, was representative evidence that included an expert study, in which the expert extrapolated the don-and-doff time based on averaging the results of "744 videotaped observations[.]" (emphasis added)); *id.* at 1046 (noting that "central dispute in this case" is whether "inference is permissible" that "it can be assumed each employee donned and doffed for the same average time observed in [the expert's] sample."). Defendant relies substantially on *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013). In that case, however, there was no common or stipulated evidence that would allow the court to determine class members' varying damages, and when the district court asked plaintiffs' counsel to propose a procedure for determining damages and suggested bifurcation of liability and damages and subclassing, plaintiffs "truculently" opposed bifurcation but "refuse[d] to suggest a feasible alternative." *Id.* at 775-76. Defendant also faults Plaintiffs for "fail[ing] to come forward with a trial plan that explains how the substantial questions requiring individualized proof can be resolved on a class-wide basis[,]" (Mem. Supp. Def.'s Second Mot. to Decertify [Doc. # 373-1] at 3 (citing to *Glatt v. Fox Searchlight Pictures, Inc.* 791 F.3d 376, 386 (2d Cir. 2015))), but Defendant cites to an opinion that was withdrawn, amended, and superseded on January 26, 2016. *See Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 529 (2d Cir. 2016) ("Opinion, 791 F.3d 376, amended and superseded.") Because the superseded opinion is no longer available, the Court is unable to cross-reference the superseded opinion with the amended opinion to determine what Defendant is citing and whether it remains part of the amended opinion, but the amended opinion—except insofar as it restates the predominance standard—appears inapposite. *See id.* at 539 ("Because the most important question in this litigation cannot be answered with generalized proof *on this record* in light of the *new legal standard*, we vacate the district court's order certifying Antalik's proposed class and remand for further proceedings consistent with this opinion." (emphases added)). Elsewhere in Defendant's briefing, Defendant cites *Glatt*'s application of the predominance standard: "[A]ssuming some questions may be answered with generalized proof, they are not more substantial than the questions requiring

stipulated by the parties, based on Defendant's timekeeping records, so the primary legal issue that will be decided by the jury at trial is whether class members were properly classified as exempt. In their trial plan, Plaintiffs rely primarily on common evidence to prove their case and only secondarily on class member testimony.[4]

Upon consideration of the briefing provided by both parties, review of the cases cited, oral argument held on November 9, 2017 and November 14, 2017, and the Court's resolution of the majority of pretrial motions filed up to this point, the Court must deny Defendant's Second Motion

---

individualized proof." *Id.* (citation omitted). The Court has already considered and rejected this argument by Defendant in the Court's Ruling on Plaintiffs' Motion for Class Certification. *See Strauch*, 2017 WL 2829652, at *29.

[4] *See Strauch*, 2017 WL 2829652, at *25 ("CSC's carefully thought-out job descriptions and titling system, along with the testimony of its corporate representatives, go a long way to establishing commonality."); *id.* ("While the Court does not agree with Plaintiffs' generalized characterization of SAs' actual job duties, it does find that the essential job functions developed by CSC for the purpose of describing SAs' work provide meaningful descriptions that suggest a finite and definite set of actual job duties."); *id.* at 27 ("With respect to the Associate Professional and Professional SAs, Defendant does not bring forth evidence that contradicts the job duties inferable from the common evidence in ways *material* to the analysis of exemptions." (emphasis added)). Plaintiffs do not contend that the trial testimony of class members that they will present is a statistically representative sample, but Plaintiffs' class member witness list includes class representatives, as well as class members selected by both Defendant and Plaintiffs for representative discovery. Plaintiffs represented at telephonic oral argument on November 14, 2017 that in selecting FLSA collective members for representative discovery, they worked to ensure that the individuals they selected represented geographic diversity, covered the span of the liability period temporally, and covered the various job descriptions at issue in the case. Some of the class member witnesses whose live testimony Plaintiffs will put on at trial were selected for discovery by Defendant, who, like Plaintiffs, was instructed by Magistrate Judge Margolis to select a representative sample of collective members for discovery. Plaintiffs' use of representative evidence, which is not Plaintiffs' "primary method" of proving liability, *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1041 (2016), thus does not appear improper, given the context in which Plaintiffs seek to use this testimony.

to Decertify. Defendant's view of the rule for trial plans is misplaced. The cases cited by Defendant do not hold Plaintiffs' trial plan to the degree of exacting scrutiny that Defendant urges upon the Court, and Rule 23 itself imposes no such exacting requirement. The Court has considered Defendant's other arguments and finds them without merit. Accordingly, decertification is not warranted on this basis, and Defendant's Second Motion to Decertify is denied.

**III.     Conclusion**

For the reasons set forth above, the Court DENIES Defendant's Second Motion to Decertify.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of November 2017.