UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

———————————————————————
:
Joseph Strauch and Timothy Colby,                   :
and on behalf of themselves and all those           :
similarly situated                                  :           CIVIL NO.: 3:14-cv-956 (JBA)
                                                    :
                    Plaintiffs,                     :
v.                                                  :
                                                    :
Computer Sciences Corporation                       :
                                                    :
          Defendant.                                :
———————————————————————:          March 2, 2018

## DEFENDANT'S POST-TRIAL OPPOSITION BRIEF ON DAMAGES

Pursuant to the Court's Order, on February 2, 2018, both Plaintiffs and Defendant filed briefs on post-trial damages issues in light of the jury's verdict on December 20, 2017. Defendant files the present opposition in response to "Plaintiffs' Brief Regarding Remedies," which is Docket Number 449, to rebut any additional arguments made by Plaintiffs in their first brief on damages. To the extent possible to clarify its position, Defendant will not repeat arguments already made in its First Post-Trial Brief On Damages (Dkt. No. 448) and instead will refer the Court back to arguments in its previously filed brief on damages as well as damages related arguments contained within Defendant's Renewed Motion for Judgment As A Matter Of Law pursuant to Rule 50(b). (Dkt. No. 446.)

Defendant respectfully maintains that the fluctuating workweek ("FWW") method of calculating overtime is the proper method of calculating damages in this matter, pursuant to the jury's factual finding and the overwhelming circuit court authority as articulated in the Second Circuit's ruling in *Banford*. Plaintiffs have ignored that the majority of circuit courts have agreed that this is the proper way to calculate overtime. Furthermore, Plaintiffs have waived any

1

objections to using FWW as a method of computation of overtime when the Court made the decision to give this issue to the jury.   Additionally, as discussed in greater detail below, Plaintiffs are not entitled to liquidated damages under both federal and state law nor is equitable tolling or injunctive relief appropriate in this case.

I.   **Overtime Damages Must Be Calculated At an Additional "Half Time" Pursuant to the Majority Rule**

Defendant has already provided a comprehensive explanation in support of application of the FWW in its First Post-Trial Brief On Damages (Dkt No. 448), and has, on the whole, already predicted and opposed the shortfalls to Plaintiffs' arguments as it relates to application of the FWW.  Ultimately, the FWW is a simple concept.  Where the issue becomes muddled, however, is unwarranted confusion over the overtime premium that is owed to employees, a confusion that Plaintiffs apparently share in.   Ultimately, no matter how non-exempt employees are paid, whether hourly or salaried, they must receive minimum wage for all hours worked as well as a half-time premium for overtime hours.   It is always a half-time premium, and, in fact, the concept of "time and a half" is actually a misnomer.   This is exactly what was found in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 573-74, 580-81 (1942), where a non-exempt employee received a fixed salary for all hours worked, meaning the employee had been paid straight-time for all hours but did not receive an overtime premium, so it was determined that the proper remedy was the additional half-time premium based on all overtime hours worked in the work week.  Such should be the case here.  This has been confirmed by the majority of circuit courts, and, most recently in a decision in the Southern District of New York, which found that "[t]he FWW is thus a method for complying with the FLSA's overtime requirements, not an exception thereto," which directly contradicts Plaintiffs' erroneous claim that FWW is a "special exception to the normal calculation method."  *See Thomas v. Bed Bath &*

*Beyond*, 16 Civ. 8160 (PAE) (S.D.N.Y. February 21, 2018) (stating "the lasting significance of the *Missel* decision is its approval under the FLSA of paying an employee a flat weekly salary for fluctuating hours so long as premium is also paid of at least fifty percent additional for the hours actually worked over the statutory maximum," internal citations omitted); *see also Robert Hall, et al., v. Plastipak Holdings, Inc., et al*, Case No. 17-1694 (6th Cir. February 28, 2018) (holding that defendant company double paid plaintiffs overtime hours when it compensated overtime premiums at full salary rate because FWW only requires half-time overtime premium in addition to fixed salary for straight time worked).[1]

Here, the jury in the present case determined that CSC and the Class Plaintiffs had a "clear and mutual understanding" that the employees' fixed salaries were intended as compensation for all hours worked each work week. (Dkt. 442-1; Trial Transcript, p. 1359.) Therefore, it is clear that SAs here have been compensated for their straight time worked, whether 35 or 45 hours per week, and are thus owed a "half-time" premium for any overtime hours.  In fact, this is exactly what the Supreme Court in *Missel* determined, which was then codified by the DOL in 29 CFR 778.114.  The regulations make clear that with the jury's finding, the *only* way to determine damages is by applying a half-time overtime premium. *See* 29 CFR 778.114(b) (requiring that "[s]ince the employee has already received straight-time compensation on a salary basis for all hours worked, only additional half-time pay is due."). Plaintiffs' arguments should be rejected because they are based on what they want the law to be, not what the law is.

In addition, Plaintiffs waived the argument that FWW cannot apply as a matter of law. Federal Rule of Civil Procedure 51(c) governs objections to jury instructions.  Under FRCP 51(c)(1), "[a] party who objects to an instruction or the failure to give an instruction must do so

---

[1] Declaration of Alexa M. Farmer ("Farmer Dec."), ¶2, unreported cases attached as <u>Exhibit A</u>.

on the record, stating distinctly the matter objected to and the grounds for the objection." Timeliness of objections to jury instructions is governed by FRCP 51(c)(2), which states that an objection is timely if "(A) the party objects at the opportunity provided under Rule 51(b)(2); or (B) a party was not informed of an instruction or action on a request before that opportunity to object, and the party objects promptly after learning that the instruction or request will be, or has been, given or refused."   Failure to timely object precludes a party from later objecting to the contents of the jury instruction as well as the very submission of the issue itself to the jury.  In *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 542 (N.D. Cal. 1990), the court held that defendant's failure to object to a jury instruction under FRCP 51 thereby precluded it from "challenging the jury instructions, both as to their submission of the ultimate question [] to the jury and as to their content…"  The court explained that "[s]ince Rule 51 requires an objection to the giving or failing to give an instruction, and since an issue is only given to the jury via an instruction, Rule 51 necessarily requires an objection to what issues are given to the jury in the first place."  *Id.* at FN 2.

