UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH and TIMOTHY COLBY, individually and on behalf of all others similarly situated, *Plaintiffs,* *v.* COMPUTER SCIENCES CORPORATION, *Defendant.* | Civil No. 3:14-CV-956 (JBA) September 21, 2018 |

**RULING ON POST-TRIAL MOTIONS**

In this action, a 9-member jury found Defendant Computer Sciences Corporation ("CSC") liable for overtime exemption misclassification of Plaintiffs, who are current and former Associate Professional and Professional System Administrators (collectively, "SAs") employed by Defendant. Defendant now moves [Doc. # 446] for judgment as a matter of law and to decertify the certified Rule 23 California and Connecticut classes and Fair Labor Standards Act ("FLSA") collective. Both parties have also briefed a number of legal disputes on the legal and equitable remedies to which Plaintiffs are entitled, which the Court will address in a subsequent ruling.

**I.    Background**

The Court assumes the parties' familiarity with the procedural history of this action. In brief, Plaintiffs Joseph Strauch, Timothy Colby, Charles Turner, and Vernon Carre, current and former SAs at Defendant CSC, brought this overtime misclassification action under the FLSA and the state laws of California, Connecticut, and North Carolina, claiming that CSC wrongly classified them and fellow employees with the same job titles as exempt. On June 9, 2015, the Court granted [Doc. # 168] conditional certification of a FLSA collective action for a collective consisting of all SAs with the titles "Associate Professional System Administrator," "Professional System

Administrator," or "Senior Professional System Administrator" (the bottom three tiers of CSC's five-tier system administrator hierarchy) who earned less than $100,000 annually. Then, following oral argument held on May 10, 2017, [Doc. ## 326, 329], the Court granted in part and denied in part Plaintiffs' Motion [Doc. # 323] for Class Certification, certifying Connecticut and California Rule 23 subclasses of Professional and Associate Professional System Administrators. *See Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2017 WL 2829652, at *1 (D. Conn. June 30, 2017).

On July 14, 2017, Defendant sought to appeal this class certification to the Second Circuit Court of Appeals, pursuant to Fed. R. Civ. P. 23(f). (Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) at 1, *Strauch et al. v. Computer Sciences Corporation*, No. 17-2185 (2d Cir. July 14, 2017).) Defendant asked the Court of Appeals to determine "[w]hether the District Court erred in certifying a class under Rule 23 by placing improper weight on the company's uniform job titling program where the record evidence clearly demonstrated wide variation among individuals in the actual job qualifications, characteristics, and duties." (*Id.*) On November 21, 2017, the Court of Appeals denied Defendant's Rule 23(f) petition, finding that "an immediate appeal is unwarranted." (Mandate Granting Mot. to File Reply and Denying Rule 23(f) Petition [Doc. # 410].)

During the pendency of the petition for interlocutory review, Defendant moved to decertify the California class of Associate Professional and Professional System Administrators due to the purported inadequacy of Mr. Strauch as a class representative. (Mot. Decertification California Subclass [Doc. # 343].) The Court denied that Motion on October 18, 2017, leaving the California class intact. *See Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2017 WL 4683993, at *1 (D. Conn. Oct. 18, 2017). On October 27, 2017, Defendant filed their Second Motion to Decertify [Doc. # 373], arguing that the California and Connecticut classes should both be decertified due to

a legally deficient trial plan put forward by Plaintiffs. The Court denied [Doc. # 412] that Motion on November 30, 2017. *See Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2017 WL 5972886, at *1 (D. Conn. Nov. 30, 2017).

A 10-person jury was selected on December 5, 2017, and trial commenced on December 7, 2017. One juror was excused on the first day of trial. Defendant moved for a directed verdict at the close of Plaintiffs' evidence [Doc. # 424], and renewed the motion at the close of all evidence [Doc. # 435], which the Court denied without prejudice. ([Doc. # 438].) On December 20, 2017, the jury returned a verdict in Plaintiffs' favor on liability on Plaintiffs' claims under the FLSA and Connecticut and California wage and hour law, also finding that Defendant acted willfully in classifying Plaintiffs as exempt. ([Doc. # 442].) The jury found in CSC's favor on a third question, involving the application of the flexible work-week methodology of calculating overtime pay. ([Doc. # 442-1].) These Motions for Judgment as a Matter of Law and to Decertify—which the Court now considers—followed the verdict.

## II. Discussion

### 1. *Defendant's Renewed Motion for Judgment as a Matter of Law*

Defendant renews its Motion for Judgment as a Matter of Law, contending that Plaintiffs (including the class and the collective) are exempt under one or more exemptions, and that a reasonable jury lacked a legally sufficient evidentiary basis to find in Plaintiffs' favor on liability. (Mem. Law. Supp. Def.'s Renewed JMOL [Doc. # 446-1] at 1.) Additionally, Defendant contends that "to the extent" any SAs "are non-exempt, liquidated damages and a three-year statute of limitations are inappropriate because CSC established that it acted in good faith as a matter of law." (*Id.*)

"To succeed on a Rule 50 motion, a movant must show that, after full hearing on an issue at trial, 'there is no legally sufficient evidentiary basis for a reasonable jury' to resolve the issue in favor of the non-moving party. *Cross v. New York City Transit Auth.*, 417 F.3d 241, 247–48 (2d Cir. 2005) (quoting Fed. R. Civ. P. 50(a)(1)). "In reviewing a Rule 50 motion, a court may consider all the record evidence, but in doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.' " *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (other citations omitted).

"A movant's burden in securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict. Under such circumstances, the district court may set aside the verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . [there is] such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Id.* at 248 (internal quotation marks and citations omitted) (alterations in original). "In other words, a Rule 50 motion must be denied unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Id.* (internal quotation marks and citations omitted).

a. *The Computer Employee Exemption*

Defendant argues that the evidence at trial showed conclusively that Defendant carried its burden of establishing that SAs were properly classified as exempt computer employees under the FLSA. The parties agreed at trial that Plaintiffs met the salary threshold for this exemption; in dispute were two other requirements. First, the exemption only applies to "[c]omputer systems

4

analysts, computer programmers, software engineers or other similarly skilled workers in the computer field." 29 C.F.R. § 541.400. And second, the exemption only applies to computer employees whose *primary duty* consists of:

> (1) The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;

> (2) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

> (3) The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or

> (4) A combination of the aforementioned duties, the performance of which requires the same level of skills.

