UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JOSEPH STRAUCH and TIMOTHY COLBY, individually and on behalf of all others similarly situated,<br>    *Plaintiffs*,<br>v.<br>COMPUTER SCIENCES CORPORATION,<br>    *Defendant*. | Civil No. 3:14-CV-956 (JBA)<br><br>November 9, 2018 |

**RULING ON REMEDIES**

In this action, the jury found Defendant Computer Sciences Corporation ("CSC") liable for overtime exemption misclassification of Plaintiffs, who are current and former Associate Professional and Professional System Administrators (collectively, "SAs") employed by Defendant. Both parties have briefed a number of legal disputes on the legal and equitable remedies to which Plaintiffs are entitled, which the Court now addresses.

I. **Background**

The Court assumes the parties' familiarity with the procedural history of this action, most recently summarized in the Court's September 21, 2018 ruling denying Defendant's Motion for Judgment as a Matter of Law and Motion to Decertify the Rule 23 California and Connecticut classes and Fair Labor Standards Act collective. ([Doc. # 476].) On October 22, 2018, Defendant appealed from the September 21 ruling together with "all [previous] adverse rulings subsumed therein," also "reserv[ing] the right to supplement this notice of appeal in light of future orders from this Court on Remedies[.]" (Not. of Appeal [Doc. # 477] at 1-2.)

## II. Discussion

1. *Flexible Work Week Methodology*

Defendant contends that "as a matter of law and consistent with the majority position on the issue—and with the direction the Second Circuit clearly signaled in the 2016 *Banford* decision—the Court should apply the fluctuating workweek ("FWW") method of calculating overtime." (Def.'s Br. on Damages [Doc. # 448] at 1.) Particularly in light of the jury's finding that CSC proved that it and Plaintiffs "had a clear, mutual understanding that their fixed salaries were intended as compensation (apart from overtime premiums) for the hours worked each workweek[,]" (Supp. Verdict Form [Doc. # 442-1]), Defendant argues that "there is no proper basis to abandon the widely accepted FWW method to calculate overtime damages for the FLSA collective and Connecticut class on a 'half-time' premium basis." Moreover, Defendant contends that "[b]ecause this question was put to the jury at Plaintiffs' insistence, Plaintiffs waive any argument that the FWW method should not apply." (Def.'s Br. on Damages at 1.)

As an initial matter, Defendant's argument that Plaintiffs "insiste[d]" that the FWW question be put to the jury lacks basis in the record. Rather, Plaintiffs consistently took the position that because the applicability of the FWW method "is a matter of statutory interpretation, it is a legal question for the Court." (Pls.' Resp. to Def.'s Pretrial Mem. [Doc. # 369] at 5.) Notwithstanding that position, during trial Plaintiffs agreed with Defendant and the Court that in the event of a Plaintiffs' verdict on liability, and in light of the absence of any binding authority making clear whether this question was one of law or of fact, the question should be put to the jury to avoid the inefficiency that would result if, after trial, the question was later determined by the Second Circuit or the Supreme Court to be one of fact that should have been put to the jury. (*See*

Ex P. (Trial Tr.) to Sagafi Decl. at 1033:25-1037:4 [Doc. # 457-16].) Thus the Defendant's waiver argument lacks merit, and the Court will address this legal dispute between the parties.

In the 2016 *Banford* summary order referenced by Defendant, the Second Circuit noted that the other circuits that had taken up the question had "found that FWW may be used to calculate damages where, as here, employees were misclassified as exempt from the FLSA," while noting a split between "district courts within this circuit . . . on whether FWW may be applied retroactively at all." *Banford v. Entergy Nuclear Operations, Inc.*, 649 F. App'x 89, 91 (2d Cir. 2016) (citations omitted). In *Banford*, the Second Circuit expressly declined to resolve this question because "the record evidence support[ed] the jury's verdict that no plaintiff agreed to a fixed weekly salary covering unlimited hours[.]" *Id.*

Here, by contrast, the jury found that Plaintiffs *did* agree "that their fixed salaries were intended as compensation (apart from overtime premiums) for the hours worked each workweek[,]" (Supp. Verdict Form), so the Court must determine whether, in light of that factual finding, the FWW may be applied in this case as a matter of law.

