**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Michael J. Scimone*
Michael N. Litrownik (ct28845)
Jared Goldman*
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
Todd Jackson*
Genevieve Casey*
Darin Ranahan*
2030 Addison St., Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

*Attorneys for Plaintiffs, the Collective, and the Certified Classes*

*admitted *pro hac vice*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>Defendant. | **No. 14 Civ. 956 (JBA)** |

**PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS**

## INTRODUCTION

Plaintiffs hereby submit their response to the Report and Recommendation of Special Master D. Charles Stohler, ECF No. 502, reserving their rights to respond to any further objections that Defendant Computer Sciences Corporation ("CSC") may make.

Plaintiffs request that the Court adopt the Special Master's recommendations, including payment of damages as jointly calculated by the Parties,[1] distribution of notice to System Administrators who did not receive notice of their right to opt into the Fair Labor Standards Act collective in July 2015, and payment of fees CSC owes to Plaintiffs' expert for work performed during the Special Master process pursuant to the Court's January 18, 2019 order, ECF No. 487.

The data extraction, auditing tasks, and iterative damages calculations performed under the Special Master's supervision were painstaking, labor-intensive, and at times challenging, but the process met the Court's ordered goal of requiring the Parties to "find a way back to reasonably trustworthy databases, such that a correct description of hours—thus, damages—for the class can be prepared."[2] While CSC refused to produce complete classwide data during the Special Master process until the Special Master ordered them to do so, the process ultimately worked as intended. Clear evidence that the Special Master process worked is reflected in the fact that the Parties have now set out who is in the class and collective and agreed upon the precise amount of damages CSC owes. Along the way, the Special Master's decisions resolving disputes regarding specific data sources and auditing approaches were not always in Plaintiffs'

[1] The Parties' joint Summary of Damages is attached as Exhibit 1 to the Special Master Report. The Parties also agreed upon the amount of each class and collective member's damages award, and can submit to the Court the spreadsheet listing these individual awards for attachment to or incorporation into the Court's amended judgment.

[2] Jan. 18, 2019 Hearing Tr., ECF No. 493, at 40:21-24.

favor, but were reasoned and fair, and ultimately allowed the process to conclude successfully.[3] Plaintiffs therefore have no formal objections to the Special Master's recommendations. Plaintiffs provide this submission in order to make sure the record of the Special Master process is complete.

**RESULTS OF THE SPECIAL MASTER PROCESS**

The Special Master's Report includes a detailed account of the data extraction and auditing processes the Parties followed and the key decisions the Special Master made along the way. Plaintiffs will therefore not burden the Court with an exhaustive description of the months-long process, but wish to highlight several important outcomes.

Most crucially, the data extraction performed during the Special Master process permitted the Parties to (a) correctly and comprehensively identify *all* System Administrators who met the class definition; and (b) extract *all* timekeeping data, from all relevant systems and under all applicable employee ID numbers, for the opt-ins and class members so that damages can now be correctly calculated according to the Parties' stipulation that damages "will be determined based on the hours of work that Plaintiffs recorded in CSC's timekeeping system (largely e-TES and a successor called MyTime)." ECF No. 357. As a result of this process, a number of individuals who were not previously identified as class members by CSC have now been identified as such, while a handful of people who had previously been identified as class members are now correctly identified as not being class members.

Completing (a) and (b) above required months of work, in part because CSC continually opposed Plaintiffs' and the forensic experts' proposals to extract comprehensive datasets and

[3] Plaintiffs made several concessions to move the Special Master process forward expeditiously. Should any aspect of the Special Master Report and Recommendations be overturned by this Court or on appeal, Plaintiffs do not intend to waive their ability to revisit any concessions made.

then filter out irrelevant data, insisting instead on a piecemeal approach that required multiple supplemental extractions to fill "gaps" in the data identified by Plaintiffs and auditing each additional production for accuracy. Simply put, CSC did not provide complete access to its data at the outset of the Special Master process, instead claiming the scope of the process was improper while claiming that much of the data Plaintiffs requested was not relevant. CSC, however, ultimately concurred that much of the data it initially claimed was irrelevant was, in fact, necessary to determining class membership and compensable hours, in some cases going so far to as rely upon, and insist on the relevance of, data that it had previously claimed was irrelevant. CSC's choice to resist providing Plaintiffs and their experts with full access to underlying data during the Special Master process unduly complicated and delayed the process. Further, CSC's failure to allocate sufficient resources to the data extraction and audit process and failure to document the steps that it took to produce the prior layer data and hours extractions added significant delay.[4] Nevertheless, the result is a damages calculation that is accurate and

[4] As the Special Master found,

1. None of the original data extractions were properly documented (we do not know today what was done then).
2. None of the original data extractions were properly audited.
3. None of the people who performed the original data extractions are working on the new extractions.
4. The current "class-list" was derived from the damages spreadsheet, which in turn was derived from the CSC-produced 2017 hourly data.
5. It is not clear what list or method was used to extract the 2017 hourly data.
6. It is not clear if or how the original substitute employee numbering system was relied upon or impacted the original data extractions but we know that this system ultimately created data integrity issues and has since been abandoned.

ECF No. 503 at 8-9, quoting March 1, 2019 report of Dan Regard (Exhibit 4 to the Special Master Report).

transparent to both Parties and the Court, in contrast to the data CSC had produced prior to the Special Master process.

