UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH and TIMOTHY COLBY, individually and on behalf of all others similarly situated,<br>    *Plaintiffs*,<br>v.<br>COMPUTER SCIENCES CORPORATION,<br>    *Defendant*. | Civil No. 3:14-CV-956 (JBA)<br><br>August 6, 2019 |

**RULING ON REPORT AND RECOMMENDATION OF SPECIAL MASTER**

In this wage-and-hour overtime misclassification class and collective action, after a jury verdict in Plaintiffs' favor [Doc. # 444], and subsequent Rulings on Post-Trial Motions [Doc. # 476] and Remedies [Doc. # 479], the Court appointed D. Charles Stohler to serve as Special Master "to monitor and address issues related to damages data and calculations" pursuant to Federal Rule of Civil Procedure 53. (Order Appointing Special Master [Doc. # 491] at 1.)

In the Order of Appointment, the Court directed the Special Master to "oversee the damages data retrieval, exchange and calculation process regarding the damages issues outlined in the Court's prior order (Doc. # 487)." (*Id.*) That previous order provided that:

> Defendant CSC shall expeditiously determine whether it can retrieve the original time-keeping data, free from the "anomalies" that it claims mar the data previously produced to Plaintiffs and the class. In conjunction with this process, Defendant shall ascertain whether there are any data, for class members with incomplete job title layer data, indicating change in job title prior to the time periods covered by the currently produced layer data for those class members. Defendant shall provide all needed access to Plaintiffs' forensic expert, whose fees and costs are to be borne by Defendant, to enable him or her to adequately audit the Defendant's data restoration and retrieval process.

(January 18, 2019 Endorsement and Scheduling Order [Doc. # 487] at 1.)

The Order of Appointment, following Rule 53's language, provided that "[t]he Special Master shall have the authority to take all appropriate measures to perform the assigned duties fairly and efficiently." (Order Appointing Special Master at 2.) *See also* Fed. R. Civ. P. 53(c)(1)(B) (providing the same). Moreover, the Order held that "[a]ny damages-related dispute brought to the Special Master, and within the authority of the Special Master under this Order and Federal Rule of Civil Procedure 53, shall be resolved by the Special Master after such investigation, presentation of evidence, and argument as the Special Master may deem appropriate[.]" (*Id.* at 3.)

Under Rule 53, this Court has authority to appoint a special master in order to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). Under both Rule 53 and this Court's Order of Appointment, the parties are given notice and opportunity to be heard in their objections to the Special Master's Report and Recommendation.

Finally, Rule 53 provides that this Court "must decide de novo all objections to findings of fact made or recommended by a master" and "must decide de novo all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(3)-(4). By contrast, this Court reviews the Special Master's ruling on procedural questions only for abuse of discretion. Fed. R. Civ. P. 53(f)(5).

Both parties were provided with an opportunity to object to the Special Master's Report and Recommendation and to respond to any objections. (*See* [Doc. # 501].) Plaintiffs made no objections, ([Doc. # 508]), while Defendant objected to four specific aspects of the Report and Recommendation, ([Doc. # 509] at 1).

As a preliminary manner, the Court notes that the majority of the Special Master's thorough and well-reasoned Report and Recommendation ("the R & R") was not objected to by

2

either party. The Court has reviewed the non-objected portions of the R & R for clear error, and having found none, adopts those portions. *See CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 206 n.1 (E.D.N.Y. 2009) (reviewing non-objected-to portions of special master's R & R for clear error) (citations omitted). The Court now turns to Defendant's objections.

I.  **Legal Entities other than Defendant**

Defendant objects first to the Special Master's decision described in Section III(6) of the R & R, which concerns the class membership of individuals whom CSC claimed worked for legal entities other than CSC. In April of this year, Defendant for the first time "identified approximately 84 individuals on the original Class List who it claimed should not have been there because they worked for legal entities other than the named Defendant CSC." (R & R at 12.) Most of these employees "worked for an entity called CSC Covansys Corporation." (*Id.* at 12-13.)

The only evidence provided by Defendant to establish "that these entities were separate from CSC were three IRS Form W-2 examples showing that some employees received paychecks directly from a 'non-CSC' separate company." (*Id.* at 13.) The Special Master reports that "[d]espite several opportunities, Defendant did not provide any other evidence or legal authority to show that these entities would not either be joint employers or a 'single employer enterprise' with CSC under the relevant FLSA Standards." (*Id.* (citations omitted).) Accordingly, the Special Master recommended that the employees of the "non-CSC" legal entities be included in the class, incorporating by reference his attached ruling on the question, which is Attachment A to Exhibit 3 of the R & R.

In that ruling, the Special Master noted Plaintiffs' objection to Defendant raising this issue only at this late stage of the litigation, in apparent contravention of Defendant's discovery

obligations. Plaintiffs also argued that there is no evidence to conclude that the entities are separate from CSC under the relevant FLSA standards.

