**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
Michael N. Litrownik (ct 28845)
Jared Goldman*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct 19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

*Attorneys for Plaintiffs and the Classes and
Collective*

**FEINBERG JACKSON
WORTHMAN & WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998

**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

*admitted *pro hac vice*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>Defendant. | No.: 3:14-cv-956 (JBA) |

**CLASS COUNSEL'S POST-TRIAL MOTION FOR ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .......................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................ 2

    A.     CSC's Scorched-Earth Defense ......................................................... 2

        1.     Plaintiffs' Counsel Conducted Carefully Targeted Discovery. ............... 2

        2.     CSC Filed Unsuccessful Early Motions and Obstructed Discovery......... 3

        3.     CSC Sought Broad, Time-Intensive Individualized Discovery That It Did Not Use at Trial. ............................................................................ 5

        4.     Plaintiffs Defeated CSC's Three Unsuccessful Motions to Decertify. .............................................................................................. 6

    B.     Plaintiffs Prevailed on Core Issues in the Litigation. ............................. 7

    C.     The Risky Nature of the Litigation Remained Evident Through Trial................. 8

    D.     CSC's Resistance to Correcting Its Flawed Data Took 19 Months to Remedy. ........................................................................................... 9

    E.     Settlement Opportunities Were Limited. .............................................. 11

    F.     Class Counsel Have Continued to Ably Represent the Class. .................... 12

    G.     Class Counsel's Proposed Fee Adjustments. ......................................... 13

III.   ARGUMENT ............................................................................................... 15

    A.     Federal and State Law Require Reasonable Attorneys' Fees and Costs for the Prevailing Party.......................................................................... 15

    B.     Class Counsel Obtained Exceptional Results. ....................................... 17

    C.     Class Counsel's Rates Are Reasonable................................................. 18

        1.     Connecticut Clients Routinely Pay Class Counsel's Hourly Rates. ........ 18

        2.     Plaintiffs Acted Reasonably in Hiring Out-of-District Counsel. ............. 19

        3.     The Johnson Factors Support Class Counsel's Hourly Rates. ................. 21

        4.     Current Rates Are Appropriate. ............................................................. 28

    D.     Class Counsel's Lodestar Reflects Their Efficient Prosecution of this Case................................................................................................. 29

    E.     An Upward Fee Adjustment Is Reasonable and Appropriate Under Both State and Federal Law........................................................................ 31

        1.     A Fee Enhancement of 1.5x Lodestar Is Appropriate Under California and Connecticut State Law. .................................................. 33

        2.     A Fee Enhancement Is Appropriate Under Federal Law........................ 34

        3.     Public Policy Supports Applying a Reasonable Fee Enhancement. ........ 36

    F.     Public Policy Favors Compensating Plaintiffs' Counsel Adequately................. 36

        1.     No "Proportionality" Concept Applies. ................................................. 37

    G.     Plaintiffs Are Entitled to Recover Their Out-Of-Pocket Costs. ........................ 38

# TABLE OF CONTENTS
(continued)

**Page**

H.  Plaintiffs Are Entitled to Recover Their Fees and Costs When Additional Work Is Performed, Such as on Appeal..............................................................39

I.  Plaintiffs Should Receive Reasonable Service Awards from the Class Damages to Compensate them for their Service to the Classes..........................40

IV.  CONCLUSION..............................................................................................................40

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*,
  374 F.3d 66 (2d Cir. 2004) ..................................................... 16

*Adorno v. Port Auth. of N.Y. & N.J.*,
  685 F. Supp. 2d 507 (S.D.N.Y. 2010) ..................................... 16

*Allende v. Unitech Design, Inc.*,
  783 F. Supp. 2d 509 (S.D.N.Y. 2011) ..................................... 38

*Allende v. Unitech Design, Inc.*,
  No. 10 Civ. 4256, 2011 WL 891445 (S.D.N.Y. Mar. 15, 2011) ................................... 15, 37, 38

*Amara v. Cigna Corp.*,
  No. 01 Civ. 2361 (JBA), 2018 WL 6242496 (D. Conn. Nov. 29, 2018)................................ 36

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*,
  522 F.3d 182 (2d Cir. 2008) ................................... 18, 19, 22, 39

*Aros v. United Rentals, Inc.*,
  No. 10 Civ. 73, 2012 WL 3060470
  (D. Conn. July 26, 2012)........................................................ 16

*Baird v. Boies, Schiller & Flexner LLP*,
  219 F. Supp. 2d 510 (S.D.N.Y. 2002) ..................................... 38

*Barbour v. City of White Plains,'*
  No. 07 Civ. 3014, 2011 WL 2022884 (S.D.N.Y. May 24, 2011)..................................... 24

*Bazignan v. Team Castle Hill Corp.*,
  No. 13 Civ. 8382, 2015 WL 1000034 (S.D.N.Y. Mar. 5, 2015) ............................................. 19

*Beckman v. Keybank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ........................................ 36, 37

*Benedict v. Hewlett-Packard Co.*,
  314 F.R.D. 457 (N.D. Cal. 2016)............................................. 26

*Benjamin v. Oxford Health Ins., Inc.*,
  355 F. Supp. 3d 131 (D. Conn. 2019)...................................... 20

*Bobadilla v. MDRC*,
  No. 03 Civ. 9217, 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) ........................................... 26

*Bonnette v. Cal. Health & Welfare Agency*,
  704 F.2d 1465 (9th Cir. 1983) ................................................ 38

*Britto v. Zep Inc.*,
  No. A141870, 2015 WL 5657147
  (Cal. Ct. App. Sept. 25, 2015) ................................................ 33

*Cabrales v. Cnty. of L.A.*,
  935 F.2d 1050 (9th Cir. 1991) ................................................ 31

*Cabrera v. Schafer*,
  No. 12 Civ. 6323, 2017 WL 9512409 (E.D.N.Y. Feb 17, 2017).................................... 38

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015) ................................................... 36

## TABLE OF AUTHORITIES
### (continued)

**Page**

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
   *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) .............................. 27, 36

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986) ........................................................................................................ 23, 24

*Clarke v. JPMorgan Chase Bank, N.A.*,
   No. 08 Civ. 2400, 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ......................................... 26

*Copeland v. Marshall*,
   651 F.2d 880 (D.C. Cir. 1980) ............................................................................................... 24

*Cotton v. Slone*,
   4 F.3d 176 (2d Cir. 1993) ....................................................................................................... 33

*Cowan v. Prudential Ins. Co. of Am.*,
   935 F.2d 522 (2d Cir. 1991) ................................................................................................... 37

*Cox v. Brookshire Grocery Co.*,
   919 F.2d 354 (5th Cir. 1990) .................................................................................................. 38

*Davis v. Eastman Kodak Co.*,
   758 F. Supp. 2d 190 (W.D.N.Y. 2010) .................................................................................. 21

*DiFilippo v. Morizio*,
   759 F.2d 231 (2d Cir. 1985) ................................................................................................... 37

*Douglas v. Spartan Demolition Co. LLC*,
   No. 15 Civ. 5126, 2018 WL 4521212 (S.D.N.Y. Sept. 21, 2018) .......................................... 38

*Estrella v. P.R. Painting Corp.*,
   596 F. Supp. 2d 723 (E.D.N.Y.), *aff'd*,
   356 F. App'x 495 (2d Cir. 2009) ........................................................................................... 37

*Farrar v. Hobby*,
   506 U.S. 103, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992)........................................ 16, 17

*Febus v. Guardian First Funding Grp., LLC*,
   870 F. Supp. 2d 337 (S.D.N.Y. 2012) ................................................................................... 39

*Fegley v. Higgins*,
   19 F.3d 1126 (6th Cir. 1994) ................................................................................................. 38

*Fendi Adele S.r.l. v. Ashley Reed Trading, Inc.*,
   No. 06 Civ. 243, 2011 WL 13257268 (S.D.N.Y. May 16, 2011), *report & recommendation*
   *adopted in pertinent part*, 2011 WL 3176795 (S.D.N.Y. June 30, 2011),
   *aff'd in pertinent part*, 507 F. App'x 26 (2d Cir. 2013) ........................................................ 29

*Fox v. Vice*,
   563 U.S. 826 (2011).............................................................................................................. 15

*Fuk Lin Pau v. Jian Le Chen*,
   No. 14 Civ. 841, 2015 WL 8490907
   (D. Conn. Dec. 10, 2015).................................................................................................... 15

*Garcia v. Tyson Foods, Inc.*,
   No. No. 06-2198-JTM, 2012 WL 5985561 (D. Kan. Nov. 29, 2012) ..................................... 38

*Gonzalez v. Scalinatella, Inc.*,
   112 F. Supp. 3d 5 (S.D.N.Y. 2015) ....................................................................................... 37

**TABLE OF AUTHORITIES**
(continued)

*Good Nite Inn Mgmt., Inc. v. Ahmed*,
No. A129488, 2011 WL 2565257
(Cal. Ct. App. June 29, 2011) ................................................................ 33

*Gusman v. Unisys Corp.*,
986 F.2d 1146 (7th Cir. 1993) ............................................................... 18

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ..................................................................... 39

*Hensley v. Eckerhart*,
461 U.S. 424, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983).......................... 16, 17

*Holyfield v. F.P. Quinn & Co.*,
No. 90 C 507, 1991 WL 65928
(N.D. Ill. Apr. 22, 1991) ........................................................................ 38

*Howe v. Hoffman-Curtis Partners Ltd., LLP*,
215 F. App'x 341 (5th Cir. 2007) .......................................................... 38

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........ 23

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)....... 23

*In re Wash. Public Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................. 27

*Jacob v. Duane Reade, Inc.*,
No. 11 Civ. 160, 2017 WL 1968383 (S.D.N.Y. May 5, 2017).............. 34

*James v. Wash Depot Holdings, Inc.*,
489 F. Supp. 2d 1341 (S.D. Fla. 2007) ................................................. 38

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ........................................................... passim

*Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*,
706 F.2d 1205 (11th Cir. 1983), *modified by Gaines v. Dougherty Cty. Bd. of Educ.*,
775 F.2d 1565 (11th Cir. 1985) .............................................................. 28

*Kahlil v. Original Old Homestead Rest., Inc.*,
657 F. Supp. 2d 470 (S.D.N.Y. 2009) ............................................... 16, 24

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
No. 15 Civ. 1113, 2016 WL 6542707
(D. Conn. Nov. 3, 2016) ......................................................................... 36

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) ..................................................................... 32, 33

*Lavatec Laundry Tech. GmbH v. Voss Laundry Sols.*,
No. 13 Civ. 56, 2018 WL 2426655
(D. Conn. Jan. 9, 2018).......................................................................... 20

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998)............................................................... 28, 39

*Lewis v. Triborough Bridge & Tunnel Auth.*,
No. 97 Civ. 0607, 2001 WL 1898318 (S.D.N.Y. Aug. 6, 2001) ........... 39

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Lindell v. Synthes USA*,
   No. 11 Civ. 2053, 2017 WL 6417209
   (E.D. Cal. Jan. 9, 2017) ................................................................ 34

*Lopes v. Brazilian Travel Serv., Ltd.*,
   No. 17 Civ. 820, 2017 WL 10311218
   (D. Conn. Sept. 26, 2017) ............................................................. 15

*Lucio-Cantu v. Vela*,
   239 F. App'x 866 (5th Cir. 2007) .................................................. 38

*M.D. v. N.Y. City Dep't of Educ.*,
   No. 17 Civ. 2417, 2018 WL 4386086 (S.D.N.Y. Sept. 14, 2018) .......... 25

