**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
Michael N. Litrownik (ct 28845)
Elizabeth V. Stork*
Jared Goldman *
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct 19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

*Attorneys for Plaintiffs and the Classes and
Collective*

**FEINBERG JACKSON WORTHMAN
& WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998

**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

*admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COMPUTER SCIENCES CORPORATION, <br><br> Defendant. | No.: 3:14-cv-956 (JBA) |

### PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND TO SUBMIT DETAILED TIME AND EXPENSE RECORDS UNDER SEAL

**INTRODUCTION**

Plaintiffs and their counsel ("Class Counsel") moved to (1) file their detailed time records under seal, and (2) limit Defendant Computer Sciences Corporation's ("CSC's") use of these records to litigation regarding Class Counsel's Post-Trial Motion for Attorneys' Fees and Costs ("Motion for Fees and Costs").  CSC's opposition is untimely and fails to comply with Local Rule 7(b)(1).  CSC filed its opposition seven days late, despite having three weeks to respond to a five-page motion.  It failed to explain its untimeliness, request an extension, or show good cause for its delay, as required by the Local Rules for the District of Connecticut.  *See* D. Conn. Civ. R. 7(b)(1).  Since CSC's untimely opposition violates Local Rule 7(b)(1), the Court should disregard it and grant Class Counsel's Motion for Protective Order and to Submit Detailed Time and Expense Records under Seal ("Motion to Seal and for Protective Order").

CSC's opposition also fails on the merits. CSC ignores the privileged information in Class Counsel's time records.  Class Counsel's extensive time records, however, reveal litigation strategy and the "specific nature of the services provided" throughout this five-year litigation. That is a clear and compelling reason to allow Class Counsel to file these records under seal. Sealing these time records, which represent a single exhibit to Class Counsel's extensive, publicly filed Motion for Fees and Costs, is narrowly tailored because the quantity of confidential information and the volume of the records make redactions impractical and burdensome.

For similar reasons, there is good cause to issue a protective order, as Class Counsel has requested.  Contrary to CSC's suggestion, Class Counsel do not seek a "blanket protective order" protecting *every* record Plaintiffs have disclosed.  Rather, Class Counsel seek to protect its litigation strategy by limiting CSC's use of its privileged time records for purposes of opposing its Motion for Fees and Costs.  To hold otherwise would give CSC unfettered access to Class Counsel's litigation strategy for any and all purposes, which would in turn allow CSC undue advantage in this pending action where it has filed a notice of appeal.

# ARGUMENT

## I.    CSC's Opposition Is Untimely and Fails to Comply with the Local Rules.

CSC's opposition is untimely, in contravention with the Local Rules for the District of Connecticut.  Under Local Rule 7(a)(2), "opposition memoranda shall be filed within twenty-one (21) days of the filing of the motion."  Plaintiffs filed their Motion to Seal and for Protective Order on September 18, 2019.  Pls.' Mot. for Protective Order and to Seal ("Pls.' Mot."), ECF No. 521.  Under the Local Rules, CSC's opposition was therefore due three weeks later, on October 9, 2019.  CSC, however, did not file its opposition until October 16, 2019, a week past the deadline. Def.'s Opp'n to Pls.' Mot. for Protective Order and to Seal ("Def.'s Opp'n"), ECF No. 531.

Nor did CSC explain its untimeliness, request an extension, or much less show good cause for its delay.  Local Rule 7(b)(1) requires that "[a]ll motions for extensions of time must be decided by a Judge and will not be granted except for good cause."  Good cause "requires a particularized showing that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension."  D. Conn. Civ. R. 7(b)(1).[1]  In this Circuit, courts have repeatedly held that "mere neglect, carelessness, or oversight is insufficient to the meet the 'good cause' standard."  *Feltzin v. Stone Equities, LLC*, No. CV 16-6457 (SJF) (AKT), 2018 WL 1115135, at *7 (E.D.N.Y. Feb. 8, 2018), *report and recommendation adopted,* No. CV 16-6457 (SJF) (AKT), 2018 WL 1114682 (E.D.N.Y. Feb. 26, 2018); *Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 CIV 4635, 2005 WL 1138470, at *2 (S.D.N.Y. May 12, 2005) ("To be sure, attorney neglect, carelessness, or oversight is not a sufficient basis for a court to amend a Scheduling Order[.]").

