UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

_____
                                               :
Joseph Strauch and Timothy Colby,              :
and on behalf of themselves and all those      :
similarly situated                             :    CIVIL NO.: 3:14-cv-956 (JBA)
                                               :
            Plaintiffs,                         :
v.                                             :
                                               :
Computer Sciences Corporation                  :
                                               :
            Defendant.                          :
_____:    NOVEMBER 4, 2019

## DEFENDANT'S OPPOSITION TO CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

    A.   Class Counsel Overstaffed and Over-litigated This Case Using Four Large Firms
        And 89 Different Billers, Causing Massive Duplication And Excessive Fees .................... 3

    B.   Class Counsel Forum Shopped This Case From California To Connecticut ....................... 5

    C.   Relatedly, Plaintiffs Seek Significant Fees For Non-Legal Work, Like Case
        Advertising and Soliciting Plaintiffs. ......................................................................... 5

    D.   Class Counsel Should Not Recover Any Fees For FLSA Conditional Certification nor
        Should They Receive Any Fees Regarding The Senior Professional Subclass ................... 5

    E.   Class Counsel Seeks Fees For Issues That Were Not Pursued ........................................ 6

III.   ARGUMENT ................................................................................................... 6

    A.   Class Counsel Fails to Support Their Petition With Any Evidence ................................... 7

    B.   Class Counsel's Exorbitant Requested Rates Must Be Reduced to Connecticut Rates ........ 9

        1.  Class Counsel's Out-Of-District Rates Must Be Reduced To Connecticut Rates
            In Light of Active Forum Shopping .......................................................................... 11

        2.  Additionally, Class Counsel is Not Entitled to Out-Of-District Rates, As Class
            Counsel Did Not, And Cannot, Make the Requisite Particularized Showing to
            Overcome The Forum Rule. ..................................................................................... 12

    C.   Plaintiffs Cannot Recover Fees For The Consequences of Overstaffing Including
        Excessive Duplication of Work And Intra/Inter-Office Conferencing .............................. 16

    D.   Class Counsel's Billing Records Are Inadequate and Excessively Vague. ....................... 20

    E.   Class Counsel Cannot Recover Fees for Non-Legal Work Such as Clerical and
        Administrative Tasks. ............................................................................................. 22

    F.   Class Counsel's Extraordinary Request For An Enormous Fee Enhancement Should
        Be Denied. ............................................................................................................ 23

        1.  Class Counsel Cannot Base Their Request for a Fee Multiplier on Class
            Counsel's Alleged Performance, Success at Trial, or the Complexity of the
            Case, Because Such Factors Are Subsumed in the Lodestar. ....................................... 24

        2.  Class Counsel Is Not Entitled to a Fee Enhancement Under Federal Law Because
            They Fail to Satisfy the Factors Enumerated in Perdue. ............................................. 25

i

3. Class Counsel's Arguments for Multipliers Under Connecticut And California Law Fail ................................................................................................. 28

G. Class Counsel's Fees Should Further Be Reduced For Poor Billing Judgment And Numerous Other Tasks For Which They Cannot Recover Fees including Travel Time, Lost or Withdrawn Issues, and Preparation of their Fee Petition. .......................... 29

1. Class Counsel Cannot Recover Fees for the Excessive Amount of Time (and Costs) on Travel Due To Their Decision To File In Connecticut ........................ 30

2. Class Counsel Cannot Recover Fees For Advertising And Soliciting Plaintiffs. ........... 31

3. Class Counsel Drove Up Their Fees by Pursuing Unsuccessful or Unnecessary Litigation Tactics Such As Lost Claims or Pursuing Classes or Tactics Later Abandoned or Withdrawn ............................................................................. 32

a. Class Counsel Cannot Recover Fees For Conditional Certification Or Any Billing Related to Senior Professional SAs ........................................... 33

b. All Billing Should Be Eliminated for Additional Claims Class Counsel Lost, Withdrew, Or Never Brought ................................................................... 34

c. All Costs and Fees For the Class Counsel's Post-Trial Expert (Breshears) Report Must Be Removed from Billing ................................................... 35

4. Class Counsel Cannot Recover For The Time Spent Preparing Its Fee Petition Or Any Other Fee Related Motions ................................................... 35

H. The Expenses Sought Are Not Supported Or Recoverable. ............................................. 36

IV. CONCLUSION ......................................................................................................... 38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexis v. PMM Enters. LLC*,
   3:17-cv-1622, 2018 U.S. Dist. LEXIS 184367 (D. Conn. October 29, 2018)................................... 9

*Amara v. CIGNA Corp.*,
   No. 3:01-CV-2361, 2018 U.S. Dist. LEXIS 202717 (D. Conn. November 29, 2018).................... 26

*Amerisource Corp. v. Rx USA Intern. Inc.*,
   2010 WL 2160017 (E.D.N.Y. May 26, 2010) ........................................................................... 6, 7

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty.*
   *Bd. of Elections*,
   522 F.3d 182 (2d Cir. 2008) ........................................................................................................ 13

*Baffa v. Donaldson Lufkin & Jenrette Secs. Corp*,
   96 Civ. 0583 (DAB), 2002 U.S. Dist. LEXIS 10732 (S.D.N.Y. June 17, 2002) ........................... 27

*Beckman v. Keybank, N.A.*,
   203 F.R.D. 467 (S.D.N.Y. 2013) .................................................................................................. 26

*Benedict v. Hewlett-Packard Co.*,
   314 F.R.D. 457 (N.D. Cal. 2016)................................................................................................... 11

*Benihana, Inc.* v. *Benihana of Tokyo, LLC*,
   2017 U.S. Dist. LEXIS 211045 (S.D.N.Y. Dec. 22, 2017) ........................................................... 19

*Benjamin v. Oxford Health Ins., Inc.*,
   355 F. Supp. 3d 131 (D. Conn. 2019)........................................................................................... 14

*Blackwell v. Astrue*,
   No. 06-CV-860S, 2008 U.S. Dist. LEXIS 73578 (W.D.N.Y. Sept. 3, 2008).................................. 35

*Blum v. Stenson*,
   465 U.S. 886 (1984)............................................................................................................... 7, 23

*Connecticut Hosp. Ass'n v. O'Neill*,
   891 F. Supp. (D. Conn. 1994)............................................................................................... 20, 21

*Conservation Comm'n v. Red 11, LLC.*,
   135 Conn. App. 765 (2012) ......................................................................................................... 28

*Cooper v. Sunshine Recoveries, Inc.*,
   No. 00 Civ. 8898, 2001 WL 740765 (S.D.N.Y. June 27, 2001)...................................................... 34

*Crawford v. City of New London,*
3:11-cv-1371, 2015 U.S. Dist. LEXIS 30594 (D. Conn. March 12, 2015) ........................................ 9

*Davis v. Eastman Kodak Co.,*
758 F. Supp. 2d 190 (W.D.N.Y. 2010) ................................................................................ 31

*De Alvarez v. City of New York,*
2012 U.S. 79991 (E.D.N.Y. 2012) ...................................................................................... 36

*DeLeon v. Little,*
2000 WL 435494 (D. Conn. 2000) ................................................................................ 32, 33

*Doe v. E. Lyme Bd. Of Educ.,*
No. 3:11cv291 (JBA), 2019 U.S. Dist. LEXIS 53148 (D. Conn. Mar. 27, 2019) ................ 8, 30, 31

*Dominguez et al v. Future Technologies, LLC.,*
3:16-CV-00144-SHU (D. Conn. 2019) .................................................................................. 9

*Dungee v. Davison Design & Dev., Inc.,*
C.A. No. 10-325-GMS, 2018 U.S. Dist. LEXIS 33055 (Del. Dist. Ct. March 1,
2018) ........................................................................................................................... 27

*E. Point Sys. v. Maxim,*
No. 3:13-cv-00215-VAB, 2015 U.S. Dist. LEXIS 64455 (D. Conn. May 18, 2015) .................... 35

*Eastman Kodak Co. v. Asia Optical Co.,*
118 F. Supp. 3d 581 (S.D.N.Y. 2015) ................................................................................ 11

*Essaid v. HD Hotel, LLC,*
No. 3:12-cv-627 (MPS) (WIG), 2015 U.S. Dist. LEXIS 192911 (D. Conn. March
13, 2015) ........................................................................................................................ 7

*Fawzy v. Gendry,*
12 CV 5580, 2013 U.S. Dist. LEXIS 144323 (E.D.N.Y. Oct. 6, 2013) ................................... 25

*United States ex rel. Feldman v. Gorp,*
2011 U.S. Dist. LEXIS 14914 (S.D.N.Y. 2011) .................................................................... 30

*Ferguson v. United Health Care,*
3:08cv1389, 2008 U.S. Dist. LEXIS 101796 (D. Conn. December 17, 2008) ............................. 36

*Flemming v. The MENTOR Network,*
3:11-CV-00689-JBA (D. Conn 2017) .................................................................................... 9

*Flood et al v. Carlson Restaurants Inc. et al.,*
1:14-cv-02740-AT-GWG (S.D.N.Y. April 17, 2014) .......................................................... 3, 18

*Freeman v. A Better Way Wholesale Autos, Inc.,*
2018 Conn. Super. LEXIS 903 (Conn. Sup. Ct. May 3, 2018) ................................................ 28

*Friedman v. SThree Plc*,
   No. 3:14CV00378 (AWT), 2017 U.S. Dist. LEXIS 149895 (D. Conn. Sept. 15,
   2017) ............................................................................................................... 31

*Galeener v. Source Refridgeration*,
   13-cv-04960 (VC) ............................................................................................. 8

*Garcia v. Tyson Foods, Inc.*,
   No. 06-2198-JTM, 2012 U.S. Dist. LEXIS 170177 (D. Ka. 2012, November 29,
   2012) ............................................................................................................... 17

*Garis v. Uncut-RawTV, Inc.*,
   CV 06-5031, 2011 U.S. Dist. LEXIS 111254 (E.D.N.Y. July 5, 2011) ..................................... 14, 15

*Glatt et al. v. Fox Searchlight Pictures Inc.*,
   1:11-cv-06784-WHP (S.D.N.Y. September 28, 2011) ............................................ 3, 18

*Goldberger v. Integrated Resources*,
   209 F.3d 43 (2d Cir. 2000) .............................................................................. 26

*Gonzalez v. Town of Stratford*,
   830 F. Supp. 111 (D. Conn. 1992) ................................................................... 21

*Green v. City of New York*,
   403 Fed. Appx. .............................................................................................. 15

*Green v. City of New York*,
   403 Fed. Appx. 626 (2d Cir. 2010) ................................................................ 14

*Grogg v. General Motors Corp.*,
   612 F. Supp. 1375 (S.D.N.Y. 1985) ............................................................... 20

*Guckenberger v. Boston Univ.*,
   8 F. Supp. 2d 91 (D. Mass. 1998) ................................................................... 18

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...................................................................................... 32

*Hernandez v. Farahani*,
   2012 Conn. Super. 2012 ........................................................................... 28, 29

*Houston v. Cotter*,
   234 F. Supp. 3d 392 (E.D.N.Y. 2017) ......................................................... 16, 17

*Innis Arden Golf Club v. Pitney Bowes, Inc.*,
   3:06 CV 1352, 2010 U.S. Dist. LEXIS 144428 (D. Conn. May 21, 2010) (awarding
   Connecticut rates where out-of-district counsel failed to demonstrate that local
   counsel would have produced substantially inferior result) ........................... 15

*Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*,
  No. 15-cv-1113 (VAB), 2016 U.S. Dist. LEXIS 152496 (D. Conn. Nov. 3, 2016).........................25

*Kennedy v. Supreme Forest Products*,
  295 F. Supp. 3d 113 (D. Conn. 2017)...............................................................................9

*Kiefer v. Moran Foods*,
  3:12-CV-00756-WGY (D. Conn. 2014) ............................................................................9

*Levy v. Powell*,
  CV-00-4499, 2005 U.S Dist. LEXIS 42180 (E.D.N.Y. July 7, 2005)..............................8

*Lide v. Abbott House*,
  No. 05 Civ. 3790, 2008 U.S. Dist. LEXIS 13826 (S.D.N.Y. Feb. 25, 2008) ...................36

*Lloyd et al v. J.P. Morgan Chase & Co. et al*,
  1:11-cv-09305-LTS-HBP (S.D.N.Y. December 19, 2011) ..........................................3, 18

*Lynch v. Main Street Connect, LLC.*,
  3:12-CV-008331-JCH (D. Conn. 2013) ...........................................................................9

*MacDermid Printing Solutions, LLC v. Cortron Corp.*,
  No. 08 Civ. 1649, 2015 U.S. Dist. LEXIS 16504 (D. Conn February 11, 2015)............28

*Magnuson v. Newman*,
  No. 10-CV-6211 (JMF), 2014 U.S. Dist. LEXIS 105688 (S.D.N.Y. July 31, 2014).......31

*Mazzei v. Money Store*,
  2015 U.S. Dist. LEXIS 59397 (S.D.N.Y. May 6, 2015) ................................................16

*Mike v. Safeco Ins. Co. of America*,
  274 F. Supp. 2d 216 (D. Conn. 2003)..............................................................................15

*Millera v. Metro-North R. Co.*,
  658 F.3d 154 (2d Cir. 2011) .......................................................................................7, 24

*Mills et al v. Capital One N.A.*,
  No. 14 Civ. 1937 (SHS)....................................................................................................7

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)..................................................................................................22, 23

*Murphy v. Lynn*,
  118 F.3d 938 (2d Cir. 1997) ......................................................................................8, 32

*Ng v. King Henry Realty, Inc.*,
  No. 16 Civ. 0013 (PAE) (JFC), 2016 U.S. Dist. LEXIS 142012 (S.D.N.Y. Oct. 7,
  2016) ...............................................................................................................................17

