| | |
|---|---|
| **OUTTEN & GOLDEN LLP**<br>Jahan C. Sagafi*<br>One California Street, 12th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 638-8800<br><br>Darnley D. Stewart*<br>Michael J. Scimone*<br>Michael N. Litrownik (ct 28845)<br>685 Third Avenue, 25th Floor<br>New York, New York 10017<br>Telephone: (212) 245-1000<br><br>**SUSMAN, DUFFY & SEGALOFF, P.C.**<br>Karen B. Kravetz (ct 19665)<br>P.O. Box 1684<br>New Haven, CT 06507<br>Telephone: (203) 624-9830<br><br>*Attorneys for Plaintiffs and the Classes and Collective* | **FEINBERG JACKSON WORTHMAN & WASOW**<br>Todd Jackson*<br>Darin Ranahan*<br>Genevieve Casey*<br>383 4th Street, Suite 201<br>Oakland, CA 94607<br>Telephone: (510) 269-7998<br><br>**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**<br>Daniel M. Hutchinson*<br>Lin Y. Chan*<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 956-1000<br><br>*admitted *pro hac vice* |

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>   Defendant. | No.: 3:14-cv-956 (JBA) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES AND COSTS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

    I.     CLASS COUNSEL ACHIEVED A HIGH LEVEL OF SUCCESS. ...................... 2

    II.    CLASS COUNSEL'S RATES ARE REASONABLE. .......................................... 3

          A.     CSC's Forum-Shopping Argument Is Unavailing. ......................................3

          B.     Reasonable Connecticut Clients Pay Class Counsel's
               Standard Rates. .........................................................................................4

    III.   CLASS COUNSEL'S HOURS WERE REASONABLE. ....................................... 5

          A.     CSC Cannot Blame Class Counsel for Responding to
               its Defense Tactics. ...................................................................................5

          B.     The Schratz Declaration Is Not Entitled to Any Weight. ............................6

    IV.   A FEE ENHANCEMENT IS APPROPRIATE AND REASONABLE. ................ 8

    V.    PLAINTIFFS' COSTS ARE SUPPORTED AND RECOVERABLE. ................... 9

CONCLUSION........................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                          Page(s)

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
   369 F.3d 91 (2d Cir. 2004)......................................................................................... 10

*Blackwell v. Astrue*,
   No. 06 Civ. 860, 2007 WL 5476193 (W.D.N.Y. Nov. 1, 2007).................................... 3

*Campbell v. Nat'l Passenger R.R. Corp.*,
   718 F. Supp. 2d 1093 (N.D. Cal. 2010) ......................................................................... 7

*Cruz v. Starbucks Corp.*,
   No. 10 Civ. 01868, 2013 WL 2447862 (N.D. Cal. June 5, 2013) ............................. 2, 7

*De Alvarez v. City of N.Y.*,
   No. 10 Civ. 4434, 2012 WL 2087761 (E.D.N.Y. May 16, 2012) ............................... 10

*Dungee v. Davison Design & Dev., Inc.*,
   No. 10 Civ. 325, 2018 WL 1110249 (D. Del. Mar. 1, 2018)......................................... 9

*East Point System, Inc. v. Steven Maxim, S2K, Inc.*,
   No. 13 Civ. 215, 2015 WL 2381079 (D. Conn. May 18, 2015) .................................... 3

*Emp'rs. Ins. of Wausau v. Fox Entm't Grp.*,
   522 F.3d 271 (2d Cir. 2008)............................................................................................ 3

*Febus v. Guardian First Funding Grp., LLC*,
   870 F. Supp. 2d 337 (S.D.N.Y. 2012)............................................................................. 9

*Garcia v. Tyson Foods, Inc.*,
   No. 06 Civ. 2198, 2012 WL 5985561 (D. Kan. Nov. 29, 2012)..................................... 5

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2d Cir. 1998)............................................................................................ 9

*Lema v. Mugs Ale House*,
   No. 12 Civ. 2182, 2014 WL 1230010 (E.D.N.Y. Mar. 21, 2014) ................................. 3

*M.K. ex rel. K. v. Sergi*,
   578 F. Supp. 2d 425 (D. Conn. 2008).......................................................................... 10

