**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
Michael N. Litrownik (ct 28845)
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct 19665)
59 Elm Street, 5th Floor
New Haven, CT 06510
Telephone: (203) 624-9830

*Attorneys for Plaintiffs and the Classes and Collective*

**FEINBERG JACKSON WORTHMAN & WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
2030 Addison St., Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

*admitted *pro hac vice*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>Defendant. | No.: 3:14-cv-956 (JBA)<br><br>**REPLY DECLARATION OF JAHAN C. SAGAFI IN SUPPORT OF CLASS COUNSEL'S POST-TRIAL MOTION FOR ATTORNEYS' FEES AND COSTS** |

I, JAHAN C. SAGAFI, declare as follows:

1. I am a partner at Outten & Golden LLP ("O&G"), attorneys for Plaintiffs, the Classes, and the FLSA collective.

2. I make this Declaration in connection with Plaintiffs' Reply in Support of Motion for Attorneys' Fees and Costs and specifically to respond to the claims in the Declaration of James P. Schratz in Support of Defendant's Opposition to Class Counsel's Motion for Attorneys' Fees and Costs ("Schratz Decl."), ECF No. 541-3.

3. I make these statements based on personal knowledge and would so testify if called as a witness.

4. I have reviewed the declaration of James P. Schratz, submitted in opposition to Plaintiffs' fee petition, and our office has undertaken a thorough analysis of Attorney Schratz's work product.

**Attorney Schratz's Analysis of Inter-Office/ Intra-Office Communication.**

5. Attorney Schratz identifies 6,395 entries purportedly relating to inter-office/intra-office communication.  *See* ECF No. 545 (Ex. 12 to Schratz Decl.).

6. Attorney Schratz asserts that, because 6,395 out of Class Counsel's 22,278 total entries relate to intra-office/ inter-office communication, "28.71% . . . of Class Counsel's timekeepers' non-block billed time was devoted to some type of intra-office/ inter-office communication." ECF No. 541-3 (Schratz Decl.) ¶ 72 (emphasis added).

7. Attorney Schratz's conclusion is inaccurate because the number of entries does not directly correlate to the amount of time expended.  Indeed, the majority of conferences recorded in Class Counsel's billing records are of relatively short duration, making the number

of entries a misleading figure. Plaintiffs' review of Attorney Schratz's tally shows that the average entry in Schratz Exhibit 12 is about .3 hours.

8. The entries in Schratz Exhibit 12 reflect a total of 2,211 hours, which is 11% (<u>not 28.71%</u>) of Class Counsel's total hours (20,607).

9. Attorney Schratz argues that <u>intra-office</u> <u>conferencing</u> should amount to 2-4% of total fees, although he does not explain how he chose this range, or what kinds of comparator matters he bases it on. *See* ECF No. 541-3 (Schratz Decl.) ¶ 73. In any event, a review of Schratz Exhibit 12 shows that his analysis includes all forms of communication – not just conferences – and that it includes both <u>intra-office and inter-office communication</u>.

10. These two categories are significantly different. Intra-office communication reflects exchanges between timekeepers within the same firm, often to delegate and allocate work among team members in the most efficient way possible, for example by ensuring that each task is performed by the timekeeper with the lowest billing rate who is able to competently perform the work. This requires careful communication to describe an assignment and respond to questions. Intra-office communication also includes review of work performed by staff or less senior attorneys, which is a professional (and in many cases ethical) requirement of sound legal practice. This requires careful communication to monitor assignments and discussion about research results (e.g., the junior individual distills what she learned so that the senior individual can use her time more efficiently in writing a brief, negotiating with the defendant, or presenting argument to the court). Sometimes, intra-firm communications reflect delegation to subject matter experts (for example, Class Counsel's eDiscovery counsel). These entries account for more than half (3,417 out of 6,395) of the entries in Schratz Exhibit 12.

11. <u>Inter</u>-firm communications, in contrast, include correspondence and meetings to develop strategy to prosecute discovery, motion practice, and trial, and to develop guidelines and processes for document review, witness interviews, and fact investigation.