In the present matter, Plaintiffs have briefly attempted, by dropping a limited footnote, to argue that FWW was not a proper issue for the jury.  Their argument fails, however, as they have waived their ability to raise this objection by not having objected at trial or having objected to the jury instruction pursuant to FRCP 51.  Here, Plaintiffs were clearly informed that the jury would be provided an instruction on the FWW and would make a determination as to whether CSC had proved that a "clear and mutual understanding" existed that Plaintiffs' salaries covered all hours worked.  Plaintiffs' counsel was present in chambers for a discussion of the instruction, yet did not overtly object to it being presented to the jury.  Counsel for plaintiffs thereafter

presented a supplemental closing argument on the subject, all without explicitly objecting to the instruction having been presented.

To the extent that Plaintiffs' thought this was a legal issue, as Plaintiffs now argue, Plaintiffs' should have raised it in the form of a motion in limine, as in *Perkins v. Southern New Eng. Tel. Co.*, 2011 U.S. Dist. LEXIS 58686 (D. Conn. Sept. 27, 2011); however, again, Plaintiffs failed to do so. Therefore, even if they had not waived their ability to object on this issue, it remains clear that this is an issue of fact to be determined by the factfinder, which, in this case, was the jury.  Therefore, Defendant respectfully submits that Plaintiffs' argument was waived, and Plaintiffs' arguments should be rejected for this additional reason.

## II.   Plaintiffs' Untimely Claims for Equitable Tolling Should Be Denied Because Plaintiffs Fail to Establish Their Burden for This "Rare" and "Extraordinary" Remedy

The proper limitations period prescribed by the FLSA runs from the date an opt-in plaintiff files with the Court a written consent to join the lawsuit.  *See* 29 U.S.C. §256(b).  The Second Circuit has held that "[t]he putative plaintiff has the burden of showing that equitable tolling is appropriate."  *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).  "To determine whether to apply the principle of equitable tolling, the district court must consider whether the plaintiff (1) 'has proved that the circumstances are so extraordinary that the doctrine shall apply' and (2) 'has acted with reasonable diligence during the time period she seeks to have tolled.'" *Zerilli-Edelgrass v. N.Y.C. Transit Auth.*, 333F.3d 84, 80-81 (2d Cir. 2003).  First, Plaintiffs' claim fails because they have not established any extraordinary circumstances.   Second, Plaintiffs' claim for equitable tolling is untimely as it requires this Court to extend the relevant time period for discovery and trial evidence after the trial concluded.  Third, Plaintiffs' claim should be denied because Plaintiffs were not reasonably diligent.  To the extent there were any

delays in notice, Plaintiffs were the primary causes.  Consequently, the FLSA time period should run from the date when each opt-in Plaintiff filed his or her consent with the Court.[2]

### A. Tolling Should Be Denied Because Plaintiffs Fail to Meet Their Burden of Establishing "Extraordinary" Circumstances Apply

The Supreme Court has held that equitable tolling is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely commons state of affairs."  *Wallace v. Kato*, 549 U.S. 384, 296 (2007); *see also Smith v. McGinnis*, 208 F.2d 13, 17 (holding that equitable tolling is appropriate only "in the rare and exceptional circumstance.").   The Supreme Court recently affirmed that in order to prove the "extraordinary circumstances" prong of the equitable tolling test, the circumstances must be "both extraordinary *and* beyond [Plaintiffs'] control." *Menominee Indian Tribe v. United States*, 136 S. Ct. 750, 756 (2016) (emphasis in original). Even before the Supreme Court's *Menominee* decision, this Court denied a request for FLSA equitable tolling, finding that such a remedy was "rare."  *Ruggeri, et al. v. Boehringer Ingelheim Corp.*, 2008 U.S. Dist. LEXIS 129012, *16-17 (D. Conn. Feb. 27, 2008) (Arterton, J.) (denying equitable tolling).  Plaintiffs, who bear the burden of proving that equitable tolling is appropriate, have provided inadequate evidence to support that the circumstances in the present case were in any way "unusual" such that this "rare" remedy should be granted.

In *Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 U.S. Dist. LEXIS 95729, at *40-41 (W.D.N.Y. Oct. 13, 2009), the court noted that "[t]here are few cases in this Circuit that have touched on the issue of equitable tolling of an FLSA collective action. Cases in which tolling was granted have involved either: a court-imposed stay pending the Court's resolution of a dispositive motion, *Lee*, 236 F.R.D. at 199-200, a stipulation among the parties to toll the statute,

---

[2] Defendant submits that, pursuant to its arguments in its Rule 50(b) Motion for Judgment of Law (Dkt. No. 446), the statute of limitations that applies here is a two-year statute of limitations because any violations of the FLSA were not willful.  *See* Dkt. No. 446, at (III)(H) (establishing Plaintiffs lacked evidence of any culpable state of Defendant and that Defendant CSC acted in good faith in classifying the SA positions).

*Roebuck v. Hudson Valley Farms*, 239 F. Supp. 2d 234, 240 n.10 (N.D.N.Y. 2002); *Hoffmann*, 982 F. Supp. at 260 n.14, tolling only for plaintiffs who already had filed consents, *Armstrong v. Homebridge Mortg. Bankers Corp.*, 07-CV-1024, 2009 U.S. Dist. LEXIS 91146, at *4-7 (E.D.N.Y. Sept. 30, 2009);  or the employer's failure to post required notices advising employees of their FLSA rights, *Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 369 (S.D.N.Y. 2007); *Baba v. Grand Central P'shp.*, 2000 U.S. Dist. LEXIS 17876 (S.D.N.Y. Dec. 8, 2000)." None of those circumstances is matched here.