*Id.*

In its Motion for Judgment as a Matter of Law, Defendant lists trial testimony and documentary evidence that Defendant claims shows that Plaintiffs' actual job duties included the exempt work of (1) applying systems analysis techniques and procedures to determine hardware, software, or system functional specifications and (2) the design, development, documentation, analysis, creation, testing or modification of computer systems or programs, based on and related to user or system design specification. Defendant does not, however, direct the Court to any dispositive evidence that Plaintiffs' *primary duty* consisted of these categories of exempt work. It is not enough, in the context of a Rule 50 motion, for Defendants to merely point to the parts of the record that might have supported a factual finding that *some* of Plaintiffs' actual job duties involved exempt work. And as Plaintiffs demonstrate in opposition, there was ample evidence in the trial record from which the jury could reasonably have concluded that Plaintiffs' primary duty

consisted of non-exempt work. For example, even putting aside illustrative class member testimony, Plaintiffs relied on testimony from CSC supervisors who testified that SAs "aren't configuring" or "designing" systems from the ground up and are "not responsible for custom application code[,]" (*see infra* at 10), in addition to testimony from CSC manager Mr. McKellar regarding the extent to which SA actual job duties matched SA job descriptions, (*see infra* at 29), and testimony from two supervisors describing the processes of change control, root cause analysis, and escalation, (*see infra* at 30).

Defendant also attempts unconvincingly to re-characterize some of Plaintiffs' job duties as exempt work, but a reasonable jury could have concluded that those duties in fact constituted non-exempt work. For example, Defendant contends that Plaintiffs are responsible for the application of systems analysis techniques and procedures to determine hardware, software, or system functional specifications, and references class member Stephanie Saunders as a prime example, comparing her to the plaintiff in *Clarke v. JP Morgan Chase Bank, N.A.*, No. 08 Civ. 2400 (CM)(DCF), 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010). But while both Saunders and the plaintiff in *Clarke* worked on backup functionality, Saunders' actual testimony shows that the similarity stops there. In *Clarke*, the court found that one of the plaintiffs was an exempt computer employee where, "[a]s the employee responsible for capacity management in the Northeast region—about fifty to sixty physical servers and 1,500 virtual servers affecting more than 10,000 users—[he] analyzed computer systems based on and related to user or system specifications[,]" and "regularly consulted with [JP Morgan's separate business units] about the impact that implementing a particular capacity remediation plan would have on the business." *Id.* at 17. In effect, the plaintiff in *Clarke* worked as a high-level technical advisor to his employer, with a significant degree of operational responsibility, and the responsibility of tailoring backup solutions to the needs of large

and complex individual business units at JP Morgan. By contrast, Saunders testified that while she spends "about four hours a day revamping the backup and recovery process for the PDC[,]"[1] what this actually means is just that she *maintains* the existing system, "[s]o if there were too many servers scheduled at one time for backups, I would change the schedule to make them run smoother." (Trial Joint Ex. 2, Ex. G to Def.'s Renewed JMOL [Doc. # 446-8] at 49.) Similarly, Saunders testified that the backup team of 12-15 people working on the Raytheon account, on which she served, was primarily responsible for ensuring the "maintenance and health of the backup systems and software." (*Id.* at 17.) This maintenance work took up the majority of her time on the job. (*Id.* at 25.) While Saunders participated in teleconferences with Raytheon to discuss Raytheon's technical needs, she would do so together with other team members from CSC, and would herself only interact directly with Raytheon employees on those calls to provide them with "a yes or a no answer" on occasions on which they asked her whether "something is technically possible." (*Id.* at 23-24.) Accordingly, the jury could have reasonably concluded that Saunders' primary duty consisted of routine maintenance work, and that rather than "consulting with users[] to *determine* hardware, software or system functional specifications[,]" 29 C.F.R. § 541.400(b)(1), Saunders 'consulted' with users only to answer their technical questions. (Ex. G to Def.'s Renewed JMOL [Doc. # 446-8] at 35.)

Defendant also compares the plaintiff in *Clark* to Charles Turner and Derrick Rosborough. Turner testified that at one point in time, he was the "only remaining member" of his team "that had a detailed knowledge of message routing," and that as a result he "did most of the investiture

---

[1] As Saunders explained earlier in her testimony, "PDC stands for primary data center." (Trial Joint Ex. 2, Ex. G to Def.'s Renewed JMOL [Doc. # 446-8] at 39.)

projects." (Trial Tr., Ex. A to Def.'s Renewed JMOL [Doc. # 446-2] at 731.) Rosborough testified that he "was kind of coming in as a subject matter expert for Citrix." (Ex. H to Def.'s Renewed JMOL [Doc. # 446-9] at 18.) Defendant urges that Turner and Rosborough are analogous to the plaintiff in *Clark* because both were the "go-to" person for particular issues, but does not explain why their work in these areas was in fact exempt work. The mere fact that a technical employee is the "go-to person" for a given task does not answer the question of whether completing that task constitutes exempt work. Electricians, mechanics, and operating engineers, for example, might be considered the "go-to person[s]" for a wide range of technical work that is non-exempt. *Cf.* 29 C.F.R. § 541.3(a) ("blue-collar" non-management employees are not exempt from the FLSA's overtime pay requirements). The same is true for employees in non-technical fields. *See Morgan v. Zieger Health Care Corp.*, No. 13-14809, 2015 WL 4040465, at *16 (E.D. Mich. June 5, 2015) (denying defendant's motion for summary judgment in FLSA case, noting that plaintiff "had some 25 years of experience in the field of pension plans" and "was the 'go-to' person for any question relating to the terms of the" employer's pension plans but that her "knowledge of the Plan provisions and her ability to answer her superiors' questions regarding these Plans does not *ipso facto* transform her 'advice' into an act of discretion or independent judgment.")