As the Second Circuit noted in *Banford*, "[u]nder the FWW methodology for calculating overtime due under the FLSA to employees who have agreed to work at a fixed weekly salary but whose hours vary, an employee is assumed to have been paid for all hours worked at their regular rate of pay, with excess overtime due for hours worked over forty at one-half the regular rate of pay." 649 F. App'x at 90. Under this methodology, "[t]he regular pay rate is calculated by dividing the weekly pay by total hours worked that week." *Id.* The FWW was first sanctioned as a method for calculating overtime in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942). "Following *Missel*, the Department of Labor issued an interpretive rule, allowing payment under the FWW method where (i) 'there is a clear mutual understanding of the parties that the fixed

3

salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period'; (ii) the employee receives sufficient salary so that his regular rate never falls below the statutory minimum wage; and (iii) the employee 'receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.'" *Banford*, 649 F. App'x at 91 (quoting 29 C.F.R. § 778.114(a).).

In the years immediately before and after *Banford*, several district courts within the Second Circuit considered the question of whether the FWW methodology can ever be applied in FLSA actions for unpaid overtime where, by definition, plaintiff employees allege that they have not been contemporaneously paid overtime, as required by the Department of Labor's interpretive rule.[1] *See* 29 C.F.R. § 778.114(a) ("Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek . . . such a salary arrangement is permitted by the Act . . . if [the employee] receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay.")

The most recent case within this circuit to address this question observed that this "question of law . . . remains unsettled in this circuit." *Nelson v. Sabre Companies LLC*, No. 115CV00314BKSTWD, 2018 WL 3543523, at *12-14 (N.D.N.Y. July 23, 2018). The *Nelson* court found the dispute over the number of hours the annual salary was intended to cover created a

---

[1] Defendant cites another recent district court opinion applying FWW, but where "the parties agree[d] that [the employer's] compensation plan" provided for the contemporaneous payment of overtime, unlike here. *See Thomas v. Bed Bath & Beyond, Inc.*, 309 F. Supp. 3d 121, 130 (S.D.N.Y. 2018).

4

triable issue for a jury determination and declined to address whether the FWW methodology could be used in misclassification cases where overtime was never paid, "[i]n light of the split among district courts in this circuit and the absence of Second Circuit authority[.]" *Id.* at 14.

Here, there is no question that Plaintiffs were not contemporaneously paid any such "extra compensation" for overtime, so the FWW method cannot be applied under the DOL's interpretive rule codifying the method, which expressly requires the contemporaneous payment of overtime in order to establish the method's applicability. *See* 29 C.F.R. § 778.114(a). For this reason, another court in this district held that "the proper damages calculation method is the 'time-and-a-half' method and not the 'half-time' method for all hours worked over 40." *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199, 208 (D. Conn. 2013). In *Costello*, the court rejected the employer's argument that *Missel* did not explicitly require the contemporaneous payment of overtime premiums. *Id.* at 207. This conclusion that *Missel* itself requires the contemporaneous payment of overtime in order for FWW to apply rested on three conclusions: first, that holding otherwise would mean that an employee could "waiv[e] his entitlement to overtime payment, which is, simply, illegal[,]" *id.* (citations omitted); second, that *Missel* in fact "does mention failure to include a provision regarding contemplation of payment of overtime as a reason for rejecting the contract at issue in that case[,]" *id.* (citing *Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 150 (D. Conn. 2012); and third, that the employer's "reading of *Missel* and the FLSA plainly run counter to the policy implications of that case and the statute itself[,]" *id.* at 208.