Early in the Special Master process, it became clear that the problems with CSC's prior data productions were not limited to the "aberrations" (unexplained, but, counsel for CSC speculated, possibly the result of a "data transfer" error) that CSC raised to Plaintiffs and the Court for the first time in January 2019. *See* ECF No. 484; Jan. 18, 2019 Tr., ECF No. 493, at 7:2-8:11. Rather, when the forensic expert was able to compare data in CSC's systems against CSC's productions during the course of the litigation, it became clear that the data CSC had produced to Plaintiffs was rife with omissions, errors, and unresolved ambiguities.

As a result, the Special Master appropriately determined that the old class-wide data must be set aside in its entirety and replaced with newly extracted, fully audited data. This decision was based, in part, on the Special Master's direct observation of the forensic audit results and inconsistencies between the prior data produced and the content of CSC's human resources databases. The updated, joint damages calculations are therefore based on new "layer data" (also referred to as Human Resources Information System or "HRIS" data) and timekeeping data extracted during the Special Master process and audited by the forensic experts. That is, the Special Master process resulted in complete, carefully validated data that ultimately allowed the Parties to reach consensus on class membership and damages, including:

- The identities of all CSC employees who held the two job classifications included in the class definitions during the relevant period, including identification of multiple alternate employee ID numbers for some individuals (a previously unknown issue);

- Complete "job history" information allowing the Parties to accurately determine when each person moved in and out of covered positions during the relevant period, without the need to draw "inferences" concerning gaps in the data;
- Data fields relevant to determining the location of work, according to a methodology the Parties conferred over and finally agreed upon;
- Compensation data to be used both for exclusions of highly compensated employees pursuant to the class/collective definitions and for determining rate of pay for damages purposes; and
- Complete timekeeping data for every collective and class member from both CSC timekeeping systems.

The primary achievement of the Special Master process is that the above categories of information were produced in comprehensive, clean, audited data sets, allowing the Parties to arrive at reliable joint damages calculations so that this case can be resolved.[5]

In addition, as the Special Master informed the Court, extraction of the complete list of System Administrators with the two job classifications included in the class and collective definitions revealed that CSC omitted approximately 40 potential FLSA collective members from the lists of names and contact information it provided to Plaintiffs in 2015 for FLSA opt-in notice purposes. *See* Special Master Report, ECF No. 503, at 13-15. The result, of course, is that

[5] Plaintiffs would like to correct the record regarding a small item: what appears to be an error in the Special Master's characterization of a dispute between the Parties on interest for Connecticut-based FLSA opt-ins. *See* ECF No. 503 at 16. The Special Master writes that "Plaintiffs submitted that the pre-July 1, 2012 period should be at the higher Connecticut statutory interest rate and then switch to the lower federal rate upon the commencement of their FLSA claims effective July 1, 2012." *Id.* Plaintiffs' argument was the reverse—that the federal rate should apply pre-July 1, 2012 and the Connecticut rate should apply thereafter. As the Special Master also notes, however, Plaintiffs ultimately agreed to follow CSC's methodology on this issue, as the joint damages calculations reflect.

these individuals were never notified of this litigation or given an opportunity to seek relief as part of this case. As the Parties have already argued this issue at length to the Special Master and received his decision on the matter, Plaintiffs will not reiterate their arguments here. Plaintiffs ask that Court adopt the Special Master's recommendation with respect to this group and authorize distribution of the New Notice (Exhibit 5 to the Special Master Report) immediately.

As the Special Master Report notes, while the process was lengthy, it appears to have resulted in production of complete recorded hours for the correct persons who fall within the classes and collective. As such, the process was a success.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court adopt the Special Master's recommendations, and specifically:

1. Award Plaintiffs and the class and collective the jointly agreed upon damages summarized in Exhibit 1 to the Special Master's Report, including interest at the Parties' agreed upon rate through the date CSC makes payment according to the Court's amended judgment;
2. Order immediate issuance of the New Notice attached as Exhibit 5 to the Special Master report to the System Administrators who should have received the notice in 2015; and
3. Order immediate payment of the fees submitted by the forensic expert, iDS, unless the Court chooses to delegate to the Special Master authority to make a final determination on this issue.

Dated: June 17, 2019 Respectfully submitted,

By: /s/ *Todd Jackson*
Todd Jackson

**FEINBERG, JACKSON, WORTHMAN & WASOW LLP**
Todd Jackson (pro hac vice)
Darin Ranahan (pro hac vice)
Genevieve Casey (pro hac vice)
2030 Addison St., Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
todd@feinbergjackson.com
darin@feinbergjackson.com
genevieve@feinbergjackson.com

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi (pro hac vice)
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
jsagafi@outtengolden.com

Michael J. Scimone (pro hac vice)
Michael N. Litrownik (ct 28845)
Jared Goldman (pro hac vice)
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
mscimone@outtengolden.com
mlitrownik@outtengolden.com
jgoldman@outtengolden.com

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen Baldwin Kravetz (ct 19665)
59 Elm Street, 5th Floor
New Haven, CT 06510
Telephone: (203) 624-9830
Facsimile: (203) 562-8430
kkravetz@susmanduffy.com

**LIEFF CABRASER HEIMANN &**

**BERNSTEIN LLP**
Daniel M. Hutchinson (pro hac vice)
Lin Y. Chan (pro hac vice)
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
dhutchinson@lchb.com
lchan@lchb.com

*Attorneys for Plaintiffs, the Collective, and the Certified Classes*