The Special Master noted that Defendant raised this issue for the first time on April 9, 2019, after having provided discovery responses including these entities and their employees, having offered relevant deposition testimony on this point, and having including many of the employees in its initial damage calculation in January 2019. Moreover, Defendant never raised the issue in any of its *three* motions to decertify the class.

The Special Master found that Defendant failed to rebut Plaintiffs' argument and evidence that these entities would either constitute joint employers or a single employer enterprise, noting among other things that the single employer enterprise test is met where, as here, "[i]t appears undisputed that the 'non-CSC' and CSC entities are under the same common ownership or financial control, have interrelated operations, provide the same or similar services, share the same HRIS system, and have centralized Human Resources functions." (Attachment A to Ex. 3 to R & R at 4.)

Defendant raises several objections, focusing on its contention that the Special Master improperly "flipped the burden of proof to Defendant to prove that CSC was not a joint employer or part of a single enterprise." (Def.'s Obj. to R & R at 4-8.) Defendant also argues that because the class representatives were not themselves employed by the allegedly non-CSC entities, the class representatives lack standing to sue on behalf of those other workers. (*Id.*) But this argument assumes that neither the joint employer nor single employer enterprise test is met.

Plaintiffs respond that CSC produced discovery for the subsidiaries demonstrating a single integrated enterprise or joint employer relationship, noting among other things that "CSC has not explained why it would maintain HR records for purportedly separate employers and why, if the

4

entities are distinguishable in any legally significant way, it took so long for it to uncover this fact." (Pls.' Reply to Def.'s Obj. to R & R at 11-15.) Separately, Plaintiffs contend that CSC should be equitably estopped from relying on company code evidence or should be precluded from relying on such evidence as a discovery sanction. (*Id.* at 7-11.)

"[E]quitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (citation omitted). "Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." *Id.* "Whether equitable estoppel applies in a given case is ultimately a question of fact." *Id.*

For the entire duration of this litigation, from discovery through conditional certification and class certification, through trial, and in extensive post-trial briefing of myriad other substantive issues, Defendant appears to have never informed Plaintiffs of its position that these class members were not, in fact, class members, until several months into the Special Master's work. Had Defendant raised this defense at the outset of discovery or at class certification, Plaintiffs could have potentially added a class representative for a subclass of these employees, taken discovery to refute Defendant's disavowal of an employment relationship, moved to add the other legal entities as additional defendants, or other appropriate steps. In light of the fact that it apparently took Defendant almost five years to discover that these class members were not, in fact, its own employees, the Court is highly skeptical of Defendant's legal arguments disavowing an employment relationship. But even if Defendant were correct, then Defendant would be equitably

estopped from raising this late-breaking defense, more than a year after the entry of judgment. *See Kosakow*, 274 F.3d at 726 ("a party may be estopped where that party makes...a misrepresentation by silence[] and had reason to believe the other party would rely upon it, regardless of whether the person making the representation intended to deceive.") Accordingly, the Court adopts the Special Master's recommended ruling that this group of employees be included in the class.

II.     **Layer Data**

Defendant next objects to the Special Master's decision described in Section III(4) of the R & R, concerning the Special Master's decision to "re-run all of the Layer Data from the three HRIS systems (P42, P44 and Workday) for all potential class members" as "necessary to develop a complete and reliable Class List." (R & R at 11.) The Special Master found that re-running the data was "necessary to ensure a reasonably reliable data set" and this decision would not expand the class definition—as Defendant argued, and argues now—but instead identifies those individuals who were included in the original class definitions but erroneously excluded from previous class lists. (*Id.* at 12.)

As a procedural matter, the Special Master was well within his authority in re-running the data given the apparent gaps in Layer Data identified by Plaintiffs, and did not abuse his discretion.[1] The Special Master appropriately determined that re-running the data was necessary

---

[1] While the Court views the Special Master's decision to re-run the data as principally a procedural decision subject to abuse of discretion review, the Court understands Defendant to argue, in effect, that this procedural decision involved a legal determination. The Court therefore also reviews *de novo* the Special Master's conclusion that the result of this data extraction was merely a more accurate Class List, using the original class definitions, and not an expansion of the class, as Defendant contends. As the Special Master noted, "Defendant is correct that the class definition cannot be expanded post trial[,]" but "here the clarification of the records" serves merely

because "the goal is to have reasonably reliable data, and the piecemeal approach" that the Special Master had initially adopted would "not achieve that purpose." (Attachment A to Ex. 2 to R & R at 6.) The Special Master noted that his "involvement results from Defendant acknowledging it had provided erroneous data" and that the Defendant had "had approximately six weeks to explain and/or correct the data with Plaintiffs' expert auditing the process" but had "not done so to date[.]" (*Id.*) Accordingly, Defendant's objection is overruled.