*MacDermid Printing Sol., LLC v. Cortron Corp.*,
   No. 08 Civ. 1649, 2015 WL 575139
   (D. Conn. Feb. 11, 2015) .............................................................. 32

*Magnuson v. Newman*,
   No. 10 Civ. 6211, 2014 WL 3767006 (S.D.N.Y. July 31, 2014) ........... 19

*Mangold v. California Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ........................................................ 33

*Mo. v. Jenkins*,
   491 U.S. 274 (1989) ..................................................................... 28

*Moran v. Sasso*,
   No. 05 Civ. 4716, 2009 WL 1940785  (E.D.N.Y. July 2, 2009) ........... 36

*Nunez v. Francis Deli Grocery*,
   No. 13 Civ. 4894, 2015 WL 1963630 (S.D.N.Y. Apr. 30, 2015) .......... 19

*Olorode v. Streamingedge, Inc.*,
   No. 11 Civ. 6934, 2014 WL 1689039 (S.D.N.Y. Apr. 29, 2014), *report & recommendation
   adopted*, 2014 WL 3974581 (S.D.N.Y. Aug. 13, 2014) ....................... 26

*Paris v. Metro. Life Ins. Co.*,
   94 F. Supp. 356 (S.D.N.Y. 1950) .................................................. 27

*Pellegrino v. Robert Half Internat., Inc.*,
   182 Cal. App. 4th 278, 106 Cal. Rptr. 3d 265 (2010) ....................... 33

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ................................................. 25, 32, 34, 35

*Pfeifer v. Wawa, Inc.*,
   No. 16 Civ. 497, 2018 WL 4203880
   (E.D. Pa. Aug. 31, 2018) .............................................................. 25

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
   818 F.2d 278 (2d Cir. 1987) ......................................................... 39

*Reiter v. Metro. Transp. Auth. of N.Y.*,
   No. 01 Civ. 2762, 2004 WL 2072369 (S.D.N.Y. Sept. 10, 2004) ......... 19

*Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992), *certified question
   withdrawn*, 984 F.2d 69 (2d Cir. 1993) ........................................... 33

*Rodriguez v. Cty. of Los Angeles*,
   96 F. Supp. 3d 1012 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) ...... 32, 33

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Roussel v. Brinker Int'l, Inc.*,
No. 05 Civ. 3733, 2010 WL 1881898
(S.D. Tex. Jan. 13, 2010) .................................................................................... 37

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527 (S.D.N.Y. 2008) ............................................................... 19

*Seigal v. Merrick*,
619 F.2d 160 (2d Cir. 1980) ............................................................................... 14

*Serricchio v. Wachovia Sec., LLC*,
706 F. Supp. 2d 237 (D. Conn. 2010), *aff'd on other grounds*, 658 F.3d 169 (2d Cir. 2011).. 22

*Torres v. Gristede's Operating Corp.*,
519 F. App'x 1 (2d Cir. 2013) ........................................................................... 24

*Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*,
No. 10 Civ. 60, 2012 WL 4092515
(D. Conn. Sept. 17, 2012) ........................................................................... 16, 32

*United States ex rel. Rai v. KS2 TX, P.C.*,
No. 17 Civ. 834, 2019 WL 1397290
(D. Conn. Mar. 27, 2019) .................................................................................... 20

*Wales v. Jack M. Berry, Inc.*,
192 F. Supp. 2d 1313 (M.D. Fla. 2001) ............................................................ 38

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ................................................................................. 36

*Wells Fargo Bank, NA v. Konover*,
No. 05 Civ. 1924, 2014 WL 3908596 (D. Conn. Aug. 8, 2014), *aff'd sub nom.*
630 F. App'x 46 (2d Cir. 2015) ......................................................................... 32

*Williams v. Metro-N. R.R. Co.*,
No. 17 Civ. 3847, 2018 WL 3370678 (S.D.N.Y. June 28, 2018) ...................... 25

*Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*,
599 F. Supp. 509 (S.D.N.Y. 1984) .................................................................... 29

*Wong v. Yoo*, No. 04 Civ. 4569, 2010 WL 4137532 (E.D.N.Y. Oct. 19, 2010),
*aff'd sub nom. Wong v. Mangone*,
450 F. App'x 27 (2d Cir. 2011) ......................................................................... 13

*Young v. Cooper Cameron Corp.*,
586 F.3d 201 (2d Cir. 2009) ......................................................................... 15, 39

## STATUTES

28 U.S.C. § 1961 ................................................................................................... 35
29 U.S.C. § 216(b) ................................................................................................ 15
Cal. Civ. Proc. Code § 685.010 ........................................................................... 35
Cal. Civ. Proc. Code § 685.020 ........................................................................... 35
Cal. Lab. Code § 218.5 ......................................................................................... 15
Conn. Gen. Stat. § 31-68 ...................................................................................... 15
Conn. Gen. Stat. § 31-72 ...................................................................................... 15
Conn. Gen. Stat. § 37-3a ...................................................................................... 35

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**OTHER AUTHORITIES**

*Jackson Lewis Earns Powerhouse Rankings in BTI Litigation Outlook 2017*, Jackson Lewis
(Sept. 22, 2016)......................................................................................................... 23

**REGULATIONS**

29 C.F.R. § 541.400 ........................................................................................................ 26

## I.     **INTRODUCTION**

Having secured $18,755,016.46 in damages for 911 System Administrators ("SAs") in a nationwide FLSA collective and two state-law classes after five years of litigation, Feinberg, Jackson, Worthman & Wasow, LLP ("FJWW"), Outten & Golden LLP ("O&G"), Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), and Susman, Duffy & Segaloff, P.C. (collectively, "Class Counsel") respectfully ask that the Court award Class Counsel attorneys' fees of $13,620,852.71 and reimburse $535,201.54 in out-of-pocket costs (the "Requested Fee").  As prevailing parties, Plaintiffs are entitled to fees and costs under the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"); Conn. Gen. Stat. § 31-68 and § 31-72; and Cal. Lab. Code § 218.5. The only question is how much should be awarded.  Class Counsel's Requested Fee is reasonable and justified.  It is based on Class Counsel's customary billing rates, reduced in certain respects to account for billing judgment and rate of success, with enhancements to account for the degree of success in this case and for certain unwarranted delays caused by CSC.

This is precisely the sort of case where a significant but reasonable fee award is appropriate to ensure that attorneys are not dissuaded from representing workers, even in the face of zealous resistance, the constant pressures of proceeding for years without payment for their time, and significant out-of-pocket costs.  The work done here, while substantial, was efficient, appropriate, and necessary to overcome CSC's vigorous defense and secure a victory for the class members.  That victory could not have been achieved without the unique combination of industry experience, class action expertise, litigation and trial skills, and nationwide coverage that Class Counsel brought to bear.

The requested fee does not account for time that Class Counsel will spend defending the victory on appeal, representing the class, and continuing to attempt to settle with CSC.  Yet it is

far cheaper than the cost of over 900 individual lawsuits litigated one by one – the outcome CSC
has repeatedly requested.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     CSC's Scorched-Earth Defense

CSC litigated this case vigorously over the course of five years, as the docket in this case
reflects.  That defense required Class Counsel to work harder, increasing costs and time
expended, to reach a successful outcome for the class members.

#### 1.     Plaintiffs' Counsel Conducted Carefully Targeted Discovery.

To succeed here, Class Counsel leveraged their unique experience in this specific niche—
having litigated ten large class/collective actions asserting overtime misclassification claims for
computer technical support workers, including *Giannetto v. CSC*.  *See* Declaration of Jahan C.
Sagafi In Support of Class Counsel's Motion for Attorneys' Fees and Costs ("Sagafi Decl.")
¶¶ 15.a., 38; Declaration of Todd Jackson In Support of Class Counsel's Motion for Attorneys'
Fees and Costs ("Jackson Decl.") ¶ 14.  They did so by focusing discovery on key factual issues
in an attempt to define the contours of the classes appropriately.  To that end, a few days after the
parties' initial 26(f) conference in 2014, Plaintiffs sent CSC a "road map" to prioritize discovery.
*See* ECF No. 154 at 3; 154-1 (Apr. 26, 2014 Letter from J. Sagafi).  Plaintiffs focused on
"information related to where in the organization the collective members are situated[,]" i.e., data
about the job titling framework and SAs' job titles and roles.  ECF No. 99 (Mem. in Supp. of
Mot. to Compel) at 1, 6.  This approach helped narrow the proposed classes to ensure similarity
and commonality among SAs.  *See* Sagafi Decl. ¶ 39.

As part of this strategy, Plaintiffs pursued targeted depositions related to CSC's job-
titling system and testimony of corporate representatives who understood the titling process, the
job duties, and limitations on the discretion of putative class members.  Sagafi Decl. ¶ 40.  The

Court relied on this evidence in granting Plaintiffs' motions to certify the FLSA collective and state-law classes. *See* ECF Nos. 168 (Order Granting Mot. to Certify Class) at 5-8; 327 (Order Granting Mot. to Certify State Law Classes) at 4, 47 ("CSC's carefully thought-out job descriptions and titling system, along with the testimony of its corporate representatives, go a long way to establishing commonality") (citing testimony of Heidi Josephson). This targeted discovery was key to Plaintiffs' successful certification motions and to their victory at trial, where Ms. Josephson's testimony about the design of the job-titling process, SA job descriptions, SA job duties, and CSC's overtime classification decision were a core part of Plaintiffs' case-in-chief. *See* Trial Tr. at 210-269.

### 2.    CSC Filed Unsuccessful Early Motions and Obstructed Discovery.

CSC's aggressive defense was evident from the outset. In October 2014, CSC unsuccessfully moved to transfer venue to its home state of Virginia. *See* ECF No. 95 (Motion to Transfer Venue); ECF No. 145 (Ruling Denying Motion to Transfer Venue). Simultaneously, CSC objected to producing job classification data that Plaintiffs sought for purposes of narrowing the class to conform to their investigation, requiring Plaintiffs to file a motion to compel, which the Court granted in part and denied in part. *See* ECF Nos. 98 (Motion to Compel Production of Documents); 127 (Ruling on Motion to Compel Production of Documents).

Three months later, CSC still had not produced those data. On April 1, 2015, after several months of discovery, Plaintiffs explained to the Court that "[w]e . . . want to focus on a specific job family and a specific job discipline to the extent possible, but we're still negotiating with CSC to get data that show us what that means." Sagafi Decl. Ex. L (Tr. of Apr. 1, 2015 Hrg.) 8:9-20 (describing further narrowing that Plaintiffs proposed). Plaintiffs' goal was to arrive at "a description of a type of person at CSC who's different from all the other types of technology workers and other kinds of workers at CSC." *Id.* at 13:2-12.

- 3 -

In response, CSC adopted a strategy of maximum obstruction and delay.  This forced Plaintiffs to seek Court intervention and take additional discovery.  For example, as Plaintiffs informed the Court in September 2015, Plaintiffs served a Rule 30(b)(6) deposition notice in August 2014 and promptly conferred with CSC about designating a witness.  *See* ECF No. 226.  But CSC did not designate a witness on any topic for five months and continued to plead an inability to designate witnesses on other topics for a further six months.  *Id*.  During that time, Plaintiffs probed CSC's counsel through meet-and-confer efforts and requests for information.  Document discovery was plagued by similar delay.  *Id*. at 4-7.  The Court took note of these "inappropriate discovery practices" in ordering a limited discovery extension for Magistrate Judge Margolis "to set a definitive schedule" to complete discovery.  *See* ECF No. 239.