CSC has not, and cannot, show good cause for its failure to file an opposition within the time designated by the local rules.  CSC had twenty one days to oppose a five-page motion. CSC

---

[1] Because that is essentially the same definition of "good cause" under Federal Rule of Civil Procedure 12(b), cases applying the "good cause" requirement under that Rule are illustrative here. *See Corkrey v. Internal Revenue Serv.*, 192 F.R.D. 66, 67 (N.D.N.Y. 2000) (holding that to show "good cause" under Rule 12(b), a party must similarly "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension"); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (noting that a "finding of 'good cause' depends on the diligence of the moving party").

cannot make any colorable argument that this three-week deadline could not "reasonably be met despite [its] diligence." D. Conn. Civ. R. 7(b)(1). CSC's untimely motion can only be explained by "mere neglect, carelessness, or oversight." *Feltzin, LLC*, 2018 WL 1115135, at *8 (declining to consider opposition where party "failed to show good cause for [its] dilatory filing"). This is not a harmless technicality. "It is axiomatic that the Court has the authority to manage its docket by, among other things, setting and enforcing deadlines[,]" which serves the "all-encompassing rule that the court secure the just, speedy, and inexpensive determination of every action and proceeding." *Rose v. City of Waterbury*, No. 3:12CV291 VLB, 2013 WL 3967649, at *2 (D. Conn. July 31, 2013) (holding that party had not shown good cause for filing untimely amended complaint, twenty seven days after the deadline). Moreover, "[t]he Local Rules are not merely the hopes, dreams, or suggestions of this [C]ourt; they make up the framework within which cases are decided in this district." *Jackson v. First Niagara Bank, N.A.*, No. 3:16-CV-01479 (VAB), 2018 WL 3617939, at *2 (D. Conn. June 12, 2018) (denying motion for reconsideration filed twenty one days late, where motion "ma[de] no mention of this missed deadline and fails to demonstrate good cause for why the Court should accept Plaintiff's late filing").

For this reason, this Court should reject CSC's opposition and grant Class Counsel's Motion. *See Collins v. Blumenthal*, 581 F. Supp. 2d 289, 291 (D. Conn. 2008) (Arterton, J.) (rejecting as untimely a motion for consideration filed three days late, where "no 'good cause' for [the] delay [was] offered as required" by the local rules); *Freydl v. Meringolo*, No. 09 CIV. 07196 BSJKNF, 2011 WL 724674, at *1 (S.D.N.Y. Feb. 4, 2011) (considering motion unopposed where defendants filed untimely opposition sixteen days after it was due); *Vandever v. Murphy*, No. 3:09CV1752 AWT, 2012 WL 5507257, at *3 (D. Conn. Nov. 14, 2012) (denying motion for "lack of good cause shown" where party submitted untimely motion that did not address the good cause requirement under L.R. 7); *Brown v. Tuttle*, No. 3:13-cv-1444 (VAB), 2015 WL 4546092, at *2 (D. Conn. July 28, 2015) (denying a motion for reconsideration as untimely); *Edwards v. Arnone*, No. 3:11-cv-1537 (AVC), 2012 WL 879235, at *1 (D. Conn. Mar. 13, 2012) (same); *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 487 F. Supp. 2d 33, 39 (D. Conn. 2007) (Arterton, J.) (striking untimely expert report because the party did not seek

an extension, and did not articulate good cause for the delay). This Court should also consider

CSC's failure to submit an opposition "sufficient cause to grant [Class Counsel's] motion." D.

Conn. Civ. R. 7(a)(2).