*Odell v. Wallingford Mun. Fed. Credit Union*,
    2013 Conn. Super. LEXIS 1792 (Conn. Sup. Ct. August 8, 2013) ................................... 28

*In re PaineWebber Ltd. P'ships Litig.*,
    94 Civ. 8547 (SHS), 2003 U.S. Dist. LEXIS 13377 (S.D.N.Y. 2003) ............................ 10

*Pascuiti v. New York Yankees*,
    108 F. Supp. 2d 258 (S.D.N.Y.2000) ............................................................. 34

*Pasternak v. Baines*,
    No. 00CV369, 2008 U.S. Dist. LEXIS 37845 (W.D.N.Y. May 8, 2008) ....................... 17

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) .................................................................................... 23

*Perdue v. Kenny A.*,
    559 U.S 542 (2010) .................................................................................. *passim*

*Pope v. County of Albany*,
    No. 1:11-cv-0736, 2015 U.S. Dist. LEXIS 123379 (N.D.N.Y. Sept. 16, 2015) ............ 17

*Rand-Whitney Containerboard L.P. v. Montville*,
    No. 3:96CV413 (HBF), 2006 U.S. Dist. LEXIS 75870 (D. Conn. Sept. 5, 2006) .................. 16, 21

*Realsongs v. 3A N. Park Ave. Rest. Corp.*,
    749 F. Supp. 2d 81 (E.D.N.Y. 2010) ............................................................... 15

*Reg'l Emplrs. Assur. Leagues Voluntary Emples. Beneficiary Ass'n Trust v. Castellano*,
    164 F. Supp. 3d 705 (E.D.P.A. 2016) .............................................................. 27

*Rey v. Madera Unified School Dist.*,
    203 Cal. App. 4th 1223 (Cal. Ct. App. 2012) ............................................... 28, 29

*Robinson v. City of New York*,
    No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981 (S.D.N.Y. Sept. 29, 2009) ..................... 17

*Santiago v. Amdocs, Inc.*,
    2013 WL 5444324 (N.D. Cal. Sept. 30, 2013) .................................................... 11

*Scott v. Aetna Servs.*,
    210 F.R.D. 261 (D. Conn. Sept. 18, 2002) ................................................... 11, 15

*SEC v. Goren*,
    272 F. Supp. 2d 202 (E.D.N.Y. 2003) .............................................................. 16

*Siegel v. Bloomberg L.P.*,
    2016 U.S. Dist. LEXIS 38799 (S.D.N.Y. Mar. 22, 2016) ...................................... 25

*Simmons v. N.Y. City Transit Auth.*,
    575 F.3d 170 (2d Cir. 2009) ............................................................... 13, 14, 16

*Sirko v. International Business Machines Corp.*,
2014 WL 4452699 (C.D. Cal. Sept. 3, 2014) ................................................................. 11

*Sony Electronics, Inc. v. Soundview Techs., Inc.*,
389 F. Supp. 2d (D. Conn. 2005) ........................................................................... 9, 32

*Sotavento Corp. v. Coastal Pallet Corp.*,
2010 Conn. Super. LEXIS 412 (Conn. Sup. Ct. 2010) ........................................................ 28

*Stearns v. Willard J. Stearns & Sons, Inc.*,
2012 Conn. Super. LEXIS 1673 (Conn. Sup. Ct. 2012) ...................................................... 28

*Stevens* v. *Rite Aid Corp.*,
Docket No. 6:13-CV-783, 2016 U.S. Dist. LEXIS 159468 (N.D.N.Y. July 6, 2016) ..................... 19

*Stewart Park & Reserve Coalition, Inc., v. Slater*,
325 F.3d 545 (2d. Cir. 2003) ............................................................................. 25

*Tapia v. Mateo*,
96 F. Supp. 3d 1 (D. Conn. 2015) ....................................................................... 6, 9

*Thomas v. Board of Education*,
505 F. Supp. 102 (N.D.N.Y. 1981) ........................................................................ 31

*United States v. $1,026.781.61 in Funds from Fla. Capital Bank*,
CV 09-04381-MLG, 2013 U.S. Dist. LEXIS 28910 (C.D. Cal. 2013) ........................................ 27

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................................... 26

*C.B. ex rel. W.B. v. N.Y. City Dep't of Educ.*,
2006 U.S. Dist. LEXIS 68649 (E.D.N.Y. Sept. 25, 2006) .................................................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) .............................................................................. 26

*Walton et al v. AT&T Services, Inc*,
No. 15-cv-03652 .......................................................................................... 7

*Wang v. The Hearst Corporation*,
1:12-cv-00793-JPO (S.D.N.Y. February 1, 2012) ........................................................ 3, 18

*Welch v. Cadre Capital*,
735 F. Supp. 467 (D. Conn. 1990) ........................................................................ 11

*Wells Fargo Bank, NA v. Konover*,
No. 05 Civ. 1924, 2014 U.S. Dist. LEXIS 109720 (D. Conn. 2014) ......................................... 28

viii

*Wilder v. Bernstein*,
   725 F. Supp. 1324 (S.D.N.Y. 1989), rev'd. on other grounds, 944 F.2d 1028 (2d Cir.
   1991) ...................................................................................................................... 21

*Zorrilla v. Carlson Rests., Inc.*,
   14 Civ. 2740 (AT), 2018 U.S. Dist. LEXIS 60772 (S.D.N.Y., April 9, 2019) ................................. 3

**Statutes**

29 U.S.C. § 216(b) ............................................................................................................ 6, 25

Conn. Gen. Stat. §§31-68 and 31-72 ....................................................................................... 6

ERISA ........................................................................................................................... *passim*

FLSA ............................................................................................................................ *passim*

**Other Authorities**

Civ. R. 54(c)7 ..................................................................................................................... 36

I.   **INTRODUCTION**

Class Counsel's Motion for Attorneys' Fees and Costs (Dkt. 520) contains reference to voluminous records and excessive billings and must be rejected.  Most of Class Counsel's bloated loadstar is a direct consequence of their own making for which they cannot be rewarded.

First, Class Counsel's time records exhibit that they forum shopped this case from California to Connecticut, yet they still seek out-of-district rates.  Class Counsel fails to cite any court where a plaintiff actively forum shopped and then was awarded out-of-district rates or received travel time for the long trips they caused.  Moreover, Class Counsel submit no independent affidavit to justify their exorbitant rates (up to 975 per hour) and do not cite a single Connecticut court order approving such rates.

Second, Class Counsel overvalued the case—claiming to this Court it could be worth half a billion dollars—and Class Counsel litigated it as such, amassing an unfathomable number of hours (**20,607 hours** billed in 22,278 billing entries by 89 different billers).  Class Counsel provides no reasonable explanation for why it was necessary to utilize four separate firms that consistently duplicated efforts, driving these high hours.  Class Counsel's fee petition is comprised of many vague and ambiguous time entries, making it impossible for CSC or this Court to discern from those entries what all these lawyers were doing and whether that work was reasonable.

As a result of overstaffing, Class Counsel billed an extraordinary (28.71% of their time) just to intra/interoffice communications between and amongst the <u>four</u> Plaintiffs' firms.  Class Counsel also managed to bill 3,433 hours preparing for trial—the equivalent of four attorneys billing 40 hours per week for 21.5 straight weeks.  Then, at trial, Class Counsel packed the benches in the gallery with an unnecessary number of attorneys and paralegals, billing 1,920.8 hours.

Not only did Class Counsel forum shop this case (and request exorbitant out-of-district rates), and not only did Class Counsel overstaff this case, thereby resulting in an improperly high lodestar, but

1

Plaintiffs also request a multiplier on top of that improperly high lodestar.  Class Counsel unreasonably call their *3.5 million* bonus a "modest" upward adjustment.  As support for this extraordinary request, Class Counsel largely cite irrelevant settlement cases.

Beyond these extraordinary and improper requests, Class Counsel's fee petition also improperly seeks fees for researching classes that they either never brought (ERISA claims, Maryland, Missouri, and Maine classes) or pursuing claims that they ultimately lost (such as the North Carolina class and Rule 23 certification of the Senior Professional class), or expending time and resources on litigation tactics that were later withdrawn (e.g., the post-trial expert Breshears' Report).  Class Counsel cannot be compensated for these claims researched but not alleged or claims they lost or withdrew.

Class Counsel makes an exorbitant fee request with extraordinary requests (like the self-proclaimed "modest" $3.5 million enhancement) as an overinflated starting bid in anticipation of a compromised outcome that would still result in an improperly high fee award.  A fee petition, however, is not supposed to be an opening bid of a deal negotiation but a good-faith demonstration of all the ***reasonable*** fees and costs this Court should assess.  Class Counsel's request is unreasonable and should be drastically reduced.  As such, herein, CSC proposes reasonable (and, indeed, exceedingly conservative) deductions all supported by case law surrounding reasonable rates and proper billing practices in the fee-shifting context and supported by expert analysis.[1]

---

[1] Expert fee auditor, Attorney James P. Schratz, performed a thorough audit of this matter, including review of all of Plaintiffs' fees and costs as well as numerous pleadings and depositions in this case.  The Declaration of James P. Schratz in Support of Defendant's Opposition to Class Counsel's Motion for Attorneys' Fees and Costs ("Schratz Dec.") is attached hereto and contains a detailed explanation of (1) Attorney Schratz's qualifications, including completion of over 2500 fee audits over 25 years both in support of and in opposition of fee petitions (see Paragraphs 3-37 of Schratz Dec. and his Curriculum Vitae attached as Exhibit 1 to Schratz Dec.), (2) an explanation of his methodology for all fee audits, including this one, and (3) his findings and expert recommendations regarding disallowances of unreasonable fees and costs in the present matter.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Class Counsel Overstaffed and Over-litigated This Case Using Four Large Firms And 89 Different Billers, Causing Massive Duplication And Excessive Fees

Early in the case, Class Counsel claimed in Court that this case bore "five hundred million [dollar] exposure" and was comprised of a class of "five thousand" people.  *See* April 1, 2015 Court Transcript, Exhibit 1 to Declaration of Alexa M. Farmer ("Farmer Dec.").  Class Counsel over-staffed the case with four large firms and 89 billers, seeking payment for an unreasonable total of **20,607 hours**.

This overstaffing of the case was unnecessary.  Outten and Golden, Class Counsel's primary counsel, often pursues class cases like this either on its own or pairing with one other small firm, possibly as local counsel or otherwise involved in sourcing the case, far fewer cooks in the kitchen than the four firms in this case.[2]  Here, however, this case involves <u>four</u> firms, with three of the four touting their nationwide practices and expertise in class action litigation representing plaintiffs.[3]

A prime example of overlitigation occurred at trial.  Class Counsel called only 10 opt-ins to testify, and yet, still managed to bill nearly 3,500 hours preparing for and 1,920.8 hours trying a two-week trial.  Indeed, duplication of effort abounded at trial.  Attorney Sagafi, for example, presented only two of Class Counsel's 13 witnesses in their case-in-chief, he thereafter did not cross examine any of CSC's witnesses, and he did not present opening or closing argument (or even closing argument on

---

[2] For example, in *Glatt et al. v. Fox Searchlight Pictures Inc.*, 1:11-cv-06784-WHP (S.D.N.Y. September 28, 2011), Outten and Golden filed this matter on their own.  *See also Zorrilla v. Carlson Rests., Inc.*, 14 Civ. 2740 (AT), 2018 U.S. Dist. LEXIS 60772 (S.D.N.Y., April 9, 2019) (Outten and Golden filed this FLSA class action with Fitapelli & Shaffer only, a small seven attorney firm); *Flood et al v. Carlson Restaurants Inc. et al.*, 1:14-cv-02740-AT-GWG (S.D.N.Y. April 17, 2014) (same); *Wang v. The Hearst Corporation*, 1:12-cv-00793-JPO (S.D.N.Y. February 1, 2012) (FLSA case Outten and Golden filed alone); *Lloyd et al v. J.P. Morgan Chase & Co. et al*, 1:11-cv-09305-LTS-HBP (S.D.N.Y. December 19, 2011) (Outten and Golden filed this FLSA misclassification case with one small firm of 16 lawyers, Lovell, Stewart, Halebian, Jacobson LLP, and represented a class of 1,048 plaintiffs); *Reyes et al v. Altamarea Group, LLC et* al, 1:10-cv-06451-RLE (S.D.N.Y. August 30, 2010) (Outten and Golden obtained conditional certification in this FLSA tip credit case, filing this case alone).  All unreported cases are attached hereto as Exhibit 15 to Farmer Dec.

[3] *See* Dkt. 537-1, Sagafi Dec. (stating Outten and Golden is "largest law firm in the country that exclusively represents individuals …in employment matters"); Dkt. 537-20, Declaration of Daniel Hutchinson (stating the Lieff Cabraser is a "national law firm" focusing on class action litigation); and Dkt. 537-18, Declaration of Todd Jackson (stating that Feinberg Jackson "has a nationwide practice focused on plaintiffs' public interest class actions and complex litigation")

the fluctuating workweek issue).  However, Attorney Sagafi billed $900/hour for attending trial daily. He billed 8.4 hours or greater on all days of trial (including weekends), billing over 10 hours for most trial days and even billed 18.2 hours in one day, which was notably not a day that Attorney Sagafi was responsible for any witnesses.  His entries read only: "trial," or, on the weekends, his entries read "trial preparation(s)."  Given the vagueness of his entries and his limited role in presenting evidence at trial, the extent of his substantive contribution, if any, on the majority of the dates exhibiting this exorbitant billing is speculative at best.  On any one day of trial, Plaintiffs had an average of an average of between 5 and 6 attorneys and 2 to 3 paralegals billing to attend trial.  For example on the third day of trial, 7 attorneys and 4 paralegals billed for attending trial, which is unnecessary and excessive.