*Pappas v. Watson Wyatt & Co.*,
   No. 04 Civ. 304, 2008 WL 45385 (D. Conn. Jan. 2, 2008) ........................................... 9

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010)........................................................................................................ 9

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*,
   497 F.3d 133 (2d Cir. 2007)......................................................................................... 3

*Quaratino v. Tiffany & Co.*,
   166 F.3d 422 (2d Cir. 1999)......................................................................................... 2

*Regional Emp'rs.' Assurance Leagues Voluntary Emps.' Beneficiary Ass'n Tr. v. Castellano*,
   164 F. Supp. 3d 705 (E.D. Pa. 2016) .......................................................................... 9

*Rodriguez v. Cty. of L.A.*,
   891 F.3d 776 (9th Cir. 2018) ....................................................................................... 8

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   No. 10 Civ. 1827 (JBA), 2016 WL 1192648 (D. Conn. Mar. 28, 2016) .................. 10

*S. New Eng. Tel. Co. v. Glob. Naps, In*c. ("SNET"),
   No. 04 Civ. 2075, 2008 WL 1848899 (D. Conn. Apr. 25, 2008) ........................... 4, 5

*Seigal v. Merrick*,
   619 F.2d 160 (2d Cir. 1980).......................................................................................... 3

*United States v. $1,026.781.61 in Funds from Fla. Capital Bank*,
   Nos. 09 Civ. 4381, 09 Civ. 716, 2013 WL 781926 (C.D. Cal. Mar. 1, 2013) ............ 9

*Wang v. Hearst Corp.*,
   203 F. Supp. 3d 344 (S.D.N.Y. 2016)......................................................................... 5

*Wells Fargo Bank, NA v. Konover*,
   No. 05 Civ. 1924, 2014 WL 3908596 (D. Conn. Aug. 8, 2014) ............................. 10

*Zorrilla v. Carlson Restaurants Inc.*,
   No. 14 Civ. 2740, 2018 WL 1737139 (S.D.N.Y. Apr. 9, 2018)................................. 5

## **INTRODUCTION**

Class Counsel successfully litigated this case on behalf of workers across the United States for five years, against a global company, in the face of a procedural war of attrition. CSC ignores or diminishes the work that led to a Plaintiffs' verdict, including a willfulness finding, that restored unpaid wages to the Class. In doing so, CSC dismisses client counseling as "solicitation" and legal research as "forum shopping," when in fact Counsel responsibly researched venue and interviewed workers to learn the scope of CSC's misclassification, steps which streamlined discovery and led to declarations used to certify the Classes. CSC does not dispute the necessity of Plaintiffs' discovery, or deny that CSC itself sought over 100 depositions it did not use or need. That discovery accounts for 33% (6,877) of Class Counsel's hours.

Nor does CSC dispute that the trial led to a verdict that it willfully violated the law. While CSC second-guesses the usefulness of Class Counsel's team, it does not defend its own decision to erroneously claim that it would call 69 witnesses and enter over 700 exhibits at a 25-30 day trial. Trial preparation and trial account for 30% (6,210) of Class Counsel's total hours.

Class Counsel won key motions, and CSC does not claim Plaintiffs' motions were wrongly filed. On the other hand, CSC does not justify filing multiple unsuccessful motions to decertify, reverse the jury's verdict, and compute damages based on flawed data. Motion practice, including opposing CSC's motions, accounts for 18% (3,666) of Class Counsel's hours.

And although Class Counsel chose to streamline trial by stipulating to use CSC's time records, CSC refused to provide usable data. CSC now blames the Court for the resulting delay, Def.'s Br. 4, n.5, and states without irony that the issue "could have been resolved in a streamlined manner" – as indeed it could have if CSC had cooperated, as Counsel requested. *See* ECF No. 528 (Special Master's R&R) at 8 ("Defendant's own actions served to lengthen this process and created additional work for counsel and their expert(s)").

Despite CSC's scorched-earth approach, Class Counsel procured the evidence to prevail at trial and secure full damages against 15 lawyers from eight offices in five states. CSC's California "expert," whose brief-by-declaration suffers from glaring methodological flaws, adds little and should be rejected. Class Counsel should be paid for their successful efforts.