12. The role of these inter-firm communications is illustrated by the fact that they are most frequent at key decision points in the litigation. Approximately 36% (474 hours) of the inter-office communication occurred during the pre-216(b) and Rule 23 discovery periods in this case (i.e. 9/10/2014 – 4/1/2015 and 5/22/2015 – 4/19/2016)**.**

13. Another 11% (142 hours) of the inter-office communication occurred during the post-trial damages phase (12/5/2018 – 8/12/2019), including the proceedings before the Special Master, which required extensive communication and coordination with experts and the Special Master. This collection of entries is particularly overbroad, as it classifies communication between counsel and Plaintiffs' digital forensic experts as inter-office communication (*see, e.g.*, Entry No. 20948), as well as conferences involving opposing counsel and CSC's experts (*see, e.g.*, Entry No. 21378).

14. In addition, there is a difference between conferences and correspondence, such that one form of communication is better suited to certain tasks than the other. For example, correspondence may include a report summarizing communications with class members, the results of a review of discovery documents, or other substantive work. *See, e.g.*, Entry No. 20814 ("Draft status report re MyTime extraction and calculation end date issue, send to G. Casey"). This is a form of internal written work product that is used to communicate information relevant to the decisionmaking process. It is significantly different from discussions between attorneys and other staff, where those decisions are made and assignments are delegated to the appropriate timekeeper.

15. Importantly, inter-firm communications among plaintiffs' co-counsel are a usually necessary component of large-scale nationwide complex class and collective litigation, because plaintiffs' firms are typically far smaller than the corporate firms they litigate against. For example, even though Outten & Golden is the largest plaintiffs' employment firm in the country, with approximately 70 lawyers in four offices and other locations, Jackson Lewis has 934 attorneys in 62 American offices, according to its website,[1] making it approximately 13 times the size of Outten & Golden.  This is representative of my experience litigating workers' rights cases – defense counsel are usually more than 10 times the size of our firm.  To match their resources and to handle the work needed to successfully prosecute these claims on a nationwide basis, we often co-counsel with other firms.  In co-counseling cases, each firm owes a duty to the clients and the courts to responsibly monitor all significant aspects of the litigation. This requires regular communication.  Even though some of that communication might not be necessary at a single defense firm, the nature of the market for legal services, with plaintiffs' firms being one-tenth or even one-hundredth the size of corporate firms, means that it is generally necessary on the plaintiff side.

16. Here, CSC is represented by two firms:  Jackson Lewis and Proskauer.  Proskauer has 725+ lawyers in 7 American offices plus offices abroad, per its website.[2]  I understand that lawyers at those two firms have communicated with each other about this case, as one would expect.

---

[1]   The site https://www.jacksonlewis.com/people lists 934 individuals, and the site https://www.jacksonlewis.com/offices lists 62 American offices.
[2]   See https://www.proskauer.com/locations

17. Plaintiffs' review of Attorney Schratz's Exhibit 12 shows that approximately 898 of the hours he identifies relate to intra-office communications, of all kinds. This represents approximately 4% of Class Counsel's total hours (898 ÷ 20,607).

**<u>Attorney Schratz's Apparent Methodology for Identifying Vague Entries.</u>**

18. Attorney Schratz identifies 1,818 time entries that he claims are vague to the point that they "severely interfere[] with [his] ability to analyze the billing records in this particular case." ECF No. 541-3 (Schratz Decl.) ¶ 82.

19. These entries reflect a total of 1,161 hours expended by Class Counsel and $720,559.00 in lodestar using Plaintiffs' regular hourly rates.[3]  *See* ECF No. 545 (Ex. 13 to Schratz Decl.). This amounts to 6% of Class Counsel's total hours (20,607) expended in the litigation.

20. Attorney Schratz does not explain in his declaration how he identified these entries. As best we can ascertain, Attorney Schratz appears to have used a keyword search to identify any entry that includes a communicative term such as "conference"; "correspondence"; or "discuss" but does not include the proper name of a participant.