Furthermore, while delays in litigation have been deemed to reach the level of "extraordinary circumstances," to warrant equitable tolling, those delays are not comparable to the circumstances or the passage of time in the present case.  For example, while in *Kassman v. KPMG LLP*, 2015 U.S. Dist. LEXIS 118542 (S.D.N.Y. September 4, 2015), the Court ultimately did grant equitable tolling based on delays in the litigation process, this was due to "extraordinary" delays amounting to approximately four years that resulted from transferring the case to multiple judges and extreme delays within the court system.  Such is not the case here. Furthermore, in that case, defendant identified multiple cases in which equitable tolling was *not* granted due to normal litigation delays ranging from approximately 12 to 13 months, delays similar to the length of time Plaintiffs allege the present matter was "delayed."  *See Kassman*, at *13 (citing *Arena v. Plandome Taxi, Inc.*, No. Civ. 12-1078, 2013 U.S. Dist. LEXIS 58169, at *2 (E.D.N.Y. Apr. 23, 2013) (delay of 12 months between plaintiffs' request for leave to file conditional certification motion and adjudication of equitable tolling motion)*; Gordon v. Kaleida Health*, No. 08 Civ. 378, 2009 U.S. Dist. LEXIS 95729, at *12 (W.D.N.Y. Oct. 14, 2009) (delay of 13 months between plaintiff's motion for expedited notice and adjudication of equitable tolling motion)*; Hinterberger v. Catholic Health Sys.*, No. 08 Civ. 380, 2009 U.S. Dist. LEXIS

97944, 2009 WL 3464134, at *13-14 (W.D.N.Y. Oct. 21, 2009) (delay of 13 months between plaintiff's motion for expedited notice and adjudication of equitable tolling motion); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 479 (S.D.N.Y. 2008) (adjudicating equitable tolling motion less than one year after commencement of action)).

Consequently, Plaintiffs failed to establish that the circumstances are so extraordinary that equitable tolling should apply.  For this reason, Plaintiffs' request should be denied.

### B.  Tolling Should Be Denied Because Plaintiffs Fail to Establish That They Acted with Reasonable Diligence

Additionally, Plaintiffs fail to meet their burden that they acted with reasonable diligence during the time period Plaintiffs seek to have the statute of limitations tolled. *See Zerilli-Edelgrass*, 333F.3d 84, 80-81. Plaintiffs mischaracterize the supposed delays in the litigation process, which they say were caused by CSC.  *See* Dkt No. 449, at 15-17.  Yet, Plaintiffs ignore that they were the source of any claimed delays, since CSC made multiple overtures to Plaintiffs to send out the FLSA notice without the need for briefing.

For example, at a preliminary case conference on April 1, 2015, undersigned counsel welcomed a proposal from counsel for the Plaintiffs to more manageably define the putative class.[3]  Specifically, counsel for CSC noted that "[w]e have been discussing this concept of narrowing the class for eight months.  Once we have a proposal, we can actually go back to our client and suggest that we not oppose conditional certification, and we simply agree on who the notice would go out to."[4]  However, Plaintiffs never responded to Defendant's counsel with a proposal, despite the fact that the Court agreed such a proposal was a "good plan" and even seemed to imply it would ultimately grant conditional certification.[5]  If Plaintiffs had engaged in

---

[3] Farmer Dec., ¶3, Transcript of Status Conference dated April 1, 2015, at pp. 10-11 (attached as <u>Exhibit B</u>).
[4] *Id.*
[5] *Id.*

good faith discussions with Defendant regarding conditional certification, which counsel for Defendant invited them on the record to do, Plaintiffs alleged delays could have been avoided.

In addition, CSC emailed counsel for the Plaintiff on April 29, 2015 to follow up on the discussion in court and reach "a compromised solution for the appropriate putative class so that we can avoid motion practice on conditional certification and narrow the case to a scope that makes sense."[6]   In that email, CSC specifically offered "not to oppose your motion for conditional certification if you agree to drop the Senior Professionals from the suit and agreed to a compromised notice and process that we have used with your firm in other cases."[7]  CSC was therefore offering to agree to conditional certification of the Associate Professional and Professional SAs, which make up the class that was ultimately certified for trial.  If Plaintiffs had agreed to this proposal on April 29, 2015, or otherwise made a reasonable proposal earlier when CSC had invited one, then conditional certification would have been resolved as of that date and the notice process expedited.  However, Plaintiffs did not.  Counsel for CSC again followed up on May 2, 2015 inviting a proposal in writing prior to an upcoming phone call,[8] but Plaintiffs never provided such a proposal.

Finally, discovery demonstrated that Plaintiffs were more concerned with artificially building a large FLSA collective before filing the lawsuit, then Plaintiffs were with filing consents to preserve claims.  For example, in documents produced May 7, 2015, at 6:28 p.m.— on the eve of CSC's deadline to oppose their conditional certification motion—Plaintiffs produced 134 pages of solicitous LinkedIn messages from Plaintiffs' counsel to CSC System

---

[6] *See* Farmer Dec., ¶4, Email chain between William Anthony and Jahan Sagafi, dated April 29, 2015 through May 2, 2015 (attached as <u>Exhibit C</u>).
[7] *Id.*
[8] *Id.*

Administrators.[9]   The messages made clear that, since at least December 2013—approximately ***seven months*** prior to the filing of the lawsuit—Plaintiffs' counsel were identifying SAs by surveying their LinkedIn profiles and sending them unsolicited messages stating that they "believe that CSC violated federal and state wage and hour laws by misclassifying system administrators as 'exempt' from overtime pay and failing to pay them time and a half for all hours worked over 40 in a workweek."[10]   The messages continued by indicating that "information that you provide to us could help us obtain a recovery on behalf of current and former CSC system administrators across the country."[11]   Plaintiffs filed close to one hundred consents before the Court's FLSA notice was sent to the collective.   Thus, Plaintiffs' own actions impacted delays on proper class certification procedure.