Finally, Defendant cites trial witness Norman Thatch as an example of an SA who applied systems analysis techniques and procedures to determine hardware, software, or system functional specifications. Thatch testified that he "moved into . . . building servers" as part of "the build team[]" but had no role in designing the host storage systems that he was building. (Trial Tr., Ex. A to Def.'s Renewed JMOL [Doc. # 446-2] at 622.) He testified that he worked on both "standard" builds and "nonstandard" builds, and that for the latter, he completed the work by following instructions provided to him by a Boeing system integrator, on direction of his manager. (*Id.* at

641.) So while Thatch worked with Boeing to determine how to create the nonstandard build, (*id.* at 641-42), he was "always given tickets with full information." (Trial Tr., Ex. P to Pls.' Opp'n to Def.'s Renewed JMOL [Doc. # 457-16] at 621.) Thatch testified that "[t]hey had like a project manager who is responsible for speaking to the system integrator or the customer and working out the details as far as how the server should be upgraded, what should be upgraded on the server or . . . how the server should be installed." (*Id.*) From the evidence, a reasonable jury could have found that Thatch himself did not apply systems analysis techniques and procedures to determine hardware, software, or system functional specifications, instead relying on the project manager, system integrator, and the customer to determine these specifications.

Next, Defendant contends that "[t]he SAs testified consistently that they were responsible for the second and third categories of job duties contemplated by the computer employee exemption."[2] (Mem. Law. Supp. Def.'s Renewed JMOL at 9.) Defendant argues that Plaintiffs' job duties are consistent with those of the plaintiff in *Bobadilla v. MDRC*, No. 03 Civ. 9217, 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005), where the court found that the plaintiff was an exempt computer employee as a matter of law because that plaintiff "consistently made decisions regarding

---

[2] Under C.F.R. § 541.400, the exemption also applies to computer employees whose primary duty consists of:

(2) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;

(3) The design, documentation, testing, creation or modification of computer programs related to machine operating systems[.]

*Id.*

network modification and design," personally "redesigned and supplemented an enterprise-wide strategy to ensure that information housed in critical [employer] servers was backed-up properly[,]" and "provided training to the rest of the Network Administrators on how to maintain the system that he had independently designed." *Id.* at 8-9. Defendant also argues that Plaintiffs' job duties are consistent with those of the plaintiff in *Olorode v. Streamingedge, Inc.*, No. 11 Civ. 6934 (GBD)(AJP), 2014 WL 1689039 (S.D.N.Y. Apr. 29, 2014), *report and recommendation adopted*, No. 11 Civ. 6934 (GBD)(AJP), 2014 WL 3974581 (S.D.N.Y. Aug. 13, 2014). *Olorode* involved a plaintiff whose job duties included, among other things, "*designing* and maintaining the proper operation of the trading platform used by Streamingedge's investment brokers[,]" and "help[ing] brokers tailor the operating system to meet their particular needs . . . ." *Id.* at 22 (internal quotation marks and citations omitted) (emphasis added).

While Defendant highlights some testimony from SAs that according to Defendant shows that SAs were engaged in work comparable to Bobadilla and Olorode, Defendant addresses none of the extensive countervailing evidence in the trial record referenced in Plaintiffs' opposition brief. (*See* Pls.' Opp'n to Def.'s Renewed JMOL at 13-17.) For example, Defendant does not explain why the jury could not have credited the testimony of CSC supervisors Evan Milewski, who testified that SAs "aren't configuring" or "designing" systems from the ground up, (Ex. P to *id.* at 899), or Mitchell Favreau, who testified that SAs are "not responsible for custom application code[,]" (*id.* at 933). And in the context of a Rule 50 motion, the question is not whether there was *some* evidence in the record from which a reasonable jury could have reached a different conclusion, but instead whether a reasonable jury lacked "a legally sufficient evidentiary basis to" make the finding that it did. *See* Fed. R. Civ. P. 50(a)(1). Similarly, while Defendant argues that Plaintiffs' characterization of their work does not change the "fact" that they performed exempt job duties,

10

Defendant fails to explain why a reasonable jury would be required to credit some job characterization testimony over other job characterization testimony, especially where, as here, there was evidence that Plaintiffs performed *some* exempt work but a key question that the jury had to determine was whether that exempt work constituted Plaintiffs' primary duty or not. The trial record contains ample evidence from which reasonable jurors could conclude that Plaintiffs' primary duty did not consist of the type of exempt work that Bobadilla and Olorode performed, so Defendant's Motion for Judgment as a Matter of Law cannot be granted on this basis.

As Defendant notes, "California law provides a similar exemption for computer employees" with a higher salary threshold and a primary duty test that explicitly requires that employees spend at least half of their time performing exempt work. (Mem. Law. Supp. Def.'s Renewed JMOL at 15 (citing Cal. Lab. Code § 515; Cal. Wage Order 4-2001).) But just as Defendant fails to establish that a reasonable jury would be compelled to find that Plaintiffs' primary duty consisted of exempt work under the FLSA, so too Defendant fails to direct the Court to any part of the trial record that would compel a reasonable jury to find that California class members spent at least half of their time performing exempt work. Accordingly, Defendant's Motion for Judgment as a Matter of Law as to the California class fails on this basis as well.[3]

b. *The Administrative Exemption*

Next, Defendant argues that it is entitled to judgment as a matter of law because SAs are exempt administrative employees under the FLSA. In dispute at trial were two prongs of the

---

[3] Moreover, as Plaintiffs note in opposition, Defendant fails to address any evidence in the record supporting an additional requirement of the California computer employee exemption, namely that Plaintiffs are primarily engaged in work that requires the exercise of discretion and independent judgment. (*See* Pls.' Opp'n to Def.'s Renewed JMOL at 17 (citing Cal. Wage Order 4-2001(1)(A)(3)(h)(i)); *see also* Tr. Jury Instructions [Doc. # 441] at 21-22.)

exemption, both of which Defendant was required to establish: first, that Plaintiffs' "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" and second, that their "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

"The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee." 29 C.F.R. § 541.201(a). "To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* This work "includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." *Id.* § 541.201(b). "Some of these activities may be performed by employees who also would qualify for another exemption." *Id.*

"An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's *customers*." *Id.* § 541.201(c) (emphasis added). "Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." *Id.*

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various

possibilities have been considered." *Id.* § 541.202(a). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.* "Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to:"

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b). "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision." *Id.* § 541.202(c). "However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id.*

"The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id.* § 541.202(e). "The exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating data, or performing other

mechanical, repetitive, recurrent or routine work." *Id.* "An employee who simply tabulates data is not exempt, even if labeled as a 'statistician.'" *Id.*

With respect to the use of manuals,

The use of manuals, guidelines or other established procedures containing or relating to highly technical, scientific, legal, financial or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption under section 13(a)(1) of the Act or the regulations in this part. Such manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exempt status. The section 13(a)(1) exemptions are not available, however, for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances.