In *Hasan*, the district court noted that *Missel* had "reasoned that the contract at issue did not comply with the FLSA because 'it [did not include a] provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage.'" 896 F. Supp. 2d at 150 (quoting *Missel*, 316 U.S. at 581). Relying on *Hasan*, *Costello* concluded that "[t]his lends

further support to the argument that section 778.114 accurately reflects the holding of *Missel*" and "that an employee cannot achieve a clear, mutual understanding as to whether a fixed salary is intended to cover all hours worked unless that understanding includes some provision for the payment of overtime; without it, there is no understanding as to an 'agreed wage' under *Missel*." *Costello*, 944 F. Supp. 2d at 207 (quoting *Missel*, 316 U.S. at 581).

In contrast, another district court within the Second Circuit read *Missel* as not imposing any requirement of contemporaneous payment of overtime premiums and concluded that "when an employee has been misclassified as exempt from overtime protections *and* the parties have mutually agreed that a flat weekly wage would compensate the employee for all his hours, no matter their number, *Missel* provides the correct method to calculate overtime damages: the effective wage should be calculated by dividing the flat wage by the total hours worked." *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 438 (S.D.N.Y. 2013). The *Klein* court agreed with other courts within this circuit that "the DOL regulation, on its own terms, may not be used to calculate overtime payments in the context of a misclassified employee" because "a misclassified employee did not, by definition, receive overtime premiums during his employment[,]" as required by the regulation, but nonetheless held that overtime payments in this context *could* be calculated using FWW under *Missel*. *Id.* at 436-38.

Plaintiffs argue, in line with *Costello*'s reading of *Missel*, that "[a] FWW contract cannot exist here for the same reason that the contract in *Missel* was found to be unlawful: CSC, like the employer in *Missel*, never paid an overtime premium, which is a requirement of a FWW contract." (Pls.' Br. on Remedies [Doc. # 449] at 5-6.) The Court finds Plaintiffs' reading of *Missel* to be more persuasive, in light of the Supreme Court's characterization of its holding in *Missel* in a different decision issued on the same day.

6

In ruling against the employer in *Missel*, the Court noted that

> It is true that the wage paid was sufficiently large to cover both base pay and fifty per cent additional for the hours actually worked over the statutory maximum without violating section six. But there was no contractual limit upon the hours which petitioner could have required respondent to work for the agreed wage, had he seen fit to do so, and no provision for additional pay in the event the hours worked required minimum compensation greater than the fixed wage. Implication cannot mend a contract so deficient in complying with the law. This contract differs from the one in *Walling v. A. H. Belo Corp.*, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716, decided today, where the contract specified an hourly rate and not less than time and a half for overtime, with a guaranty of a fixed weekly sum, and required the employer to pay more than the weekly guaranty where the hours worked at the contract rate exceeded that sum.

316 U.S. at 581. In *Walling*, the Court concluded that

> the guaranty contract in this case carries out the intention of the Congress. It specifies a basic hourly rate of pay and not less than time and a half that rate for every hour of overtime work beyond the maximum hours fixed by the Act. It is entirely unlike the *Missel* case, *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, decided this day. **In the contract in that case** there is no stated hourly wage and **no provision for overtime**.

*Walling v. A. H. Belo Corp.*, 316 U.S. 624, 634 (1942) (emphasis added). This Court interprets *Missel* to have ruled against the employer, while blessing the FWW method in other circumstances, because the employment contract contained no provision for overtime, as reflected in the DOL's interpretive guidance, and accordingly concludes that the FWW method cannot be applied as a matter of law here, where Defendant chose not to contract for or pay contemporaneous overtime premiums. The standard method for calculating time-and-a-half will instead be used to calculate damages in this case.

2. *Good Faith*

Defendant's Motion for Judgment as a Matter of Law ("JMOL Motion") sought, *inter alia*, to set aside the jury's finding that Plaintiffs proved that Defendant acted "willfully" in classifying Plaintiffs as exempt employees and denying them overtime pay, thus entitling Plaintiffs to use a three-year statute of limitations on their federal claims.[2] (*See* September 21, 2018 Ruling at 23-24.) In its JMOL Motion, Defendant argued that because it exhibited good faith when it classified the SA positions at issue as exempt its actions were not willful by definition. (*Id.*) The Court noted that "while the concepts of good faith and willfulness are interrelated, they are not identical." (*Id.* n.5 (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141-43 (2d Cir. 1999) (considering separately whether plaintiff proved willfulness for the purpose of applying a three-year statute of limitations and whether defendant proved good faith for the purpose of determining whether liquidated damages would be assessed), *holding modified on other grounds by Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003).).)