### III.   FLSA Opt-in Class Notice

Third, Defendant challenges Section III(7) of the R & R, concerning 40 potential FLSA collective members who did not receive notice in 2015. As the Special Master notes, "[i]n 2015, the Court ordered notice to be sent to the parties, which was done, based on data supplied by Defendant as of June 20, 2015." (R & R at 14.) "Notices were sent on July 16, 2015 and then supplemented on July 23, 2015" but "[t]he parties disagree on the cutoff date and whether the list of the approximately 40 individuals who were hired between June 22, 2015 and July 20, 2015 . . . should receive notice." (*Id.*)

The Plaintiffs requested that the employees hired between June 22, 2015 and July 20, 2015 "either . . . be given the opportunity to opt-in or to receive a Notice explaining the issue." (*Id.*) The Special Master recommended that a new Notice be sent to the affected individuals, and that any

---

"to identify who should be included" under "the original class definition[,]" without "chang[ing] or expand[ing] the class definition." (*Id.*)

The Court agrees with the proposition that the class cannot be expanded at this stage of the litigation, but Defendant offers no legal authority for its belief that applying the original class definition to include class members whom Defendant erroneously excluded from the original Class List constitutes expanding the class. Absent any legal basis for this objection, the Court adopts the Special Master's ruling that re-running the Layer Data merely provided a more accurate class list and did not expand the class post-trial.

7

resulting claims "should be equitably tolled to allow the individuals to pursue their rights as if they had been properly notified in 2015." (*Id.* at 14-15.)

Defendant objects to these rulings on at least five different grounds. Because the Court agrees that these notices should not issue, the Court only addresses one of these grounds.

On June 9, 2015, the Court granted Plaintiffs' Motion for Conditional Certification. ([Doc. # 168].) The ruling provided that "[n]otice shall be sent . . . to all persons who were, are, or will be employed by CSC nationwide from July 1, 2011 to the present" who meet specified criteria. (*Id.* at 13.) The ruling also required Defendant to provide Plaintiffs with a class list within 21 days of the entry of the Order. (*Id.* at 12.)

According to Defendant, the only persons required to receive notice were those employed in relevant positions up through the date of the order, June 9, 2015. (Def.'s Obj. to R & R at 11-12.) Focusing on the phrase "to the present," Defendant asserts that its inclusion of class members who became employed between June 9 and June 20 was in fact overinclusive. (*Id.* at 12.) Plaintiffs respond that this reading of the Class Certification Order fails to account for the phrase "or will be employed." Plaintiffs argue that "[i]f the Court intended this language to cut off the collective as of the date of the order, it would not have included the 'will be' language in the collective definition." (Pls.' Reply to Def.'s Obj. to R & R at 20-21.) Plaintiffs' proposed reading, however, proves too much, as it provides no basis for determining any cut-off date.

While the phrase "or will be" complicates the matter, the Court concludes that the best reading of the Order gives effect to the unambiguous phrase "to the present." While Plaintiffs' proposed reading better accounts for "or will be[,]" that reading neither accords with "to the present" nor provides a logical end-point. Accordingly, the Court sustains Defendant's objection to Section III(7) of the R & R.

## IV. Plaintiffs' Expert Fees

Finally, Defendant "objects to the Special Master's recommendations related to the role of Plaintiff's expert and their fees, as recommended in the Special Master's R&R at Section III(2), on the grounds that such recommendations are outside of the Special Master's role and are reserved for the Court, that it is not Defendant's burden to establish reasonableness of expert's fees, and that Defendant can only be ordered to pay Plaintiffs' expert 'reasonable' fees upon the Court's order and evaluation of the same."

The Court's January 18, 2019 Order directed Defendant to "provide all needed access to Plaintiffs' forensic expert, whose fees and costs are to be borne by Defendant, to enable him or her to adequately audit the Defendant's data restoration and retrieval process." ([Doc. # 487] at 1.) The original Order of Appointment did not expressly discuss the Special Master's authority to adjudicate any dispute over Plaintiffs' expert's fees, because the Court did not contemplate that such ancillary litigation would result. Given the Special Master's deep familiarity with the subject matter at hand, the Court hereby amends the Order of Appointment to authorize the Special Master to determine the reasonableness of Plaintiffs' expert's fees and costs pursuant to Rule 53(a)(1)(C), with both parties retaining their rights under Rule 53 to challenge any resulting Report and Recommendation issued by the Special Master. Because Rule 53 requires that any amendments to an order of appointment be made "after notice to the parties and an opportunity to be heard[,]" Fed. R. Civ. P. 53(b)(4), the parties shall have seven days to file any objections to this amendment. If no objections to this amendment are filed by August 13, 2019, the amendment will take effect the following day. Accordingly, Plaintiffs' Motion for Status Conference [Doc. # 507] is denied as moot.

## V.  Conclusion

Because the Court adopts the R & R's proposed rulings on the two contested issues affecting the damages calculation, as well as the non-objected-to portions, the Court finds that Defendant is liable for damages as set forth in Exhibit 1 to the R & R, in the total amount of $18,755,016.46 and Judgment [Doc. # 444] shall be amended accordingly.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of August 2019.