In response to CSC's refusal to identify relevant corporate witnesses, Plaintiffs noticed a series of fact witnesses identified from CSC documents, interviews, research on CSC decisionmakers, prior depositions, and class member interviews, moving from one witness to the next until a witness with the relevant knowledge was identified.  *See* Sagafi Decl. ¶¶ 41-43.  The Court relied on this evidence in granting Class Certification.  *See* ECF No. 327 (Order Granting Mot. to Certify State Law Classes) at 8.  Although this method was less efficient, requiring more work and delay than if CSC had simply disclosed the relevant witnesses in the first instance, CSC's obstruction left Plaintiffs no choice.

This pattern drove a significant amount of the 4,621 hours that Class Counsel recorded during the principal period of class certification discovery; Class Counsel spent approximately 868 hours on discovery-related tasks such as meeting and conferring with CSC orally and in writing to identify deficiencies in CSC's productions, and charting new strategies to circumvent the roadblocks that CSC placed in their path.  *See* Sagafi Decl. ¶ 44, Ex. I.

**3.      CSC Sought Broad, Time-Intensive Individualized Discovery That It Did Not Use at Trial.**

In addition to denying Plaintiffs discovery that would have aided them in narrowing the class, the second prong of CSC's defense strategy was to seek the maximum amount of discovery possible from opt-in Plaintiffs, most of it which was never used at trial.[1] CSC sought individualized discovery from a broad swath of the FLSA collective, and in December 2014, moved to compel responses from all 70 plaintiffs who had joined the case to date. *See* ECF No. 120.  Judge Margolis, partially granting and partially denying CSC's motion, adopted Plaintiffs' proposal to limit discovery to a sample of the collective, leaving the parties to negotiate the scope of that sample as the collective grew. *See* ECF No. 138 at 7.

After Section 216(b) notice was granted, ECF No. 168, the contours of the collective took shape, and CSC continued this strategy.  In May 2015, CSC requested extremely broad discovery, seeking to depose the class representatives, any declarants supporting Plaintiffs' efforts (of whom there were 24 at the time), and "up to 100 additional Opt-in Plaintiffs." *See* ECF No. 191 at 2.  Plaintiffs proposed a more limited sliding-scale approach that would allow a total of 40 depositions.  ECF No. 192.  Judge Margolis adopted a sliding-scale approach, allowing CSC up to 60 depositions in addition to the named Plaintiffs.  ECF No. 171.  CSC filed objections to this order, ECF No. 173, which the Court overruled, finding it "abundantly clear" that Judge

---

[1] The longer-term effect of CSC's strategy of obstructing Plaintiffs' discovery while maximizing their own was to limit the common evidence available to Plaintiffs, forcing them to rely more heavily on class member testimony.  For example, CSC opposed production of Master Services Agreements ("MSAs") between CSC and its clients, arguing that they were irrelevant because they did not describe SAs' job duties, whereas the resumes and LinkedIn profiles that CSC sought did state those duties. *See* ECF No. 232 at 2.  Because CSC only produced MSAs from six CSC clients (not including the clients for which most of the trial witnesses worked), at trial, Plaintiffs were forced to introduce evidence about ticketing systems, response times, and client expectations through SA witnesses. *See, e.g.,* Trial Tr. at 411:6-412:22 (testimony of Vernon Carre, describing how his response deadlines related to customer requirements contained in contracts).  Plaintiffs' need to rely on this evidence fueled CSC's arguments that the case should be decertified because "Plaintiffs primarily relied upon individualized class member testimony." ECF No. 447-1 at 4 (Memo. in Supp. of Mot. to Decertify).

Margolis's order was not in error, but instead "reasonable and appropriately reflective of the proportionality requirement for discovery."  ECF No. 289.

Despite this order, CSC made a further push, requesting documents from 30% of the collective, or 314 individuals.  *See* ECF No. 245 at 5.  Judge Margolis held that CSC was entitled to receive a specific array of relevant documents for 12.5% of the collective, or 131 individuals, which was roughly consistent with Plaintiffs' counter-proposal.  *See* ECF Nos. 245 at 6, 256 ¶ 7. Judge Margolis also adopted Plaintiffs' proposal, *see* ECF No. 245 at 7-8, to cluster the depositions by time and location for the sake of efficiency, finding that this reflected "simple common sense, and courtesy," and noting that "[i]t is distressing . . . that counsel could not agree on this obvious and basic concept."  ECF No. 256 ¶ 8, n.1.

In the end, CSC took 37 of the 60 depositions it was allowed.  *See* Sagafi Decl. ¶ 51. During the May 2015 to April 2016 period, these depositions required approximately 1,710 hours of work by Class Counsel.  *See* Sagafi Decl. Ex. I.  CSC used only three of those depositions at trial.  *Id.*  ¶ 52.  Although CSC cited the remaining depositions in opposing class certification – forcing Plaintiffs to do extensive work to review and rebut those citations, *id.* – a review of these citations led the Court to conclude that:

> . . . the evidence proffered by Defendants regarding individual Associate Professional and Professional SAs does not undermine or contradict the common proof in ways relevant to the exemption analysis. Rather, it confirms that the two job categories are appropriately grouped together in one sub-class and that the actual job duties inferable from the job descriptions, with the exception of descriptions involving coordination or management, align with the actual job duties as described by individual SAs.

ECF No. 327 at 52.

### 4.    <u>Plaintiffs Defeated CSC's Three Unsuccessful Motions to Decertify.</u>

CSC filed three motions to decertify the classes and collective during this litigation, all of which were denied.  In the first, ECF No. 343, CSC focused on the adequacy of Plaintiff Strauch

as a class representative.  The Court found these arguments "unfounded" and "unsupported in the text of Rule 23," and held that "there [wa]s no merit to Defendant's argument[.]"  ECF No. 358 at 9-10.  In the second motion, CSC attacked Plaintiffs' supposed "failure to propose a viable trial plan," ECF No. 373 at 5, but the Court denied the motion because its arguments did "not provide[] the Court with any controlling precedent[,]" were based on a "misplaced" view of the need for a trial plan, and ultimately were found to be "without merit."  ECF No. 412 at 5, 8.  CSC's final decertification motion, ECF No. 447, came after trial, and raised "substantially similar legal arguments . . . . that the Court ha[d] already considered and rejected[.]"  ECF No. 476 (Ruling on Post-Trial Motions).  Although these arguments were unsuccessful, they required Plaintiffs to do substantial work to oppose them.  In the six months before trial, Class Counsel spent approximately 389 hours researching and responding to motions filed by CSC that were largely unrelated to the trial itself.  *See* Sagafi Decl. Ex. I.

### B.   **Plaintiffs Prevailed on Core Issues in the Litigation.**

As noted above, Plaintiffs succeeded in certifying a nationwide FLSA collective and two state-law classes.  They did so despite CSC's partially successful efforts to obstruct discovery about subgroupings within the class.  Plaintiffs' motion achieved certification of a broad class of SAs who performed "a wide variety of different tasks," but which were "uniformly of a type such that a finder of fact could determine on a classwide basis whether [they were] exempt or non-exempt."  ECF No. 327 at 50 (Order Granting Class Cert.).

CSC sought interlocutory review of this order.  On July 14, 2017, CSC filed a petition pursuant to Fed. R. Civ. P. 23(f) seeking Second Circuit review.  *See* Sagafi Decl. ¶ 53.  The petition was denied on November 21, 2017, but required Plaintiffs to spend substantial time on a brief opposing the petition, during a time when the parties were focused on preparing the case for trial.  *Id.*

C.      **The Risky Nature of the Litigation Remained Evident Through Trial.**

The two-week trial of this case began in December 2017.  During the three months before trial, the parties were unable to agree on a joint pretrial memorandum, instead filing competing memos about the scope of the proceeding.  Plaintiffs (correctly) predicted that the trial would last approximately ten days.  *See* ECF No. 347 at 6.  CSC predicted it would last 25-30 days, *see* ECF No. 354 at 2, and listed 69 witnesses, ECF No. 354-1, only seven of whom it actually called at trial (three by live testimony, four by deposition), causing Class Counsel to spend countless hours preparing to cross examine dozens of witnesses who were never called.  Sagafi Decl. ¶ 54.  Similarly, CSC submitted a 19-page exhibit list, including 700 exhibits, despite ultimately using only a handful, forcing class counsel to prepare for the use and rebuttal of all of those documents.  ECF No. 354-2; *see* Sagafi Decl. ¶ 54.  CSC's pretrial memo forced Plaintiffs to do additional work to prepare for the lengthy and elaborate trial that CSC threatened, as reflected in the 3,433 hours Class Counsel spent preparing for trial between June and December of 2017.  *Id*. Ex. I.  Simultaneously, both parties were filing and opposing motions *in limine*, objecting to proposed jury instructions, and preparing their respective cases for trial.  *Id*. ¶ 54.

The month before trial was an especially intensely litigated portion of the case.  Although this time period spans just over a month, the 2,777 hours worked are approximately 500 hours more than the time spent during the 7-month period of pre-216(b) discovery that lasted from September 2014 to April 2015.  *See* Sagafi Decl. Ex. I.  At trial, Class Counsel called ten Plaintiff witnesses.  To prepare, Class Counsel held multiple calls with each witness in the months before trial, and at least two in-person preparation sessions of roughly 3-4 hours per witness just prior to their testimony to discuss what to expect on direct and cross examination, to understand their role, and to respond to their questions about the consequences of testifying.  *Id*. ¶ 55.  Class Counsel were also required to review dozens of documents for each witness to

- 8 -

prepare them.  *Id*.  Witnesses' travel and work schedules and the necessities of trial dictated a compressed window of seven days before and during trial for Class Counsel to spend over 60 hours on this intense client preparation.  *Id*. ¶ 56.  Simultaneously, Plaintiffs worked carefully and intensively on their opening statement and the lengthy – but effective – cross-examinations of Heidi Josephson and Timothy Bartl.  *Id*. ¶ 57.  In addition, the parties continued to brief jury instructions and dispositive motions during the trial itself.  *See* ECF Nos. 424, 426, 427, 429, 433, 435, 441.  Multiple attorneys had to be available, actively engaged, and coordinated to capably accomplish this array of activities.  Sagafi Decl. ¶ 57.  As noted above, Counsel also prepared cross-examinations for witnesses CSC listed, but did not call, including two witnesses CSC had listed the day before but cancelled on the last day of trial, after Class Counsel spent dozens of hours preparing comprehensive cross-examinations.  Jackson Decl. ¶ 27.

**D.**    **CSC's Resistance to Correcting Its Flawed Data Took 19 Months to Remedy.**

Following the December 2017 verdict, the damages phase consumed nearly 19 months due to CSC's continued obstruction.[2]  Plaintiffs filed multiple briefs addressing legal issues and the methodology for calculating damages based on data CSC had produced.  ECF Nos. 448-49, 452-53, 455-56, 459-61, 465-68.  In November 2018, the Court ruled on the legal issues and set a status conference to discuss a process for resolving outstanding data issues.  These included inferences in Plaintiffs' damages calculations due to deficiencies in CSC's data that CSC had declined to address by meeting and conferring.  ECF Nos. 453 at 2, 479; Jackson Decl. ¶ 29.

In their January 2019 status report, CSC conceded for the first time that the timekeeping data it had produced was inaccurate.[3]  ECF No. 484 at 3-5.  CSC's proposed remedy was to

---

[2] During this time, CSC also filed an unsuccessful Motion for Judgment as a Matter of Law and a third unsuccessful Motion to Decertify the classes and collective.  ECF Nos. 446, 447, 476.