## II.    There Is a Clear and Compelling Reason to File the Time Records and Expenses Under Seal.

Even if the Court were to consider CSC's untimely opposition, CSC's arguments still

fail. Class Counsel has established that their motion to seal a single exhibit to their Motion for

Costs and Fees is "supported by clear and compelling reasons and is narrowly tailored to serve

those reasons." D. Conn. Civ. R. 5(e)(3). While, as CSC argues, the public has an interest to

access judicial documents, Def.'s Opp'n at 2-3, CSC is a litigation adversary, not a member of

the general public. Moreover, even "[t]he public's right of access is not absolute." *CSL*

*Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-1897 (CSH), 2017 WL 4750701, at *1 (D.

Conn. July 12, 2017). The public's right of access may be "surmounted by a party's showing

that sealing the documents will further other substantial interests, such as to preserve higher

values." *Id.* As Plaintiffs have established, protecting attorney-client privilege and the work-

product doctrine represents one such "higher value." *See Travelers Indem. Co. v. Excalibur*

*Reinsurance Corp.*, No. 3:11-CV-1209 CSH, 2013 WL 4012772, at *6 (D. Conn. Aug. 5, 2013)

(finding that sealing document was supported by "clear and compelling reasons," including

attorney-client privilege); *The Diversified Grp., Inc. v. Daugerdas,* 217 F.R.D. 152, 160

(S.D.N.Y. 2003) (noting that preserving the confidentiality of attorney-client communication is

"precisely the kind of countervailing concern that is capable of overriding the general preference

for public access to judicial records"). As CSC acknowledges, courts have held that time records

may fall within the attorney-client privilege where they "reveal . . . litigation strategy, or the

specific nature of the services provided, such as researching particular areas of law." *Bria v.*

*United States*, No. 3:01MC(CFD), 2002 WL 663862, at *5 (D. Conn. Mar. 26, 2002). Here,

Class Counsel's time records reveal litigation strategy and the "specific nature of the services

provided." *Id.*

As CSC well knows, Class Counsel's time records tell the story of this litigation. They

reveal what Class Counsel did and thought over the past five years of litigation. CSC cherry

picks eleven examples from Class Counsel's time records to argue that Class Counsel's entries are vague and unprivileged.  But this makes no sense.  While the plot of a novel may not be evident from eleven sentences, it is certainly clear when the whole novel is revealed.  Here, many of Class Counsel's time entries are interrelated.  Even time entries that may appear vague or unimportant out of context build on earlier entries.  In addition to the descriptions themselves, the timing, resources, and attorneys dedicated to specific tasks provide insights into Class Counsel's confidential strategy and the nature of the services provided.  *See Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 23 (N.D.N.Y. 2002) (concluding that billing records were protected by attorney-client privilege, as "attorney billing statements are subject to the attorney-client privilege to the extent that they reveal more than client identity and fee information").[2]  These internal thoughts and strategy decisions should not be made public.

Moreover, CSC's critiques of even those eleven entries are unavailing.  CSC likens these eleven entries to time entries the court rejected in *Bernstein v. Mafcote, Inc.*, 43 F. Supp. 3d 109 (D. Conn. 2014), and in *Di Bella v. Hopkins*, 403 F.3d 102 (2d Cir. 2005).  In both those cases, however, the court was considering limited billing statements in contexts unrelated to fee petitions.[3]  In addition, in *Bernstein* the court found that certain billing entries were in fact protected by attorney-client privilege because "they reveal the specific nature of the services provided and/or reveal the motive of defendant in seeking representation."  *Bernstein*, 43 F. Supp. at 115.  Much like in those billing entries, here, Class Counsel "reveal[ed] the specific nature of the services provided" throughout their billing entries, even if briefly. *Id.*

Next, CSC takes issue with Class Counsel's claim that the entries are privileged in part because they "contain communications between counsel and class representatives (as well as

---

[2] *See also Montgomery Cty. v. Microvote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) (holding that billing records are privileged because they reveal the nature of the services rendered); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999) ("In the instant case, the legal bills revealed the identity of the federal statutes researched. Since the records would divulge confidential information regarding legal advice, they constitute privileged communications[.]").