Class Counsel attempts to excuse this overstaffing by pointing the finger at CSC.  But there were four plaintiffs' firms who filed appearances in this case before any real litigation began.  In addition, contrary to Class Counsel's baseless accusations, CSC litigated this case reasonably.[4] Similarly, Class Counsel mischaracterizes the post-trial damages process.[5]  While the four plaintiffs' firms may have some sort of agreement with one another regarding this matter involving their compensation and how work was to be allocated between them, CSC should not be held responsible

---

[4] Space precludes response to all of Plaintiffs' attacks, but CSC notes the following.  Even though this is a massive class case that litigated for many years, Class Counsel filed only two motions to compel.  Also, CSC filed a Motion to Stay Trial, not to obstruct the process or otherwise file excessive motions as Plaintiffs suggest, but instead to address outstanding issues before trial, including Plaintiffs' belated discovery requests on the eve of trial regarding data they later raised as an issue in the prolonged post-trial damages process.  Additionally, at trial, CSC limited duplicative testimony by seeking to not present its own witnesses, Heidi Josephson and Tim Bartl, twice, and instead obtaining their testimony during Plaintiffs' case-in-chief.

[5] Again, space precludes a full response, but CSC notes the following.  Plaintiffs claim it took 19 months to resolve the Parties' disagreements regarding damages (Dkt. 520, pp. 9-11), but there were large gaps of time in which damages were not even discussed and in which certain issues briefed (such as post-trial briefing, including decertification and motion for judgment as a matter of law) were pending with the Court.  This includes a nearly 10-month gap of time from February 16, 2018, when the parties first exchanged damages calculations, to December 5, 2018 (Dkt. 480) when the Court next revisited the damages issue after the remedies order was issued.  Additionally, when the issue of damages first arose post-trial on February 16, 2018, instead of abiding by the parties' stipulation that damages calculations would simply be a mechanical exercise, Plaintiffs created more work for themselves, this Court, and CSC by submitting a report from an expert (Dkt. 453) that Plaintiffs ultimately withdrew (Dkt. 480).  CSC told this Court on the call before the Special Master process that there was a data transfer error.  That issue, which was the overwhelming cause of the damages disparity, could have been resolved in a streamlined manner.

for any private deal between these plaintiffs' firms that is driving the excessive overstaffing behind the scenes.

### B. Class Counsel Forum Shopped This Case From California To Connecticut

A majority of class counsel are located in California. The first Plaintiff (Strauch) resides in California.[6] Class Counsel solicited a Connecticut plaintiff (Colby) and filed in Connecticut, which they believed would be a more favorable forum.

### C. Relatedly, Plaintiffs Seek Significant Fees For Non-Legal Work, Like Case Advertising and Soliciting Plaintiffs.

Class Counsel's solicitation and advertising tactics are evidenced within documents Class Counsel produced in discovery that contained 134 pages of solicitous LinkedIn messages from Class Counsel to CSC's System Administrators.[7] Class Counsel's billing also frequently references "outreach" to "potential plaintiffs," further establishing Class Counsel's proactive effort to solicit opt-ins. This is not legal work. In addition to solicitation, Class Counsel seeks significant fees for other non-legal work, namely tasks that are considered purely clerical or administrative.[8]

### D. Class Counsel Should Not Recover Any Fees For FLSA Conditional Certification nor Should They Receive Any Fees Regarding The Senior Professional Subclass

In deference to the Court's desire to streamline the case, on the record during the April 1, 2015 court conference, CSC welcomed a proposal to agree to conditional certification[9] if Class Counsel's

---

[6] *See* Examples of Forum Shopping Entries, Exhibit 2 to Farmer Dec. (listing examples of forum shopping entries such as including numerous entries regarding ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

[7] LinkedIn Solicitation Messages (attached as Exhibit 3 to Farmer Dec.)

[8] *See* Schratz Dec., at ¶ 84 and Exhibit 14 to Schratz Dec. (identifying that Class Counsel billed 708.03 hours in 1,313 single task entries relating to clerical tasks such as ████████████████████████████████████████████████████.

[9] Note, CSC only made this gesture because the certification was <u>conditional</u> and because CSC always preserved its right and intent to subsequently move for decertification, which it ultimately did.

proposal was reasonable.[10]  Although the Court agreed that this was a "good plan,"[11]  Class Counsel's proposal never came.  Despite Class Counsel's refusal to confer with CSC, CSC did not oppose the conditional certification of the Associate Professional and Professional SA collectives and only opposed conditional certification of the Senior Professionals.  While the Court granted conditional certification, the Court later denied Rule 23 class certification as to all Senior Professional SAs. Subsequently, Class Counsel dropped the Senior Professionals from the lawsuit.  Thus, the entire conditional certification briefing and oral argument was futile.  In other words, Class Counsel ultimately "lost" FLSA conditional certification for purposes of claiming reasonable fees.

**E.  Class Counsel Seeks Fees For Issues That Were Not Pursued.**

Class Counsel's billing shows that they researched potential ERISA claims as well as potential subclasses in Maine and Maryland.  These claims were never filed.  Furthermore, post-trial, Class Counsel untimely disclosed a late expert regarding damages (Dkt. 453), which they later withdrew (Dkt. 480).  Class Counsel seeks fees related to this briefing regarding their withdrawn expert and payment for $157,848.75 in costs to Mr. Breshears' firm.  *See* Exhibit P-2 (listing numerous payments to Hemming, LLP, Mr. Breshears' firm, amounting to over $150K).

**III.  <u>ARGUMENT</u>**

Class Counsel's Motion (Dkt. 520) was filed pursuant to 29 U.S.C. § 216(b), Cal. Lab. Code. § 218.5, and Conn. Gen. Stat. §§31-68 and 31-72, all of which refer to "reasonable attorney's fees." Specifically, "[u]nder the FLSA a prevailing plaintiff is entitled to reasonable attorneys' fees and costs."  *Tapia v. Mateo,* 96 F. Supp. 3d 1, 11 (D. Conn. 2015).  "The fee applicant bears that burden of proving that the hours are reasonable and must produce contemporaneous time records showing the dates, hours expended, and nature of work performed by each attorney." *Amerisource Corp. v. Rx USA*

---

[10] *See* Ex. 1, Farmer Dec. at pp. 10-11.

[11] *Id.*

*Intern. Inc.,* 2010 WL 2160017, at *11 (E.D.N.Y. May 26, 2010) (citation omitted).  "[T]he lodestar –

the product of a reasonable hourly rate and the reasonable number of hours required by the case –

creates a 'presumptively reasonable fee."  *Millera v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir.

2011).

"[A] reasonable attorney's fee is one that is adequate to attract competent counsel, but that does

not produce windfalls for attorneys."  *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (internal quotations

omitted).  "Counsel for the party seeking an award 'should make a good faith effort to exclude from a

fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private

practice ethically is obligated to exclude such hours from his fee submission."  *Essaid v. HD Hotel,*

*LLC,* No. 3:12-cv-627 (MPS) (WIG), 2015 U.S. Dist. LEXIS 192911, at *3–4 (D. Conn. March 13,

2015) (citations omitted).  Here, a large portion of Class Counsel's entries were excessive, redundant,

unnecessary, and sometimes a combination, and thus, these fees and costs requested should be reduced

significantly or, in many cases, eliminated altogether.[12]

### A.  Class Counsel Fails to Support Their Petition With Any Evidence

The party seeking fees, bear the burden of proving the reasonableness of the fees requested.

*See Amerisource,* 2010 WL 2160017.  Plaintiffs submitted hundreds of pages of fees and costs,

amounting to an astronomical 20,607 hours billed total,[13] but they present no evidence to

---

[12] Throughout the instant brief, CSC includes representative examples of Class Counsel's improper or inadequate billing practices.  Given the 22,278 billing entries entered by Class Counsel, it is not feasible for CSC to include all improper billing entries here and only references certain entries by way of example of the billing practice referenced that should be reduced or eliminated.  Further to this point, Attorney Schratz similarly focuses on single task entries (i.e. those entries that are not block-billed) in making his assessments and thus, his estimation of disallowed fees is necessarily underestimated for sake of feasibility.  *See*  Schratz Dec., at ¶2 (stating disallowance categories are "underestimated" due to block billing).

[13] The excessive number of hours billed in this case is unbelievable, especially given the fact that, by way of example, the five attorneys who billed the most hours in the present case all simultaneously maintained a full case load during the pendency of this case from the date this matter was filed (July 1, 2014) through the end of trial (December 20, 2017), as follows: Michael Litrownik (**1,489 hours, 31 additional cases**), Jahan Sagafi (**1,297.8 hours, 31 additional cases**), Michael Scimone (**1,901 hours, 40 additional cases**), Daniel Hutchinson (**787.8 hours, 60 additional cases**), and Todd Jackson (**1,635.8 hours, 14 additional cases**).  These attorneys billed a significant number of hours towards these other cases.  *See, e.g.*,  *Walton et al v. AT&T Services, Inc*, No. 15-cv-03652, Entry No. 209 Ex. 2 (N.D. Cal., December 14, 2017) (Attorney Litrownik billing over 650 hours and Attorney Sagafi billing 241.5 hours); *Mills et al v. Capital One N.A.*, No. 14 Civ. 1937 (SHS), Entry No. 39 Ex. B (S.D.N.Y. 2014) (Attorney Litrownik billing 325 hours); *Lillehagen et al v.*

independently support their massive and extraordinary fee petition.   Class Counsel claim their inflated out-of-district rates are reasonable, but they offer no independent affidavits justifying their rates as reasonable in this venue despite the fact that establishing reasonableness is their burden.   *See Doe v. E. Lyme Bd. Of Educ.*, No. 3:11cv291 (JBA), 2019 U.S. Dist. LEXIS 53148, at *40-41 (D. Conn. Mar. 27, 2019) (citing to an independent affidavit from local counsel in determining reasonable rates). Moreover, Class Counsel fail to submit any independent evidence that this case required four firms and 89 billers.   Class Counsel does not even attach their retainer agreement, establishing what fees and costs they charged their clients in this matter.[14]

Further, Class Counsel does not cite to, nor could they cite to, any cases in this district that have approved their unreasonably high rates.[15]   Additionally, Class Counsel claims over half a million dollars in costs, yet they do not submit any receipts or records to substantiate that these requests are accurate.   Additionally, Class Counsel purports to have made voluntary discounts and reductions to their fees, but these alleged reductions are not supported by amount of fees or calculations reduced such that even an expert in fee auditing was unable to ascertain which time entries were allegedly discounted.[16]   Ultimately, Class Counsel fails to meet their burden to establish the reasonableness of their fees and costs.

---

*Alorica*, 8:13-cv-00092, Entry No. 269 Ex. A (C.D. Cal. October 3, 2016) (Attorney Sagafi billing over 678 hours); *Galeener v. Source Refridgeration*, 13-cv-04960 (VC), Entry No. 153 Ex. A (N.D. Cal. August 6, 2015) (Attorney Sagafi billing 399.6 hours); *Murphy, et al. v. Lenderlive Network, Inc.*, 1:13-cv-03135, Entry No. 162 Ex. D (D. Colo. July 10, 2015) (Attorney Scimone billing over 250 hours).   This is, of course, a small sample given the dozens of cases each attorney worked on during this period in addition to the present case.

[14] *See Levy v. Powell*, CV-00-4499 (SJF), 2005 U.S Dist. LEXIS 42180, at *28 (E.D.N.Y. July 7, 2005) (reducing rate where court noted that, among other things, plaintiffs failed to provide evidence of their customary rate or a retainer agreement indicating hourly rate.).

[15] *See* Schratz Dec., at ¶ 52 ("Class Counsel has not provided sufficient evidence that the rates they are seeking here have ever been awarded to them by any Court in Connecticut."); ¶57 (stating reasonable in-district rates).

[16] *See id.* at ¶49 (stating that "Class Counsel's voluntary discounts and reductions were not made on a line-by-line basis and Class Counsel did not provide the amounts of fees and calculations" such that "the auditor was unable to determine exactly which time entries were discounted").