I. **CLASS COUNSEL ACHIEVED A HIGH LEVEL OF SUCCESS.**

CSC tries to diminish the value of Plaintiffs' victory, Def.'s Br. 32-35, but this argument rings hollow – it is at best difficult "to second-guess the staffing decisions of . . . counsel [when] the approach taken . . . was successful." *Cruz v. Starbucks Corp.*, No. 10 Civ. 01868, 2013 WL 2447862, at *8 (N.D. Cal. June 5, 2013). CSC tries to deflect attention from Plaintiffs' overall victory by focusing on small amounts of time related to the dismissal of Senior Professionals, state-law or collateral claims investigated but not pursued, and a report which summarized work that was necessary to unwind CSC's incoherent data, which Class Counsel voluntarily withdrew in the face of CSC's collateral motion to strike. These arguments are unpersuasive.

First, apart from the Senior Professional deposition time that Class Counsel voluntarily removed, work on the Senior Professionals' claims was "inextricably intertwined" with the certified Classes and benefitted the Classes. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Discovery on Senior Professionals allowed Class Counsel to better understand the differences between those workers, honing their evidentiary presentation. For example, that knowledge enabled Class Counsel to address testimony from trial witness Patricia Smith, showing that she was an outlier relative to other Class Members. The reason CSC is unable to identify fee entries relating solely to Senior Professionals, *see* Def.'s Br. 34, n.51, is because,

> [W]hen counsel . . . appear for a conference representing multiple clients, or write a letter seeking or opposing judicial relief common to all of their clients, they do not apportion their efforts pro rata—instead, they devote all of their efforts to all of their clients. To do otherwise would unethically risk laboring under a conflict of interest.

*Lema v. Mugs Ale House*, No. 12 Civ. 2182, 2014 WL 1230010, at *7 (E.D.N.Y. Mar. 21, 2014).

Second, CSC ignores that Class Counsel's time researching prospective claims and sub-classes, Def.'s Br. 34, was *de minimis* (37 of 20,607 hours) and that "[e]very lawyer, indeed every judge, has pursued blind alleys that initially seemed reasonable or even professionally obligatory." *Seigal v. Merrick*, 619 F.2d 160, 165 (2d Cir. 1980).

Third, work on the Breshears Report helped Class Counsel analyze CSC's flawed data to sort out the errors and omissions in CSC's data productions, which CSC was compelled to fix, to the benefit of the Classes.[1]

## II.     CLASS COUNSEL'S RATES ARE REASONABLE.

### A.     CSC's Forum-Shopping Argument Is Unavailing.

"Any lawyer who files a case on behalf of a client must consider which of the available fora might yield some advantage to his client, and thus, to that degree, engages in 'forum shopping.'" *Emp'rs. Ins. of Wausau v. Fox Entm't Grp.*, 522 F.3d 271, 276 (2d Cir. 2008). Class Counsel's analysis of the most beneficial forum for this case was part of their zealous representation.[2] This Court found that Connecticut is an appropriate forum. ECF No. 145. And it is; Connecticut is home to more CSC System Administrators than almost any other state, and

---

[1]     CSC's argument that Plaintiffs are not entitled to fees incurred in moving for fees is frivolous and contrary to settled law. *See, e.g.*, *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 142-43 (2d Cir. 2007) (fees incurred litigating fee award are mandatory). CSC fails to inform the Court that *East Point System, Inc. v. Steven Maxim, S2K, Inc.*, No. 13 Civ. 215, 2015 WL 2381079 (D. Conn. May 18, 2015), was amended because the court "overlooked controlling decisions" regarding recovery for fees. 2016 WL 1169553, at *1 (D. Conn. Mar. 22, 2016). *Blackwell v. Astrue*, No. 06 Civ. 860, 2007 WL 5476193, at *5 (W.D.N.Y. Nov. 1, 2007), *adopted in part, rejected in part*, 2008 WL 4145523 (W.D.N.Y. Sept. 8, 2008) was a "special circumstance" where fees were denied for a reply brief devoted solely to "whether counsel is paid by the opponent or by the client from the client's recovery of the fee award" under the Equal Access to Justice Act, and where counsel failed to provide time records.
[2]     CSC appears to propose, Def.'s Br. 11-12, that attorneys should select venue based on where the prevailing hourly fee rates are highest, rather than prioritizing their clients' interests.