21. Schratz considers entries where the communication includes general terms such as "the court," "the mediator," "opt-in," "class member," and "potential class member" to be improperly "vague" without explaining how they are vague. The following are examples of the time entries that he identifies as "vague":

| Entry No(s) | Date | Timekeeper | Time | Description |
|---|---|---|---|---|
| 17996 | 10/23/2017 | Darnley D. Stewart | 1.5 | "Call with court." |

---

[3] All references to Plaintiffs' lodestar herein are calculated using Plaintiffs' regular hourly rates.

| | | | | |
|---|---|---|---|---|
| 18489; 18714; 18745; 18877; 18932; 18969; 21223; 21385; 21486; 21508; 21535; 21541; 21690; 21691; 21703; 21747; 21809; 22064 | 11/17/2017 – 9/3/2019 | Justin M. Swartz | 1.8 | "Correspondence with mediator" |
| 17148; 17161; 17186; 17231; 17266; 17389; 17400; 17445 | 8/14/2017 – 9/7/2017 | Darnley D. Stewart | 6.9 | "Telephone conference with opt in" |
| 19367; 19972; 19973; 19980; 20027; 20040; 20045; 20073 | 3/8/2018 – 7/23/2018 | Jared W. Goldman | 1.2 | "Correspondence with class member" |
| 8284; 8285; 8463; 8812 | 3/28/2014 – 7/9/2014 | Michael N. Litrownik | 1.4 | "Telephone conference with potential client." |
| 12327 | 8/4/2015 | Darryl A. Bailey | 0.5 | "Telephone conference with prospective opt-in." |

22.   Attorney Schratz does not explain why entries such as these are vague or cannot be analyzed.  In the case of terms such as the "court" and "mediator," the name of the individual does not provide significant additional information that would be needed to ascertain whether the work performed was appropriate to the case; if anything, describing a mediator by role rather than name sheds more light on the nature of the work than simply using a name that a reviewer may be unfamiliar with.

23.   With respect to opt-in plaintiffs and class members, our firm's practice, which we train our attorneys and staff to follow, is to avoid including client names in time entries, because of the possibility that those entries will appear in the public record (for example, in connection with a fee petition).  By doing so, we reduce the likelihood that work product or client confidential information will be revealed publicly.  We do not believe that it is necessary to know a particular client's name to determine whether work done with respect to a particular

individual was properly billed to the case; it should in most cases be sufficient to know that the work related to an opt-in plaintiff or class member.

24. The unreliability of Attorney Schratz's bright-line approach is especially pronounced with respect to his treatment of written communication.

25. Our review of Attorney Schratz's analysis shows that 275 of the 1,161 hours (24%) that Schratz identifies as vague include the words "correspondence" or "email" but do not specify the proper name of a recipient. These entries typically describe correspondence that relates to obvious attorney work product, leading to the inference that the correspondence is between and among the core group of Plaintiffs' attorneys responsible for prosecuting this matter. For example:

| Entry No(s) | Date | Timekeeper | Time | Description |
|---|---|---|---|---|
| 5126; 5133 | 8/14/2017 – 8/15/2017 | Daniel Hutchinson | 2.8 | "Correspondence re witness preparation" |
| 5074 | 7/26/2017 | Daniel Hutchinson | 1.1 | "Correspondence re witness selection" |
| 5343 | 10/21/2017 | Daniel Hutchinson | 0.7 | "Correspondence re jury instructions, call with co-counsel re the same." |
| 5039 | 7/17/2017 | Daniel Hutchinson | 1.3 | "Correspondence re trial tasks." |
| 8585 | 6/23/2014 | Jahan C. Sagafi | 1.0 | "Correspondence re Plaintiff interview, edits to complaint." |

26. Our legal team has regularly communicated by email to develop strategy, keep each other apprised of litigation activities and settlement efforts, and coordinate division of labor. This communication *increases* efficiency relative to the alternative – discussing each topic in a conference call or other live communication. It is impractical to specify the other people involved in the correspondence, because such emails are often directed to a group of recipients.

8

27. In many cases, Attorney Schratz's review of Class Counsel's billing entries appears to be limited by his unfamiliarity with this litigation, rather than ambiguity in the entries themselves. For example, he identifies certain entries as "vague" that do not specify the name of a specific document reviewed or drafted. In most, if not all, of these instances the identity of the document is clear based on either the time frame during which the work was performed or by reference to surrounding entries.