In other words, Plaintiffs could have filed this lawsuit as early as December 2013, and Plaintiffs could have agreed on a reasonable FLSA collective for notice that could have gone out shortly thereafter.   Plaintiffs chose not to do so.

### C.  Tolling Should Be Denied Because Plaintiffs' Claim for Tolling Is Untimely

Until Plaintiffs' latest filing on February 2, 2018 (Dkt. No. 449), Plaintiffs have never sought equitable tolling.   Plaintiffs should have filed for tolling when moving for conditional certification, which was granted on June 9, 2015. (Dkt. No. 168.)   If tolling were allowed to occur now, years later and after the trial has concluded, this would extend the time period for claims.   Such a decision would be overly prejudicial to Defendant, as there would now be no ability to obtain written discovery or testimony from the opt-in plaintiffs for this specific time period now that the trial has concluded.

---

[9] *See* Dkt. No. 161-14, LinkedIn Solicitation Messages (previously filed with the court in support of Dkt. No. 161, Defendant's Opposition to Conditional Certification).
[10] *Id.*
[11] *Id.* at P006934 – 35.

Plaintiffs repeatedly mention the jury's willfulness finding; however, this the underlying jury verdict is simply irrelevant to this Court's tolling determination. What is relevant to tolling is whether the putative collective knew their FLSA rights and what they did to preserve them. Indeed, Plaintiffs' motion in limine on solicitations (Dkt No. 348) never should have been granted—or even filed—if Plaintiffs planned all along to claim, after the trial, that tolling was appropriate. The solicitations at issue are relevant evidence as to the Plaintiffs' knowledge of their potential claims. Now, CSC has no ability to ask Plaintiffs what they knew about their FLSA rights, when they knew it, and how they did (or did not) exercise their rights. Indeed, many SAs have been at CSC since the prior misclassification lawsuit or worked for other companies where they were classified as non-exempt, may have had notice of their FLSA rights, but chose to do nothing to pursue or preserve their claims. But since trial is over, CSC cannot question these witnesses or marshal any such evidence. Consequently, the untimeliness of the Plaintiffs' request is sufficient reason to deny Plaintiffs' request for tolling.

### D. Finally, CSC's Decision to Withhold Contact Information for Putative Collective Members Is Not Support for Tolling and, in Any Event, CSC Had Good Reason for Withholding Such Information

This Court has previously ruled that a defendant's failure to turn over contact information for the putative collective is insufficient justification for tolling. *See Ruggeri, et al.*, 2008 U.S. Dist. LEXIS 129012, *17 (Arterton, J.) (noting that plaintiffs, as here, failed to provide authority for the proposition that defendants "bore a legal duty to turn over such records outside of the litigation discovery process"). Consequently, Plaintiffs' contentions that CSC refused to provide contact information for potential opt-ins fails to justify tolling here. *See* Dkt No. 449, at p. 15.

In addition, Plaintiffs' arguments once again fail to provide the whole story. As noted above, the named Plaintiffs had been actively contacting other putative class members and

soliciting participation outside the court-authorized notice process, making one-sided, improper statements.[12]  For instance, Strauch contacted a potential class member and stated that CSC had been sued previously for the same reason—misclassification—and agreed on a $24 million settlement.[13]  Strauch also voiced his opinion to another putative class member about CSC, stating "My biggest fantasy would be for the Solaris team to start quitting every two weeks, LOL . . . see where that leaves the company."[14]  Plaintiffs also invited potential class members to visit Plaintiffs' counsel's website (http://www.csclawsuit.com/) to learn more about the lawsuit and fill out a questionnaire.[15]

As noted above, Plaintiffs filed close to one hundred FLSA consents before the court-authorized notice was issued.  Even to this day, it is still unclear what was said and who it was said to that encouraged so many SAs to join the lawsuit before notice was issue, and how these improper communications tainted the notice process.  We do know that Plaintiffs' counsel not only prematurely built the putative class, but also proactively recruited at least one of original two named Plaintiffs.  In his deposition, Colby admitted that Outten & Golden initially contacted him, and not vice versa;[16] that he was not expecting the initial contact from Outten & Golden, but rather the firm's LinkedIn message came "out of the blue";[17] and that, before the unsolicited message from Outten & Golden, he had not even *thought* about suing CSC.[18]  Then, when undersigned counsel inquired about the content of Outten & Golden's unsolicited contact with him before the lawsuit was even filed, Plaintiffs' counsel directed Colby not to answer on the

---

[12] *See* Dkt No. 161-14, Strauch Solicitation Messages (previously filed with the court in support of Dkt. No. 161, Defendant's Opposition to Conditional Certification).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *See* Dkt. No. 161-5, Excerpts from Colby Dep. pp. 10:6 – 11:6 (previously filed with the court in support of Dkt. No. 161, Defendant's Opposition to Conditional Certification).
[17] *Id.* at pp. 12:18 – 13:8, 15:16 – 22.
[18] *Id.* at pp. 16:17 – 24.

basis of the attorney-client privilege—nonsensically arguing that Outten & Golden contacted Colby, and not vice versa, for the purpose of "obtaining or receiving legal advice."[19]  Active solicitation of this nature was inappropriate.  If notice were going to be issued, CSC wanted notice issued through the Court's neutral process as envisioned by the Supreme Court.

### III.    Plaintiffs Are Not Entitled to Double Recovery of Liquidated Damages Under State and Federal Law

With relation to Plaintiffs claims regarding liquidated damages under the FLSA, Defendant refers the Court to its Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b) under Subsection (III)(F) (Dkt. No. 446), in which it argues that CSC clearly acted in good faith.  In fact, it is well established that the act of consulting with counsel in an effort to ensure compliance alone constitutes good faith.