*Id.* § 541.704.

Finally, with respect to the term "matters of significance,"

An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect. Similarly, an employee who operates very expensive equipment does not exercise discretion and independent judgment with respect to matters of significance merely because improper performance of the employee's duties may cause serious financial loss to the employer.

*Id.* § 541.202(f).

Defendant argues that a reasonable jury would have been compelled to find both that Plaintiffs' primary duty was the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customer and that Plaintiffs' primary duty included the exercise of discretion and independent judgment with respect

to matters of significance. At trial, Defendant bore the burden of proving both of these elements of the exemption by a preponderance of the evidence.

Here, the Court need not reach the question of whether a reasonable jury could have found that Plaintiffs' primary duty was the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customer, because the jury's finding for Plaintiffs on this exemption was amply supported by evidence that Plaintiffs' primary duty did not include the exercise of discretion and independent judgment with respect to matters of significance.

While Defendant correctly notes that the trial record includes evidence that Plaintiffs exercised some level of discretion and independent judgment, Defendant fails to address the substantial evidence presented to the jury that Plaintiffs' primary duty involved following checklists, step-by-step instructions, troubleshooting policies, patch approval processes, the instructions of system integrators, and existing documentation, *inter alia*. (*See* Pls.' Opp'n to Def.'s Renewed JMOL at 20-21 (citing the trial testimony of Plaintiffs and class and collective members Colby, Glanovsky, DeLira, Carre, Atkinson, Strauch, Clay, Thatch, Marsh, Turner, Saunders, Smith, and Rosborough).)

The jury was instructed that "[t]he exercise of discretion and independent judgment means more than using skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources, although using established procedures in a manual or guidelines does not preclude an employee's use of discretion and independent judgment." (Tr. Jury Instructions at 15.) The jury was similarly instructed that "[e]mployees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances are not

15

performing exempt work." (*Id.* at 11.) While Defendant identifies all of the evidence that a reasonable jury could have weighed against class members' testimony on the role of manuals and guidelines in their work, it does not explain why a reasonable jury would have been obligated to discount or ignore class members' testimony on this topic or to weigh the evidence differently. Accordingly, Defendant's Motion for Judgment as a Matter of Law cannot be granted on this ground.

Defendant further argues that the evidence at trial established that the SAs were exempt administrative employees under Connecticut law, maintaining that "the Connecticut Administrative Exemption is far easier to meet than is the FLSA administrative exemption" because, in principal part, "there is no 'matters of significance' requirement under Connecticut law." (Mem. Law. Supp. Def.'s Renewed JMOL at 24.) The Court rejected this argument at trial, instructing the jury to use the instructions provided for the FLSA administrative exemption in determining whether Defendant had met its burden of proof that Plaintiffs in the Connecticut Class fell under the Connecticut administrative exemption. But whether the Connecticut administrative exemption contains a "matters of significance" requirement or not, the state law exemption clearly requires an employer to prove that employees "customarily and regularly exercise[] discretion and independent judgment[.]" Conn. Agencies Regs. 31-60-15. For the same reasons that a reasonable jury had a sufficient basis for finding in Plaintiffs' favor on the question of the FLSA administrative exemption, a reasonable jury could have determined that Defendant failed to meet its burden on this element of the Connecticut exemption.

Finally, Defendant argues that the evidence at trial established that the SAs were exempt administrative employees under California law. Although the California administrative exemption requires a defendant to prove slightly different elements than the federal and Connecticut

administrative exemptions, Defendant contends that "the California exemption is satisfied for the same reasons as the federal and Connecticut exemptions[.]" (Mem. Law. Supp. Def.'s Renewed JMOL at 26.) For the same reasons related to the FLSA administrative exemption, and including Mr. Thatch's testimony in the context of the computer professional exemption, Defendant's Motion for Judgment as a Matter of Law fails as to the California administrative exemption as well.

     c.   *The Learned Professional Exemption*

Defendant also contends that the evidence at trial showed that SAs are exempt under the FLSA learned professional exemption. This exemption applies to those employees whose primary duty satisfies three enumerated elements:

> (1) The employee must perform work requiring advanced knowledge;
> (2) The advanced knowledge must be in a field of science or learning; and
> (3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301(a). "The phrase 'work requiring advanced knowledge' means"

> work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work. An employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances. Advanced knowledge cannot be attained at the high school level.

*Id.* § 541.301(b). "The phrase 'field of science or learning' includes"

> the traditional professions of law, medicine, theology, accounting, actuarial computation, engineering, architecture, teaching, various types of physical, chemical and biological sciences, pharmacy and other similar occupations that have a recognized professional status as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning.

*Id.* § 541.301(c). And "[t]he phrase 'customarily acquired by a prolonged course of specialized intellectual instruction' restricts the exemption to"

> professions where specialized academic training is a standard prerequisite for entrance into the profession. The best prima facie evidence that an employee meets this requirement is possession of the appropriate academic degree. However, the word "customarily" means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees, but who attained the advanced knowledge through a combination of work experience and intellectual instruction. Thus, for example, the learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry. However, the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.

*Id.* § 541.301(d).