Willfulness is a question of fact for the jury, on which an employee bears the burden of proof, that determines the statute of limitations to be applied; the good faith defense is determined by the court, on which the employer has the burden of proof, that determines the availability of liquidated damages.[3]

---

[2] The FLSA provides that actions for unpaid overtime compensation "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

[3] The FLSA provides that an employer who underpays an employee is "liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages[,]" 29 U.S.C. § 216(b), unless "the employer

The Court's September 21, 2018 ruling considered and rejected Defendant's arguments for setting aside the jury's finding on willfulness. In light of that analysis, which considered the same portions of the trial record at issue here, and for substantially the same reasons, the Court deems it inappropriate to "award no liquidated damages." While the Second Circuit does not appear to have so held, a plurality of other circuit courts have found that a jury's willfulness finding affirmatively precludes a court's finding of good faith. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) ("Because the jury found that SettlePou had acted willfully in violating the FLSA, SettlePou cannot show that it acted in good faith."); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1167 (11th Cir. 2008) ("a jury's finding of willfulness forecloses a judge from finding good faith"); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003) ("a finding of good faith is plainly inconsistent with a finding of willfulness."); *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999) ("a finding of willfulness is dispositive of the liquidated-damages issue."). Even if the Court, in the absence of comparable Second Circuit authority, is not compelled to find that Defendant did not act in good faith, Defendant provides no convincing argument in support of its position and relies on the same evidence and arguments in support of its good faith defense as it did in seeking to set aside the jury's willfulness finding. Accordingly, Defendant has not shown its entitlement to a good faith finding by the Court, and Plaintiffs shall receive liquidated damages under the FLSA.

---

shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the" FLSA, in which circumstances "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed" the original unpaid wage amount, *id.* § 260.

As discussed below, Defendant argues, and the Court is persuaded, that Connecticut's wage-and-hour liquidated damages provision matches that of the FLSA. Accordingly, Defendant is also not entitled to a good faith defense as to Connecticut law claims for the same reasons these arguments fail as to the FLSA.

3. *Overlapping Federal/State Liquidated Damages*

Defendant argues that under the Second Circuit's recent decision in *Rana v. Islam*, Plaintiffs cannot recover cumulative liquidated damages under both the FLSA and the Connecticut wage-and-hour statute.[4] Because "there are no meaningful differences" between "the FLSA and [New York Labor Law] liquidated damages provisions[,]" and because "both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed[,]" those two laws together do not "allow[] duplicative liquidated damages for the same course of conduct." 887 F.3d 118, 123 (2d Cir. 2018) (internal quotation marks and citations omitted).

Defendant argues that because the Connecticut wage-and-hour "statute was also recently amended," like the New York Labor Law, "to mirror the FLSA regarding liquidated damages[,]" the same result should obtain here. (Not. Supp. Auth. Supp. Def.'s Br. on Damages [Doc. # 471] at 2.) Plaintiffs appear to have conceded this point, insofar as they argued pre-*Rana* that they were entitled to liquidated damages under both the FLSA and Connecticut state law, but did not respond to Defendant's notice of this supplemental authority. Accordingly, opt-in collective members who are also part of the Connecticut Rule 23 class are entitled to liquidated damages under whichever statute provides that individual greater relief.[5]

---

[4] The parties agree that California law does not provide for liquidated damages.