[3] CSC included a single line in its February 16, 2018 Submission of Overtime Damages informing the Court that it was "investigating some SAs who have unusually high damage

assume that every erroneous time entry it identified should be changed from the existing number to an arbitrary 8.05 hours (i.e., 3 minutes of overtime). *Id.* at 3.

The Court rightly rejected this approach, ordering CSC to retrieve the original timekeeping data, free from "the 'anomalies'" of "the data [CSC] previously produced" and to produce sufficiently detailed data. ECF No. 487. In light of CSC's past errors, the Court directed Plaintiffs to retain a forensic data expert, paid for by CSC, to "audit" the process and ensure completeness and accuracy. *Id.* The Court appointed D. Charles Stohler as Special Master to oversee the process. ECF No. 491.

The Court set a 60-day deadline to complete the data extraction. *Id.* Because CSC insisted on producing data piecemeal, and opposed Plaintiffs' request that the full data set be extracted at the beginning to compile a definitive class list and avoid confusion, this process took approximately four months. ECF Nos. 502, 503; Jackson Decl. ¶ 31. CSC's stance that timekeeping data should be extracted only for the 262 class members with errors it had identified required Plaintiffs and their expert to show why CSC's proposed approach was inadequate and would result in damages calculations based on data still rife with errors, omissions, and uncertainty. *Id.* As a result of this unnecessarily adversarial process, the data were, as Plaintiffs proposed, comprehensively re-extracted. *Id.* This allowed the parties to finally present a joint damages calculation that was approximately $11.1 million higher than CSC's original calculations. *See* ECF No. 452 at 3 (CSC's Submission of Overtime Damages Calculations). Reaching this result required nearly 1,597 hours of time by Class Counsel, in addition to time

---

*Footnote continued from previous page*

awards to determine if there is any reason for these anomalies . . . ." ECF No. 452 at 3. CSC did not provide further information or explanation regarding this issue until nearly one year later in its January 16, 2019 status report. ECF No. 484 at 3-5.

spent by CSC data personnel, forensic experts, and the Special Master.  Jackson Decl. ¶ 31;

Sagafi Decl. Ex. I.

       E.      **Settlement Opportunities Were Limited.**

      CSC's approach to litigating this case left Plaintiffs with few opportunities to achieve an

earlier and less costly recovery for the class by way of settlement.  On March 6, 2014,

approximately four months before filing the action, Plaintiffs wrote CSC to express a hope of

"reaching an early resolution of these claims before a great deal of time and expense is incurred,"

and encouraging CSC "to avoid costly litigation."  Sagafi Decl. Ex. K (March 6, 2014 letter from

J. Sagafi to W. Deckelman, CSC's General Counsel).  Plaintiffs received no response.  *Id.* ¶ 60.

After filing the lawsuit, Plaintiffs periodically approached CSC to repeat their interest in

settlement discussions, to no avail.  *Id.* ¶¶ 61-65.  In summer of 2015, Class Counsel proposed

mediation to CSC.  *Id.* ¶ 61.  Plaintiffs proposed various mediators to CSC with various dates.  *Id.*

CSC agreed to mediate with Hunter R. Hughes III of Atlanta, Georgia, in Washington, D.C.

(near its suburban Virginia headquarters) on December 8, 2015.  *Id.*  Although no settlement was

reached, during the first half of 2016, Plaintiffs pressed CSC for additional information to assist

in negotiations, and the parties exchanged settlement demands and offers.  *Id.* ¶¶ 61-62.  The

case did not settle, despite Class Counsel's 164 hours of settlement efforts from May 2015 to

April 2016.  *Id.* ¶ 62; Ex. I.

      During May 2017, Class Counsel spent significant effort exploring additional mediators

in an attempt to break the settlement logjam.  *Id.* ¶ 63.  In their July 2017 status report, Plaintiffs

noted: "Plaintiffs are willing to attend a mediation with CSC at any date in July or August."

ECF No. 333 at 1.[4]  Class Counsel repeatedly pressed CSC to agree to mediation throughout the

---

[4] In the days leading up to that filing, Plaintiffs had provided CSC with the text of a joint status report including the statement, "The parties propose a deadline of _____ for their next

leadup to trial in the summer and fall of 2017.  Sagafi Decl. ¶ 64.  In October, CSC agreed to a November 7, 2017 mediation with Mr. Hughes.  *Id.* ¶ 65.  CSC then proposed that the mediation be postponed to allow them to better understand data issues, so the parties moved the mediation to November 21, 2017; at the same time, CSC proposed to delay the start of trial.  *Id.*  Two business days before the November 21 mediation, CSC canceled the mediation, and the parties went to trial.  *Id.*

Plaintiffs continued to pursue settlement after the trial verdict.  In April 2019, Class Counsel approached CSC again about mediation.  *Id.* ¶ 66.  The parties agreed to mediate with Mr. Hughes in Atlanta on May 29, 2019.  *Id.*  Plaintiffs proposed exchanging mediation briefs; CSC declined.  *Id.*  In the ensuing months, Plaintiffs have continued to contact CSC in an effort to keep settlement discussions alive, with limited success, spending over 190 hours pursuing settlement since trial.  *Id.* ¶ 67; Ex. I.  Plaintiffs remain open to settlement discussions.

### F.      Class Counsel Have Continued to Ably Represent the Class.

Class Counsel have continued to represent the Class diligently.  Since the December 2017 trial, Class Counsel have spent dozens of hours regularly updating their clients about the status of the case and its post-trial proceedings and responding to their inquiries.  Sagafi Decl. ¶ 69.  Although the Class members have shown enormous patience throughout this period, Class Counsel have received over 230 communications from their clients seeking more information about the case and when they can hope to see a recovery.  *Id.*  Class Counsel's work on behalf of the Class will continue through CSC's anticipated appeal.  *Id.* ¶ 70.

---

*Footnote continued from previous page*
mediation session and propose using _____ as the mediator," but CSC would not agree to choose a mediator or set a mediation date then.  Sagafi Decl. ¶ 63.

G.     **Class Counsel's Proposed Fee Adjustments.**

In preparing this fee application, Class Counsel have undertaken a thorough audit of their time entries on this matter, eliminating entries in the exercise of billing discretion or with insufficient detail, *see* Sagafi Decl. ¶ 77.a., Declaration of Daniel M. Hutchinson In Support of Class Counsel's Motion for Attorneys' Fees and Costs ("Hutchinson Decl.") ¶¶ 140-41, and propose that their Total Lodestar of $10,682,429.50 be further reduced as follows.

First, consistent with Second Circuit practice, Class Counsel have reduced all travel time by 50%. *See, e.g.*, *Wong v. Yoo*, No. 04 Civ. 4569, 2010 WL 4137532, at *2 (E.D.N.Y. Oct. 19, 2010), *aff'd sub nom. Wong v. Mangone*, 450 F. App'x 27 (2d Cir. 2011).

Second, Class Counsel have eliminated all entries by timekeepers who billed fewer than 10 hours total, even though those attorneys and staff have contributed meaningfully to the case by lending expertise that enabled efficient use of case resources, providing legal insight, stepping in to assist with filings, consulting on discrete topics such as electronic discovery, and other assistance. *See* Sagafi Decl. ¶ 77.a. This cooperative work was often necessary when specialized skill or knowledge was helpful or when other team members were unavailable (e.g., due to conflicting assignments, parental leave, or other obligations). *Id.* Nevertheless, in an abundance of caution, this time has been removed.[5]

Third, Class Counsel have eliminated time spent on depositions of Senior Professional SAs, who are not members of the ultimately certified FLSA collective and state-law classes. *See* Sagafi Decl. ¶ 77.b. Discovery about Senior Professionals was quite helpful, allowing Plaintiffs to present argument at trial about individuals who held multiple titles during their employment and to contrast the responsibilities of more senior SAs with those of the class members. *See* Trial Tr. at 980:5-13 (testimony that Patricia Smith was a Senior Professional SA); 1254:7-

---

[5] This reduction has not been applied to time billed by Susman, Duffy & Segaloff, P.C.

1256:18 (distinguishing class members from more senior SAs, including Senior Professionals).

Moreover, at the start of the case, the inclusion of Senior Professionals in the proposed class

represented a reasonable litigation decision, the type of decision courts have recognized and

compensated in evaluating fee applications:

> Lawyers . . . must evaluate, accept and prosecute suits on the basis of the entire
> spectrum of theories that show early promise of vindicating their clients' rights.
> Every lawyer, indeed every judge, has pursued blind alleys that initially seemed
> reasonable or even professionally obligatory.  To reward only the pursuit of a
> successful theory . . . undercompensates the inevitable exploratory phases of
> litigation, and may also invite overly conservative tactics or even prohibit some
> high-risk but deserving actions entirely.

*Seigal v. Merrick*, 619 F.2d 160, 164–65 (2d Cir. 1980).  Nevertheless, Plaintiffs have eliminated

all time entries related to depositions of those opt-ins who worked solely as Senior Professional

SAs throughout the entirety of their employment with CSC.[6]  *See* Sagafi Decl. ¶ 77.e.

These three adjustments, taken together, amount to a decreased lodestar of

$10,166,864.00 (the "Reduced Lodestar"), reduced from Class Counsel's Total Lodestar of

$10,682,429.50.

Additionally, although, as described above, Class Counsel were careful to be both

efficient and effective in prosecuting the case, they recognize that courts sometimes make across-

the-board reductions in large, long-term litigation, especially where individual scrutiny of

thousands of time entries by the court is not feasible or appropriate.  Such an across-the-board

cut could address a variety of concerns courts have expressed, including possible inefficiency or

duplication of work or the difficulty of parsing how time was spent from moment to moment

because of the limited information inherent in time entries and imperfection in the entries

themselves (e.g., block billing or insufficient detail).  Should the Court deem such an across-the-

---

[6] These individuals are Margaret Victor; Jason Nice; Dick Worden; Scott Schneeberg; and
Brandon Kettler.

board cut more appropriate than auditing 21,000+ time entries in the guise of a "green-eyeshade accountant[,]" *Fox v. Vice*, 563 U.S. 826, 838 (2011), the Court might choose a cut of 7%, as the court in *Allende v. Unitech Design, Inc.*, No. 10 Civ. 4256, 2011 WL 891445 (S.D.N.Y. Mar. 15, 2011), did.  *See id.* at \*4 (reducing requested fee award in wage and hour case by 7% and collecting cases with similar reductions between 5 and 10%).

## III.   ARGUMENT

### A.   Federal and State Law Require Reasonable Attorneys' Fees and Costs for the Prevailing Party.

The FLSA "directs courts to award prevailing plaintiffs reasonable attorney's fees and costs."  *Fuk Lin Pau v. Jian Le Chen*, No. 14 Civ. 841, 2015 WL 8490907, at \*1 (D. Conn. Dec. 10, 2015) (Arterton, J.); *see also* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to . . . plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 208 (2d Cir. 2009).  Likewise, Connecticut and California law require an award of reasonable attorneys' fees and costs.  Connecticut law provides:

> If any employee is paid by his or her employer less than the minimum fair wage or overtime wage to which he or she is entitled . . . he or she shall recover, in a civil action . . . costs and such reasonable attorney's fees as may be allowed by the court . . . .