[3] In *Di Bella*, the court considered whether a time entry can be admitted for impeachment at trial. *Bernstein*, on the other hand, concerned a dispute over "plaintiff's alleged unauthorized possession of documents defendant claims are confidential communications with its attorney(s)." 43 F. Supp. 3d at 112.  Neither case is applicable here.

class members who requested that their identities not be shared with Defendant)." Pls.' Mot. at 4. CSC argues that their identities are not protected. Def.'s Opp'n at 5-6. But it is not their identities in general that Class Counsel seek to protect, but the identity of class members who communicated with Counsel—and the nature of their specific communications.

Similarly, CSC argues that Class Counsel's time entries do not disclose work product because they do not reveal attorneys' mental processes. Def.'s Opp'n at 6. Yet, "[t]he billing entries of an attorney may well reflect what he has done on behalf of his client and directly or indirectly reveal his mental processes." *Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001). For instance, "noting that he spent hours interviewing a witness, followed by his not listing the person as a potential witness, instantly discloses to his opponent that the lawyer thought the witness was either of no help or harmful." *Id.* In fact, "even if the billing entries do not disclose the lawyer's mental processes as dramatically as [that] example[,] . . . the societal interest in competent advocacy in an adversarial judicial system is advanced by permitting lawyers to prepare their cases without unnecessary disclosure to their opponents." *Id. See also Ring v. Commercial Union Ins. Co.*, 159 F.R.D. 653, 659-60 (M.D.N.C. 1995) (holding that plaintiff's attempt to delve into attorney billing records implicated "opinion work product"). Here, the billing records reflect Class Counsel's mental processes, including Counsel's litigation strategy, the documents it has reviewed, the interviews it has conducted, the legal issues researched, and the materials drafted. As a whole, the entries provide a roadmap indicating, day by day, the steps taken to represent Plaintiffs, which inevitably reveals information about Class Counsel's strategy and thought processes.

CSC's cases are not to the contrary. Rather, they do no more than to suggest that whether time records are protected by work product in a given case is a factual inquiry.[4]

---

[4] *See Anthropologie, Inc. v. Forever 21*, No. 07 Civ. 7873 (RJS) (MHD), 2009 U.S. Dist. LEXIS 61005, at *3-4 n.2 (S.D.N.Y. Apr. 20, 2009) ("To the extent that the document does not reflect in any meaningful sense the attorney's mental processes -- and that is certainly the case with these time records, which are far less revealing in that sense than the letter, affidavits and memorandum of law served by counsel on defendants -- defendants may readily satisfy the standards of Rule 26(b)(3) for overcoming potential work- product immunity[.]"); *Forgione v. AC & R Advert., Inc.*, 147 F.R.D. 30, 34 n.3 (S.D.N.Y. 1993) ("A cursory *in camera* review of counsel's time records did not make manifest to me that a fee application in the *Forgione* case

Therefore, CSC's argument that courts have denied sealing requests "[i]n like cases" is simply not true. CSC relies on distinguishable, fact-specific cases,[5] while ignoring Class Counsel's precedent supporting sealing. *See* Pls.' Mot. at 5-6.

CSC's argument that Class Counsel's time records are not confidential business records similarly fails. Def.'s Opp'n at 6-7. Unlike in *U.S. v. Wells Fargo*, No. 12-CV-7527 JMF, 2015 WL 3999074 (S.D.N.Y. June 30, 2015), Class Counsel has identified specific injuries it would suffer if its confidential time records were to be disclosed – CSC would "receive key insights into Class Counsel's litigation strategy and gain an undue advantage in [this] pending class action," which would severely compromise Class Counsel's ability to prosecute their case. Pls.' Mot. at 2, 5.[6]

---

*Footnote continued from previous page*
would necessarily reveal work product; however, I cannot dismiss the possibility that work product might be compromised in the course of a fee dispute and hearing in *Forgione*."); *In re Check Point Software Techs. Ltd. Sec. Litig.*, No. 03 CIV. 6594, 2007 WL 1827113, at *1 (S.D.N.Y. June 20, 2007) ("Lead Counsel may redact appropriate portions of the supplemental exhibits that may reveal attorney work product . . . .").