**B.  Class Counsel's Exorbitant Requested Rates Must Be Reduced to Connecticut Rates**

In FLSA cases, this Court deems reasonable fees of $300 to $400 an hour for a partner, $250 to $350 an hour for an associate depending on his or her experience, and $100 to $150 an hour for a paralegal.[17] Notably, Susman, Duffy & Segaloff—the only local (Connecticut) Class Counsel firm that worked on this matter—billed rates consistent with local rates.  For example, Attorney Karen Kravetz, a Susman attorney, billed at $300 per hour whereas Todd Jackson of Feinberg Jackson has one less year of experience than Attorney Kravetz and billed $840 per hour and Jahan Sagafi has four years less experience and bills at $900 per hour. *Id.*  Same for associates and paralegals—Susman associates billed at $250 per hour and paralegals billed at $125 per hour. *Id.*  Indeed, Class Counsel consistently seek rates far in excess of local rates: $590-$975 per hour for partners; $370 to $600 per hour for associates; and $265 to $390 per hour for paralegals.[18]

Accordingly, it would reasonable to argue that any fees awarded to Class Counsel should be calculated using a maximum in-district-rate of $300-$400 for partners, $250-350 for associates, and $100 to $150 for paralegals in line with the cases cited above and given the rates billed by Class Counsel firm Susman, Duffy & Segaloff.  Indeed, the maximum in-district rates reasonable in this

---

[17] *See, e.g., Dominguez et al v. Future Technologies, LLC.*, 3:16-CV-00144-SHU, (D. Conn. 2019) (approving $400 an hour for a partner, $250 an hour for an associate, and $100 an hour for a paralegal); *Flemming v. The MENTOR Network*, 3:11-CV-00689-JBA, (D. Conn 2017) (approving motion for attorneys' fees awarding $400 an hour for partner Richard Hayber, $350 an hour for an eight-year associate, $250 an hour for a three-year associate, and $100 for a paralegal); *Tapia v. Mateo*, 96 F. Supp. 3d 1, 2, 6 (D. Conn. 2015) (awarding rate of $300 per hour for an "experienced litigator in the area of federal wage and hour cases" and $250 per hour for senior paralegals)' *Lynch v. Main Street Connect, LLC.*, 3:12-CV-008331-JCH, (D. Conn. 2013) (awarding $400 an hour for partner Richard Hayber, $350 an hour for an eight-year associate, $250 an hour for a three-year associate, and $100 for a paralegal); *Kiefer v. Moran Foods*, 3:12-CV-00756-WGY, (D. Conn. 2014) (approving $400.00 for Attorney Haber and $269 for associate); *see also Alexis v. PMM Enters. LLC,* 3:17-cv-1622 (MPS), 2018 U.S. Dist. LEXIS 184367, at *18–19 (D. Conn. October 29, 2018) (holding that hourly rates of $400 for partner, $275 for associate, and two paralegal rates of $95 and $150 were reasonable); *Kennedy v. Supreme Forest Products*, 295 F. Supp. 3d 113, 125 (D. Conn. 2017) (awarding partner with twelve years of experience an hourly fee to $360 and associate with six years of experience an hourly fee of $300); *Crawford v. City of New London*, 3:11-cv-1371 (JBA), 2015 U.S. Dist. LEXIS 30594, at *8–10 (D. Conn. March 12, 2015) (holding $450 per hour to be an excessive rate for two partners with over thirty years of experience, and approving $250 per hour for an associate with eight years of litigation experience following two years as a law clerk); *Sony Electronics, Inc. v. Soundview Techs., Inc.*, 389 F. Supp. 2d (D. Conn. 2005) (awarding $400 rate for "litigation partner with substantial experience in litigation of patent and antitrust issues").

[18] *See* Dkt 537-3, Exhibit N-2 (listing a "Lodestar Summary Report" with all billers, position title, years of experience, hours billed, and hourly rate).

district for partners is $500 per hour (Schratz Dec., ¶57), but Class Counsel instead bills at extremely high rates of up to $975 per hour.  *See* Exhibit N-2 to Sagafi Dec (citing partner rates of $590-$975 per hour).  Meanwhile, recommended rates for paralegals in this district are $150 per hour, but Class Counsel bills up to $390 per hour for paralegals.  *Id.*

Even though all of Class Counsel's rates are unreasonably high and deserve to be reduced, CSC has taken a compromised position and requests only that all attorney rates above $500 be reduced to $500 and rates for paralegals and staff over $150 per hour be reduced to those reasonable rates in line with the recommendations of expert auditor, Attorney Schratz.[19]  Thus, an associate who bills at $500 per hour (e.g., Michael Litrownick) is billing at an unreasonable rate for this district, but—as a simplification and compromised solution—CSC is not requesting a proportional reduction in his rate or other out-of-district associate rates.  This is a conservative approach.[20]

Utilizing these conservative reduced rates, Class Counsel's lodestar should be, at minimum, reduced as follows pursuant to Attorney Schratz's expert recommendations regarding rates:

> **"Calculated Lodestar: $10,369,189.00**
> **Hourly Rate Adjustment: - $2,406,371.50**
> **Net fees: $7,962,817.50."[21]**

Instead of reasonable rates, Class Counsel requests excessively high rates that are particularly unreasonable for two reasons.  First, Class Counsel chose to file this matter in Connecticut after engaging in forum shopping.  Second, Class Counsel failed to establish the requisite particularized showing required to establish an entitlement to receive out-of-district rates.

---

[19] *See* Schratz Dec., at ¶57 (stating "I recommend that Class Counsel's hourly rates for Partners be reduced to $500 which is still well above the $300 hourly rate approved for wage and hour cases in this district.  I further recommend that Paralegal hourly rates be reduced to $150. . .").

[20] Alternatively (and in addition), this Court can exercise its discretion to use historic rates for fees incurred during the first half of the litigation, and apply current rates solely to fees incurred in the latter half. *See In re PaineWebber Ltd. P'ships Litig.*, 94 Civ. 8547 (SHS), 2003 U.S. Dist. LEXIS 13377, at *9-10 (S.D.N.Y. 2003) (splitting six-year litigation into two periods, using historic rates for half and current rates for the other half, as using current rates for the entire six-year period at issue would lead to a windfall).

[21] Schratz Dec., ¶58, and as set forth in Exhibit 7 to Schratz Dec.

10

1.   <u>Class Counsel's Out-Of-District Rates Must Be Reduced To Connecticut Rates In Light of Active Forum Shopping</u>

Forum-shopping is defined as "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard." Black's Law Dictionary (11th ed. 2019). Forum-shopping is a "long disfavored practice." *Welch v. Cadre Capital*, 735 F. Supp. 467, 479 (D. Conn. 1990) (citations omitted); *Eastman Kodak Co. v. Asia Optical Co.*, 118 F. Supp. 3d 581, 599 (S.D.N.Y. 2015) (stating Circuit's policy of disfavoring forum-shopping).

Here, Plaintiffs' forum choice was motivated by tactical maneuvering. This litigation would have been brought in California absent forum-shopping by Class Counsel, most of whom are located in San Francisco, including lead counsel (Jahan Sagafi and Todd Jackson). Class counsel could have filed this matter in a forum much more proximate to their offices: the Southern District of California, where the first named plaintiff (Joseph Strauch) was located. *See* Second Amended Compl. ¶19.   But, for tactical purposes, Plaintiffs forum-shopped to get away from California, where courts consistently deny class certification in technology worker cases.[22]   Instead, Plaintiffs filed in Connecticut where a federal court had granted class certification in a technology worker case. *See Scott v. Aetna Servs.*, 210 F.R.D. 261 (D. Conn. Sept. 18, 2002).   In his deposition, Timothy Colby, the Connecticut named Plaintiff,  admitted that Outten & Golden initially contacted him, and not vice versa;[23] that he was not expecting the initial contact from Outten & Golden, but rather the firm's LinkedIn message came "out of the blue";[24] and that, before the unsolicited message from Outten & Golden, he had not even

---

[22] *See, e.g.*, *Benedict v. Hewlett-Packard Co.*, 314 F.R.D. 457 (N.D. Cal. 2016); *Sirko v. International Business Machines Corp.*, 2014 WL 4452699, *11 (C.D. Cal. Sept. 3, 2014); *Santiago v. Amdocs, Inc.*, 2013 WL 5444324, *2-3 (N.D. Cal. Sept. 30, 2013).

[23] Exhibit 4 to Farmer Dec., Colby Dep. pp. 10:6 – 11:6.

[24] *Id.* at pp. 12:18 – 13:8, 15:16 – 22.

*thought* about suing CSC.[25] Class Counsel's time records provide further evidence.[26] Class Counsel must accept the lower rates in this venue based on their own litigation tactics.

Similarly, Plaintiffs cannot recover fees billed for forum shopping, which include a minimum of **31.5 hours** underline billed time amounting to **$16,289.00** in fees.[27]  For similar reasons, Plaintiffs should not be awarded any fees opposing CSC's Motion to Transfer.  Specifically, (1) any forum shopping activities (**31.5 hours, $22,312.50**) and (2) any time spent opposing CSC's the Motion to Transfer (**50.3 hours, $22,478.00** in fees).  *See* Exhibits 2 and 5 to Farmer Dec. (listing entries of forum shopping and Motion to Transfer, respectively).

> 2.  Additionally, Class Counsel is Not Entitled to Out-Of-District Rates, As Class Counsel Did Not, And Cannot, Make the Requisite Particularized Showing to Overcome The Forum Rule.

Because Plaintiffs forum shopped this case, the standard "forum rule" analysis should not apply. Specifically: (1) Class Counsel being located in California, (2) the original named plaintiff was located in California, (3) plaintiffs forum shopped to avoid California courts, (4) the Connecticut plaintiff did not hire Class Counsel but was recruited by class counsel to join the case, and (5) despite all the prior points the lawyers still requesting that they should be awarded their out-of-district rates. Presumably Plaintiff Strauch, a California resident, thought he was hiring California lawyers to handle a California case. There is no evidence that Plaintiff Colby (the Connecticut plaintiff) wanted to bring a Connecticut case using California and New York lawyers. Indeed, as noted above, Plaintiff Colby

---

[25] *Id.* at Colby Dep. pp. 16:17 – 24.

[26] In February and April 2014, Class Counsel researched the District of Maryland, the District of Maine, as well as the Central, Eastern, and Southern Districts of California. *See, e.g.*, Docket Entry No. 522, Exhibit Q to Sagafi Dec., Time Entry Nos. 8121, 8124, 8336, 8396, 8399. Although time entries demonstrate that the Complaint was originally going to be filed in California (*see, e.g.*, *id.* at Time Entry No. 8422), the complaint was revised, adding a named plaintiff (Colby) and changing venue to Connecticut. *See* Time Entry Nos. 8559, 8562.

[27] *See* Exhibit 2 to Farmer Dec., Examples of Forum Shopping (containing examples of Plaintiffs' forum shopping including entries include: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

was not looking to sue CSC until he was proactively solicited by Class Counsel. In other words, the legal framework by which Courts typically analyze out-of-district rates makes no sense here in light of the unusual fact pattern concocted by Class Counsel's tactics.

Even assuming the Class Counsel here did not forum shop, the standard forum rule still makes clear that Class Counsel's request for out-of-district rates fails. When seeking an award of attorney's fees, the fee to which an attorney may be entitled is referred to as the "lodestar" or "the presumptively reasonable fee," and is calculated by multiplying the number of hours worked by an hourly rate. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections,* 522 F.3d 182, 183 (2d Cir. 2008). Under the forum rule, "district courts should use the 'prevailing [hourly rate] in the community' in calculating the . . . presumptively reasonable fee" and should consider "what a reasonable, paying client would be willing to pay." *Id.* at 184, 190. The community consists of "the district where the district court sits" and a reasonable, paying client is presumed to hire counsel from within his or her own district or counsel who charges a fee consistent with local rates. *Id.* at 190-91. This presumption may only be rebutted "in the unusual case" where hiring out-of-district counsel "was reasonable under the circumstances." *Id.* at 191. The Second Circuit clarified that to overcome the "forum rule" presumption for any out-of-district requests "a litigant must **persuasively establish** that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 175-176 (2d Cir. 2009) (emphasis added). To do so, "the party seeking the award must make a **particularized showing** not only that selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176 (emphasis added). Such a showing can be made "by establishing that local counsel possessing requisite experience were unwilling or unable to take the

case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.*

Here, Class Counsel has not established, let alone *persuasively* established, that a reasonable client would have hired out-of-district counsel. *Id.* at 175-76. Class Counsel has utterly failed to make the requisite "particularized showing" that use of in-district counsel would produce a "substantially inferior result," as Class Counsel has not presented this Court with any evidence. For example, Class Counsel has not shown that local counsel with FLSA experience were unwilling or unable to litigate the case or an absence of in-district counsel possessing the requisite expertise. *See id.*; *see also, e.g.*, *Garis v. Uncut-RawTV, Inc.*, CV 06-5031 (ADS) (AKT), 2011 U.S. Dist. LEXIS 111254, at *28 (E.D.N.Y. July 5, 2011) (declining to award out-of-district rates where fee applicant failed to provide any specific information that local counsel was unwilling or unable to take case); *Green v. City of New York,* 403 Fed. Appx. 626, 628 (2d Cir. 2010) (holding forum rule presumption not overcome where appellants "made no showing, beyond mere conjecture" of an absence of in-district counsel with requisite expertise or that experienced, in-district counsel were unable or unwilling to take the case).

Class Counsel has not sufficiently demonstrated why expertise in litigating computer technical support worker class actions was required for this case. Again, Class Counsel fails to provide any evidence and instead rely on their own self-serving contentions. Moreover, Class Counsel fails to describe in any detail how the FLSA exemption for employees in computer-related occupations is somehow more onerous than other FLSA exemptions and why a skilled attorney in FLSA cases would be unable to navigate such an exemption. *See, e.g., Benjamin v. Oxford Health Ins., Inc.*, 355 F. Supp. 3d 131, 143 (D. Conn. 2019) (holding departure from the forum rule was unwarranted where out-of-district counsel failed to demonstrate why expertise in ERISA cases specific to eating disorders was necessary). Like the other FLSA exemptions, the exemptions at issue in the present case required an attorney to engage in "a careful factual analysis of the full range of the employee's job duties and

responsibilities." *See Mike v. Safeco Ins. Co. of America*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003). Class Counsel fails to cite any authority suggesting that the computer related occupation exemption makes this analysis any more difficult when compared to other FLSA exemptions. Thus, this case was a typical FLSA wage and hour case that did not require the level of specialization Class Counsel alleges.

Moreover, contrary to Class Counsel's claims, the District of Connecticut is home to numerous excellent employment lawyers who handle FLSA cases, including FLSA collective or Rule 23 class actions, and charge rates commensurate with the prevailing rate in the community. Class Counsel fails to make a "particularized showing" that such counsel were unwilling or unable to take this case.  Class Counsel did not even submit affidavits from local counsel to demonstrate a lack of requisite expertise or inability to take the case.[28]

Even if Class Counsel could demonstrate that expertise in the narrow area of computer technical support worker class actions was required for this case (it is not), they are unable to make a sufficient showing that in-district counsel did not possess this expertise. For example, Connecticut attorney Richard Hayber (and his firm of Hayber, McKenna, & Dinsmore, LLC), regularly handle employment class actions.   In fact, Attorney Hayber was counsel on the *Scott* case where class certification was granted on behalf of systems engineers.  *Scott v. Aetna Services*, 210 F.R.D. 261, 268 (D. Conn. 2002).