Connecticut case law is relevant, as CSC concedes. *See* Def.'s Br. 11. CSC offers no support for its argument that forum shopping has any effect on attorney fee petitions.[3]

### B. Reasonable Connecticut Clients Pay Class Counsel's Standard Rates.

Class Counsel have shown that clients in Connecticut regularly pay their hourly rates. Pls.' Br. 19. CSC does not acknowledge or rebut this evidence. Nor does it show that local counsel could have handled this case, which required a combination of specialization, experience, and resources not found in Connecticut. *Id*. 19-21. Richard Hayber, whom CSC identifies as a Connecticut attorney who regularly handles overtime cases, Def.'s Br. 15, testifies that it would be "irresponsible" for him to accept this case without out-of-state counsel. *See* Sagafi Decl. Ex. B[4] (Hayber Decl.) ¶¶ 15-23. His *Scott v. Aetna* case, which was considerably smaller than this one, was prosecuted by six firms, with New York co-counsel, and settled before trial. *Id.* ¶ 16. CSC cites no case comparable to this one handled by in-state counsel only.

Finally, "[CSC's] argument that paying out-of-district rates in this case is unreasonable is belied by their own choice to be represented by [national] firm [Jackson Lewis], with lead counsel from [five states]," including its national co-chair, William Anthony. *S. New Eng. Tel. Co. v. Glob. Naps, Inc.* ("*SNET*"), No. 04 Civ. 2075, 2008 WL 1848899, at *2 (D. Conn. Apr. 25, 2008). Thus, CSC's own choice of counsel confirms that Plaintiffs' choice was reasonable.[5]

CSC's argument, Def.'s Br. 9, that Class Counsel's hourly rates should parallel those of their local counsel Susman, Duffy & Segaloff is unsupported. Courts routinely grant different

---

[3] CSC's cited cases, Def.'s Br. 11, are irrelevant because they hold that forum shopping is disfavored in other inapposite contexts.
[4] Unless otherwise indicated, all exhibits herein are attached to the Reply Declaration of Jahan C. Sagafi ("Reply Decl.")
[5] Mr. Hayber notes that the defense tactics typical of firms such as Jackson Lewis are one reason he often seeks co-counsel from outside Connecticut. *See* Hayber Decl. ¶ 21.

rates to local co-counsel who have a limited role on the case. *See, e.g.*, *SNET*, 2008 WL 1848899, at *2 & n.3 (awarding out-of-district rates, with lower rates to local counsel).

### III. CLASS COUNSEL'S HOURS WERE REASONABLE.

CSC cannot escape the consequences of its aggressive defense strategy. The hours Class Counsel spent were a direct consequence of the discovery slog CSC fought to create. This case required more hours than *Garcia v. Tyson Foods, Inc.*, No. 06 Civ. 2198, 2012 WL 5985561 (D. Kan. Nov. 29, 2012), which involved 18 depositions by both sides and limited written opt-in discovery; here, CSC conducted 37 depositions and sought written discovery from 131 Plaintiffs. *Id.*, ECF No. 1073 at 5 (D. Ka. June 17, 2011) (Ex. C); *id.*, ECF No. 756 at 4 (D. Ka. May 5, 2009) (Ex. D). *Zorrilla v. Carlson Restaurants Inc.*, No. 14 Civ. 2740, 2018 WL 1737139 (S.D.N.Y. Apr. 9, 2018),[6] supports Class Counsel's petition; there, plaintiffs' counsel spent 17,723 hours ($7,409,074 in lodestar), then settled pre-class certification. *See id.*, ECF No. 509, at 1, 10-11 (S.D.N.Y. Mar. 21, 2018) (Ex. E). By comparison, here Class Counsel spent 10,958 hours ($5,133,295 in lodestar) pre-certification. *See* Sagafi Decl., Ex. H, ECF No. 520-9.[7]