28. For example, Plaintiffs filed their Motion for Class Certification, including 19 declarations and 61 other exhibits, on June 3, 2016. During the week immediately prior to this filing (May 27 to June 3, 2016), Schratz identifies 23 hours as vague, but the content of the entries and the time frame provide sufficient clarity to understand the work performed. For example:

| Entry No(s) | Date | Timekeeper | Time | Description |
|---|---|---|---|---|
| 15979 | 6/2/2016 | Part Time Paralegal | 1.1 | "Pull deposition excerpts." |
| 15962 | 6/1/2016 | Michael N. Litrownik | 0.5 | "Finalize declarations for signature." |
| 16006 | 6/3/2016 | Michael J. Scimone | 0.7 | "Review draft declarations." |
| 452 | 6/1/2016 | Todd Jackson | 3.2 | "Draft brief." |
| 4701 | 5/31/2016 | Michael Decker | 3.2 | "Declarations - draft/edit. |
| 4717 | 6/3/2016 | Daniel Hutchinson | 1.4 | "Edit declaration; correspondence re brief." |

29. This pattern is also evident at other key stages of the litigation.

30. Reducing Attorney Schratz's tally of "vague" entries by approximately 29% to reflect the prevalence of clear attorney work product and other shortcomings in his analysis

9

described above, the vague entries would account for approximately 824 hours, or 4% of Class Counsel's total 20,607 hours.

**Attorney Schratz's Identification of Purportedly Clerical Work.**

31. Attorney Schratz identifies 1,313 entries purportedly reflecting what he believes to be clerical work.  *See* ECF No. 545 (Ex. 14 to Schratz Decl.).

32. These entries reflect a total of 708 hours, which is approximately 3% of Class Counsel's total hours.  Over 83% (591 ÷ 708) of the hours identified by Attorney Schratz in Schratz Exhibit 14 are paralegal/ litigation support personnel hours; thus, paralegal hours spent on allegedly clerical work account for about 2.8% of Class Counsel's total time, with less than 0.6% relating to allegedly clerical entries by non-paralegals.

33. These entries reflect compensable tasks that align with the core responsibilities of litigation paralegals, according to industry guidelines.

34. The National Association of Legal Assistants ("NALA") is a 501(c)(6) membership organization that represents more than 18,000 paralegals.  NALA provides continuing legal education and professional development designed specifically to advance paralegals in their careers.[4]

35. NALA publishes Model Standards and Guidelines for Utilization of Paralegals ("Model Standards") which are designed as guides to what may or may not be proper conduct for a paralegal.[5]

36. The NALA Model Standards provide that defined tasks which may be performed by a paralegal include, *inter alia*:

---

[4]   *See* https://www.nala.org/about-nala/nala-history.
[5]   A true and correct copy of the NALA Model Standards and Guidelines for Utilization of Paralegals ("NALA Model Standards") is attached hereto as **Exhibit A**.

- prepare discovery requests and responses;
- schedule depositions and prepare notices and subpoenas;
- summarize depositions and other discovery responses;
- coordinate and manage document production;
- locate and interview witnesses;
- organize pleadings, trial exhibits and other documents;
- prepare witness and exhibit lists;
- prepare for the attendance of witnesses at trial; and assist lawyers at trials.[6]

37. Many of the entries Schratz classifies as "clerical" are actually paralegal tasks according to the NALA Model Standards. Although individual time keepers may describe certain tasks as "filing" or "printing," they require knowledge of the litigation, eDiscovery technology, or court rules, and are not easily performed by an employee with strictly clerical duties or training. For example:

| Entry No(s) | Date | Timekeeper | Time | Description |
|---|---|---|---|---|
| 18897 | 12/6/2017 | Stephanie Yu | 4.8 | "Assist in trial preparation re printing requested documents, locating and pulling documents requested by attorneys, circulating documents, reorganizing and replenishing war rooms, checking in with attorneys and witnesses during preparation sessions." |
| 14441 | 1/4/2016 | LiAnne P. Chan | 0.7 | "Calendar depositions and document production deadlines; correspondence with internal team re same." |
| 14045 | 12/8/2015 | Darryl A. Bailey | 0.4 | "Coordinate loading of Defendant's document production to Ringtail."[7] |
| 18637 | 11/27/2017 | Stephanie Yu | 0.3 | "Correspondence with Court Deputy re availability and questions about court room technology training." |
| 18099 | 10/27/2017 | Stephanie Yu | 0.3 | "Index Defendants' 2017-10-26 supplemental production." |
| 18432 | 11/15/2017 | Sara Olson | 5.1 | "Import Defendant productions onto Ringtail." |
| 13202 | 10/15/2015 | Jeffrey M. Domanico | 0.6 | "Save new document production and update discovery percentage chart" |

---

[6]    Ex. A (NALA Model Standards) at pp. 11-12, Guideline 5, Comment.

[7]    "Ringtail" refers to an electronic discovery review platform that hosts documents produced in litigation. Loading documents into Ringtail requires ensuring that all metadata is properly associated with documents, that the organization of document productions is consistent with the parties' agreed production protocols, and similar tasks.

11

| 17644 | 9/28/2017 | Christopher C. Alter | 0.1 | "TIFF imported PDF image from document" |
|-------|-----------|---------------------|-----|-----------------------------------------|
| 17023 | 8/3/2017 | Christine Park | 0.5 | "Update case file re class members' availability for attorney consultation" |
| 17024 | 8/3/2017 | Christine Park | 1.8 | "Update case file re contact information for potential trial witnesses, telephone conferences with same, and update case file call log re same." |
| 5453 | 11/20/2017 | Mugrage, Major | 5.2 | "Gather and index electronic deposition materials." |
| 3736 | 7/24/2015 | Schott, Joshua | 0.5 | Scheduled depositions with opt ins. |

38. Class Counsel's paralegals are responsible for maintaining an organized case file, calendaring deadlines, reviewing Court orders to determine the effect on existing deadlines, filing submissions via ECF, preparing courtesy copies, uploading and reviewing productions, communicating with class members, and various other tasks that require knowledge of procedural rules.

39. Even if one assumes that half of the paralegal entries identified by Attorney Schratz are in fact clerical in nature, they would amount to approximately 1.4% of Class Counsel's total hours, in addition to 0.6% of total hours spent on allegedly clerical work by non-paralegals. These entries together total approximately 2%.

**Assessment of the Deficiencies Identified by Attorney Schratz.**

40. Taken together, and viewed through the lens of hours worked, Attorney Schratz identifies:

    a. 11% of Class Counsel's time entries related to inter- or intra-firm communications of all kinds, 4% of which relates to the intra-firm communications that he claims should be limited to 2-4% of total fees (as described in paragraphs 8, 9, and 17 above);

      b.      4% of Class Counsel's hours that are allegedly vague, once adjusting for entries that contain clear references to attorney work product (as described in paragraph 30 above). Attorney Schratz proposes to reduce lodestar for these entries by half, suggesting a 2% total reduction. *See* ECF No. 541-3 (Schratz Decl.) ¶ 82;

      c.      Approximately 2% of Class Counsel's hours that relate to purportedly clerical work, when adjusting Schratz's analysis to reflect the role of a litigation paralegal (as described in paragraph 39 above).

41.     Taking these tallies together, Attorney Schratz suggests a total reduction of approximately 4% for allegedly vague and clerical entries. Attorney Schratz does not show that the 11% of time spent on communications is unusual or inappropriate; the portion that relates to intra-firm communications is in line with his arbitrary benchmark of 2-4% that he proposes for such time. Attorney Schratz does not propose a benchmark for inter-firm communications, which account for approximately 6% of Class Counsel's time. Even if this time were reduced by half, it would account for a reduction of only 3%. Taken together with a 4% reduction for vague or clerical entries, this would lead to a reduction of 7%, which is in line with the reduction that Class Counsel suggested in their moving papers. *See* Pls.' Br. 15.