Regardless of the Court's eventual ruling on the Renewed Motion for Judgment as a Matter of Law, however, Plaintiffs are similarly not entitled to liquidated damages under both state and federal law.

### A.  Plaintiffs Are Not Entitled to Liquidated Damages Under Connecticut Law

Plaintiffs claim they are entitled to liquidated damages pursuant to the Connecticut Minimum Wage Act ("CMWA") *in addition to* the liquidated damages they claim they are entitled to under the FLSA.  Yet, there is no jury finding on willfulness as to Plaintiffs' Connecticut claims.  The final Jury Instructions in this case were clear:  the willfulness determination was as to the FLSA only.  *See* Dkt. 441 at 23.  The Jury Verdict form was also clear: the jury would only answer the question of willfulness as to the FLSA, not Connecticut law.  *See* Dkt. 442 at 2 ("*If you answered no to all the questions for the FLSA (i.e., questions 1, 2, 3, and 4), please proceed to Section B, below.  Otherwise, if you answered yes to any of the*

---

[19] *Id.* at pp. 10:9 – 12:15.

*questions 1 through 4, please skip Section B and you will have completed this verdict form.*"). Thus, Plaintiffs failed to establish CSC willfully misclassified Plaintiffs as exempt pursuant to <u>*Connecticut*</u> law.  Without this necessary factual predicate, Plaintiffs' claims for liquidated damages under Connecticut law fail.

Even assuming the jury had made a finding of willfulness as to Connecticut law, recent Connecticut case law does not support this outcome of double damages.  The FLSA liquidated damages are all Plaintiffs would be entitled to if the jury's finding regarding FLSA willfulness stands.[20]  Only if CMWA liquidated damages exceed FLSA liquidated damages would state law enter the assessment of liquidated damages.  Plaintiffs' argument relies on case law that identifies the FLSA and CMWA liquidated damages provisions as serving distinct purposes, compensatory and punitive, respectively.  These cases, however, are outdated and do not reflect the shift in assessing the purpose of liquidated damages provisions under federal and state law.

The Connecticut statute was recently amended by Public Act 15-86 to mirror the FLSA regarding liquidated damages.  *See* Conn. Gen. Stat. § 31–72.  Moreover, as early as *Andrade v. Kwon*, 2012 U.S. Dist. LEXIS 106571 (D. Conn. March 26, 2012), Judge Underhill rejected the assumption that liquidated damages under the FLSA and CMWA "serve fundamentally different purposes," as prior courts have described. *Id.* at *15.  As Plaintiff notes by citing *Reich v. S. New Eng. Telcomms. Corp.,* 121 F.3d 58, 71 (2d Cir. 1997), in the past, some federal courts have described FLSA's liquidated damages as "compensatory rather than punitive in nature." Furthermore, as Judge Underhill cited, state courts have characterized the CMWA's damage award as "provid[ing] penalties…to deter employers" from underpaying workers.  *See Andrade*, at *15 (quoting *Shortt v. New Milford Police Dep't*, 212 Conn. 294, 309 (1989)).  However, the Court in *Andrade* rejected that reliance on this distinction between a "compensatory" award for

---

[20] *See* Dkt No. 446 (Defendant's Rule 50(b) motion).

14

workers and a "penalty" for employers successfully argues that the statutes compensate workers for different reasons. *Andrade*, at *15. In fact, the court instead noted that "courts have reasoned that the provisions serve the same principal aims. Both statutes were enacted to deter employers from underpaying workers . . . [a]nd both statutes redress harm caused by the same conduct." *Id.* at *15-16. (Internal citations and quotation marks omitted). Therefore, the difference between characterizing the FLSA's liquidated damage clause as "compensatory" and the CMWA's clause as a "penalty," ultimately becomes meaningless given "both provisions serve a similar purpose—they deter employers from ignoring wage and hour laws, and raise the price for willful violations of those laws." *Id.* at *16. Ultimately, in *Andrade*, this court determined that "[s]ince the FLSA and the CMWA's liquidated damages do not 'serve fundamentally different purposes,' plaintiffs may only recover an award under one of those statutes." *See id.* at *16 (the Court granted plaintiffs in that case the liquidated damages under the CMWA as they would collect a higher sum under that provision, but did not additionally grant liquidated damages under the FLSA).

Defendant does not challenge that if liquidated damages under the CMWA result in a higher recovery, then Plaintiffs' liquidated damages, if deemed appropriate in this case (which Defendant denies pursuant to its Motion at Docket Number 446), should be calculated using the statute that awards them with the higher sum in liquidated damages, as was determined in *Andrade*, *supra*. For the foregoing reasons, Defendant, however, opposes that Plaintiffs are entitled to liquidated damages under both the FLSA and the CMWA as they would receiving double recovery for the same claims under statutes that have been found by this court to serve the same purpose. Thus, Plaintiffs are not entitled to liquidated damages under both the CMWA and the FLSA.

**B.  Similarly, Liquidated Damages Are Not Available Under California Law.**

By not arguing otherwise, Plaintiffs tacitly acknowledge that the California Class is not entitled to liquidated damages under FLSA. It is clear that the California Labor Code preempts the FLSA in regard to the California Class. When there is a conflict between the FLSA and state law, the higher standard applies. 29 U.S.C. §218(a); 29 C.F.R. §778.5; *Aguilar v. Assoc. for Retarded Citizens*, 234 Cal.App.3d 21, 34. By its own terms, the FLSA allows state laws to regulate overtime wages based on its savings clause.  *See* 29 U.S.C. § 218(a); *Tidewater Marine Western, Inc., v. Bradshaw*, 14 Cal.4th 557, 567 (1996).  California Labor Code section 510 and the Industrial Welfare Commission ("IWC") Wage Orders that implement California's overtime requirements are more stringent than the FLSA. The IWC Wage Orders are quasi-legislative and are treated in the same manner as statutes by the courts. *Brinker Rest. Corp. v. Sup. Ct,* 53 Cal.4th 1004, 1027 (2012). In this context, Labor Code section 510 and the applicable Wage Order provide overtime after eight hours of work in the day, double time after 12 hours of work in a day, overtime after 40 hours of work in a week as well as overtime for the first eight hours of work on the seventh consecutive day of work in the workweek, and double time after eight hours of work on the seventh consecutive work day.  Cal. Labor Code § 510, IWC Wage Order, No. 4-2001, 3(a)(1). These standards are more stringent than the FLSA, and by the FLSA's own language, it is preempted by the California overtime laws. Thus, FLSA liquidated damages do not apply.