In support of its argument that Plaintiffs fall into the FLSA's learned professional exemption, Defendant relies, as it has throughout this litigation, on *Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014) (holding that KPMG "Audit Associates, while early in their careers, are precisely the types of professionals the regulations seek to exempt from FLSA—well-compensated professionals at a top national accountancy practice, performing core accountancy tasks."). In the Court's view, Defendant's reliance upon *Pippins* is unwarranted. That case involved a misclassification claim made by junior-level accountants at a Big Four accounting firm, who "are generally required to be either eligible or nearly eligible to become licensed as Certified Public Accountants ('CPAs')" and where "in actual fact the vast majority of Audit Associates had

accounting degrees and were eligible to take the CPA exam[.]" 759 F.3d at 250. Accounting is specifically recognized as one of the traditional learned professions exempted from the FLSA's overtime requirement. The plaintiffs in *Pippin* bear scant resemblance to the SAs here and if anything, perhaps better resemble recent law graduates, who similarly hold specialized degrees and are eligible to apply for an exam that will permit them to become licensed to work in a traditional "learned profession." It is for this reason, among others, that even junior attorneys who are paid on an hourly basis are exempt from the FLSA's overtime requirement. *See Jackson Cty. Assistant Prosecutors Ass'n v. Cty. of Jackson*, No. Civ. A. 90-CV-70409DT, 1991 WL 438282, at *5 (E.D. Mich. Jan. 30, 1991) (finding that "assistant county prosecutors . . . are exempt [professional employees] notwithstanding the allegation that these employees were not paid on a salaried basis."). SAs, by contrast, are not trainees seeking entry into a licensed profession, but experienced workers in their own right, in a job that does not require a specialized degree or licensing as a matter of course. *See* 29 C.F.R. § 541.301(d) ("the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.")

Defendant argues that "[w]ith advanced degrees in computer science, training courses geared towards their specific sub-specialties, and advanced knowledge gained from years of relevant experience, CSC demonstrated that the SAs satisfy the learned professional exemption under the FLSA." But for substantially the reasons described above, a reasonable jury could have determined that Plaintiffs' work did not "requir[e] the consistent exercise of discretion and

judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b). Nor has Defendant demonstrated that Plaintiffs' work falls into a "field of science or learning . . . as distinguished from the mechanical arts or skilled trades where in some instances the knowledge is of a fairly advanced type, but is not in a field of science or learning." *Id.* § 541.301(c). Finally, while Defendant correctly notes that *some* Plaintiffs held degrees in computer science or comparable credentials for the purpose of the exemption, Defendant has not shown why the evidence at trial would compel a reasonable jury to conclude that Plaintiffs are engaged in a profession "where specialized academic training is a *standard prerequisite* for entrance into the profession." *Id.* § 541.301(d) (emphasis added). Similarly, Defendant has not shown that a reasonable jury could not have concluded that Plaintiffs' occupation "customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes[,]" or that "most employees [in Plaintiffs' occupation] have acquired their skill by experience rather than by advanced specialized intellectual instruction." *Id.* For all of the foregoing reasons, Defendant is not entitled to judgment as a matter of law on this basis. Because Defendant advances no separate arguments as to the applicability of the state law professional exemptions and rests on its arguments made in the context of the FLSA, Defendant's Motion will be similarly denied as to the California and Connecticut classes.

d. *The Combination Exemption*

Finally, Defendant contends that to the extent Plaintiffs are not exempt under the computer employee, administrative, or professional exemptions, Plaintiffs are exempt under the "combination" exemption. The jury was instructed, based on 29 C.F.R. § 541.708, that

[i]f you find that CSC failed to prove Plaintiffs' primary duties satisfied the test for the administrative exemption, or the computer professional employee exemption, or the learned professional exemption, but you find that CSC has proved that Plaintiffs' *primary duty* was some combination of those exemptions and that CSC has proved that the other requirements of those exemptions apply, then you may find that CSC has met its burden of proving Plaintiffs were exempt employees and were not entitled to overtime.

Where the responsibilities of an employee do not satisfy any of the separate primary duty tests for the administrative, computer professional, or learned professional exemptions, but the employee does perform some exempt duties in two or more of those categories, then the employee may be exempt under the combination exemption *if and only if* the combination of exempt duties, when tacked together, satisfy the primary duty test as being the main, major, or most important duties of the employee. An employee does not fall under this exemption where their primary duty consists of non-exempt duties.

(Jury Instr. at 19.)

Following this instruction, with which Defendant does not take issue, Defendant argues that even if Plaintiffs' primary duty may not have consisted of work that satisfied any single one of the three claimed exemptions, Plaintiffs' primary duty consisted of different job duties that each individually satisfied one of the three claimed exemptions, such that in combination, Plaintiffs' primary duty consisted of *some* type of exempt work. Defendant also claims that SAs are exempt as a matter of California law under the state analog to the FLSA's combination exemption. (There is no combination exemption under Connecticut law). Defendant advances no additional argument in support of the combination exemption beyond what it argued in the context of the three individual exemptions. However, even if Defendant proved that Plaintiffs, as a matter of law, performed *some* exempt work under all three claimed exemptions, the jury could reasonably conclude that Plaintiffs' *primary* duty did not consist of exempt work under any of the three

exemptions, individually or in combination, and Defendant has failed to show entitlement to judgment as a matter of law on the combination exemption.