[5] In *Rana*, the Court of Appeals granted the plaintiff the larger of the two liquidated damages awards where "[t]he defendants did not argue the point, and pursued a position of all or

Finally, Defendant appears to contend in reply to Plaintiff's Brief on Remedies that not only are California class members not entitled to liquidated damages under California law—a proposition on which the parties agree—members of the California class are also not entitled to liquidated damages under *federal* law, because "the California Labor Code preempts the FLSA in regard to the California Class." (Def.'s Opp'n Br. on Damages [Doc. # 455] at 16.) In sum, Defendant believes that because the California Labor Code's "standards are more stringent than the FLSA, and by the FLSA's own language, it is preempted by the California overtime laws[,]" therefore "FLSA liquidated damages do not apply." (*Id.*) Defendant cites no apposite authority, while Plaintiffs cite three different California federal district court opinions that find FLSA liquidated damages are available in addition to California penalties and damages. (*See* Pls.' Mem. Law Opp'n to Def.'s Br. on Damages [Doc. # 460] at 18.) Accordingly, the Court finds Defendant's argument unavailing.

4. *Damages Period for FLSA Opt-Ins/Equitable Tolling*

Plaintiffs also argue that "[t]he limitations period for the FLSA opt-ins should be tolled such that they are awarded damages for the period beginning three years before the date the original complaint was filed rather than three years before the varying dates of their consents to join." (Pls.' Br. on Remedies at 13.) Plaintiffs contend that they are entitled to equitable tolling

---

nothing[,]" but noted that "[w]hether a plaintiff entitled to liquidated damages in the context of both the NYLL and FLSA should always receive the larger of these damages amount we leave to be decided in a future case." 887 F.3d at 123. Similarly here, the Court awards Plaintiffs the higher amount, if it differs, because Defendant has made no argument why in light of *Rana*, Connecticut class members who are also opt-in Plaintiffs should not receive the larger of the two forms of relief to which they are entitled.

given Defendant's willfulness in misclassifying SAs and Defendant's "undue delays in discovery that significantly delayed FLSA notice[.]" (*Id.*)

Equitable tolling is "applicable only in rare and exceptional circumstances," but "is sometimes necessary as a matter of fairness." *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (internal quotation marks and citations omitted). "To qualify for [equitable tolling,] the [plaintiff] must establish that extraordinary circumstances prevented him from filing his [claim] on time, and that he acted with reasonable diligence throughout the period he seeks to toll." *Id.*

Plaintiffs' burden is thus a high one, but they do not show that the amount of the delay here between the filing of the complaint and the issuance of FLSA notice constituted extraordinary circumstances,[6] nor that the delay or Defendant's actions effectively prevented opt-in Plaintiffs from exercising their rights. Plaintiffs suggest that equitable tolling is also warranted because Defendant was found to have willfully misclassified SAs, but provide no authority for the proposition that it would be inequitable *not* to toll the statute of limitations merely due to a

---

[6] For example, Plaintiffs cite *Hart v. Crab Addison, Inc.* for the proposition that tolling was warranted based on delays in resolving the conditional certification motion, but the court there noted "an unusually long delay has occurred between the filing of Plaintiff's motion for conditional certification and the Court's issuance of this Decision and Order . . . ." No. 13-CV-6458 CJS, 2015 WL 365785, at *5 (W.D.N.Y. Jan. 27, 2015). In that case, the plaintiffs' motion for conditional certification had been filed almost a year and a half earlier, on August 28, 2013. Plaintiffs also cite *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012), which tolled the statute of limitations as of the date of the filing of the motion for conditional certification. In that case, the plaintiffs moved for conditional certification on October 14, 2011, and the motion was not decided until April 9, 2012, approximately six months later. Here, by contrast, Plaintiffs' Motion for Conditional Certification was filed on April 17, 2015 and ruled on less than two months later, on June 9, 2015. ([Doc. # 168].)

Defendant's willful violation of the law, or that willfulness alone constitutes extraordinary circumstances.