Conn. Gen. Stat. § 31-68 and § 31-72; *see also Lopes v. Brazilian Travel Serv., Ltd.*, No. 17 Civ. 820, 2017 WL 10311218, at \*3 (D. Conn. Sept. 26, 2017) (considering provision for attorney fees and costs under both the FLSA and Connecticut General Statutes); Cal. Lab. Code § 218.5 ("In any action brought for the nonpayment of wages, . . . the court shall award reasonable attorney's fees and costs to the prevailing party. . . .").[7]

---

[7] A prevailing plaintiff may also recover attorney's fees and costs for prosecuting or defending appeals. *See Young*, 586 F.3d at 208. The rationale behind these provisions is to provide "[a]dequate compensation for attorneys who protect wage and hour rights," which "furthers the

A plaintiff prevails "if [she] succeed[s] on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983); *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (applying *Hensley* standard to FLSA claim).  Where a plaintiff obtains "some relief" in the form of "an enforceable judgment against the defendant" such that there is a "material alteration of the legal relationship of the parties," the plaintiff has prevailed.  *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992). That is the case where, as here, "a plaintiff obtains an enforceable judgment on the merits . . . requiring some action by a defendant such as payment of damages, or some specific performance, or the termination of some conduct." *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 79 (2d Cir. 2004) (internal quotations and citations omitted).

The Court "has discretion in determining the amount of a fee award" as the "request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.  To calculate a fee award, district courts in the Second Circuit take a four-step approach: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multipl[y] the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award" based on "case-specific factors." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 10 Civ. 60, 2012 WL 4092515, at *1 (D. Conn. Sept. 17, 2012) (Arterton, J.) (quoting *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010)).

---

*Footnote continued from previous page*
remedial purposes of the FLSA." *Aros v. United Rentals, Inc.*, No. 10 Civ. 73, 2012 WL 3060470, at *4 (D. Conn. July 26, 2012).

B.      **Class Counsel Obtained Exceptional Results.**

The results obtained are generally considered the most important factor in determining an appropriate fee. *Hensley*, 461 U.S. at 434-35; *Farrar*, 506 U.S. at 114. Here, Class Counsel successfully certified a collective and two classes of over 900 members, and obtained a unanimous jury verdict against CSC and a finding that it willfully misclassified the class members. ECF No. 442 (Dec. 20, 2017 Jury Verdict) at 3. They prevailed in establishing that overtime should be based on a 40-hour workweek and "time-and-a-half" damages (as opposed to half-time under a "fluctuating workweek" model). ECF No. 479 (Ruling on Remedies) at 2-7. And over the course of more than a year, they engaged in an extended process, with the aid of a Special Master, to extract accurate damages data that ensured that the class members would be appropriately compensated. *See* ECF No. 514 (Ruling on Report and Recommendation of Special Master).

Unlike most wage cases, which settle for a fraction of the class's damages, Class Counsel here obtained a full recovery of over $18.7 million after years of litigation. Courts regularly award fees above Class Counsel's request when the proportional recovery for the class is nowhere near the recovery achieved here. *See, e.g.,* Sagafi Decl. Ex. M (*Roseman v. Bloomberg L.P.*, No. 14 Civ. 2657, ECF Nos. 540; 533 at 22; 337 at 8 (S.D.N.Y.) (court approved settlement reached mid-trial that representing 34% of what Class Counsel considered "Plaintiffs' best reasonable outcome" and granted fees over three times counsel's lodestar).

As discussed further in Section III.C. below, the risks Class Counsel overcame to reach this result were substantial and required a major investment of resources, both in terms of time and out-of-pocket costs that counsel advanced. The fees requested by Class Counsel should reflect that success and investment, to incentivize other counsel to pursue similar results.

C.      **Class Counsel's Rates Are Reasonable.**

Class Counsel's Reduced Lodestar of $10,166,864.00 is based on Class Counsel's

customary rates, which are routinely paid by clients in this District and elsewhere, and are

reasonable given that Class Counsel are among a very small number of firms that have

successfully tried complex wage and hour cases to verdict.  Determining the "presumptively

reasonable fee" requires considering "the rate a paying client would be willing to pay."  *Arbor*

*Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*,

522 F.3d 182, 190 (2d Cir. 2008).  This analysis must consider the rates that are customary in the

district (the "forum rule"), but may account for the likelihood that a reasonable client would have

sought counsel from outside the district, which would permit a deviation from the forum rule.  *Id.*

at 190-91.  Additionally, Courts evaluate the reasonableness of the rate using a range of case-

specific variables known as the *Johnson* factors, and by relying on their own "experience as

lawyers within their districts."  *See id.* at 188, 190, 194 (citing *Johnson v. Ga. Highway Express,*

*Inc.*, 488 F.2d 714 (5th Cir. 1974)).  These considerations all weigh in favor of adopting Class

Counsel's customary rates here.

1.      **Connecticut Clients Routinely Pay Class Counsel's Hourly Rates.**

Counsel in contingent cases should recover fees at the rates they actually charge paying

clients.  *See Arbor Hill*, 522 F.3d at 184.  The rates Class Counsel actually charge in this District

are the best evidence of what the market will bear, as compared to a "rate devised by the court"

because "[l]awyers do not come from cookie cutters . . . . Clients are willing to pay more, per

hour, for . . . better lawyers . . . .  Markets recognize these truths; judges must too."  *Gusman v.*

*Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) (Easterbrook, J.); *see also Rozell v. Ross-*

*Holst*, 576 F. Supp. 2d 527, 545 (S.D.N.Y. 2008) ("[T]he range of rates that plaintiff's counsel actually charge their clients . . . is obviously strong evidence of what the market will bear.").[8]

In this district, clients regularly pay Class Counsel's customary hourly rates. These include sophisticated clients who are well positioned to negotiate a competitive fee structure. For example, after a competitive bidding process, the State of Connecticut, Office of the Treasurer, chose LCHB to serve as Asset Recovery Counsel in matters in which the Connecticut Retirement Plans and Trust Funds may have a claim. *See* Hutchinson Decl. ¶¶ 49-52; Ex. B (State of Conn., Office of the Treasurer, Req. for Proposals (Apr. 5, 2016)); Ex. C (Prof. Empl. Agreement). The State of Connecticut approved hourly rates starting at $240 for support staff up to $800 for LCHB partners. *Id.*, Ex. C at § 3.1.

O&G, which is based in New York, has a robust employment law practice representing paying clients who reside and work in Connecticut. From 2018 through August 2019, O&G represented over 75 Connecticut clients who agreed to pay O&G's customary rates out of pocket, on a non-contingent basis. *See* Sagafi Decl. ¶ 9.

O&G's, LCHB's, and FJWW's rates are consistent. *See* Sagafi Decl. Ex. N. Class Counsel's hourly rates are therefore either consistent with the rates charged in this District, or they actually *are* the rates charged in this District.

## 2.    Plaintiffs Acted Reasonably in Hiring Out-of-District Counsel.

Although Class Counsel have been paid their customary rates in this District, courts have found that prevailing fees in the District of Connecticut are generally lower than the rates in the

---

[8] *See also Nunez v. Francis Deli Grocery*, No. 13 Civ. 4894, 2015 WL 1963630, at *7 (S.D.N.Y. Apr. 30, 2015) (attorney's customary hourly rate among factors to be considered in determining lodestar, quoting *Arbor Hill*); *Bazignan v. Team Castle Hill Corp.*, No. 13 Civ. 8382, 2015 WL 1000034, at *4 (S.D.N.Y. Mar. 5, 2015) (same); *Magnuson v. Newman*, No. 10 Civ. 6211, 2014 WL 3767006, at *1 (S.D.N.Y. July 31, 2014) (same); *Reiter v. Metro. Transp. Auth. of N.Y.*, No. 01 Civ. 2762, 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004) ("the amount actually paid . . . by paying clients is compelling evidence of a reasonable market rate").

districts where Class Counsel have their offices.  *See Lavatec Laundry Tech. GmbH v. Voss Laundry Sols.*, No. 13 Civ. 56, 2018 WL 2426655, at *16 (D. Conn. Jan. 9, 2018) (reducing fees of New York City-based firm by 10%); *Benjamin v. Oxford Health Ins., Inc.*, 355 F. Supp. 3d 131, 143 (D. Conn. 2019) (recognizing variance in rates between Connecticut and California). Nevertheless, to the extent prevailing rates in Connecticut for other attorneys are lower than the rates Plaintiffs request here, it is appropriate to adopt Class Counsel's rates because, "given the breadth and complexity of this case, a reasonable, paying client would likely hire national counsel experienced in the type of investigation and litigation implicated here."  *United States ex rel. Rai v. KS2 TX, P.C.*, No. 17 Civ. 834, 2019 WL 1397290, at *5 (D. Conn. Mar. 27, 2019) (Arterton, J.) (awarding out-of-district rates).

    Although there are many qualified practitioners of wage and hour law in this District and elsewhere, very few have the experience, expertise, and size to effectively prosecute large, national hybrid class/collective actions requiring a large outlay of up-front costs.  Even fewer have the ability and resources to carry those cases through trial.  Fewer still have actually tried multiple cases to verdict, as Class Counsel have.  Sagafi Decl. ¶¶ 20, 24; Jackson Decl. ¶¶ 13, 16. Moreover, this case involved Plaintiffs and class members spread around the country, as well as California and court state law issues.  Class counsel were also uniquely situated to achieve success in this case, given their unparalleled experience litigating 11 other computer technical support worker class actions in the past two decades.

    By working together, Class Counsel could incur substantial out-of-pocket costs of $535,201.54 and counting, and proceed unpaid for half a decade without the temptation to agree to an unreasonably weak settlement due to financial strain.  *See* Sagafi Decl. ¶ 8.  Plaintiffs made a reasonable decision in retaining the most experienced lawyers in the country to challenge the

exempt classification of technical support workers – lawyers who had (a) a nationwide presence at the highest level, (b) a proven track record of success in high-stakes litigation, (c) experience litigating against their employer, (d) multiple class action trial victories, and (e) the size and resources to weather a long fight.  Thus, Plaintiffs' selection, though outside the Connecticut legal market, was reasonable and should be honored.  *See Davis v. Eastman Kodak Co.*, 758 F. Supp. 2d 190, 198-99 (W.D.N.Y. 2010) ("there were no lawyers or law firms within the Western District possessing requisite expertise and resources who could have prosecuted a nationwide [902-member] employment discrimination case as complex and demanding as this . . . . [T]he Court recognizes that such collaboration [among multiple firms] may reflect the reality of large employment discrimination class actions where because of the great risk involved, multiple firms work together to spread that risk") (internal quotation marks omitted).

Even among employment firms with relevant experience, few have taken an overtime misclassification class action to trial.  Plaintiffs are aware of only a handful of class or collective action wage and hour jury trials that were prosecuted to a verdict in the last ten years.  Sagafi Decl. ¶ 36.  Of these, none involved the computer employee exemptions, and none were prosecuted by firms based in this District.

### 3.     The Johnson Factors Support Class Counsel's Hourly Rates.

Courts may consider "*all* of the case-specific variables that [may be] relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including the following factors enunciated in *Johnson v. Ga. Highway Express, Inc.*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "'undesirability'" of the case; (11) the nature and

length of the professional relationship with the client; and (12) awards in similar
cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19.  These factors support Class

Counsel's requested rates here.

> ### a.   The Time and Skill Needed to Prosecute This Case Were Substantial (*Johnson* Factors 1-3).

As described in Section II above, this case required substantial time and skill to prosecute.

Counsel's contemporaneous billing records document this work.  The difficulty of this work is

exemplified by the fact that the computer employee exemptions at issue are rarely litigated and

that Class Counsel have been at the forefront of that litigation in ten prior cases over the past two

decades.  *Cf. Serricchio v. Wachovia Sec., LLC*, 706 F. Supp. 2d 237, 255 (D. Conn. 2010)

(Arterton, J.) ("the novelty and complexity of this matter as the first USERRA case to be tried in

the District" supported fee award), *aff'd on other grounds*, 658 F.3d 169 (2d Cir. 2011).