[5] In *United States SEC v. Ahmed*, the party seeking to seal, unlike here, merely relied on the document's confidential designation and did not even "identify what in particular about the information contained in Exhibit 8 is confidential and why protection of this confidentiality outweighs the public's right of access to judicial documents." No. 3:15CV675 (JBA), 2017 WL 5515907, at *2 (D. Conn. Sept. 19, 2017). In *Mento v. Donahoe*, the defendants broadly sought to seal a motion, declaration, statement of undisputed facts, and 27 exhibits, unlike the single exhibit at issue here. No. 08-CV-74S, 2012 WL 13177062, at *1 (W.D.N.Y. Feb. 15, 2012). *Lytle v. JP Morgan Chase* did not even concern time records and the defendant did not cite any injury it would suffer if the information was unsealed, among other similar deficiencies. 810 F. Supp. 2d 616, 630 (S.D.N.Y. 2011). *In re September 11th Liability Insurance Coverage Cases* concerned sanctions for discovery violations, and the court reviewed attorneys' time records to determine whether the time dedicated to discovery abuses could be reimbursed. 243 F.R.D. 114, 133 (S.D.N.Y. 2007). Finally, *AT&T Corp. v. Community Network Services* considered only whether plaintiffs should serve a copy of their time records on defendants and the court never ruled on whether plaintiffs should publicly file the materials. No. 97 Civ. 316 (BSJ) (MHD), 1998 U.S. Dist. LEXIS 16010, at *1 (S.D.N.Y. Oct. 9, 1998).

[6] *Wells Fargo* is also distinguishable in other key respects. That case did not concern time records, and unlike here, the parties attempted to keep all memoranda of law and associated papers under seal, including their legal analysis. *Id.*

**III.    Sealing Plaintiffs' Extensive and Detailed Time and Expense Records Is "Narrowly Tailored," Given That Redaction Would Be Overly Burdensome and Impractical.**

Sealing Class Counsel's time records is "narrowly tailored" because these "contain such a quantity of confidential information that redaction 'is not a practical alternative' to sealing them in their entirety." *Travelers Indem.*, 2013 WL 4012772, at \*8.  Redacting 22,278 time entries would therefore be "extremely burdensome." *Charles v. Nationwide Mut. Ins. Co.*, No. 09 CV 94 ARR, 2010 WL 7132173, at \*9 (E.D.N.Y. May 27, 2010) (denying motion to compel production of billing records "in light of defendant's representation that such production would be extremely burdensome due to the need to redact attorney work product and attorney client privileged information from these litigation billing records"); *United States v. Waage*, CIV 08-CV-0919-IEG, 2008 WL 4492596, at \*3 (S.D. Cal. Sept. 30, 2008) (holding that "[t]he billing statements reveal the specific nature of the services provided and the strategy for such services" and that it would be unduly burdensome and unreasonable to require party to redact the privileged communications).

In support of its argument that the court should order redaction instead, CSC cites cases with records that do not nearly approximate the volume of the records at issue here.  *See Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13CV5390ILGCLP, 2017 WL 4838306, at \*6–7 (E.D.N.Y. Oct. 24, 2017) (seeking to file affidavits and billing records supporting request for *51.1 hours* in attorneys' fees under seal); *Bernstein*, 43 F. Supp. at 112 (ordering redaction of just two billing entries); *In re Check Point*, 2007 WL 1827113, at \*1 (ordering counsel to redact appropriate portions of supplemental exhibits of records supporting fees for records that totaled less than a third of the hours); *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08 CIV. 1533 BSJ JCF, 2011 WL 2623458, at \*3 (S.D.N.Y. June 21, 2011) (concerning time records of legal services prior to filing of complaint).  Here, Plaintiffs' detailed time records span five years of extensive litigation through trial, and includes 4,621 hours.  It would be overly burdensome and impractical to redact these entries. CSC's other cases arguing otherwise are similarly distinguishable.[7]

---

[7] In *E.E.O.C. v. Kelley Drye & Warren LLP*, for example, the defendant sought to keep under seal partnership agreements, retainer agreements, and memoranda regarding compensation as confidential business records and privileged client communications.  No. 10 CIV. 655 LTS MHD,

CSC ironically argues that the extensive time records are a result of "overbill[ing] this matter," Def.'s Opp'n at 10, conveniently ignoring that it was CSC's scorched-earth tactics (including their unsuccessful early motions, obstruction of discovery, time-intensive individualized discovery it did not use, several motions to decertify, and even this untimely motion) which forced Plaintiffs to expend a great amount of work and resources to prevail on this case. *See* Mot. for Att'ys' Fees & Costs at 2-6 (D. Conn. Sept. 18, 2019), ECF No. 520.