Therefore, Plaintiffs have failed to satisfy their high burden of "persuasively establishing" that a reasonable client would have selected out-of-district counsel because doing so would likely produce a substantially better net result. *See, e.g., Innis Arden Golf Club v. Pitney Bowes, Inc.*, 3:06 CV 1352,

---

[28] Courts routinely deny out-of-district rates because the petitioning party fails to submit independent information that local counsel with experience were unable to take the case or that no in-district counsel had such experience.  *See, e.g., Garis*, 2011 U.S. Dist. LEXIS 111254, at *28, *supra*; *Green v. City of New York*, 403 Fed. Appx.; *see also Realsongs v. 3A N. Park Ave. Rest. Corp.*, 749 F. Supp. 2d 81, 90 (E.D.N.Y. 2010) (applying in-district rates where "[p]laintiffs provide no specific information which would establish that local counsel with the requisite experience were unwilling or unable to take the case, or alternatively, no in-district counsel possessed such expertise.").

2010 U.S. Dist. LEXIS 144428, at *21–22 (D. Conn. May 21, 2010) (awarding Connecticut rates where out-of-district counsel failed to demonstrate that local counsel would have produced substantially inferior result). As such, hiring out-of-district counsel was unreasonable and any fees awarded must be calculated using in-district rates. *See Simmons*, 575 F.3d at 176 ("If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge . . . m[ay] allow only an hourly rate which local attorneys would have charged for the same service.") (quotations omitted).

### C. Plaintiffs Cannot Recover Fees For The Consequences of Overstaffing Including Excessive Duplication of Work And Intra/Inter-Office Conferencing

"[L]arge law firms cannot take advantage of fee-shifting schemes by running up the bill and foisting their extravagances upon their unsuccessful adversaries." *Houston v. Cotter*, 234 F. Supp. 3d 392, 407 (E.D.N.Y. 2017) (quotations omitted). Thus, "[w]hen deciding the need to staff with multiple attorneys, counsel should take extreme precautions to ensure that an excessive amount of time is not spent on each issue." *Rand-Whitney Containerboard L.P. v. Montville*, No. 3:96CV413 (HBF), 2006 U.S. Dist. LEXIS 75870, at *68 (D. Conn. Sept. 5, 2006). Indeed, "[c]ourts have reduced fee applications where there was extensive overstaffing." *C.B. ex rel. W.B. v. N.Y. City Dep't of Educ.*, 2006 U.S. Dist. LEXIS 68649, at *56 (E.D.N.Y. Sept. 25, 2006). "[A] district court has discretion to reduce requested attorneys' fees where the prevailing party assigned an inordinate number of attorneys to litigate the action." *Houston v. Cotter*, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017); *see also, e.g.*, *SEC v. Goren*, 272 F. Supp. 2d 202, 209 (E.D.N.Y. 2003) (finding engagement of nearly 100 people in receivership matter "resulted in excessive and unnecessary billings," including significant hours for communications amongst those individuals). "The Second Circuit has held that across-the-board percentage reductions are appropriate where a case is overstaffed, 'resulting in needless duplication of work and retention of unnecessary personnel.'" *Mazzei v. Money Store*, 2015 U.S. Dist. LEXIS 59397, at *10 (S.D.N.Y. May 6, 2015).

16

Attorney Sagafi outlines that he has represented "computer technical support worker classes in ten wage and hour class and collective actions besides this one." *See* 520-1, p. 7 (listing the citations for 10 class actions). However, as noted above, despite handling only two witnesses at trial, Attorney Sagafi billed an inordinate number of hours (**180 hours, amounting to $162,000 in fees**) at trial alone, and Class Counsel had 5-6 attorneys and 2-3 paralegals billing on trial daily. For example, on the third day of trial, Class Counsel had 7 attorneys and 4 paralegals billing for attending trial, amounting to 99.1 hours billed for one day of trial. In sum, Class Counsel billed 3,433 hours preparing for trial, which is the equivalent of four attorneys billing 40 hours per week for 21.5 straight weeks, and ultimately billed a total of 1,920.8 hours for a two-week trial. Courts have found far less to be considered excessive "overstaffing" a case. *Houston*, 234 F. Supp. 3d at 406-07 (considering use of ten different attorneys who spent over 3,500 hours litigating and over 1,000 hours on trial phase to constitute "overstaff[ing]"). Class Counsel's numbers raise the question what substantive contribution was actually made.[29]

Indeed, the **20,607 hours** that Class Counsel claim in this case is in stark contrast to another FLSA case that went to trial where Outten and Golden requested fees, but where the Court deemed only **10,618.7 hours** as reasonable (approximately **50%** of what Class Counsel claims to have billed in the present case). *See Garcia v. Tyson Foods, Inc.,* No. 06-2198-JTM, 2012 U.S. Dist. LEXIS 170177, at *45–46 (D. Ka. 2012, November 29, 2012) (holding 10,618.7 hours were reasonable in a case with

---

[29] *See Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981, at *26, *26 n. 12 (S.D.N.Y. Sept. 29, 2009) (deeming one attorney's contributions "questionable" where his role at trial was "largely passive" since he "rarely spoke and questioned only one witness"); *Pasternak v. Baines*, No. 00CV369, 2008 U.S. Dist. LEXIS 37845, at *23-24 (W.D.N.Y. May 8, 2008) (reducing the number of hours billed for attendance at trial where the attorney sat in the gallery except once during jury deliberations); *see also Ng v. King Henry Realty, Inc.*, No. 16 Civ. 0013 (PAE) (JFC), 2016 U.S. Dist. LEXIS 142012, at *17 (S.D.N.Y. Oct. 7, 2016) (reducing individual attorneys' hours by 5-50% due to overstaffing at hearings attended by four and six attorneys); *Pope v. County of Albany,* No. 1:11-cv-0736 (LEK/CFH), 2015 U.S. Dist. LEXIS 123379, at *34-35 (N.D.N.Y. Sept. 16, 2015) (finding an excessive number of attorneys present at trial where three partners and five associates attended); *Robinson v. City of New York*, No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981, at *25 (S.D.N.Y. Sept. 29, 2009) ("[T]here is no reason that four lawyers needed to be present at counsel table throughout the fourteen-day trial.").

1,031 FLSA opt-ins and a Rule 23 class comprised of 7,197 employees in an FLSA case alleging "donning and doffing claims" and "walking time claims").

The sheer number of firms involved in this case further contributes to the excess and compounds the inflated hours resulting from overstaffing and is neither necessary nor reasonable. Indeed, Outten and Golden routinely files class or collective actions either alone or with one other (small) firm. *See e.g. Glatt, supra*; *Zorilla*, *supra*; *Flood, supra*; *Wang, supra*; *Lloyd*, *supra*; *Reyes, supra* (collecting non-exhaustive list of Outten and Golden FLSA cases). The use of four firms here is excessive, unreasonable, and has led to overstaffing, multiple attorneys billing for the same task, excessive interoffice conferencing (*see supra*), and duplication of effort. *See Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 101 (D. Mass. 1998) (reducing fee award for attorney overstaffing and noting "just as there can be too many cooks in a kitchen, there can be too many lawyers on a case."). There is nothing unique about this case that warrants such egregious overstaffing. Hundreds of misclassification cases are filed per year, and the fact that this case involves computer technical workers does not make it unique.

Class Counsel even recorded billing entries for discussion of an agreement between co-counsel's four law firms. *See* Exhibit Q to Sagafi Dec. (billing entry by Jahan Sagafi for 2.4 hours at $900/hour including tasks that are non-compensable administrative, interoffice communication, and discussion of arrangement between the firms: "[r]etainer agreement; reimbursement of expenses; discuss case strategy and **co-counsel arrangement**," emphasis added). Regardless of any apparent agreement between these four firms regarding fees, costs, and responsibilities during litigation, CSC cannot be expected to bear the amplified fees that result from this unreasonable use of <u>four</u> firms to try a case that Outten and Golden advertises as something they can do without assistance.[30]

---

[30] *See*  https://www.outtengolden.com/cases?f%5B0%5D=type%3Awage-hour  (listing recent examples of active and resolved wage and hour class and/or collective actions filed by Outten and Golden; last visited October 17, 2019).

This unnecessary overstaffing resulted in excessive duplication of effort throughout the litigation. Class Counsel repeatedly seeks fees for multiple attorneys attending the same event or meeting.[31] These hours are unreasonably excessive, superfluous, and should not be recoverable. *See Luciano*, 109 F.3d at 117 (affirming reduction of hours reported by one lawyer who served as second counsel because court found hours excessive based on lawyer's lack of meaningful participation during the events billed for).

Here, the effects of overstaffing are clearly evidenced by the excessive interoffice/intraoffice conferencing. Over 25 years of auditing, Attorney Schratz has found that intraoffice conferencing generally averages "between **2% to 4%** of total fees" such that "a reasonable amount of billing for conferencing should not exceed 4% of fees." *Id.*, at ¶ 73 (emphasis added). Here, approximately 6,397 single-task (i.e. non-block billed)[32] entries of for interoffice/intraoffice conferencing, amounting to 28.71% of all total 22,278 entries in this case. *See* Exhibit 12 to Schratz Dec. As Attorney Schratz notes "[w]hen a high number of personnel is combined with an excessive amount of intra-office/inter-office conferencing, there is a significant likelihood of excessive billing." *See* Schratz Dec., at ¶67 (stating also that law firms should have quality control procedures to protect against such excessive conferencing, but that "in this case…Class Counsel lacked such adequate quality control procedures.") Courts deny fees for internal conferencing. *See Benihana, Inc.* v. *Benihana of Tokyo, LLC*, 2017 U.S. Dist. LEXIS 211045, at *18-19 (S.D.N.Y. Dec. 22, 2017) (holding that fees for internal discussions regarding "litigation strategy" were not proper in fee-shifting context); *Stevens* v. *Rite Aid Corp.*,

---

[31] *See* Examples of Multiple Attorneys Billing, Exhibit 6 to Farmer Dec. (including examples of multiple lawyers billing to, but not necessarily participating in, the same Court conference: ███████████████████████████████ ███████████████████████████████████████████████████████████████████████████ .

[32] Note: only single-task entries were flagged as internal conferencing. Therefore, this assessment is, in fact, underinclusive given Plaintiffs' billing also very clearly includes block billing that also includes additional instances of internal conferencing. *See* Schratz Dec., ¶71 (qualifying that "the amount of intra-firm conferencing is most likely significantly disguised or hidden due to block billing and excessively vague entries. Also as noted above the law firms themselves disguised many intra- firm or inter-firm conferencing by calling it ███████ ).

Docket No. 6:13-CV-783, 2016 U.S. Dist. LEXIS 159468, at *14 (N.D.N.Y. July 6, 2016) (discussing that it is unreasonable "to bill at the full rate for the time of the attorneys and paralegals who engaged in interoffice conferences and emails with each other").

Given Plaintiffs were improperly billing for interoffice and intraoffice conferences, this naturally resulted in multiple attorneys or paralegals billing for the same improperly billed for internal conference, thereby multiplying the impact of these issues.[33]   Courts have made drastic reductions for duplication of effort. *See, e.g., Grogg v. General Motors Corp.*, 612 F. Supp. 1375, 1380 (S.D.N.Y. 1985) (reducing award by 50% because there was "substantial duplication of effort"). Even though there is immense duplication here, CSC proposes a conservative reduction of 20%. *See* Schratz Dec., at ¶75 (recommending a 20% adjustment to remaining fees for excessive staffing and excessive conferencing).   CSC's adoption of Attorney Schratz's recommendation regarding the reduction of fees of Partners and Associates billing at rates over $500 per hour and paralegals and law clerks over $150 per hour, reduced Plaintiffs' original claimed lodestar from $10,369,189 to $7,962,817.50.   *See id.*   As such a conservative reduction of 20% of the reduced lodestar for overstaffing, including, but not limited to, intraoffice conferencing, results in the following:

> "Net Fees:  $7,962,817.50
> **Overstaffing and Excessive Intra/Inter-Office Conference: - $1,592,563.50**.
> Net Fees:  $6,370,254.00."[34]

### D.  Class Counsel's Billing Records Are Inadequate and Excessively Vague.

Fees should not be awarded for time entries when the corresponding description of work performed is "vague and therefore not susceptible to a determination of whether the time [billed] was reasonably expended." *Connecticut Hosp. Ass'n v. O'Neill*, 891 F. Supp. at 690 (D. Conn. 1994)

---

[33] *See* Exhibit 12 to Schratz Dec. (including a list of examples of inter and intraoffice conferences such as: ███████ and others blatantly outlining ███████████████████████████████. Furthermore, on February 7, 2018, there is a series of entries involving multiple attorneys and paralegals in a ███████ and then subsequently in follow-up internal conferences perhaps regarding topics addressed in said call. *Id.* These purely internal ███████ are not recoverable.

[34] *See* Schratz Dec. at ¶75 (recommending 20% further reduction to the reduced lodestar that already incorporates a reduction to fees).

(citing *Grogg v. General Motors Corp.*, 612 F. Supp. 1375, 1380 (S.D.N.Y. 1985)). Accordingly, "a court may also refuse to award fees based on time entries that provide a vague description of the work performed." *Smart SMR of New York, Inc.*, 9 F. Supp. 2d 143, 150 (D. Conn. 1998). "Entries stating such vague references as 'review of file', 'review of correspondence', 'research', 'conference with client', and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter." *Rand-Whitney Containerboard L.P. v. Montville*, 2006 U.S. Dist. LEXIS 75870, 53-54 (D. Conn. Sept. 5, 2006) (citations omitted).