#### A. CSC Cannot Blame Class Counsel for Responding to its Defense Tactics.

Contrary to CSC's claim, Def.'s Br. 5-6, Plaintiffs sought discovery to streamline and narrow the class. CSC fought Plaintiffs' tailored document discovery and refused to produce witnesses for months, thereby requiring discovery motions and extra work where a cooperative

---

[6] *Zorrilla* and *Flood*, cited by CSC as two cases, are the same case.
[7] CSC's other alleged comparators are orders of magnitude smaller than this case. *See, e.g. Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784, ECF No. 273, at 5 (S.D.N.Y. Nov. 2, 2016) (57 opt-ins and 78 settlement class members in *Glatt* and companion case) (Ex. F); *Wang v. Hearst Corp.*, 203 F. Supp. 3d 344, 347 (S.D.N.Y. 2016), *aff'd*, 877 F.3d 69 (2d Cir. 2017) (6 plaintiffs and no state law class); *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305, ECF No. 367, at 3 (S.D.N.Y. Oct. 10, 2017) (pre-class certification settlement of related cases involving 2 opt-in depositions) (Ex. G); *Reyes v. Altamarea Grp.*, No. 10 Civ. 6451, ECF No. 75, at 2 (S.D.N.Y. Aug. 4, 2011) (26 opt-in plaintiffs) (Ex. H).

approach would have allowed discovery to be targeted and efficient. Pls.' Br. 2, 4. Class Counsel therefore had to rely more heavily on interviews with potential class members to ascertain job duties and commonalities. These interviews resulted in declarations in support of class certification. CSC cites no authority that supports excluding this time. Put simply, CSC argues that although it broke the law and obstructed discovery, Class Counsel should not be paid to discover the contours of CSC's violations.[8]

Likewise, CSC's argument that Class Counsel overstaffed the trial, Def.'s Br. 17, ignores the fact that all members of Plaintiffs' trial team were involved in preparing witnesses and cross-examinations and responding to CSC's motions when they were not presenting witnesses or argument. *See* Pls.' Br. 8-9. CSC also ignores that its tactics forced Class Counsel to prepare for a trial defense that CSC never mounted: CSC threatened to introduce 700 exhibits and 69 witnesses. *See* Pls.' Br. 8. In actuality, despite putting on only three live witnesses, CSC brought five attorneys (from California, New York, and Connecticut) to the courtroom every day, plus two in-house attorneys, demonstrating that Class Counsel's staffing was proportional.

### B. The Schratz Declaration Is Not Entitled to Any Weight.

CSC's 36-page declaration from an undisclosed California "expert"[9] illustrates how its defense tactics have run up costs in this case. Attorney Schratz's declaration is effectively a legal brief, citing 48 cases for substantive propositions but containing little analysis of the work

---

[8]   CSC's argument against recovery for travel time, Def.'s Br. 31, ignores that this time was the result of CSC's choices: 53% (428.4 of 812.8 hours) of travel was for depositions noticed by CSC. Reply Decl. ¶ 44. Another 12% (99.8 hours) was for 30(b)(6) depositions or settlement talks at locations CSC insisted on for its convenience. *Id*. ¶ 45.

[9]   Ironically, CSC argued against Class Counsel's use of a consultant to calculate damages data during an earlier stage of this litigation, on the ground that he was an undisclosed expert, and now seeks to exclude time spent working on that project. *See* ECF No. 456; Def.'s Br. 35.

necessary in this particular case.  Schratz's claim of expertise is undermined by the fact that he fails to disclose any methodology for categorizing or evaluating entries.

Where Schratz's methodology can be discerned, it is misleading.  For example, Schratz argues that "intra-office conferencing [should] average[] between 2% to 4% of the total fees," Schratz Decl. ¶ 73 (emphasis added), but he lumps together both inter- and intra-office contact, and does not limit his tally to conferences; it also includes correspondence, which frequently includes substantive exchanges of written work product.  Reply Decl. ¶ 14.  Schratz bases his 20% recommended reduction on the observation that the number of entries is 28.7% of the total, which CSC's claims is "28.7% of [Counsel's] time."  Def's Br. 1 (emphasis added).  This is not true: the number of entries does not correlate to the amount of time, which amounts to 11% of Class Counsel's hours.  Reply Decl. ¶¶ 6-7.  Over half (3,417) of Schratz's 6,395 flagged *entries* involve intra-firm exchanges between attorneys and staff, which reflects efficient staffing, where senior individuals assign and review work by junior individuals.  Reply Decl. ¶ 10.