**Printing Costs**

42.     Class Counsel's printing costs reflect the duration and intensity of this litigation. Approximately half were incurred during the three and a half pre-trial years from July 1, 2014 to December 1, 2017, while the remaining half were incurred during the five-week period of trial work from December 1, 2017 to January 5, 2018. Class Counsel's ability to use an outside vendor to prepare hard-copy documents was hampered by the fact that CSC designated nearly all

of the documents produced in discovery as "confidential." O&G charges $.15 per page for printing black and white and color documents. This rate is in line with cases that have approved such charges under fee shifting statutes. *See, e.g.*, *Rand-Whitney Containerboard v. Town of Montville*, No. 96 Civ. 413, 2006 WL 2839236, at *25 (D. Conn. Sept. 5, 2006) ("The Court also finds that the prevailing rate in Connecticut for copying is 15 cents per page."); *Robinson v. City of New York*, No. 05 Civ. 9545, 2009 WL 3109846, at *11 (S.D.N.Y. Sept. 29, 2009) (approving reimbursement for copying at 15 cents per page).

**Travel Time**

43. CSC identifies 812.8 hours of Plaintiffs' travel time in Exhibit 7 to the Declaration of Alexa M. Farmer, ECF No. 544.

44. Plaintiffs' review of these entries shows that 53% of the travel time (428.4 hours) comprises travel for opt-in depositions noticed by CSC that were conducted around the country, generally where the opt-ins live.

45. Plaintiffs' review shows that 12% of the total travel time (99.8 hours) comprises travel for depositions of corporate witnesses and mediation sessions, which were conducted at locations that CSC requested for the sake of its witnesses' and officers' convenience.

46. Plaintiffs' review shows that 34% of the total travel time (275.2 hours) comprises travel for court conferences, hearings, and trial.

47. Plaintiffs were able to identify an additional 1% of the total travel time (9.3 hours) that comprises miscellaneous travel for team meetings and paralegal work.

**Exhibits**

48. Attached hereto as **Exhibit A** is a true and correct copy of the NALA Model Standards and Guidelines for Utilization of Paralegals.

49. Attached hereto as **Exhibit B** is a true and correct copy of the Declaration of Richard E. Hayber.

50. Attached hereto as **Exhibit C** is a true and correct copy of Plaintiffs' Memorandum in Support of Motion for Attorneys' Fees and Costs in *Garcia v. Tyson Foods, Inc.*, No. 06 Civ. 2198, ECF No. 1073 (D. Ka. June 17, 2011).

51. Attached hereto as **Exhibit D** is a true and correct copy of the Court's Scheduling Order in *Garcia v. Tyson Foods, Inc.*, No. 06 Civ. 2198, ECF No. 756 (D. Ka. May 5, 2009).

52. Attached hereto as **Exhibit E** is a true and correct copy of Plaintiffs' Memorandum of Law in Support of Motion for Approval of Attorneys' Fees and Reimbursement of Expenses in *Zorrilla v. Carlson Restaurants Inc.*, No. 14 Civ. 2740, ECF No. 509 (S.D.N.Y. Mar. 21, 2018).

53. Attached hereto as **Exhibit F** is a true and correct copy of the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Certification of the Settlement Class, and Approval of FLSA Settlement in *Glatt v. Fox Searchlight Pictures, Inc.*, No. 11 Civ. 6784, ECF No. 273 (S.D.N.Y. Nov. 2, 2016).

54. Attached hereto as **Exhibit G** is a true and correct copy of the Memorandum of Law in Support of Joint Motion for Certification of the Settlement Classes, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement in *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305, ECF No. 367 (S.D.N.Y. Oct. 10, 2017).

55. Attached hereto as **Exhibit H** is a true and correct copy of the Memorandum of Law in Support of Plaintiffs' Motion for Certification of the Settlement Classes, Final Approval of Class Action Settlement, and Approval of the FLSA Settlement in *Reyes v. Altamarea Grp.*, No. 10 Civ. 6451, ECF No. 75 (S.D.N.Y. Aug. 4, 2011).

\*   \*   \*

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: December 5, 2019
      San Francisco, California

_____
Jahan C. Sagafi