**IV.    California Class Members' Overtime Claims Are Governed by the California Labor Code.**

Plaintiffs identify California Labor Code section 510 standards for overtime in their briefing, which requires overtime pay for hours worked in excess of eight up to 12 hours per day, and over forty hours worked in an established workweek. Cal. Labor Code §510(a).  Double time

is due for work in excess of 12 hours per day. *Id.*  On the seventh consecutive day of work in a workweek, an employee is paid one and a half the hourly rate of pay for the first eight hours of work, and twice the regular rate of pay for time worked in excess of eight hours on that day.[21] *Id.* The statute of limitations for wage claims is three years, which may be effectively extended to four years by a claim of Unfair Business Practices pursuant to Business and Professional Code section 17200 *et seq.* Cal. Code Civ. Pro. § 338(a); Cal. Bus. & Prof. Code §17208; *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4[th] 179 (2000). The amounts recoverable for the fourth year of the statute of limitations pursuant to an Unfair Competition Law ("UCL") claim are equitable, and as such, restitutionary in nature as opposed to damages. *Cortez*, 23 Cal.4[th] at 177. The Court has discretion in determining what, if any, restitution is granted. *Id*. To the extent Plaintiffs recover overtime wages, they may also recover interest at the rate of 10% per year from the date the wages were owed. Labor Code § 218.6, Cal. Civ. Code §§3289(b).

## V. Plaintiffs Are Not Entitled to Wage Statement Penalties and Any PAGA Penalty Recovery Should Be Limited.

### A. Plaintiffs Have Not Established Entitlement to Wage Statement Penalties.

The statutory penalties in Labor Code section 226 provide penalties for wage statements that fail to include the items enumerated in Labor Code section 226(a) where there is a "knowing and intentional" failure by the employer to comply with that section. Cal. Labor Code §226(e)(1).  An employee is must suffer an injury in order to recover the penalties, but is deemed to suffer injury if one of the required items enumerated by section 226(a) is not present on the wage statement. Cal. Labor Code §226(e)(2)(B).  If those elements are shown, the employee recovers the greater of actual damages or $50 for the initial pay period with a violation, and $100 for each subsequent pay period with a violation up to a maximum of $4,000. Cal. Labor Code

[21] Seventh day overtime, as opposed to overtime after eight hours in a day or 40 hours in a week, is only due if the employee has worked seven consecutive days. 8 Cal.Code of Regs. §11041(3)(A)(1)(a)&(b).

17

§226(e)(1). "Subsequent" penalties are not awarded until after a determination that the wage statements were unlawful. *Robinson v. Open Top Sightseeing San Francisco, LLC*, 2018 U.S. Dist. LEXIS 24556, *50-*58 (N.D. Cal. 2018). As such, the maximum statutory penalty that could be awarded for a wage statement in this case is $50 per instance. Because these are penalties, a one year statute of limitation applies according to California Code of Civil Procedure section 340(a).[22]

Plaintiffs' theory for recovery of penalties is that the misclassification of the California putative class automatically entitles them to recover these penalties. *See* Plaintiffs' Brief Regarding Remedies, Dkt. No. 449, p. 22. However, Plaintiffs failed to introduce any evidence establishing the underlying requirements for recovery of section 226 penalties. Whether the California class suffered injuries under section 226 is a factual issue and must be supported by evidence submitted at trial. *See, e.g., Robinson, supra,* 2018 U.S. Dist. LEXIS 24556, *50-*53. No wage statements were entered into evidence, and thus, Plaintiffs have failed to establish that the wage statements were not compliant with section 226.

Even if Plaintiffs had introduced wage statements into evidence, they would not have established sufficient injury to recover under section 226. The "knowing" and "intentional" elements of section 226's recovery requirements cannot be established in a misclassification case where Defendants had a good faith belief that the employees were properly classified, even if Defendants were ultimately incorrect. *See Boyd v. Bank of Am. Corp.*, 109 F.Supp. 3d 1273, 1308 (CD Cal. 2015). That is exactly the scenario in this case.  Moreover, as noted above regarding the Connecticut liquidated damages section, there was no jury instruction or jury finding regarding whether CSC actions were "knowing" and "intentional" under <u>*California*</u> law.

---

[22] Plaintiffs' Unfair Competition Law does not apply to Labor Code section 226 because the section 226 provides for a penalty rather than restitution, and thus cannot be the basis for a UCL claim. *Ordonez v. Radio Shack* (C.D. Cal. Feb. 27, 2011) 2011 U.S. Dist. LEXIS 16038, 19-20.

The willfulness determination was as to the FLSA only, not California law.  *See* Dkt. 441 at 23; Dkt. 442 at 2.  Plaintiffs cannot be allowed to supplement the trial record with evidence or issues that should have been litigated before the jury.

**B.  Any PAGA Penalty Recover Should Be Limited.**

Plaintiffs' PAGA claims are limited by a one-year statute of limitations pursuant to California Code of Civil Procedure section 340(a). *Thomas v. Hope Depot USA Inc*., 527 F. Supp.2d 1003, 1008 (N.D. Cal. 2007). Even though many California Labor Code sections may have longer statutes of limitations, PAGA is limited to one year because it seeks a civil penalty. *Id*. The one year statute of limitations is tolled when plaintiff has started the exhaustion of administrative remedies process by sending a letter identifying the alleged violations he or she intends to pursue. *Martinez v. Antique & Salvage Liquidators, Inc.*, 2011 US Dist. LEXIS 12198, *20 (N.D. Cal. February 8, 2011, modified Feb. 25, 2011). Likewise, other civil penalties, like California Labor Code section 558, sought under PAGA are also limited to a one year statute of limitations. *See, e.g., Yadira v. Fernandez*, 2011 U.S. Dist. LEXIS 101617, *4 (N.D. Cal. 2011).