Defendant also urges that its Renewed Motion for Judgment as a Matter of Law must be granted because after the jury returned its verdict in this case, the Supreme Court overruled long-standing precedent that FLSA exemptions should be narrowly construed. *Compare Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) ("Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation.' " (quoting A. Scalia & B. Garner, Reading Law 363 (2012))) *with Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960) ("We have held that these exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." (citation omitted)). While the jury here was instructed in a single sentence that the exemptions were "narrow" ones, the jury was also repeatedly and thoroughly instructed that Defendant bore only the burden of proving the exemptions by a preponderance of the evidence. (*See* Tr. Jury Instructions at 5, 6, 10, 17, 21, 24, 25.) Defendant does not explain how this post-trial change in law would likely have changed the verdict outcome if the "narrow" instruction had not been given. Defendant does not ask for a new trial on this basis, but instead just states that "[n]ow that the Supreme Court has definitively ruled that the exemptions to the FLSA should **not** be narrowly construed, the law is even more in favor of finding that CSC has proven that SAs are exempt employees under all of CSC's exemption defenses[.]" (Not. Supp. Auth. Supp. Def.'s Renewed JMOL and Mot. Decertify [Doc. # 470] at 2 (emphasis in original).) While *Encino* represents a change in the law as to whether exemptions under the FLSA should be construed narrowly, Defendant raises only one substantive argument explaining why this change in law

requires the granting of its JMOL, that is, its argument that the Supreme Court's application of a disjunctive reading of an FLSA exemption applies to the exemptions at issue in this case, and contention that the computer professional exemption must be read disjunctively as applied to the SAs. Defendant's argument is perplexing, however, because the Court did instruct the jury on this exemption in a manner that made clear the disjunctive reading, pre-*Encino*, at Defendant's insistence. (Jury Instr. at 16-17.) So the basis for Defendant's argument that *Encino* requires granting the JMOL lacks merit.

    e.  *Willfulness*

   Defendant also seeks to set aside the jury's finding on willfulness. At trial, the jury was directed first to determine whether Defendant proved any of the exemptions that it claimed under federal and state law. (Jury Verdict Form [Doc. # 442].) The jury was then instructed that if and only if it found in Plaintiffs' favor on all four claimed federal exemptions, it was then to determine whether Plaintiffs proved that Defendant acted "willfully" in classifying Plaintiffs as exempt employees and denying them overtime pay. (*Id.* at 2-3; Jury Instr. at 23.) The jury was instructed that it would be "Plaintiffs' burden to prove by a preponderance of the evidence that CSC acted willfully in improperly classifying them as exempt." (Jury Instr. at 23.) The jury was further instructed that

> [a]n employer acts willfully if it knew or showed reckless disregard for the question of whether its conduct was prohibited by the FLSA. An employer acts with reckless disregard when it acts, or fails to act, with a conscious lack of concern for the consequences. You may find that CSC showed "reckless disregard" if you find that it failed to make an adequate inquiry into whether its conduct was in compliance with the FLSA.

*Id.* The jury found in Plaintiffs' favor on this question as well, which entitles Plaintiffs to a three-year statute of limitations on their federal claims, instead of the usual two-year statute of limitations.[4]

Defendant argues first that because it "exhibited good faith when it classified the SA positions at issue as exempt" its actions were not willful "by definition[.]"[5] In substance, Defendant argues primarily that the jury could not properly have found willfulness in light of the evidence that Defendant consulted with "experienced outside counsel to evaluate its internal conclusions." (Mem. Law. Supp. Def.'s Renewed JMOL at 31.) After Defendant's own exemption determination for SAs, its outside counsel Timothy Bartl analyzed three levels of SAs—SA I (who are not part of the class or collective action), SA II (now the Associate Professional SAs) and SA III (now the Professional SAs). Bartl told Defendant that SA I workers should have been classified as non-exempt, a change that Defendant made. (*Id.* at 32.) Bartl told Defendant that SA III workers were in fact exempt and that Defendant "had a good faith argument" that SA II workers were exempt. (*Id.*) Defendant further argues that it "memorialized its determination in separate FLSA

---

[4] Actions for unpaid overtime compensation under the FLSA "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]" 29 U.S.C. § 255. A violation of the FLSA is "willful" where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

[5] The Court will address Defendant's good faith claim in the remedies ruling that will be filed at a later date, but notes that while the concepts of good faith and willfulness are interrelated, they are not identical. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141-43 (2d Cir. 1999) (considering separately whether plaintiff proved willfulness for the purpose of applying a three-year statute of limitations and whether defendant proved good faith for the purpose of determining whether liquidated damages would be assessed), *holding modified on other grounds by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003).

exemption analyses" and "created and used an 'FLSA Duties Test Assessment Form' to further evaluate whether the positions at issue qualified for any of the exemptions[,]" and that "these efforts constitute a good faith attempt to comply with the law[.]" (*Id.*)

Defendant takes issue with what it characterizes as the three pieces of evidence upon which Plaintiffs relied at trial on the question of willfulness. First, Defendant disputes the import that the jury could attach to the fact that after review by outside counsel, Defendant added the term "matters of significance" to the job description of the class members. (*Id.* at 33.) Defendant argues that Heidi Josephson's testimony established that "this was done to explain to managers the level of work that was expected of SAs[]" and that "Plaintiffs offered no evidence to the contrary." Defendant also argues that because this phrase was added after Defendant received the advice of its outside counsel, there is "[l]ogically" no way in which the addition of this phrase to the job description supports a conclusion of willfulness. (*Id.*)

Second, Defendant argues that no significance should be attached to the fact, brought out at trial, that while Defendant's outside counsel Mr. Bartl determined that SA IIIs were exempt workers, he determined only that Defendant would have a "good faith argument" that SA IIs were also exempt. (*Id.*) Third, Defendant takes issue with Plaintiffs' reliance on Exhibit 992—in which a manager states that he believed that it would save Defendant money if it promoted Darell Frazier Jr. into an exempt SA position—insofar as it does not speak to any class-wide issues. (*Id.*)

In opposition, Plaintiffs argue that the trial record supports the jury's finding, because the "jury could have reasonably concluded . . . that CSC engaged in a *pro forma* review of its exemption decisions that was designed largely to confirm the *status quo ante*, rather than to comply with the law[.]" (Pls.' Opp'n to Def.'s Renewed JMOL at 34.) Plaintiffs contend that the trial record showed that Defendant was "on notice of potential FLSA violations and conducted an inadequate

inquiry[,]" and the mere fact of "soliciting advice from outside counsel does not preclude a willfulness finding, if the investigation is inadequate." (*Id.* at 33-34 (citing *Cook v. Carestar, Inc.*, No. 2:11-CV-00691, 2013 WL 5477148, at *13 (S.D. Ohio Sept. 16, 2013), *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011)).) Defendant provides no contrary authority holding that an employer's violation of the FLSA cannot be willful as a matter of law if the employer consults with outside counsel.