5. *Injunctive Relief under State Law*

Plaintiffs seek injunctive relief for members of the Connecticut and California Rule 23 classes, "request[ing] that the Court issue an injunction requiring CSC to reclassify the two class positions (Associate Professional System Administrator and Professional System Administrator) in Connecticut and California to nonexempt status." (Pls.' Br. on Remedies at 28-29.) But as Defendant correctly notes, under Connecticut law "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." *Maritime Ventures, LLC v. Norwalk*, 277 Conn. 800, 807 (2006) (internal quotation marks and citations omitted). Plaintiffs have not shown what irreparable harm they will suffer from receiving only damages in this case, or explained why that legal remedy is inadequate for them. It would seem that the jury's finding on liability likely provides a powerful disincentive to Defendant continuing to misclassify SAs in the future and risking a willfulness verdict in any future action for continued violation of the FLSA. Similarly, Plaintiffs have not provided any authority showing entitlement under California law to injunctive relief under circumstances analogous to the facts of this case. Accordingly, Plaintiffs' request for injunctive relief is denied.

6. *State Law Damages*

    a. Connecticut Class

Plaintiffs seek pre- and post-judgment interest on their Connecticut law claims at 10% per year pursuant to Conn. Gen. Stat. § 37-3a. Defendant has not opposed this award, which the Court finds to be appropriate to "compensate the prevailing party for delay in obtaining money that

13

rightfully belongs to him[,]"*Brandewiede v. Emery Worldwide*, 890 F. Supp. 79, 83 (D. Conn. 1994), and in light of the jury's willfulness finding.

b. California Overtime Pay

The parties agree that California class members are entitled to back pay damages pursuant to California Labor Code § 510(a). The California class is entitled as of right to damages calculated under a three-year statute of limitations, which may be extended to four years upon a finding by the Court that Plaintiffs have established a claim under California's Unfair Competition Law. Plaintiffs provide California legal authority for the proposition that a violation of California wage-and-hour law is by definition an unfair business practice for the purposes of the Law, which Defendant does not rebut. (See Def.'s Opp'n Br. on Damages at 17.) The Court is persuaded by this authority[7] and determines that the California class should recover four years of damages. The parties agree that California class members are entitled to pre-judgment interest at the rate of 10% per year; Plaintiffs note that they are also entitled to post-judgment interest at the same rate, which Defendant does not contest.

c. California Wage Statements

Plaintiffs claim that the California class is also entitled to penalties under California Labor Code § 226 for CSC's failure to provide them with accurate wage statements during their employment in all weeks in which they were entitled to overtime. Under that statute, "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for

---

[7] *See, e.g., Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1206 (2011) ("the failure to pay legally required overtime compensation falls within the UCL's definition of an unlawful . . . business act or practice" (internal quotation marks and citations omitted)).

the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Labor Code § 226(e)(1).

Defendant responds, *inter alia*, that "Plaintiffs failed to introduce any evidence establishing the underlying requirements for recovery of section 226 penalties. No wage statements were entered into evidence, and thus, Plaintiffs have failed to establish that the wage statements were not compliant with section 226." (Def.'s Opp'n Br. on Damages at 18.) Because Plaintiffs do not reference any exhibit or testimony at trial regarding wage statements that could be considered by the Court in making such a determination, it cannot award penalties for this claim.

   d. PAGA Penalties

Plaintiffs seek penalties under the Private Attorneys General Act of 2004, Cal. Labor Code § 2698 *et seq* ("PAGA"). Plaintiffs submit evidence to the Court that Plaintiff Strauch complied with the administrative procedures required under PAGA, which Defendant contends is improper because Plaintiffs were obligated to offer this evidence at trial. Defendant provides no authority for this proposition, and the Court views the availability of PAGA penalties to be a question for the Court, and not a jury. Plaintiffs seek PAGA penalties for both Defendant's violations of California wage and hour law and for Defendant's alleged failure to timely furnish accurate wage statements. For the reasons described above, the Court lacks a basis to award PAGA penalties for failure to furnish accurate wage statements, but finds that Plaintiffs may collect penalties for Defendant's violations of the wage-and-hour law, in the amounts set by Cal. Labor Code § 558. Defendant provides no compelling argument why this default statutory penalty should not be awarded.