Class Counsel demonstrated their skill as class action litigators in moving for and

maintaining class and collective certification in the face of three motions to decertify.  They

pursued discovery in a strategic, targeted fashion and overcame stiff resistance to certify the

classes and collective.  Here, certifying the state-law classes was particularly complex because it

involved four separate exemptions (computer employee, administrative, learned professional,

and combination) under federal law and two state laws for hundreds of workers around the

country in two job titles.  These complex factual and legal issues consumed over 90 pages of

briefing, *see* ECF Nos. 303, 309, 314, nearly two hours of oral argument, *see* ECF No. 326, and

led to a 58-page order carefully considering the parties' arguments and evidence.  *See* ECF

No. 327.  Most importantly, after a class was certified, Class Counsel were uniquely qualified to

distill the complex legal claims and the enormous factual record needed to prove those claims

into a trial strategy that succeeded in convincing a jury of lay persons that CSC had willfully

misclassified lower-level technical workers.  This required the ability to cut through the complex-sounding work done by class members to communicate to a jury how SAs performed repetitive work with little discretion to deviate from set procedures.  Class Counsel were uniquely qualified as some of the only firms that have the combination of industry knowledge, class action expertise, and trial experience to successfully navigate that challenge.

The quality of opposing counsel is also important in evaluating the quality of the services rendered by Class Counsel, and here, opposing counsel were formidable.  *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  CSC has been vigorously represented by two nationally respected law firms, Jackson Lewis (a firm with a successful history of opposing employment class actions[9]) and Proskauer Rose (a firm with employment and appellate expertise, which has appeared on CSC's behalf in its pending appeal).  Jackson Lewis's co-chair, William Anthony of Albany, New York, personally served as lead trial counsel for CSC, and his team included 15 attorneys who have entered appearances from offices in California, New Jersey, Illinois, Massachusetts, New York, and Connecticut.  As such, the ability of Class Counsel to obtain favorable results against such capable (and numerous) adversaries further underscores the quality of Class Counsel's work.  *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006).

Though CSC had the right to defend this case tenaciously, that choice is a factor in evaluating the reasonableness of Class Counsel's fees.  *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("[A defendant] cannot litigate tenaciously and then be heard to complain

---

[9] *See Jackson Lewis Earns Powerhouse Rankings in BTI Litigation Outlook 2017*, Jackson Lewis (Sept. 22, 2016), https://www.jacksonlewis.com/news/jackson-lewis-earns-powerhouse-rankings-bti-litigation-outlook-2017 (Jackson Lewis named as "Powerhouse" firm in BTI Litigation Outlook for sixth consecutive year and recognized as a "Standout" in Complex Employment Litigation).

about the time necessarily spent by the plaintiff in response.") (quoting *Copeland v. Marshall*,
651 F.2d 880, 904 (D.C. Cir. 1980)); *Torres v. Gristede's Operating Corp*., 519 F. App'x 1, 4-5
(2d Cir. 2013) (court did not err in finding plaintiffs' attorneys' fees reasonable in light of
defendant's "vigorous approach to litigating th[e] case") (internal quotation marks omitted);
*Barbour v. City of White Plains*, No. 07 Civ. 3014, 2011 WL 2022884, at *7 (S.D.N.Y. May 24,
2011) ("Defendants could have avoided liability for the bulk of the attorney's fees . . . by making
a reasonable settlement offer in a timely manner") (quoting *City of Riverside*, 477 U.S. at 580
n.11) (internal quotation marks omitted); *Kahlil v. Original Old Homestead Rest.*, *Inc.*, 657 F.
Supp. 2d 470, 478 (S.D.N.Y. 2009) (refusing to reduce fees where "opposing counsel wage[d] a
tenacious defense which expand[ed] the time required to pursue even straightforward claims").
While it was certainly CSC's right to litigate aggressively, the natural consequence of exercising
that right is that, having now lost the case, CSC is liable for the fees Class Counsel reasonably
incurred as a result.  As explained at length above, CSC's decisions to pursue broad discovery, to
vigorously resist Class Counsel's discovery, to move for decertification and judgment
notwithstanding the verdict multiple times, and to disclose a huge number of witnesses and
documents it intended to rely on in a purportedly six-week trial all caused Class Counsel to
expend thousands of hours of attorney time to prosecute this case.

> **b.     Class Counsel Have Experience and the Proven Ability to Successfully
> Prosecute Complex Class Actions (*Johnson* Factors 4-5, 9, and 12).**

As discussed in Section III.C.1. above, Class Counsel's customary rates reflect their
professional reputation as effective trial, complex class action, and employment lawyers.  Their
qualifications and experience are presented in detail in Class Counsel's declarations.  Plaintiffs'
lead trial counsel, Darnley Stewart and Todd Jackson, have a combined 49 years of legal
experience, with the majority of that experience in employment and other complex litigation.

*See* Sagafi Decl. ¶ 20; Jackson Decl. ¶ 5.  The remainder of the team brings enormous class

action experience, trial experience, and credentials that mark them as among the best counsel in

the country.  *See* Sagafi Decl. ¶¶ 10-33; Jackson Decl. ¶¶ 4-13; Hutchinson Decl. ¶¶ 6-24

(detailing team's credentials and experience).

     Because of this reputation, Class Counsel's services are in high demand, and they have

no shortage of work from paying clients.  *See* Sagafi Decl. ¶ 72; Jackson Decl. ¶ 35; Hutchinson

Decl. ¶¶ 36-37.  Working on a long-term contingent case like this one thus came at an

opportunity cost.  Courts recognize this reality in deciding fee rates in contingent cases.  *See*

*M.D. v. N.Y. City Dep't of Educ.*, No. 17 Civ. 2417, 2018 WL 4386086, at *4 (S.D.N.Y. Sept. 14,

2018) (recognizing that "the market rate foregone by an hour spent on a given task" strongly

supports a fee award "sufficient to induce a capable attorney to undertake the representation of a

meritorious civil rights case") (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552

(2010)) (internal quotation marks and emphasis omitted).

     Courts that have closely scrutinized the work of Class Counsel have awarded rates at or

close to their customary rates.  *See Williams v. Metro-N. R.R. Co.*, No. 17 Civ. 3847, 2018 WL

3370678, at *5, *8 (S.D.N.Y. June 28, 2018) (awarding O&G attorneys' fees at rates between

$275 and $800 per hour and noting, "Plaintiff's counsel are of the highest quality"); *Pfeifer v.

Wawa, Inc.*, No. 16 Civ. 497, 2018 WL 4203880 (KHP), at *12-14 (E.D. Pa. Aug. 31, 2018)

(ERISA class action settlement in which Court approved rates from $235 to $910 per hour for

FJWW attorneys after thorough review of briefing on the reasonableness of the requested fees);

Hutchinson Decl. ¶¶ 53.a.-mm.

     **c.**    **Class Counsel Obtained an Excellent Result in the Face of Significant Risk (*Johnson* Factors 6, 8, 10).**

As described in Section II above, Class Counsel obtained the best possible outcome – a recovery of over $18.75 million, including liquidated damages and damages calculated at 1.5x Plaintiffs' hourly rate – for their clients.  They did so in the face of enormous risk because they undertook the representation on a contingency-fee basis, with high risks of not prevailing or not obtaining classwide relief.  Only a year before the Court certified the state-law classes in this case, a California district court denied Rule 23 class certification in *Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457 (N.D. Cal. 2016), a computer employee case involving similar facts and a "Job Architecture Policy" similar to CSC's.  The *Benedict* plaintiffs did not proceed, recovering nothing.  *See* Sagafi Decl. ¶ 34.  CSC cited *Benedict* extensively in opposing class certification. *See* ECF No. 309 (Def.'s Opp. to Mot. for Rule 23 Class Cert.) at 21, 24, 29-34, 36, 38, 40.

The computer employee exemption is a particularly difficult defense for plaintiffs to overcome.  It requires understanding job duties and interpreting regulatory terms (*e.g.*, "Computer systems analysts, computer programmers, software engineers or other similarly skilled workers," "systems analysis techniques and procedures," "hardware, software or system functional specifications," "machine operating systems," *see* 29 C.F.R. § 541.400) that sound technical and specialized, making them difficult to explain to a jury.  Courts have granted summary judgment to employers in such cases.  *See, e.g.*, *Olorode v. Streamingedge, Inc.*, No. 11 Civ. 6934, 2014 WL 1689039, at *1 (S.D.N.Y. Apr. 29, 2014), *report & recommendation adopted*, 2014 WL 3974581 (S.D.N.Y. Aug. 13, 2014); *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400, 2010 WL 1379778, at *1 (S.D.N.Y. Mar. 26, 2010); *Bobadilla v. MDRC*, No. 03 Civ. 9217, 2005 WL 2044938, at *9 (S.D.N.Y. Aug. 24, 2005).  These risk factors made this case a particularly unattractive contingency prospect, given the resources it demanded.

Courts have long recognized that the public interest is served by rewarding attorneys who assume such risks on a contingent basis.  Indeed, "[c]ontingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose."  *In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *see also Paris v. Metro. Life Ins. Co.*, 94 F. Supp. 356, 358 (S.D.N.Y. 1950) ("The fact that petitioners' compensation was contingent upon recovery must be taken into account").  As the Second Circuit has observed:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).

### d.      Client-Specific Factors Support Class Counsel's Fee Award (*Johnson* Factors 7 and 11).

Class action plaintiffs, and Class Counsel's professional obligations to the class, impose burdens on Class Counsel that are not present in non-class cases.  Not only does Class Counsel owe a fiduciary duty to the class, but the time pressure of completing discovery and presenting a trial on behalf of hundreds of class member clients add complexity and discovery burdens not present in individual cases.  In addition to the added litigation and discovery requirements, Class Counsel have to communicate with, travel to, and respond to clients all over the United States.  Class Counsel receive regular inquiries about the case from class members throughout the course of every litigation, and this one was no exception.  *See* Sagafi Decl. ¶ 69.  Class Counsel, with class members' interest in a timely resolution of the case in mind, pressed for an accelerated trial schedule once the class in this case was certified, in the hope of reaching a resolution for their

clients, who had already waited for years to be paid for their overtime hours.  *See* Nov. 9, 2017 Tr. at 60:4-10 (Ms. Stewart, arguing in opposition to motion to stay: "[W]e're ready to try the case, and it's time.  It's been three years, and there's no reason not to go forward.").

Class Counsel were particularly well suited to prosecute this action, because of their extensive experience prosecuting complex employment class and collective actions, including ten class actions on behalf of technical support workers and one against CSC.  Sagafi Decl. ¶ 38. Two of the lead lawyers on the *Strauch* team, Todd Jackson and Jahan Sagafi, were heavily involved in the earlier case against CSC, having reviewed extensive document productions, participated in Rule 30(b)(6) deposition-style interviews with CSC corporate representatives, interviewed many class members, and reviewed detailed data.  *Id*.; Jackson Decl. ¶ 14.  In addition, during that litigation, Class Counsel interviewed hundreds of potential class members, obtaining over seventy declarations.  Sagafi Decl. ¶ 39.  That unique factual expertise allowed Class Counsel to prosecute this action in an efficient and successful manner.  *Id*.