While CSC argues that courts have ordered the redaction of extensive documents, it ignores the several cases where courts have, without more, allowed parties to file time records under seal. *Frommert v. Conkright*, 223 F. Supp. 3d 140, 151 (W.D.N.Y. 2016), *order amended on reconsideration,* No. 00-CV-6311L, 2017 WL 3867795 (W.D.N.Y. May 4, 2017) ("In accordance with the Court's order, the records of defense counsel's billing information were filed under seal, although they have been disclosed to plaintiffs' counsel."); *McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *18 (E.D.N.Y. July 30, 2018) ("At the final fairness hearing, plaintiffs submitted time records, which they subsequently docketed under seal. The records are both contemporaneous and provide sufficient detail.") (internal citation omitted); *Allstate Ins. Co. v. Yehudian*, No. CV 14-4826 (JS)(AKT), 2017 WL 8788257, at *6 (E.D.N.Y. Aug. 23, 2017), *report and recommendation adopted,* No. CV 14-4826 (JS)(AKT), 2017 WL 4023134 (E.D.N.Y. Sept. 13, 2017) (ordering counsel to submit contemporaneous time/billing records, and noting that "[s]uch documentation may be filed under seal"); *Agio Int'l Co. v. Zhejiang Longda Force Co.*, No. 1:15-cv-00192-MR, 2019 WL 1558700, *1-2 (W.D. N.C. Apr. 10, 2019) (granting motion to keep under seal billing invoices submitted as exhibits to a declaration).

---

*Footnote continued from previous page*

2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012).  The court, however, found these records to be "formulaic recitations of firm policies and procedures that can hardly be unique in the legal industry," and considered that client names and client-identifying information could be redacted. *Id.* at *3-4. Here, the documents at issue are extensive time entries that concern legal strategy. *See also* n.5 *supra*.

## IV.    **Plaintiffs Have Established Good Cause for Motion for Protective Order.**

CSC misconstrues Class Counsel's request for a protective order. Def.'s Opp'n at 12-13.

Class Counsel seek from the Court "a protective order establishing that CSC may only use [their

detailed time records] for purposes of opposing the Motion for Fees and Costs, and not for any

other litigation purpose." Pls.' Mot. at 4.  Plaintiffs do not seek a "blanket protective order" by

which "everything is tentatively protected until otherwise ordered." *United States v. Smith*, 985

F. Supp. 2d 506, 545 (S.D.N.Y. 2013).  Plaintiffs certainly do not seek to limit dissemination of

all discovery materials, as in *Smith*.  Plaintiffs have made a narrow request to file an exhibit with

the time entries that reveal Class Counsel's actions and litigation strategy under seal and limit

CSC's use of this information for purposes beyond its Motion for Fees and Costs.  Because these

time records are also protected by attorney-client privilege and the work product doctrine, CSC's

improper use of this information would result in serious injury to Plaintiffs, as it would allow

CSC to receive key insights into its litigation strategy and gain an undue advantage in any

appeal. *See* Pls.' Mot. at 5.

## **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully submit that this Court disregard, or

in the alternative, deny CSC's opposition, and grant Class Counsel's motion for a protective

order and to file expense records under seal.

Dated: October 30, 2019

Respectfully submitted,
By: */s/ Daniel M. Hutchinson*
        Daniel M. Hutchinson

**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
Michael N. Litrownik (ct28845)
Elizabeth V. Stork*
Jared Goldman*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**FEINBERG JACKSON WORTHMAN &
WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

*Attorneys for Plaintiffs, the Classes, and the
Collective*

*admitted *pro hac vice**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th of October, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/     Valerie D. Comenencia Ortiz*
Valerie D. Comenencia Ortiz