Many of Plaintiffs' attorneys' billing entries are vague, block billed, or both, which makes it impossible for CSC or this Court to assess (1) whether a particular task is compensable, and (2) whether the time spent completing such a task is reasonable or excessive.  While a court may attempt to clarify vague entries by looking at the context of the adjacent entries, it is "neither practical nor desirable" to review each entry.  Thus, the Second Circuit has approved a percentage reduction method "as a practical means of trimming fat from a fee application." *Conn. Hosp. Ass'n,* 891 F. Supp. at 691 (citations omitted) (reducing attorney fee petition by ten percent for vague entries).[35]  Thus, here, an across-the-board reduction to Plaintiffs' fees due to their vague entries is warranted.  Specifically, pursuant to Attorney Schratz's assessment, which he explains is necessarily "underestimated," CSC requests a modest 50% additional reduction of the $535,088.00 in fee entries identified as excessively vague by Attorney Schratz, thereby further reducing Class Counsel's fees by **$267,544.00** due to vagueness.  *See* Exhibit 13 to Schratz Dec., at ¶77 (identifying list of vague entries).[36]

Expert review of these entries identified a comprehensive list of entries deemed as so vague they must be disallowed, totaling $535,088.00 at adjusted hourly rates.  *See id.* (including vague entries

---

[35] *See also Wilder v. Bernstein*, 725 F. Supp. 1324, 1337 (S.D.N.Y. 1989), rev'd. on other grounds, 944 F.2d 1028 (2d Cir. 1991) (reducing the amount of fee request by twenty percent for vague entries); *Gonzalez v. Town of Stratford*, 830 F. Supp. 111, 114 (D. Conn. 1992) (reducing fee petition by ten percent to account for vague entries).

[36] Class Counsel also used block billing, but in the abundance of caution so as not to "double dip" reductions that are both vague and block billed, Attorney Schratz did <u>not</u> recommend a separate reduction for block-billed entries. *See* fn 32, *supra*.

such as ████████████████████████████████████ and other related

vague entries).   While numerous more entries are arguably vague, Attorney Schratz specifically

identified those entries where "the lack of specificity severely interferes with the auditor's ability to

analyze the billing records in this case."  *See* Schratz Dec., at ¶81.  Again, this assessment therefore

underestimates the total impact of vague billing.  Given these insufficiencies and the innate difficulty

they cause in assessing the reasonableness of such billed work, the Court should reduce the identified

$535,088.00 in excessively vague billing entries by 50% thereby reducing Class Counsel's fees by an

additional **$267,544.00** to account for Class Counsel's inadequate billing practices, pursuant to Attorney

Schratz's expert opinion. *See id.*[37]  As such, recommended reductions are follows:

> **"Net Fees:  $6,370,254.00**
> **Vague Entries: - $267,544.00**
> **Net Fees:  $6,102,710.00."[38]**

### E.  Class Counsel Cannot Recover Fees for Non-Legal Work Such as Clerical and Administrative Tasks.

The law is clear that you cannot bill for non-legal work.  *See Missouri* v. *Jenkins*, 491 U.S. 274,

288 n.10 (1989).  Here, Class Counsel billed for a clerical and secretarial work that is unrecoverable

overhead, including at least 708.03 hours (billed in 1,313 single task entries).  *See* Schratz Dec., at ¶84

and Exhibit 14 to Schratz Dec. (listing examples of clerical entries such as ████████████████

████████████████████.  Courts have recognized that even a paralegal rate for these

tasks is unreasonable, much less an already inflated partner rate. *See Missouri* v. *Jenkins*, *supra*.  Here,

it is undisputed that Class Counsel had plenty of "help available," and therefore, no billing for clerical

and administrative tasks is reasonable.

---

[37] Note that Attorney Schratz's calculations are made based on "adjusted hourly rates," meaning these recommendations are calculated based on rates already reduced as argued above and reflected in Schratz Dec., Ex. 7.

[38] Schratz Dec., at ¶81 (disallowing 50% of single-task vague entries identified, thereby further reducing the lodestar to $6,102,710.00 while taking into account previous reductions based on reasonable rates and overstaffing/intraoffice conferencing).

In fact, here, tasks conducted by both attorneys and paralegals alike exhibited no nexus to actual legal work that could arguably be compensable as such.  For example, Class Counsel's attorneys routinely billed for entries similar to the following: ███████████████████████

████████████████████████████████████████████████████████

███████████████████████  *See* Dkt. 522, Exhibit Q (Plaintiffs' billing entries).  In addition, paralegals billed hours for clearly clerical and administrative tasks, including obtaining a cab and a billing 7 hours to ███████████████████████  *See id*.  The Court should exclude these and all other clerical or administrative hours—**708.03 hours amounting to $146,295.00**, as identified in Exhibit 14 to Schratz Dec.  As such, according to Attorney Schratz's recommendations, cumulative recommended reductions incorporating all discussed, *supra*, are as follows:

> **"Net Fees: $6,102,710.00**
> **Clerical Entries: - $146,295.00**
> **Net Fees: $5,956,415.00."[39]**

## F.  Class Counsel's Extraordinary Request For An Enormous Fee Enhancement Should Be Denied.

Class Counsel cannot come close to meeting their extremely high burden that they be awarded a $3.5 million dollar enhancement to their already exorbitant lodestar.  The Supreme Court repeatedly instructs lodestar enhancements are appropriate only in "rare" and "exceptional" circumstances. *Perdue v. Kenny A.*, 559 U.S 542, 552 (2010); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *Blum v. Stenson*, 465 U.S. 886, 897 (1984).  There is a very strong presumption that the lodestar amount is reasonable and sufficient to achieve the objective of attracting competent counsel.  *See Perdue*, 559 U.S. at 552, 554.  Class Counsel's extraordinary request for a $3.5 million dollar "bonus" on their already bloated lodestar should be denied for the following reasons.

---

[39] Schratz Dec., at ¶84 (reducing fees by $146,295.00 calculated using adjusted hourly rates as discussed *supra* in Section III(B).)

1. <u>Class Counsel Cannot Base Their Request for a Fee Multiplier on Class Counsel's Alleged Performance, Success at Trial, or the Complexity of the Case, Because Such Factors Are Subsumed in the Lodestar.</u>

The Supreme Court guidance is clear that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue*, 559 U.S. at 552, 543. Consequently, any enhancement cannot be awarded based on factors subsumed in the lodestar calculation. *See id.* at 553. Such factors include the novelty and complexity of the case and the quality of an attorney's performance. *See id.* The fee applicant bears the burden of producing specific evidence to demonstrate that a lodestar enhancement is necessary to provide fair and reasonable compensation that is adequate to attract competent counsel. *See id.* at 554.

Here, Class Counsel provides this Court with no evidence. Instead, Class Counsel states that because they "prevailed on both federal and state claims, a modest upward adjustment of Class Counsel's 'presumptively reasonable fee' is appropriate under both state and federal law." Dkt. 520, Class Counsel's Brief. Class Counsel further argues that they should be compensated for their expertise as well as their "risk-taking, tenacity, and success in pursuing relief on behalf of the classes and collective." *Id.* at 37. As an initial matter, Class Counsel's self-serving label of calling the nearly $3.5 million increase "modest" is absurd since their underlying fee petition is exorbitant and the 1.3x upward adjustment to the lodestar equates to 20.5% of the awarded damages. That is not modest; it is patently unreasonable. In any event, the factors Class Counsel lists as justification for their extraordinary request speak to the alleged novelty and alleged complexity of the case and the quality of Class Counsel's performance. Even assuming this case was novel or complex, the Second Circuit instructs that these factors cannot be taken into consideration when determining if a multiplier to the lodestar is appropriate. *See Millea v. Metro-North*, 658 F.3d 154, 167 (2d Cir. 2011) ("[T]he novelty and complexity of a case generally may not be used as a ground for [adjusting the lodestar]."). Because these factors have already been subsumed into the lodestar, considering these factors for a

lodestar-enhancement would create a windfall.  *See Perdue*, 559 U.S. at 552 (holding that reasonable fee should attract competent counsel, not create windfall for attorneys).

Additionally, Class Counsel's argument finds no statutory support for a multiplier.  Rather, the FLSA simply provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216 (b) (2019).  If Congress had intended for the courts to award multipliers to prevailing plaintiffs in FLSA actions, they could have explicitly done so.  *See, e.g.*, *Stewart Park & Reserve Coalition, Inc., v. Slater*, 325 F.3d 545, 555 (2d. Cir. 2003) (opining that if Congress wants to create a requirement in a statute, it can do so explicitly).

2.  <u>Class Counsel Is Not Entitled to a Fee Enhancement Under Federal Law Because They Fail to Satisfy the Factors Enumerated in *Perdue*.</u>

Cases that address the issue of attorneys' fees in the settlement context are of no value within the context of a case involving a fee petition.  *See Siegel v. Bloomberg L.P.,* 2016 U.S. Dist. LEXIS 38799, at *21-22 n.5 (S.D.N.Y. Mar. 22, 2016) (holding that cases counsel cited to that purportedly "approved" their rates were "unpersuasive authority" because they were approved within the context of a class settlement, not a fee petition); *Fawzy v. Gendry*, 12 CV 5580 (BMC), 2013 U.S. Dist. LEXIS 144323, at *4 n.2 (E.D.N.Y. Oct. 6, 2013) ("the dynamics of a fee determination in the context of FLSA settlement approval are very different, as the defendant is willing to pay the agreed-upon rate.").  Yet, to justify the exorbitant fee enhancement request, Class Counsel cites inapplicable cases in their brief that relate to settlement agreements, not a fee petition after a trial.  (Dkt. 520, at p. 36.)  Importantly, cases that contemplate fee enhancements in the settlement context apply a different legal test from those cases that do so under fee-shifting statues such as the FLSA.  "When evaluating whether a proposed attorneys' fee award in the *class action settlement context* is reasonable, the Court considers the . . . *Goldberger factors*. . . ."  *Kemp-Delisser v. St. Francis Hosp. & Med. Ctr.*, No. 15-

cv-1113 (VAB), 2016 U.S. Dist. LEXIS 152496, at *43 (D. Conn. Nov. 3, 2016) (emphasis added).[40]
By contrast, when determining whether a fee enhancement is warranted when awarding attorneys' fees
according to a fee-shifting statute, courts must follow *Perdue*, 559 U.S 542, 552.

Here, there is no settlement agreement between the parties.  Therefore, as Plaintiffs concede in
their brief, *Perdue* rather than *Goldberger* is applicable in the present case.  P's Br. 24.  But the cases
Class Counsel cites address lodestar multipliers within the context of settlement agreements, these
cases utilize the irrelevant *Goldberger* factors, rather than the relevant *Perdue* factors.[41]  These cases
simply compare multipliers within the Second Circuit to determine whether they are reasonable.  By
comparison, *Perdue* makes clear that a fee applicant seeking a fee enhancement must produce specific
evidence, rather than simple comparisons to other cases, to support the individual fee award.  *See*
*Perdue*, 559 U.S. at 553–54.

Plaintiffs intentionally confuse the differences between settling a case versus litigating to
verdict by arguing that because they litigated through trial, their requested fee enhancements are
"modest" in comparison to "less successful" cases that settled.  (Dkt. 520, at p. 36.)  Class Counsel's
unsupported policy arguments contradict clear Second Circuit guidance.  Specifically, the Second
Circuit instructs that fee multipliers in the *settlement context* are an important public policy
consideration for cases that *settle* because attorneys should not go to trial to accumulate greater fees.
*See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (holding that lodestar
disincentivizes settlement and encourages lawyers to run up hours unnecessarily).[42]

---

[40] The *Goldberger* factors include: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Goldberger v. Integrated Resources,* 209 F.3d 43, 50 (2d Cir. 2000).

[41] *See, e.g., Amara v. CIGNA Corp.,* No. 3:01-CV-2361, 2018 U.S. Dist. LEXIS 202717, at *3–4 (D. Conn. November 29, 2018) (applying *Goldberger* factors in awarding lodestar multiplier following settlement agreement); *Beckman v. Keybank, N.A.,* 203 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (same).

[42] *See also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (opining that lodestar method does not reward early settlement and class counsel should not necessarily receive lesser fees for settling case quickly).

Class Counsel's next argument is that they should receive a $3.5 million bonus because of an alleged delay.  As an initial matter, there is no exceptional delay here, and the extraordinary outlay of expenses was—as discussed herein—an avoidable consequence of Class Counsel's making.  Even assuming there was any delay, Class Counsel fails to cite any case law in which a court has awarded a fee enhancement due to a delay in the payment of fees.  Additionally, courts presume that attorneys who bring actions under fee-shifting statutes, such as the FLSA, understand that the payment of fees will ordinarily come at the end of the case.  *See Perdue*, 559 U.S. at 556.  Accordingly, rather than applying a lodestar multiplier, compensation for this delay is made by "either basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."  *Id.* (quotations omitted).  Given this presumption, courts are hesitant to apply lodestar multipliers to cases even where there were delays.[43]

Class Counsel's argument that they incurred an extraordinary outlay of expenses is circular and similarly lacks merit.  Class Counsel has grossly inflated their fees and over-lawyered this case, leading to their alleged "extraordinary outlay" of expenses.  As a result, Class Counsel would receive a windfall if they were able to receive a multiplier for running up an exorbitant amount in costs.  More broadly, awarding a fee enhancement would encourage attorneys to tally enormous costs in the hopes of earning a fee enhancement.  *See Baffa v. Donaldson Lufkin & Jenrette Secs. Corp*, 96 Civ. 0583 (DAB), 2002 U.S. Dist. LEXIS 10732, at *3 (S.D.N.Y. June 17, 2002) (warning against incentivizing attorneys to rack up costs).