Schratz does not explain his 2-4% benchmark, which has been rejected in other cases as unsound.[10]  In any event, of the 11% of total hours spent on all forms of communication, the intra-office portion comprises approximately 4% of Class Counsel's time.  Reply Decl. ¶ 17.

Schratz also claims that approximately 9% of the recorded hours are vague or "clerical," without explaining the methodology behind that conclusion.  Schratz Decl. ¶¶ 77-82, 83-84; Def.'s Br. 20-23.  In fact, most of the "vague" entries he identifies are understandable when read

---

[10]  *See Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1104-05 (N.D. Cal. 2010) ("Mr. Schratz . . . postulates that two percent of total fees is a reasonable amount to bill for conferencing . . . The Court does not find this methodology persuasive."); *Cruz*, 2013 WL 2447862, at *8 ("[N]o authority . . . suggests that it would be appropriate to follow a bright-line rule as to the percentage of conferencing that is reasonable in any particular case.").

7

in context,[11] whereas the "clerical" entries are consistent with the duties of a litigation paralegal, *see* Reply Decl. ¶ 31-39, illustrating that Class Counsel used these team members efficiently.

The lack of objectivity in Schratz's declaration is most glaring in his arbitrary proposal to reduce Class Counsel's fees by 10% – on top of the reductions above – for what he deems "lack of billing judgment" and "disregard for well-established billing practices." But Schratz does not claim any actual insight into Counsel's practices or recommend changes – he relies only on the questionable results of his "audit." This arbitrary cut simply double-counts his other reductions.

A reasonable assessment of the billing issues identified by Schratz is consistent with the 7% across-the-board reduction suggested by Class Counsel. *See* Pls.' Br. 15; Reply Decl. ¶ 41.

## IV.    A FEE ENHANCEMENT IS APPROPRIATE AND REASONABLE.

CSC's statement that the Court is "not *required* to include a fee enhancement," Def.'s Br. 28, is irrelevant – the Court has the discretion to do so, and Class Counsel have shown that one is appropriate under the relevant factors. Pls.' Br. 34-36. CSC muddles the federal and state law standards for fee enhancements, incorrectly stating, without support, that Connecticut and California law look to federal law in considering attorney fees. Def.'s Br. 28. But "[c]alculation of attorney's fee awards in cases brought under state law is a substantive matter to which state law applies," *Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 809 (9th Cir. 2018); Pls.' Br. 33 (listing cases), and state law applies the *Ketchum* and *Johnson* factors. *See* Pls.' Br. 31-32.

Class Counsel have also shown that a fee enhancement is appropriate under *Perdue*. Pls.' Br. 35. CSC's "comparator" cases had significantly lower costs or delays for ordinary

---

[11] Schratz does not appear to have meaningfully applied his definition of vague entries as those which "severely interfere[] with [his] ability to analyze the billing records[.]" It appears that Schratz simply used a keyword search to find any entry that references "correspondence," "communication," or related terms without the specific name of an associated individual. This approach is unreliable because it results in entries such as "Correspondence with mediator" and "Telephone conference with opt in" being flagged as impermissibly vague. Reply Decl. ¶ 18-30.

discovery-related conduct or post-settlement proceedings. *See United States v. $1,026.781.61 in Funds from Fla. Capital Bank*, Nos. 09 Civ. 4381, 09 Civ. 716, 2013 WL 781926, at *4 (C.D. Cal. Mar. 1, 2013) (dilatory conduct was not exceptional); *Dungee v. Davison Design & Dev., Inc.*, No. 10 Civ. 325, 2018 WL 1110249, at *5 (D. Del. Mar. 1, 2018) (expenses of $20,000 and delay between settlement and payment of fees did not support enhancement).[12]  These examples are unlike CSC's conduct during the damages phase, where it produced flawed data and resisted its duty to correct those errors.  Pls.' Br. 34-36.  This factor alone justifies an enhancement.