Plaintiffs assert Mr. Strauch has complied with the PAGA exhaustion requirements by submitting a letter to the Labor and Workforce Development Agency ("LWDA") on behalf of Mr. Strauch on July 1, 2014, and they also assert the LWDA authorized Mr. Strauch to proceed pursuant to PAGA by a subsequent letter. However, Mr. Strauch did not introduce this evidence at trial, and as such, they have failed to establish the right to pursue PAGA penalties. Even if their untimely, post-trial submission of the letter to the LWDA is accepted, Mr. Strauch can only recover PAGA penalties on his behalf or on behalf of anyone else on or after July 1, 2013 due to the one year statute of limitations.

PAGA allows an aggrieved employee to recover civil penalties, as opposed to statutory penalties, standing in the shoes of the LWDA or any of its agents. Labor Code § 2699(a),(e). If the underlying Labor Code section provides for a civil penalty, that specified civil penalty is recovered. Labor Code § 2699(f),(g). If the underlying Labor Code section does not provide a civil penalty, PAGA provides a maximum penalty of "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Labor Code § 2699(f)(2).

Plaintiffs seek to recover PAGA civil penalties associated with derivative wage statement pursuant to Labor Code section 226. Plaintiffs assert that they should recover Labor Code section 226.3 penalties under PAGA for Labor Code section 226. As set forth above, Plaintiffs have failed to establish their claims for Labor Code section 226, and as such, cannot recover PAGA-based penalties based on that cause of action.

The only claims Plaintiffs can recover pursuant to PAGA are for their overtime claims pursuant to section 510 using the penalties set forth in Labor Code section 558.  The maximum penalties pursuant to PAGA for Labor Code section 558 that could be awarded are $50 penalties per pay period per employee with an overtime violation up to the date of the filing of the complaint, and a maximum of $100 penalties for subsequent pay periods thereafter. Cal. Labor Code § 558(a). The "initial" penalty available to PAGA applies "until an employer has been notified that it is violating a Labor Code provision…" *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1209 (1st Dist. 2008); *Patel v. Nike Retails Servs.*, 58 F.Supp.3d 1032, 1042 (N.D. Cal. 2014); Allen v. Utiliquest, LLC, 2013 US Dist Lexies 108948, *25-26 ft9 (finding "Courts have held that 'subsequent' violations in the PAGA context means not just later in time,

20

but following notice to the employer that it is in violation of the Labor Code"); *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, 2009 U.S. Dist. LEXIS 69842, 2009 WL 2448430, at \*9 (S.D. Cal. Aug. 10, 2009) (applying *Amaral* to § 558).   An employer is not put on notice of a potential Labor Code violation for purposes of PAGA until a lawsuit has been filed. *Id.*, at 23-24 *citing Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, No. 05CV1199-IEG-CAB, 2009 U.S. Dist. LEXIS 69842, 2009 WL 2448430, at \*9 (S.D. Cal. Aug. 10, 2009); *Willis v. Xerox Bus. Servs., LLC*, No. 1:13-CV-01353-LJO, 2013 U.S. Dist. LEXIS 163144, 2013 WL 6053831, at \*6 (E.D. Cal. Nov. 15, 2013).

However, the Court has discretion to award a lesser penalty.  If "based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Labor Code § 2699(e)(2). Courts routinely limit the civil penalties sought. See, e.g. *Parr v. Golden State Overnight Delivery Serv.*, 2014 Cal. Super. LEXIS 1551; *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157 (request of $500,000 limited to $258,000); *Fleming v. Covidien, Inc.*, 2011 US DIST. LEXIS 154590 (request of $2,800,000 limited to $500,000). Like the cases identified above, Plaintiffs recovery of PAGA penalties should be limited because imposing the full penalties in section 558 would be unjust and confiscatory. As such, the Court should award no more than the $50 per pay period penalty provided by Labor Code section 558.

## VI.   Plaintiffs Are Not Entitled to Injunctive Relief As There Is an Adequate Remedy at Law

Plaintiffs are also seeking injunctive relief under Connecticut and California Laws, specifically requesting that the Court "issue an injunction requiring CSC to reclassify the two class positions (Associate Professional System Administrator and Professional System Administrator) in Connecticut and California to nonexempt status." (Dkt. No. 449). The record,

however, does not support a granting of injunctive relief under these facts as it is a high bar to meet under that state laws of both Connecticut and California.

### A. Plaintiffs Are Not Entitled to Injunctive Relief Under the Laws of the State of Connecticut or California.

Connecticut courts have consistently held that "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." *Maritime Ventures, LLC v. Norwalk*, 277 Conn. 800, 807 (2006); *Pequonnock Yacht Club, Inc.* 259 Conn. 502, 598 (2002). Here, Plaintiffs will receive an adequate remedy via monetary compensation. In addition, an order to reclassify does not take into account the complexity of the task, which makes it an inappropriate remedy in the present matter. As was testified to at trial and as support for Defendant's Motion to Decertify (Dkt. No. 447), SAs all have incredibly varied tasks, service varied customers, support varied systems, and complete varied levels of tasks that their fellow SAs might be unable to complete (tasks, for example, that might be exempt). A blanket order to reclassify all Associate Professional and Professional SAs is inappropriate on these facts as doing so might actually create a perpetuation of misclassification, leaving certain individuals improperly placed simply due to a wide sweeping order that does not take into account the complicated and varied nature of the SA job structure. Thus, the job structure at CSC is thus too complex for such a blanket order of injunctive relief, and would, arguably, also play to the detriment of those Plaintiffs for which it is meant to serve as a remedy.