Plaintiffs reference evidence presented to the jury that in 2004 CSC had been under investigation by the U.S. Department of Labor for misclassifying technical workers, and that during the same period, CSC was a defendant in three class actions challenging its overtime practices. (*See* Pls.' Opp'n to Def.'s Renewed JMOL at 34.) To audit its own classification decisions, CSC hired outside counsel: Mr. Bartl. Plaintiffs note Bartl's testimony that his work at the McGuiness Williams Norris law firm was split between lobbying and providing legal advice and counsel. (Trial Tr., Ex. P to Pls.' Opp'n to Def.'s Renewed JMOL at 274-75.) He testified that his law firm provided legal counsel to and helped "run and manage" the HR Policy Association, a trade organization. (*Id.* at 275.) While he was there, Bartl testified that he lobbied on Capitol Hill on behalf of members of the trade association, who consisted of "management at big companies," to change federal overtime laws. (*Id.* at 275-76.) Defendant was a member of this trade organization, which is how Bartl "first bec[a]me acquainted" with the company, which then retained Bartl's services to review exemption classification decisions. (*Id.* at 277-78.)

Plaintiffs point to Bartl's testimony that in an exemption audit, it is important to look beyond an employer's job description to understand the actual job duties that employees perform, "[b]ecause oftentimes the job duties as described in a document and those being performed by employees can differ." (Trial Tr., Ex. P to Pls.' Opp'n to Def.'s Renewed JMOL at 301.) Plaintiffs

cite Bartl's testimony that with respect to the job that became the Associate Professional SA, Bartl spoke with four supervisors about the job duties but spoke to no current SAs and reviewed no employee survey about their job duties. (Pls.' Opp'n to Def.'s Renewed JMOL at 35.) And with respect to the job that became the Professional SA, Bartl testified that he did not speak with any supervisors or SAs to determine the actual job duties performed by employees in that role. (Trial Tr., Ex. P to Pls.' Opp'n to Def.'s Renewed JMOL at 317-18.)

In sum, Plaintiffs contend that the trial record showed that "Bartl's only basis for concluding that Professional SAs were exempt was a review of their job description[,]" and that "[w]hile he conducted some additional inquiry into the Associate Professional title, the jury could have concluded that the supervisors he spoke to likely had little knowledge of what SAs did day in and day out . . . and even then, he was unable to say unequivocally that they were exempt." (Pls.' Opp'n to Def.'s Renewed JMOL at 36.)

Defendant accurately notes that Heidi Josephson testified that the phrase "matters of significance" was added to SA job descriptions in order to explain to managers the level of work that was expected of the SAs. Both parties agree that the phrase was added *after* Bartl made his determination that the Professional SAs were exempt and that Defendant had a good faith basis for concluding that the Associate Professional SAs were as well. Defendant argues that based on this timing, as a matter of logic, "the addition of 'matters of significance' in no way supports a conclusion of willfulness." (Mem. Law. Supp. Def.'s Renewed JMOL at 33.) But this argument fails to take into account the inference that a reasonable jury could draw from the timing of this addition in light of the other evidence. Plaintiffs also offered evidence that Defendant knew of the risk of misclassifying technical workers from the previous DOL investigation and then sought an opinion letter from an industry advocate who based his conclusions primarily on job descriptions and

conversations with a few supervisors. Therefore, a reasonable jury could conclude that Defendant, having obtained an opinion letter rubber-stamping its exemption determinations as to class members, sought to protect itself from liability for misclassification by changing the job description to more closely parrot the exemption regulations. While close, this evidence sufficiently supports the jury's determination that more likely than not Defendant acted willfully in misclassifying Plaintiffs. *See Sikiotis v. Vitesse Worldwide Chauffeured Servs., Inc.*, 147 F. Supp. 3d 39, 47 (D. Conn. 2015) ("Reckless disregard . . . involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." (internal quotations and citations omitted)).

### 2. *Defendant's Third Motion to Decertify*

Defendant also moves to decertify the certified Rule 23 California and Connecticut classes and FLSA collective. (Mot. Decertify [Doc. # 447].) Defendant argues that "[w]ith evidence closed, it is clearer than ever before that the members of the conditionally certified FLSA class are not similarly situated and that the state law class members do not meet the Rule 23(a) requirements of commonality or the Rule 23(b) requirements of superiority and predominance." (Mem. Supp. Def.'s Mot. Decertify [Doc. # 447-1] at 29.) Under Rule 23, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(3). This Court "has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case." *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016).

This Motion to Decertify marks the fourth time the Court has considered substantially similar legal arguments by Defendant against class certification in this case. The majority of Defendant's Motion to Decertify reprises legal arguments that the Court has already considered

and rejected; Defendant offers no persuasive authority in its Motion warranting a change.[6]

Accordingly, the Court focuses its analysis in this ruling on the new grounds for decertification

raised by Defendant, particularly the claimed grounds for decertification that relate specifically to

the evidence introduced at trial.

First, Defendant contends that decertification is warranted because Plaintiffs falsely

represented to the Court in their trial plan that they would primarily rely on direct, common

evidence regarding class members' actual job duties, with class member testimony serving not as a

statistically representative sample, but simply as illustrative of the common evidence. But as

Plaintiffs recount, their evidence at trial included both illustrative class member testimony as well

as evidence drawn from "CSC's own corporate documents and witnesses[.]" (*See* Pls.' Mem. Law

Opp'n to Def.'s Mot. Decertify [Doc. # 461] at 8-9 (citing CSC Catalyst Overview (Pls.' Tr. Ex. 7);

Global Jobs and Roles Policy (Def.'s Tr. Ex. 948); Job Classification Training for Managers (Def.'s

Tr. Ex. 975); Job Description Summary Report (Def.'s Tr. Ex. 961); testimony of Heidi Josephson

that job descriptions indicate the "general nature and level of work" (Trial Tr., Ex. P to Pls.' Opp'n

to Def.'s Renewed JMOL at 201-02); testimony of CSC manager Mr. McKellar that some of the

activities in the Associate Professional SA job description were performed by Associate

Professional SAs and that the Professional SA job description generally described the job duties of

Professional SAs (Ex. E to Pls.' Mem. Law Opp'n to Def.'s Mot. Decertify [Doc. # 461-6] at 767-

---

[6] *See Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2017 WL 2829652 (D. Conn.
June 30, 2017) (certifying class over Defendant's objections); *Strauch v. Computer Scis. Corp.*, No.
3:14-CV-956 (JBA), 2017 WL 4683993 (D. Conn. Oct. 18, 2017) (denying Defendant's Motion to
Decertify on the basis of Mr. Strauch's purported inadequacy as a class representative"); *Strauch v.
Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2017 WL 5972886 (D. Conn. Nov. 30, 2017)
(denying Motion to Decertify on the basis of Plaintiffs' purportedly legally deficient trial plan).