### 7. *The Breshears Report and the Computation of Damages Worked*

Finally, the parties dispute the proper manner of calculating damages in this case. As noted in the Court's September 21, 2018 ruling, Defendant contended in support of its Motion to Decertify that in their damages briefing, Plaintiffs have gone back on their pre-trial stipulation that damages would be calculated mechanically on the basis of Defendant's timekeeping data. The Court held in that ruling that Plaintiffs are bound by the stipulation and will not be permitted to litigate individualized damages questions in any way that would contradict the parties' stipulation on the methodology for calculation of damages. (Ruling on Post-Trial Motions at 31-32.)

The parties stipulated before trial that "[a]ny damages sought and/or awarded in this litigation and at trial for all SAs . . . will be determined based on the hours of work that Plaintiffs recorded in CSC's timekeeping system (largely e-TES and a successor system called MyTime)[.]" (Joint Stip. and Order [Doc. # 357] at 1-2.)

Plaintiffs argue, however, that because of the way that Defendant has provided this data, there appear to be gaps and internal inconsistencies that affect the determination of which collective and class members worked in which locations in given periods of time, as well as what their rates of pay were. Plaintiffs propose filling these gaps by drawing certain inferences[8] about how to interpret Defendant's timekeeping data, and submitted an expert report by Dr. David Breshears calculating damages based on Defendant's data and inferences drawn from the data.

---

[8] Plaintiffs characterize these inferences as "1) to determine class membership based on 'work center' location, then mailing address, and then the file name corresponding with their time entry data, and, (2) where compensation data was missing, to determine certain class members' rate of pay based on their latest compensation data available or, if none was available, the average rate of pay for their position . . . ." (Pls.' Br. Regarding Damages Calculation [Doc. # 453] at 2.)

16

Plaintiffs claim that notwithstanding their agreement to rely on Defendant's timekeeping data, in light of omissions and apparent errors in the data, they are entitled to certain inferences being drawn in their favor under the framework established in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). In that case, the Supreme Court held that "where the employer's records are inaccurate or inadequate," employees carry out their burden of demonstrating that they worked uncompensated overtime where they prove that they have in fact performed work for which they were improperly compensated and if they "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687.

Under this framework, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

While Plaintiffs remain bound by the joint stipulation, nothing in the stipulation precludes *Mt. Clemens* burden shifting from applying to the interpretation of the data that the parties agreed to use, especially in light of apparent omissions and inconsistencies in the data. Plaintiffs will not be permitted to conduct a new round of fact-finding to interpret the data, but they are correct that if Defendant challenges the inferences they draw, it must demonstrate to the Court why those inferences are unreasonable and what alternative conclusions to draw instead.

Defendant moved to strike Mr. Breshears' report as both "untimely" and "unreliable." (Def.'s Mot. Strike Breshears Report [Doc. # 456] at 1.) Defendant claims prejudice from this previously-undisclosed expert because "Defendant had no opportunity to depose, cross-examine, or otherwise challenge this expert . . . ." (*Id.*)

17

Notwithstanding Defendant's concerns, in light of the ongoing dispute between the parties as to how to interpret Defendant's timekeeping data, the Court declines to strike the report, insofar as it may aid the Court in resolving any remaining damages calculation questions. The Court agrees with Defendant that in order to resolve these lingering issues, Defendant must be given some opportunity to challenge or rebut this expert.

In light of the largely factual questions remaining in the calculation of damages in this case, and with the legal principle articulated that any calculation must both honor the stipulation and *Mt. Clemens*, the Court will invite the parties' proposals on the most efficient way to resolve any remaining disputes at a telephonic status conference to be held on December 5, 2018 at 2:00 p.m. The parties should be prepared to present objections to the Court appointing a special master, pursuant to Fed. R. Civ. P. 53(a)(1)(C), and should be prepared to discuss the parameters of any appointing order, pursuant to Fed. R. Civ. P. 53(b)(2).

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of November 2018.