### 4.   <u>Current Rates Are Appropriate.</u>

Courts in the Second Circuit typically award rates charged by counsel at the time of the fee petition (as opposed to historic rates at the time the work was done) to account for the time value of money.  *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment").  Using historical rates, by contrast, "may convert an otherwise reasonable fee into an unreasonably low one."  *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1210 (11th Cir. 1983), *modified by Gaines v. Dougherty Cty. Bd. of Educ.*, 775 F.2d 1565 (11th Cir. 1985); *see also Mo. v. Jenkins*, 491 U.S. 274, 283-84 (1989) (using current rates).

**D.      Class Counsel's Lodestar Reflects Their Efficient Prosecution of this Case.**

The hours Class Counsel have billed reflect their efficient prosecution of the case.  As discussed above, Class Counsel took steps to focus their discovery efforts – relying on their factual expertise drawn from ten other technical support worker overtime misclassification class actions, including *Giannetto* – to identify a narrow class, and pursued merits discovery that they presented at trial.  Because of this expertise in the legal and factual issues inherent in this litigation, Class Counsel were able to hit the ground running, avoiding hundreds of hours of additional work that might have otherwise been required.  Sagafi Decl. ¶ 39.

Class Counsel also took appropriate steps to avoid duplication of effort, including use of conference calls and email to communicate and form strategy, sharing databases and discovery technology, and using in-person meetings only when necessary.  Sagafi Decl. ¶ 37.  This led to greater efficiency; rather than have an ongoing game of "telephone" where the same strategic and factual matters were discussed multiple times to cascade a message to everyone on the team then send feedback up the chain, the process of gathering information, making decisions, and communicating assignments was done on efficiently run conference calls.  *Id*.  Courts recognize that in large-scale litigation, such meetings are "essential for planning strategy, eliciting testimony or evaluating facts or law."  *Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984).  Time spent on such internal conferences should be compensable, because, "[i]n complex litigation[,] multiple attorneys will often be required to work together[.]"  *Fendi Adele S.r.l. v. Ashley Reed Trading, Inc*., No. 06 Civ. 243, 2011 WL 13257268, at *6 (S.D.N.Y. May 16, 2011), *report & recommendation adopted in pertinent part*, 2011 WL 3176795 (S.D.N.Y. June 30, 2011), *aff'd in pertinent part*, 507 F. App'x 26 (2d Cir. 2013).  That is particularly true for employment litigation, because workers' rights law firms

tend to be smaller than corporate firms (a few dozen lawyers as opposed to hundreds), making it

common for plaintiffs' firms to work together in large cases like this one.

Class Counsel used this planning time effectively to ensure that the most efficient number

of team members was assigned to any given task and to duplicate efforts as little as possible.

Sagafi Decl. ¶ 37.  With respect to the post-trial phase and the appeals, a more limited team

pursued the specialized and data-driven work required to ensure that Class Members received the

full value of their damages.  Jackson Decl. ¶ 31.

In allocating that work among the team, Class Counsel assigned work to the timekeeper

with the lowest billing rate who could capably do the job.  This is reflected in how different

levels of timekeeper spent their time, as shown below:

| Lodestar, by Seniority of Timekeeper | | | | |
|---|---|---|---|---|
| Category[10] | Partners | Non-Partner Attorneys | Staff | Total |
| **Investigation, Research, Correspondence** | 259 | 1,249 | 1,338 | **2,847** |
| **Discovery** | 334 | 937 | 547 | **1,817** |
| **Depositions** | 295 | 1,427 | 509 | **2,232** |
| **Document Review** | 21 | 497 | 115 | **633** |
| **Researching/Drafting Pleadings and Motions** | 638 | 2,096 | 932 | **3,666** |
| **Litigation Strategy, Case Management** | 187 | 446 | 558 | **1,191** |
| **Court Conferences and Appearances** | 130 | 84 | 19 | **233** |
| **Settlement Negotiations, Mediation** | 205 | 218 | 24 | **446** |
| **Travel** | 253 | 339 | 65 | **657** |
| **Special Master/Damages** | 943 | 679 | 37 | **1,659** |
| **Trial** | 2,013 | 1,740 | 1,474 | **5,226** |
| **TOTAL** | **5,278** | **9,712** | **5,617** | **20,607** |

---

[10] Class Counsel have made their best effort to categorize each of their detailed time entries
consistently among these categories.  This process requires certain judgment calls in
categorization, and some slight variation may exist as a result.  *See* Sagafi Decl. ¶ 80.

This allocation of work shows that each category of timekeeper spent their efforts on the tasks best suited to their experience and training.  Partners, for example, spent the greatest portion of their time on the trial and the data-intensive, specialized Special Master process, and relatively little time on tasks such as document review.  More junior attorneys performed the greatest share of the work overall, predominantly researching and drafting pleadings and motions; defending and taking depositions; fact investigation and correspondence with class members; and other discovery-related tasks (as well as trial).  And non-attorney staff spent the greatest share of their time on investigation and correspondence with class members; researching and assisting with pleadings and motions; and assisting with trial.  This was an efficient allocation of work that kept fees at the lowest level consistent with sound billing judgment.

While Plaintiffs did not win every battle in this case, they won the trial and most of the battles that preceded it.  Class Counsel respectfully submit that all of the hours that they have spent on this case were reasonable and necessarily incurred as part of Class Counsel's zealous and vigorous representation of the Class.  As the Ninth Circuit stated:

> Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war.  Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning.

*Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1053 (9th Cir. 1991).

### E.    An Upward Fee Adjustment Is Reasonable and Appropriate Under Both State and Federal Law.

Because Plaintiffs prevailed on both federal and state claims, a modest upward adjustment of Class Counsel's "presumptively reasonable fee" is appropriate under both state and federal law.  In determining fee awards for California statutory claims, courts consider several factors to determine whether a lodestar multiplier is appropriate, including (1) "the novelty and difficulty of the questions involved," (2) counsel's skill, (3) whether "the nature of

the litigation precluded other employment," and (4) contingency of the fee award.  *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014), *aff'd,* 891 F.3d 776 (9th Cir. 2018) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001)) (applying a 2.0 multiplier to Plaintiffs' lodestar in fee-shifting case).  Similarly, under Connecticut law, courts may apply a multiplier to the lodestar after considering various factors, including the *Johnson* factors. *MacDermid Printing Sol., LLC v. Cortron Corp.*, No. 08 Civ. 1649, 2015 WL 575139, at *1 (D. Conn. Feb. 11, 2015); *Wells Fargo Bank, NA v. Konover*, No. 05 Civ. 1924, 2014 WL 3908596, at *5 (D. Conn. Aug. 8, 2014), *aff'd sub nom.* 630 F. App'x 46 (2d Cir. 2015).  Under federal law, an upward adjustment is also available to account for "unanticipated delay . . . unjustifiably caused by the defense."  *Perdue*, 559 U.S. at 556; *see also Tyco Healthcare Grp.*, 2012 WL 4092515, at *1 (Arterton, J.) (noting it is "within the court's discretion to adjust the [fee] amount upward or downward based on the case-specific factors").

In light of this authority, Plaintiffs request that the Court apply a 1.5x multiplier to the portion of their fees attributable to work performed for the benefit of the state law class members. Because 440 of the 911 class members (48.3%) had California or Connecticut claims, *see* Sagafi Decl. ¶ 81, Plaintiffs request a 1.5x multiplier for that portion of the fee.  Separately, as described in Section III.E.2. below, Plaintiffs request a 10% per-year enhancement based on federal law.  If the Court awards the requested state-law enhancement, the federal enhancement would apply to the remaining portion of the Reduced Lodestar (e.g., the remaining 51.7%).[11]  This would result in a total Requested Fee of $13,620,852.71 if CSC pays fees on January 1, 2020.

---

[11] In the alternative, if the Court declines to award a multiplier under state law, the analysis described in Section III.E.2. below should apply equally to the full amount of the lodestar, to treat work done on state-law claims on par with federal claims.

1.    **A Fee Enhancement of 1.5x Lodestar Is Appropriate Under California and Connecticut State Law.**

Because calculation of attorney's fees concerns a "substantive state right," district courts apply state law to calculate fees on state-law claims. *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (holding that California law controls the method of calculating attorney's fees; multiplier awarded despite the fact that it was unavailable under federal law).[12]

Applying the *Ketchum* or *Johnson* factors, a 1.5x enhancement is reasonable here on the portion of Class Counsel's Reduced Lodestar that is attributable to work done for the California and Connecticut classes (i.e., 48.3% of the total). As described in Section III above, Plaintiffs achieved an exceptional result in this nationwide hybrid FLSA/Rule 23 overtime misclassification class action. Plaintiffs benefitted from Class Counsel's unique combination of class litigation, trial, industry, and defendant-specific expertise. Class Counsel accepted significant risk by representing these workers on a contingency basis, which precluded other endeavors and created significant risk of non-payment, *see* Sagafi Decl. ¶¶ 34, 72; and Class Counsel achieved a full recovery. These factors weigh in favor of an enhancement. *See Mangold*, 67 F.3d at 1478 (applying 2.0x multiplier).[13]

---

[12] *See also Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992), *certified question withdrawn,* 984 F.2d 69 (2d Cir. 1993) (applying state law in calculating attorneys' fees); *Cotton v. Slone*, 4 F.3d 176, 180–81 (2d Cir. 1993) (state statute controls attorney's fees where federal court has pendent jurisdiction).

[13] *See also Rodriguez*, 96 F. Supp. 3d at 1026 (same); *Britto v. Zep Inc.*, No. A141870, 2015 WL 5657147, at *17 (Cal. Ct. App. Sept. 25, 2015) (unpublished) (affirming 1.25 multiplier to lodestar in fee-shifting case); *Pellegrino v. Robert Half Internat., Inc.*, 182 Cal. App. 4th 278, 291, 106 Cal. Rptr. 3d 265, 273 (2010) (affirming trial court's 1.75 multiplier in wage and hour case under California Labor Code after trial); *Good Nite Inn Mgmt., Inc. v. Ahmed*, No. A129488, 2011 WL 2565257, at *12 (Cal. Ct. App. June 29, 2011) (affirming 1.5 multiplier in case concerning California Labor Code violations).

2.    **A Fee Enhancement Is Appropriate Under Federal Law.**

Alternatively, under federal law, an upward enhancement of the fee is merited when the fee analysis fails to "adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. Here, a fee enhancement is appropriate for two reasons, both recognized by the Supreme Court in *Perdue*.

First, this case required "an extraordinary outlay of expenses" over the course of litigation that was "exceptionally protracted." *Perdue*, 559 U.S. at 555. Class Counsel expended $535,201.54 in out-of-pocket expenses to prosecute this case. *See* Sagafi Decl. ¶ 75. This is far more than is typically spent in comparable cases. *See, e.g., Jacob v. Duane Reade, Inc*., No. 11 Civ. 160, 2017 WL 1968383, at *2 (S.D.N.Y. May 5, 2017) (FLSA misclassification case on behalf of 750 class members, settled after 6 years with $246,864.76 in costs (class size reflected at 2016 WL 3221148, at *4 (S.D.N.Y. June 9, 2016)); *Lindell v. Synthes USA*, No. 11 Civ. 2053, 2017 WL 6417209, at *2 (E.D. Cal. Jan. 9, 2017) (class action regarding unlawful wage deductions and failure to reimburse business expenses, settled after 5 years with $185,000 in costs); Sagafi Decl. ¶¶ 34-35 (citing additional comparator cases).[14]

Second, this case "involves exceptional delay in the payment of fees." *Perdue*, 559 U.S. at 556. Although, in the ordinary course, delay is accounted for by awarding fees at counsel's current rates, *see* Section III.C.4. above, a further enhancement is appropriate where there is "unanticipated delay, particularly where the delay is unjustifiably caused by the defense." *Id*. The unanticipated delay here does not simply stem from the fact that CSC resisted discovery or

---

[14] By taking Class Counsel's outlay of expenses into account as part of the enhancement analysis, the Court would not be awarding an enhancement "based on a factor that is subsumed in the lodestar calculation." *Perdue*, 559 U.S. at 553. As discussed in Section III.C.2. above, the fact that Class Counsel had the *capacity* to advance large sums on behalf of the class is a factor in evaluating whether it was reasonable for Plaintiffs to seek out-of-district representation. The fact that Class Counsel was actually *required* to make those outlays – in direct response to CSC's aggressive pursuit of individualized discovery – is a different matter, and supports an enhancement.

litigated this case aggressively, but from CSC's dilatory conduct during the damages phase. Nearly two years have elapsed since the jury verdict, because CSC produced flawed data after trial and refused to engage with Plaintiffs when they attempted to understand those flawed data, only to belatedly admit that the data were flawed and required additional work to be usable. Throughout the Special Master process, CSC resisted producing usable data, significantly prolonging and delaying the litigation.  CSC's unreasonable delay is highlighted by the fact that, at the end of the process, the parties agreed, to the penny, on the correct damages total derived from the data.  The entirety of the Special Master process could have been avoided if CSC had reasonably engaged with Plaintiffs when they first identified the data errors.  *See* ECF No. 453.