---

[43] *See, e.g.*, *Dungee v. Davison Design & Dev., Inc.*, C.A. No. 10-325-GMS, 2018 U.S. Dist. LEXIS 33055, at *18 (Del. Dist. Ct. March 1, 2018) (declining to apply multiplier even where there was a delay in payment of fees); *Reg'l Emplrs. Assur. Leagues Voluntary Emples. Beneficiary Ass'n Trust v. Castellano*, 164 F. Supp. 3d 705, 739 (E.D.P.A. 2016) (holding that no fee enhancement warranted despite outlay of costs and delayed payment of fee); *United States v. $1,026.781.61 in Funds from Fla. Capital Bank*, CV 09-04381-MLG, 2013 U.S. Dist. LEXIS 28910, at *10–11 (C.D. Cal. 2013) (holding there was no exceptional delay warranting multiplier despite delays due to government's "discovery-related dilatory conduct").

     3.   <u>Class Counsel's Arguments for Multipliers Under Connecticut And California Law Fail</u>

Because Connecticut and California law look to federal law for issues related to attorney fees, Plaintiffs' arguments fail for substantially similar reasons.  For example, Class Counsel fails to cite any authority in which a court applying Connecticut law has made an upward adjustment to the lodestar much less a 1.5x upward adjustment.[44]  (Dkt. 520, pp. 31–33.)  Contrary to Class Counsel's assertion that the *Johnson* factors are utilized by Connecticut Courts to make upward adjustments to the lodestar, many courts have declined to make such adjustments.  In fact, courts have instead used the *Johnson* factors to *decrease* the lodestar figure.  *See, e.g., Conservation Comm'n v. Red 11, LLC.*, 135 Conn. App. 765, 787 (2012) (holding that trial court did not abuse its discretion in declining to reduce fee award after application of *Johnson* factors); *Sotavento Corp. v. Coastal Pallet Corp.*, 2010 Conn. Super. LEXIS 412, at \*53 (Conn. Sup. Ct. 2010) (reducing fee award).  Similar to federal law, Connecticut courts consistently opine that the *Johnson* factors are subsumed within the initial calculation of hours reasonably expended multiplied by a reasonable hourly rate.[45]  Class Counsel also misstates their ability to recover a fee enhancement under California law.  "[T]he trial court is not *required* to include a fee enhancement for exceptional skill, novelty of the questions involved, or other factors.  Rather, applying a multiplier is discretionary."  *Rey v. Madera Unified School Dist.*, 203 Cal. App. 4th 1223, 1242 (Cal. Ct. App. 2012) (emphasis in original).

---

[44]  Class Counsel cites to *MacDermid Printing Solutions, LLC v. Cortron Corp.,* No. 08 Civ. 1649, 2015 U.S. Dist. LEXIS 16504 (D. Conn February 11, 2015), in which no adjustment was made to the lodestar, and *Wells Fargo Bank, NA v. Konover*, No. 05 Civ. 1924, 2014 U.S. Dist. LEXIS 109720 (D. Conn. 2014), where the Court contemplated a <u>reduction</u> to the lodestar.

[45]  *See, e.g., Freeman v. A Better Way Wholesale Autos, Inc.*, 2018 Conn. Super. LEXIS 903, at \*6 (Conn. Sup. Ct. May 3, 2018); *Odell v. Wallingford Mun. Fed. Credit Union*, 2013 Conn. Super. LEXIS 1792, at \*86–87 (Conn. Sup. Ct. August 8, 2013); *Stearns v. Willard J. Stearns & Sons, Inc.*, 2012 Conn. Super. LEXIS 1673, at \*13 (Conn. Sup. Ct. 2012); *Hernandez v. Farahani*, 2012 Conn. Super. 2012 LEXIS 1823, at \*29 (Conn. Sup. Ct. 2012).

**G. Class Counsel's Fees Should Further Be Reduced For Poor Billing Judgment And Numerous Other Tasks For Which They Cannot Recover Fees including Travel Time, Lost or Withdrawn Issues, and Preparation of their Fee Petition.**

As assessed in detail, *supra*, Class Counsel's billing are replete with deficiencies that warrant a reduction of the bloated lodestar they request.  First, excessively high rates were necessarily reduced, followed by internal conferencing entries impacted by excessive overstaffing of this case with four firms and 89 billers, then vague entries, and a modest reduction for purely clerical tasks.  Given these necessary reductions, as noted by Attorney Schratz, Class Counsel exhibits a lack of billing judgment that warrants an **additional across-the-board reduction of 10%** to account for remaining deficiencies, lack of credibility in this billing given these deficiencies, and failure to properly manage the litigation.  *See* Schratz Dec., at ¶89.  As such, CSC requests that the Court adopt Attorney Schratz's "recommend[ation of] a 10% disallowance of remaining net fees of $5,956,415.00.   A 10% disallowance of $5,956,415.00 amounts to **$595,641.50."** *Id.*  As such net remaining fees would be reduced as follows:

> **"Net Fees:  $5,956,415.00**
> **Lack of Billing Judgment: - $595,641.50**
> **Net Fees:  $5,360,773.50."[46]**

In addition, as Attorney Schratz notes there are "fees that, for one reason or another, do not legitimately belong in the fee demand in a given case." *See* Schratz Dec., at ¶85 (discussing Class Counsel's failure to allocate fees among claims).  Here, there are many such fees such as (1) Class Counsel's excessive travel time resulting from their forum shopping; (2) fees incurred soliciting potential plaintiffs; (3) fees related to issues on which Plaintiffs lost (conditional certification, Senior Professionals, North Carolina subclass), withdrew (Breshears Report), or did not pursue (ERISA, Missouri, Maine and Maryland subclasses), and (4) all fees billed for preparing their fee petition and related motions.  As such, Class Counsel's billing should be similarly reduced for this billing for these additional fees that do not belong in their fee demand, as follows.

---

[46] *Id.*

1.  <u>Class Counsel Cannot Recover Fees for the Excessive Amount of Time (and Costs) on Travel Due To Their Decision To File In Connecticut</u>

Once again, because Class Counsel forum shopped this case, the typical rules do not apply for a travel time analysis. Because of the decision to file in Connecticut (and the overstaffing of this case), Class Counsel amassed a staggering **828.8** hours in travel time (amounting to **$373,790.50** in fees[47]). This Court—in the interest of justice—should deny Class Counsel <u>*any*</u> travel time.  To do otherwise would improperly reward Class Counsel for their gamesmanship, especially since Class Counsel were already rewarded with their goal of litigating the case in Connecticut and that injustice cannot be undone now.  Class Counsel cannot be allowed to penalize CSC with an assessment of costly travel time fees for that travel time resulting from Plaintiffs' own forum-shopping decision.  At minimum, this Court should deny all travel time for any California lawyer.

Even assuming Class Counsel here did not forum shop and the normal rules applied, Class Counsel still should not be awarded any travel time.  "A corollary to [the forum rule] is that expenses and fees related to travel must be excluded from an award of attorneys' fees if the hypothetical reasonable client who wishes to spend the least amount necessary to litigate the matter . . . would have retained local counsel." *United States ex rel. Feldman v. Gorp*, 2011 U.S. Dist. LEXIS 14914 (S.D.N.Y. 2011) (quotations omitted). "Courts have typically found that a reasonable, paying client would presumptively hire a firm located near the courthouse in which the litigation is to take place because doing so minimizes expenses incurred as a result of an attorney's travel time." *Doe v. E. Lyme Bd. of Educ.*, 2019 U.S. Dist. LEXIS 53148, at *33-34 (quotations omitted).  Accordingly, courts find

---

[47] *See* Examples of Travel Billing Entries, attached as Exhibit 7 to Farmer Dec.  <u>Note</u>: all additional fee reductions proposed throughout this brief (such as travel time, here) are calculated using the reduced rates recommended by Attorney Schratz in Exhibit 7 to Schratz Dec.  Assuming Class Counsel did cut their travel fees in half—which they have submitted no proof of—this still amounts to an exorbitant $246,442.00 in travel fees (using Class Counsel's unreasonable rates), which is unrecoverable in addition to being unreasonable for the reasons argued herein.

that "hours spent traveling by out-of-district attorneys are not hours 'reasonably expended' where competent counsel is available within the district." *See, e.g.*, *id.* at *7 n.2.[48]

As previously established, Class Counsel has utterly failed to make a particularized showing sufficient to rebut the forum rule. Here, a reasonable client would have hired in-district counsel who would not have encountered the significant travel expenses incurred by Class Counsel. Therefore, Class Counsel's out-of-district counsel cannot receive fees for travel time and expenses.

Class Counsel attempts to be magnanimous, suggesting they willingly cut their travel time 50%. (Dkt. 520, p. 13.) Even assuming Class Counsel did not forum shop, such a concession is not a concession at all and is merely consistent with the law in the Second Circuit. *See, e.g.*, *Magnuson v. Newman*, No. 10-CV-6211 (JMF), 2014 U.S. Dist. LEXIS 105688, at *12-13 (S.D.N.Y. July 31, 2014) (reducing billing entries with travel by half recognizing that travel time is not as productive as office or court time); *Davis v. Eastman Kodak Co.,* 758 F. Supp. 2d 190, 201 (W.D.N.Y. 2010) ("[C]onsistent with Second Circuit practice, travel time for all of the above categories should be compensated at half of the regular hourly rate.").

2. <u>Class Counsel Cannot Recover Fees For Advertising And Soliciting Plaintiffs.</u>

Class Counsel billed **195.9 hours** (amounting to **$79,979.00** in fees) spent soliciting Plaintiffs. For example, the following entries are typical regarding solicitation of class members:



*See* Examples of Prenotice Solicitation, Exhibit 8 to Farmer Dec.  Class Counsel also billed for training

---

[48] *See also Friedman v. SThree Plc*, No. 3:14CV00378 (AWT), 2017 U.S. Dist. LEXIS 149895, at *27 (D. Conn. Sept. 15, 2017) (refusing to compensate out-of-state counsel's travel to and from court conference where presumption in favor of forum rule was not overcome); *Doe v. E. Lyme Bd. of Educ.*, 2019 U.S. Dist. LEXIS 53148 at *33-34 (declining to award attorneys' fees for travel to and from district by out-of-state counsel); *see also Thomas v. Board of Education*, 505 F. Supp. 102, 104 (N.D.N.Y. 1981) (refusing to award fees for travel time).

its own staff to solicit plaintiffs. *See id.* (including entry by Todd Jackson: "Prep for training with co-counsel in intakes"). Awarding Class Counsel fees for solicitation of opt-ins and class members would not only be granting them unreasonable fees but would reward counsel for engaging in pre-notice solicitation disfavored by courts. All such fees should be eliminated.

> 3.   <u>Class Counsel Drove Up Their Fees by Pursuing Unsuccessful or Unnecessary Litigation Tactics Such As Lost Claims or Pursuing Classes or Tactics Later Abandoned or Withdrawn</u>

It is well-established that if claimed hours "appear 'excessive, redundant, or otherwise unnecessary,' the [district] court should reduce the award accordingly." *Sony Electronics*, 389 F. Supp. 2d at 449 (citing *Webb v. Bd. of Educ. of Dyer County*, 471 U.S. 234, 254 & n.16 (1985); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).   "A prevailing party is not entitled to a fee for hours dedicated to prosecuting unsuccessful claims." *DeLeon v. Little*, 2000 WL 435494 *4 (D. Conn. 2000) (citing *Hensley v. Eckerhart*, 461 at 433). Once the lodestar amount is determined based on reasonable hours at a reasonable rate, a district court must then consider whether that amount should be adjusted based on other factors, including the degree of success. *Soler*, 801 F. Supp. at 1066; *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997) (when claims on which the party prevailed did not involve same proof and facts as those on which party lost, attorney's fees are not appropriate). Indeed, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Rabin*, 425 F. Supp. 2d at 274, citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). This factor is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *DeLeon*, 2000 WL 435494 at *4-5 (finding where plaintiff obtains "only partial or limited success," a reduction is appropriate because time expended would not be "reasonable in relation to the success achieved.").

a. *Class Counsel Cannot Recover Fees For Conditional Certification Or Any Billing Related to Senior Professional SAs*

Class Counsel cannot be awarded attorney fees for <u>any</u> of the **759.4 hours** (amounting to **$253,044.00** in fees) they billed pursuing conditional certification[49] or the **20.7** remaining hours (amounting to **$5,865.00** in fees) billed regarding Senior Professionals only.  In addition, there should be an across-the-board reduction on all billing regarding class certification given Class Counsel later withdrew that class.  All of these categories of related fees are not reasonable since Plaintiffs lost this issue at the certification stage, ultimately agreeing to eliminate the entire Senior Professional class.

Although Class Counsel gratuitously removed billing for only the *depositions* of Senior Professionals, this does not go nearly far enough.  (Dkt 520, p. 13-14.) Despite that CSC offered the possibility of consenting to conditional certification, Class Counsel needlessly pursued conditional certification of the Senior Professionals. CSC only opposed the Senior Professionals.  *See* Dkt. 160 (specifying in CSC's Opposition to Conditional Certification that "CSC limits its objection to the highly paid, highly skilled Senior Professional System Administrators…").  Thus, all billing resulting from Class Counsel's pursuit of conditional certification should be eliminated as it was superfluous.[50]

Beyond that, Class Counsel ultimately lost on their Rule 23 Motion to Certify with regard to Senior Professionals, which comprised approximately 1/3 of the class (although a far higher percentage of damages in light of their higher salaries).  Therefore, an across-the-board reduction regarding all billing on the Motion to Certify (Dkt. 302) is warranted.  *See DeLeon*, *supra*, 2000 WL 435494 at * 5 (where plaintiff obtains "only partial or limited success," a reduction is appropriate because the time expended would not be "reasonable in relation to the success achieved.").  Therefore, a reduction of time spent pursuing the Rule 23 Motion to Certify the Class is necessary in order to make fees

---

[49] *See* Examples of Billing For Conditional Certification, attached as Exhibit 9 to Farmer Dec.
[50] Further, while Class Counsel allegedly eliminated a portion of billing regarding Senior Professional SAs, there is still **20.7 hours** of billing related to Senior Professional SAs that remain in their billing that must be eliminated. *See* Examples of Remaining Senior Professional Billing Entries, Exhibit 10 to Farmer Dec.