## V.  PLAINTIFFS' COSTS ARE SUPPORTED AND RECOVERABLE.

Class Counsel's costs are recoverable.  Pls.' Br. 38-39.  CSC "is mistaken" that Plaintiffs "seek costs under Fed. R. Civ. P. 54." *Pappas v. Watson Wyatt & Co.*, No. 04 Civ. 304, 2008 WL 45385, at *9 (D. Conn. Jan. 2, 2008); Def.'s Br. 36.  Plaintiffs seek costs pursuant to "fee-shifting statutes [which] 'normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Id.*; *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998); *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012).  These include costs for travel, legal research, telephone and copy charges.[13]  *See Pappas*, 2008 WL 45385, at *9 (awarding travel costs for discovery; holding that despite "Defendant's arguments based on the local rule, the Plaintiff is

---

[12]  The decision in *Regional Emp'rs.' Assurance Leagues Voluntary Emps.' Beneficiary Ass'n Tr. v. Castellano*, 164 F. Supp. 3d 705, 739 (E.D. Pa. 2016), is unpersuasive because it is inconsistent with *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010).  The decision simply rejects one of the *Perdue* factors – delay caused by the defense – by concluding that the delay actually benefitted the plaintiff's counsel because it let them seek rates that had increased over time.  This is unrealistic – most lawyers working on contingency would rather be paid sooner than have a contingent fee accrue at a rate that tracks inflation.

[13]  Class Counsel's copying costs, *see* Def.'s Br. 37 n.59, were reasonably incurred and necessary because CSC designated nearly all the documents it produced "confidential," limiting Class Counsel's ability to use an outside vendor to prepare courtesy copies.  Reply Decl. ¶ 42.

9

entitled to recover . . . costs related to . . . research, telephone calls, postage and federal express").[14]

Courts have also allowed costs for consultants like the accountants at Hemming Morse, LLP that Class Counsel hired to analyze CSC's flawed data, identify errors, and compute damages. In a complex case like this, retaining consultants to analyze data is indispensable, and these costs are therefore reasonable litigation expenses. *See Wells Fargo Bank, NA v. Konover*, No. 05 Civ. 1924, 2014 WL 3908596, at *17 (D. Conn. Aug. 8, 2014).[15] This necessary expense directly led to the final damages award for the Classes.

## CONCLUSION

Class Counsel did the work needed to win. They litigated this case effectively, efficiently, and successfully. Their customary rates reflect the real value of the work needed to procure a class-wide victory after trial for a nationwide class of workers in the face of aggressive defense by a national firm. Few counsel have the experience, resources, and expertise needed to achieve this outcome; Class Counsel do, and used them to secure their clients' unpaid overtime wages. They should be paid in full for vindicating their clients' rights against a multinational employer that the jury found had willfully violated the law.

---

[14]   *See also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 369 F.3d 91 (2d Cir. 2004) at 97–98 ("[I]n the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award."); *M.K. ex rel. K. v. Sergi*, 578 F. Supp. 2d 425, 434–35 (D. Conn. 2008) (allowing recovery for costs of electronic research). Even if Local Rule 54 applied, the Court could award research costs as part of the attorneys' fees. *See Romag Fasteners, Inc. v. Fossil, Inc.*, No. 10 Civ. 1827 (JBA), 2016 WL 1192648, at *4 (D. Conn. Mar. 28, 2016) (Arterton, J.).

[15]   CSC cites no authority requiring receipts and invoices to support costs. The only case CSC relies on holds that "documents or . . . sworn statements setting forth . . . costs" are required. *De Alvarez v. City of N.Y.*, No. 10 Civ. 4434, 2012 WL 2087761, at *3 (E.D.N.Y. May 16, 2012). Here, Class Counsel provided a detailed statement in a sworn declaration. If the Court requires additional documentation of Class Counsel's costs (including receipts and invoices), Class Counsel would be happy to provide them.

Dated: December 5, 2019

Respectfully submitted,

By: /s/ *Jahan C. Sagafi*
    Jahan C. Sagafi

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
Michael N. Litrownik (ct28845)
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

**FEINBERG JACKSON WORTHMAN & WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

*Attorneys for Plaintiffs, the Classes, and the Collective*

*admitted *pro hac vice*