For similar reasons, because there is not a common determination that all SAs were misclassified, administering class wide injunctive relief is inconsistent with the variance amongst the class and thus is inappropriate here. As outlined in Defendant's Motion to Decertify (Dkt No. 447) and reiterated here, there is a lack of commonality amongst the class. Plaintiffs are required to show that liability and damages are "capable of proof at trial through evidence that

[is] common to the class rather than individual to its members." *Comcast Corp. v. Behrend*, 569 U.S. 27, 30 (2013) (internal quotation marks omitted).  Given the lack of commonality amongst these class members, and, importantly, that the named plaintiffs are former employees, this further warrants against administering class wide injunctive relief.

Moreover, because all Named Plaintiffs are *former* employees, as are many who make up the class, a remedy of injunctive relief is further misplaced here and demonstrates an additional reasons why the classes should be decertified.  "[T]he interests of these two former employees are, if anything, quite likely in conflict with the interests of current employees, for a former employee's primary interest necessarily centers on recovering back pay, while a current employee may well be far more interested in obtaining injunctive relief." *Slader v. Pearle Vision, Inc.*, 2000 U.S. Dist. LEXIS 16453 (S.D.N.Y. November 14, 2000), at *2 (holding that named plaintiffs failed to meet the adequacy requirements of Rule 23(a)(4) because "[t]o allow former employees to represent current employees in such situations comes close to denying the latter due process.").[23]  In addition, courts have declined to certify classes consisting of both former and present employees on the basis that commonality and typicality are lacking.[24]

In addition, former employees do not have standing to sue for injunctive relief.  *See Byrd v. Masonite Corporation*, 215 F.Supp.3d 859 (C.D. CA 2016) (dismissing claim for injunctive relief brought by former employee as the former employee lacked standing); *see also Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (finding that named plaintiffs in a class

---

[23] *See also Jordan v. Hawaii Government Employees Assn.*, 472 F. Supp. 1123, 1132, n. 30 (D. Hawaii 1979) (holding former employee not an adequate representative); *Kilgo v. Bowman Transportation, Inc.*, 87 F.R.D. 26, 28-29 (N.D. Ga. 1980) (finding representative of estate of deceased plaintiff "is not an adequate representative of the proposed class because, although he has an interest in claims for back pay, he does not have the same interest in declaratory and injunctive relief as other members of the proposed class"); *Mixon v. Gray Drug Stores, Inc.*, 81 F.R.D. 413, 414 (N.D. Ohio 1978).
[24] *See, e.g., Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir. 1992); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1035 (9th Cir. 1990).

action case lack standing to sue for injunctive relief regardless of whether the certified class included both current and former employees of the defendant-employer); *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief"). Consequently, Plaintiffs' claims for any injunctive relief should be denied.

**B.  Injunctive Relief Should Not Be Granted Under the UCL.**

Plaintiffs erroneously state that the "jury's liability finding requires imposition of injunctive relief" pursuant to the UCL. Plaintiffs' Remedies Brief, Dkt. No. 449, p. 29.  Contrary to that assertion, the UCL does not require injunctive relief. The Court's power under Business and Professions Code section 17203 is an equitable power to grant restitution or injunctive relief, and those powers are subject to equitable considerations. *Cortez*, 23 Cal.4th at 180.  The Court must balance the equities when determining whether to grant an injunction. *Id.*   In this case, injunctive relief is not appropriate for the same reasons it is not appropriate under Connecticut law.  A blanket order requiring reclassification of SAs is not appropriate because of the potential of misclassification, and because the California Class will be adequately compensated by restitution.

**VII.    Conclusion**

The Court should apply the FWW method for the FLSA collective members and Connecticut class members.  In addition, the Court should reject Plaintiffs' arguments regarding equitable tolling as they are untimely and, even if they were not, Plaintiffs lack the "extraordinary circumstances" to meet the necessary standard.

Defendant further respectfully submits that the Court should, pending a decision on the challenge of the jury's willfulness finding, consider prohibiting any liquidated damages pursuant to the FLSA.  Even if the Court rejects this argument, however, Defendant submits that a finding

of double liquidated damages under both federal and state law is improper.  Liquidated damages under state law should not be awarded, and FLSA liquidated damages should not be awarded to California class members.  Lastly, injunctive relief is not warranted here as the aforementioned remedies are adequate to address these claims.

Respectfully submitted,

DEFENDANT,
COMPUTER SCIENCES CORPORATION

By its attorneys,

/s/ William J. Anthony
JACKSON LEWIS P.C.
William J. Anthony (ct 17865)
Kristi Rich Winters (ct 28066)
677 Broadway, 9th Floor
Albany, New York 12207
Telephone: 518-512-8700
Anthonyw@jacksonlewis.com
Kristi.Winters@jacksonlewis.com

David R. Golder (ct 27941)
David C. Salazar-Austin (ct 25564)
Alexa M. Farmer (ct 30052)
90 State House Square, 8th Floor
Hartford, CT  06103
Tel: (860) 522-0404
Fax: (860) 247-1330
golderd@jacksonlewis.com
david.salazar-austin@jacksonlewis.com
alexa.farmer@jacksonlewis.com

Brett M. Anders*
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960
Tel: (973) 538-6890
andersb@jacksonlewis.com

Cary G. Palmer*
Nathan W. Austin*
801 K Street, Suite 2300
Sacramento, CA 95814
Tel: (916) 341-0404
palmerc@jacksonlewis.com
AustinN@jacksonlewis.com

*  admitted *pro hac vice*

## CERTIFICATION OF SERVICE

I hereby certify that on March 2, 2018, a copy of the foregoing was hand delivered to the Court and Plaintiffs' attorneys or filed electronically and served by mail on anyone unable to accept electronic filing.

*/s/ William J. Anthony*
William J. Anthony