68); testimony of McKellar describing change control (*id.* at 771-73); testimony of CSC supervisor Milewski describing change control, root cause analysis, and escalation (*id.* at 886-87)).) Defendant offers no argument as to why such common evidence was insufficient to sustain the class that was certified, instead focusing on the red herring that Plaintiffs failed to present testimony from a statistically-significant sample of class members—an argument that the Court has previously considered and rejected.

Second, Defendant faults Plaintiffs for cherry-picking class members to testify who would bolster Plaintiffs' case, arguing that "[t]he use of highly varied and statistically defective representative testimony to impose liability in this case would deny CSC due process." (*Id.* at 31.) But if, as Defendant claims, Plaintiffs' chosen selection of class witnesses was in fact unduly unrepresentative—a claim Plaintiffs vigorously dispute—Defendant had full opportunity to rebut Plaintiffs' evidence with its own presentation of countervailing class member live and deposition testimony. Defendant chose, for the most part, not to do so. Defendant contends that it cannot be faulted for not calling class member witnesses whom the Court precluded it from calling, (*see* Def.'s Reply Supp. Mot. Decertify [Doc. # 465]), but in support of this proposition cites only the Court's order that "Defendant may not compel the live testimony at trial of opt-in Plaintiffs [i.e. FLSA collective members] who are beyond Rule 45's subpoena power[.]" ([Doc. # 411].) As Plaintiffs note, the Court's pretrial order on this question left Defendant free to subpoena any of the hundreds of class members who presumably reside within the range of Rule 45's reach and free to designate deposition testimony from class members outside of Rule 45's reach. Generally speaking, parties lack standing to complain of alleged violations of Constitutional rights where the harm is self-inflicted. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("respondents' self-

inflicted injuries are not fairly traceable to the Government's purported activities . . . and their subjective fear of surveillance does not give rise to standing.").

Third, Defendant argues that California class representative and Named Plaintiff Joseph "Strauch was not an adequate or typical class representative, because he had no independent knowledge of his job title change and only knew that he was a Professional SA in the class because his lawyers told him." (Mem. Supp. Def.'s Mot. Decertify at 39.) Previously, the Court considered and rejected similar arguments by Defendant, finding that Strauch satisfied both the adequacy and typicality requirements, that Strauch's "actual job duties as a Professional SA . . . largely fit the job functions inferable from the Professional SA job description[,]" and that Defendant identified no "actual or potential conflicts of interests that may prevent Mr. Strauch from adequately representing the class." *Strauch v. Computer Scis. Corp.*, No. 3:14-CV-956 (JBA), 2017 WL 4683993, at *4-6 (D. Conn. Oct. 18, 2017). The only new claim in the instant Motion to Decertify is that Strauch is inadequate or non-typical because of his lack of personal knowledge of his job title as a Professional SA. Defendant fails, however, to cite any case, statute, regulation, rule of procedure, or committee advisory note indicating that a lack of personal knowledge of one's job title, as opposed to *job duties*, defeats a class representative's adequacy or typicality. According, Defendant's argument on this ground is unavailing.

Finally, Defendant argues in its Reply that Plaintiffs' post-trial submissions "leave no room for doubt that this case is not (and was never) appropriate for certification under the FLSA or Rule 23." (Def.'s Reply Supp. Mot. Decertify at 1, 4-9.) Defendant contends that in its damages briefing, Plaintiffs have gone back on their pre-trial stipulation that damages would be calculated mechanically on the basis of Defendant's timekeeping data, raising questions of individualized damage calculations that change the predominance inquiry. This concern is unwarranted, because

Plaintiffs are bound by the stipulation and will not be permitted to litigate individualized damages questions in any way that would contradict the parties' stipulation on the methodology for calculation of damages.

Next, Defendant contends that Plaintiffs' post-trial briefings "underscore the lack of ascertainability that has plagued this purported 'class' from the start[.]" (Def.'s Reply Supp. Mot. Decertify at 7.) Specifically, according to Defendant, Plaintiffs seek now to "add" "individuals who were not part of the collective . . . by tolling the statute of limitations[,]" while "[t]here are other individuals whom Plaintiffs are not even sure ever held a position that qualifies them to be included in this lawsuit." (*Id.*) Without endorsing Defendant's characterization of this pending dispute between the parties, the Court notes that Defendant's concerns that Plaintiffs seek to expand the class post-trial are moot, because the Court agrees with Defendant that Plaintiffs cannot expand the class now.[7]

For all of the foregoing reasons, Defendant's Third Motion to Decertify is denied as to both the Rule 23 classes and the FLSA collective. The Court has considered Defendant's other arguments and finds them unconvincing.

---

[7] Moreover, Defendant's ascertainability arguments fail to engage with binding Second Circuit precedent defining the proper scope of the ascertainability inquiry, authority that is particularly relevant in light of the nature of Defendant's argument. *See In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) (rejecting argument for "'heightened' ascertainability requirement under which any proposed class must be 'administratively feasible,' over and above the evident requirements that a class be 'definite' and 'defined by objective criteria,' and separate from Rule 23(b)(3)'s requirements of predominance and superiority.").

### III.     Conclusion

For the reasons set forth above, the Court DENIES Defendant's Renewed Motion for Judgment as a Matter of Law and DENIES Defendant's Third Motion to Decertify.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 21st day of September 2018.