Fortunately, compensation for this delay lends itself to an enhancement that is "reasonable, objective, and capable of being reviewed on appeal."  *Perdue*, 559 U.S. at 555. Class Counsel respectfully request that the Court apply an upward adjustment of 10% – which is equivalent to California and Connecticut's statutory post-judgment interest rates, *see* Cal. Civ. Proc. Code §§ 685.010, 685.020; Conn. Gen. Stat. § 37-3a – for the period running from February 16, 2018 (the date on which Plaintiffs first raised the data issues with the Court, after attempting to confer about them with CSC) through the date on which CSC pays fees and costs. This award should be applied to Plaintiffs' costs, and to a portion of their Reduced Lodestar proportional to the percentage of recovering Plaintiffs who only have damages under federal law – *i.e.,* 51.7%.  This adjustment would place Class Counsel's recovery in a similar position to that of the Class, which will accrue post-judgment interest on their damages.

Alternatively, at minimum, Plaintiffs should be entitled to post-judgment interest on fees and costs pursuant to 28 U.S.C. § 1961, because "[c]ourts within the Second Circuit have considered judgments awarding attorneys' fees to constitute money judgments and have awarded

post-judgment interest on such awards." *Moran v. Sasso*, No. 05 Civ. 4716, 2009 WL 1940785, at *6 (E.D.N.Y. July 2, 2009).

>   **3.**     **Public Policy Supports Applying a Reasonable Fee Enhancement.**

Class Counsel's requested fee enhancement is modest when compared to fees awarded in settlements that achieved less than a 100% recovery, such as the majority of class settlements, which are often settled for half, one tenth, or an even smaller fraction of their full value. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."). In those less successful cases, "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013); *see also Amara v. Cigna Corp.*, No. 01 Civ. 2361 (JBA), 2018 WL 6242496, at *2 (D. Conn. Nov. 29, 2018) (Arterton, J.) (awarding requested percentage of the common fund equating to a multiplier of 4.75x); *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15 Civ. 1113, 2016 WL 6542707, at *17 (D. Conn. Nov. 3, 2016) (2.77x multiplier where fees were paid by defendant, rather than from common fund) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) ("multiplier of 3.5 . . . has been deemed reasonable")). A lesser award here would discourage attorneys from striving for a full recovery, decoupling the interests of class and counsel, contrary to the foundational concepts of fee jurisprudence.

>   **F.**     **Public Policy Favors Compensating Plaintiffs' Counsel Adequately.**

It is important to adequately compensate lawyers who take high-risk, contingent wage and hour cases like this one. The FLSA "is a uniquely protective statute" that relies on private enforcement. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015). The

FLSA's fee provisions were designed "to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements." *Estrella v. P.R. Painting Corp.*, 596 F. Supp. 2d 723, 727 (E.D.N.Y.), *aff'd*, 356 F. App'x 495 (2d Cir. 2009). Where the law relies on prosecution by "private attorneys general," attorneys who fill that role "must be adequately compensated for their efforts." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013). The FLSA's fee-shifting provisions serve that purpose "to encourage attorneys to represent rights victims even in small cases . . . ." *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 11 (S.D.N.Y. 2015) (internal quotations omitted).

For all of the reasons discussed above, it is important that Class Counsel be compensated fairly, not penalized, for their risk-taking, tenacity, and success in pursuing relief on behalf of the classes and collective. The FLSA's remedial purpose would be severely undermined if attorneys were disincentivized to pursue complex hybrid class actions.

### 1.    No "Proportionality" Concept Applies.

CSC may argue that the Court should reduce Class Counsel's Requested Fee because it comes close to the value of the damages awarded to the Plaintiffs. However, this would be contrary to law. It is "of no matter" that Class Counsel's Requested Fee is large in comparison to Plaintiffs' recovery. *Allende*, 2011 WL 891445, at *1. A fee award should not be compared to the damages awarded. *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 526 (2d Cir. 1991); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985) (reversing district court's decision to reduce lodestar figure due to low damages award). "[T]he unique nature of a claim under [the] FLSA renders attorneys' fee requests that exceed judgment awards by multiples not uncommon." *Roussel v. Brinker Int'l, Inc.*, No. 05 Civ. 3733, 2010 WL 1881898, at *11 (S.D. Tex. Jan. 13, 2010) (awarding attorneys' fees six times the amount of the judgment in a FLSA case).

Indeed, court-awarded attorneys' fees in FLSA cases often exceed client recoveries due

to the FLSA's remedial purpose.  As the Southern District of New York found in *Allende*:

> While the requested attorneys' fees exceed plaintiffs' own recovery in the case,
> that is of no matter.  In FLSA cases . . . the attorneys' fees need not be
> proportional to the damages plaintiffs recover, because the award of attorneys'
> fees in such cases encourages the vindication of Congressionally identified
> policies and rights.

*Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011); *see also Douglas v.*

*Spartan Demolition Co. LLC*, No. 15 Civ. 5126, 2018 WL 4521212, at *8 n.9 (S.D.N.Y. Sept. 21,

2018) ("The caselaw is clear, however, that a plaintiff's 'limited monetary recovery does not

preclude a substantial attorneys' fee award, for there is no requirement of proportionality.'")

(quoting *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 519-20 (S.D.N.Y. 2002))

(citing *Cabrera v. Schafer*, No. 12 Civ. 6323, 2017 WL 9512409 at *4 (E.D.N.Y. Feb 17, 2017)

("although the fee must be reasonable, it need not be proportional")).[15]

### G.    Plaintiffs Are Entitled to Recover Their Out-Of-Pocket Costs.

As prevailing parties, Plaintiffs are entitled to "reasonable out-of-pocket expenses

incurred by the attorney[s] and which are normally charged fee-paying clients."  *Reichman v.*

---

[15] *See also Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *1-2 (D. Kan. Nov. 29, 2012) (awarding over $3.2 million in fees on a jury verdict of $533,011 in a collective action); *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 342 (5th Cir. 2007) (affirming fees of $129,805.50 on $23,357.30 in damages); *Lucio-Cantu v. Vela*, 239 F. App'x 866 (5th Cir. 2007) (finding no abuse of discretion in award of $51,750 in fees on a recovery of $4,697); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1345, 1354 (S.D. Fla. 2007) (awarding fees of $114,021 on a judgment of $3,493.62); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1316 (M.D. Fla. 2001) (awarding fees of $352,225.40 on an FLSA recovery of $21,000); *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (affirming fees of $40,000 on a judgment of $7,680 for overtime compensation; courts have "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.") (internal citation omitted); *Holyfield v. F.P. Quinn & Co.*, No. 90 C 507, 1991 WL 65928, at *1-2 (N.D. Ill. Apr. 22, 1991) ($6,922.25 in fees and costs on a $921 judgment; "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of the judgment in the case"); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) (affirming an award of $9,250 in fees on a $1,181 judgment for overtime compensation); *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1468, 1473 (9th Cir. 1983) (affirming $100,000 in fees on a judgment of $18,455 in damages).

*Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation

marks and citations omitted); *see also LeBlanc-Sternberg*, 143 F.3d at 763 (abuse of discretion

not to award plaintiff reasonable out-of-pocket costs).  Plaintiffs' costs of $535,201.54 are

summarized in Class Counsel's declarations.  Sagafi Decl. ¶ 75.

The costs Plaintiffs seek are reasonable and of the type normally charged to fee-paying

clients.  *Id*.  They are also of the type routinely awarded by courts.  *See Febus v. Guardian First

Funding Grp., LLC*, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012) ("courier service charges, court

fees, court reporter fees, electronic research charges, one-half of the mediation expenses, PACER

charges, postage, teleconference charges, travel expenses, the costs of a FOIA request, and the

costs of publishing litigation notices" acceptable reimbursable costs); *Arbor Hill*, 369 F.3d at 98

("[I]n the context of a fee-shifting provision, the charges for such online research may properly

be included in a fee award"); *LeBlanc-Sternberg*, 143 F.3d at 763 (expenses such as

photocopying, telephone, computerized legal research recoverable); *Harris v. Marhoefer*, 24

F.3d 16, 19-20 (9th Cir. 1994) (award of costs in a Section 1983 action for service of summons

and complaint, postage, copying costs, hotel bills, meals, and messenger service, among other

items); *Lewis v. Triborough Bridge & Tunnel Auth.*, No. 97 Civ. 0607, 2001 WL 1898318, at

*10 (S.D.N.Y. Aug. 6, 2001) (awarding hotel and meal costs and court reporter fees in Title VII

and NYSHRL action).

H.     **Plaintiffs Are Entitled to Recover Their Fees and Costs When Additional
       Work Is Performed, Such as on Appeal.**

Plaintiffs may also recover attorney's fees and costs for future work to be performed,

including defending against CSC's forthcoming appeal.  *See Young*, 586 F.3d at 208 (FLSA's

fee- and cost-shifting provision "extends to [ ] appeal").  While Class Counsel do not seek fees

for work not yet incurred, they reserve the right to move for additional fees and costs as more

- 39 -

work is performed, including on CSC's appeal and in briefing CSC's responsibility for paying expert costs through the Special Master process.

> **I.**     **Plaintiffs Should Receive Reasonable Service Awards from the Class Damages to Compensate them for their Service to the Classes.**

By separate motion, Plaintiffs Timothy Colby, Joseph Strauch, Charles Turner, and Vernon Carre will request class representative service awards of $10,000 each in recognition of their service to the classes and the risks they undertook.  As further discussed in that motion, Class Counsel request that if the Court grants the request for service awards, the Court reduce the amount of fees awarded to Class Counsel by the total amount of the service awards.  This is intended to ensure that the class recovery is not decreased by virtue of the service awards.

## IV.    CONCLUSION

For all the foregoing reasons, Class Counsel respectfully submit that this Court should (1) award counsel fees in the amount of $13,620,852.71 for their work on behalf of Plaintiffs; and (2) reimburse Class Counsel's costs in the amount of $535,201.54.

Dated: September 18, 2019

Respectfully submitted,

By: /s/ *Daniel M. Hutchinson*
          Daniel M. Hutchinson

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
Michael N. Litrownik (ct28845)
Jared Goldman*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**FEINBERG JACKSON WORTHMAN & WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

*Attorneys for Plaintiffs, the Classes, and the Collective*

*admitted pro hac vice*