"reasonable in relation to success achieved."  This said, due to Class Counsel's vague billing, even an expert bill auditor was unable to ascertain exactly the amount of billing that should be reduced as a result of this issue.[51]   Therefore, this Court should order that Class Counsel be required to rectify this billing issues and provide this Court and CSC with billing records that will allow a clear determination of the number of hours that must be eliminated given Class Counsel's loss on this issue.

> b.  *All Billing Should Be Eliminated for Additional Claims Class Counsel Lost, Withdrew, Or Never Brought*

Parties should not be compensated for time spent pursuing claims or taking positions that were unreasonable or unsuccessful.  *See Pascuiti v. New York Yankees,* 108 F. Supp. 2d 258, 268 (S.D.N.Y.2000).  This includes claims that were abandoned or otherwise never pursued.  *See Cooper v. Sunshine Recoveries, Inc.,* No. 00 Civ. 8898, 2001 WL 740765, at \*3 (S.D.N.Y. June 27, 2001) (denying compensation for class claims never pursued).   Therefore, all of Class Counsel's time regarding the North Carolina subclass, which Plaintiffs lost, and Plaintiffs' consideration of claims not pursued (Missouri, ERISA, Maryland, and Maine subclasses) must be eliminated.

Class Counsel's billing entries also include **12.1 hours ($5,273.50 in fees)** specifically related to the unsuccessful North Carolina subclass.[52]   Similarly, Class Counsel added a Missouri subclass in their September 28, 2015 Amended Complaint (Dkt. 240) but did not pursue this class further.  The billing for ERISA, Missouri, Maine, and Maryland subclasses that were not pursued amounts to **25.2 hours ($11,825.00in fees)** all must be eliminated from Class Counsel's billing because Class Counsel never pursued these claims.  *See* Examples of ERISA, MO, ME, and MD Billing Entries, Exhibit 12 to Farmer Dec.

---

[51] Due to Class Counsel's deficient and vague  billing, Attorney Schratz, a seasoned expert, "attempted to quantify the amount of Class Counsel's billing entries allocated solely to Senior Professional SAs" but he "was unable to do so due to the vagueness of the entries and, ultimately, [] was unable to identify the true amount of fees billed related to this issue." *See* Schratz Dec, at ¶85.  As such, while he identified that "[p]otentially one-third of the Class Counsel's activities could have related to Senior Professional SAs who are not members of the ultimately certified FLSA collective and state-law classes," "out of an abundance of caution, I am not recommending a disallowance given my inability to identify the relevant fee entries for this issue due to vague billing."  *See id.* at ¶85-86.

[52] *See* Examples of Billing Regarding North Carolina Subclass, attached as Exhibit 11 to Farmer Dec.

> ### c. All Costs and Fees For the Class Counsel's Post-Trial Expert (Breshears) Report Must Be Removed from Billing

Plaintiffs filed a *post-trial* expert report of David Breshears (the "Breshears' Report") with their damages assessment on February 16, 2018, billing **40.7 hours** (amounting to **$19,770.00** in fees) in relation to the Breshears' Report.  *See* Examples of Billing Entries Regarding the Breshears' Report, Exhibit 13 to Farmer Dec.  Since Class Counsel withdrew this untimely expert report, the hours expended towards it are unreasonable and thus should be eliminated from Class Counsel's entries.[53]

### 4. Class Counsel Cannot Recover For The Time Spent Preparing Its Fee Petition Or Any Other Fee Related Motions

Time entries related to the preparation of fee petitions are not recoverable.  *See E. Point Sys. v. Maxim*, No. 3:13-cv-00215-VAB, 2015 U.S. Dist. LEXIS 64455, at *5-6 (D. Conn. May 18, 2015) (rejecting "time entries for preparing the summary of expenses" in connection with successful motion to compel, after fees had been awarded).  Plaintiffs' billing is replete with entries that relate exclusively to the Plaintiffs' attempt to recover their fees. *See* Dkt. 522, Time Entry Nos. 22006, 22016, 22032, 22079.  Class Counsel's time records reflect that several timekeepers collectively spent around fifty hours in August and September 2019 reviewing the time entries.

Additionally, Plaintiffs filed a Motion for Protective Order regarding their fees.  Despite Class Counsel's self-serving contentions, these fee-related motions are entirely unrelated to Plaintiffs' underlying claims and regards Class Counsel's interests, not Plaintiffs'. *See Blackwell v. Astrue*, No. 06-CV-860S, 2008 U.S. Dist. LEXIS 73578, at *4 (W.D.N.Y. Sept. 3, 2008) (denying award of fees relating to reply that "pertained primarily to Plaintiff's counsel's interest in receiving attorney's fees").

---

[53] Class Counsel similarly requests reimbursement for an astounding **$157,848.75** in costs related to this withdrawn expert, which should similarly be denied, as argued *infra*, in Section III(I).

Thus, the Court should reject the **358.2 hours** (amounting to **$113,450.00** in fees) spent preparing their fee petition.[54]

### H.  The Expenses Sought Are Not Supported Or Recoverable.

Plaintiffs request for reimbursement of an outrageous $584,560.54 in costs, an amount Plaintiffs' themselves admit is "more than is typically spent in comparable cases" (Dkt. 520, p. 36). <u>All</u> such costs should be rejected because Class Counsel failed to provide any receipts, invoices, or documentation to validate such charges.[55]  Indeed, "[w]here an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award any costs." *See De Alvarez v. City of New York*, 2012 U.S. 79991, at *7 (E.D.N.Y. 2012) (denying recovery of costs with the exception of the filing fee where counsel failed to provide any documentation for the costs incurred).[56]  As such, all costs must be rejected as Class counsel has failed to provide any documentation of the same.

Even if Class Counsel had provided receipts and documentation supporting such enormous charges, which they have not, the claimed costs are comprised almost entirely of items for which the Local Rules do not allow reimbursement.  *See* L. Civ. R. 54(c)7.  Further, Class Counsel failed to explain why they argue that such an astronomical and atypical amount of costs is warranted in this case as opposed to other "comparable" cases.  Pursuant to the Local Rule, even if Class Counsel had provided documentation backing up these costs, the following expenses should be excluded as they are not recoverable:

---

[54] *See* Examples of Fee Petition Entries, attached as Exhibit 14 to Farmer Dec., (showing entries reflecting Class Counsel's work on attorneys' fee petition and related motions such as the Motion for Protective Order and to Seal Exhibit Q to Declaration of Jahan Sagafi).

[55] *See* Schratz Dec., at ¶95 (recommending disallowing all Class Counsel's requested costs due to "the excessive and vague nature of many of the costs incurred, potentially undisclosed cost markups, and missing back-up documentation"); *see also* Dkt. 537-4, Exhibit O-2 to Sagafi Dec. (cost summary) and 537-5, Exhibit P-2 to Sagafi Dec. (listing Plaintiffs' itemized "Cost Detail" but not providing back-up documentation for the same).

[56] *See also Lide v. Abbott House*, No. 05 Civ. 3790, 2008 U.S. Dist. LEXIS 13826, at *8–9 (S.D.N.Y. Feb. 25, 2008) (declining counsel's request to recover $50,174 in costs because no documentation was submitted); *Ferguson v. United Health Care*, 3:08cv1389 (MRK), 2008 U.S. Dist. LEXIS 101796, at *16 (D. Conn. December 17, 2008) (declining to award costs where counsel provided no documentation of the amount of attorney's fees and costs incurred).

- Computerized Research: $48,155.18
- Consultant Costs and Fees (including withdrawn expert, David Breshears): $165,137.54
- Telephone Charges: $10,406.72
- Postage: $371.38
- FedEx/UPS: $5,632.49
- Travel: $115,681.53[57]
    - Meals: $9,817.67
- Website Design/Hosting: $1,166.53[58]
- Media Costs: $2,205.00
- Excessive Printing/Copying: $37,070.17[59]
- Telephone Charges: $10,406.39[60]
- **TOTAL REDUCTION: - $406,050.60**

Notably, Plaintiffs include in their costs $165,137.54 of consultant costs and fees, **$157,848.75 (27% of all costs)** of which was paid to Hemming Morse, LLP, which is the financial and forensic accounting firm of Certified Public Accountants ("CPAs") of Plaintiffs' late disclosed and later withdrawn expert, David Breshears.  *See* http://www.hemmingmorse.com.  As Mr. Breshears was withdrawn, should CSC not be responsible for paying for his fees and costs.  *See* Section III(H)(3)(c), *supra* (arguing that all costs and fees with regard to the Breshears Report should be disallowed).

For the foregoing reasons, Plaintiffs should be denied all costs as they have failed to provide documentation substantiating the costs allegedly incurred.  Furthermore, Plaintiffs have failed to establish that any such costs are reasonable.  Alternatively, Plaintiffs' costs must be reduced by at least $406,050.60 for costs claims outside of case law and/or the Local Rules of the District in which they willingly filed the present matter.  As such, at maximum, Class Counsel may receive $178,509.94 in costs.

---

[57] *See* Section III(H)(1), *supra*, arguing that Plaintiffs are not entitled to travel fees or expenses because, after forum shopping, they chose to file this matter in Connecticut making frequent cross country travel necessary.

[58] Defendant cannot examine itemized costs in either Exhibit O or Exhibit P to Sagafi Dec. (Dkt. 520-16 and 520-17) for this category, but based on the label of this category, it can only assume that such website design relates to the advertising to prospective plaintiffs and, thus, these costs are non-reimbursable and should be eliminated.

[59] *See* Schratz Dec., at ¶75 (noting that "if the total printing/copying cost of $37,070.17 is divided by .10 cents per page then Class Counsel printed or copied 370,701.70 pages.  This amounts to an average of 4,165.18 pages for each of the 89 timekeepers," which is patently excessive).

[60] *Id.* at ¶93 (questioning why "such phone charges were incurred when phone plans typically include unlimited nationwide calling and free conferencing services are available through companies such as AT&T").

## IV.    CONCLUSION

CSC respectfully requests that this Court reject Plaintiffs' request for a multiplier and reduce Plaintiffs' billing in the measured, reasonable, and modest approach supported by both case law and expert auditor, Attorney Schratz, as clearly laid out in Paragraph 96 of his Declaration:

| | |
|---|---|
| **STARTING LODESTAR:** | **$10,369,189.00** |
| Hourly Rate Adjustment | -$2,406,371.50 |
| Overstaffing and Intra/Inter-Office Conferencing | -$1,592,563.50 |
| Vague Entries | -$267,544.00 |
| Clerical Entries | -$146,295.00 |
| Lack of Billing Judgment | -$595,641.50 |
| **Subtotal of Fees Disallowed** | **-$5,008,415.50** |
| **Total Fees Allowed** | **$5,360,773.50** |
| | |
| **REQUESTED COSTS:** | **$584,560.54** |
| All Costs Disallowed | -$584,560.54 |
| **Total Costs Allowed:** | **$0** |
| **TOTAL ALLOWED FEES AND COSTS:** | **$5,360,773.50** |

CSC, however, argues that the following additional reductions should also be assessed as argued, *supra,* to account for fees that should not be included in the fee demand, in particular those issues on which Plaintiffs' lost, withdrew, did not pursue or for which they otherwise cannot recover for the reasons argued herein:

- Travel Fees: - **$373,790.50**
- Soliciting: - $**79,979.00**
- Forum shopping: -**$16,289.00**
  - Opposing Motion to Transfer: - **$22,478.00**
- Fees regarding Conditional Certification: - **$253,044.00**
- Fees regarding Senior Professionals: - **$5,865.00** plus an unknown amount pursuant to Motion for Class Certification[61]
- North Carolina subclass: - **$5,273.50**
- Missouri, Maine, Maryland, ERISA Subclasses: - $**11,825.00**
- Breshears' Report: - **$19,770.00**

---

[61] As argued, *supra,* Class Counsel should be compelled to supplement with this information.

- Fee Petition:  - **$113,450.00**
- **TOTAL ADDITIONAL REDUCTIONS: - $901,764.00**

Also, Plaintiffs have failed to meet their burden of reasonableness and should be denied all fees and costs.   Alternatively, should the Court find otherwise, applying all reasonable reductions, Plaintiffs' should be granted <u>at most</u> $**4,459,009.50** in fees and **$0** in costs.

Respectfully submitted,

DEFENDANT,
COMPUTER SCIENCES CORPORATION

By its attorneys,

*/s/ William J. Anthony*
**JACKSON LEWIS P.C.**
William J. Anthony (ct 17865)
Kristi Rich Winters (ct 28066)
677 Broadway, 9th Floor
Albany, New York 12207
Telephone: 518-512-8700
Anthonyw@jacksonlewis.com
Kristi.Winters@jacksonlewis.com

David R. Golder (ct 27941)
David C. Salazar-Austin (ct 25564)
Alexa M. Farmer (ct30052)
90 State House Square, 8th Floor
Hartford, CT  06103
Tel: (860) 522-0404
Fax: (860) 247-1330
golderd@jacksonlewis.com
david.salazar-austin@jacksonlewis.com

Brett M. Anders*
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960
Tel: (973) 538-6890
andersb@jacksonlewis.com

Cary G. Palmer*
Nathan W. Austin*
801 K Street, Suite 2300
Sacramento, CA 95814
Tel: (916) 341-0404
palmerc@jacksonlewis.com
AustinN@jacksonlewis.com

*  admitted *pro hac vice*

**<u>CERTIFICATION OF SERVICE</u>**

I hereby certify that on November 4, 2019, a copy of the foregoing was hand delivered to the Court and Plaintiffs' attorneys or filed electronically and served by mail on anyone unable to accept electronic filing.


*/s/ William J. Anthony*
William J. Anthony