# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>Defendant. | No.: 3:14-cv-956 (JBA)<br><br>**DECLARATION OF RICHARD HAYBER IN SUPPORT OF CLASS COUNSEL'S POST-TRIAL MOTION FOR ATTORNEYS' FEES AND COSTS** |

I, RICHARD HAYBER, declare as follows:

1. I submit this Declaration in support of Class Counsel's Post-Trial Motion for Attorneys' Fees and Costs (the "Fee Petition") in the *Strauch v. Computer Sciences Corporation* lawsuit.

2. I am a principal at Hayber, McKenna & Dinsmore, LLC ("HM&D"). My firm represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations. I am a member in good standing of the bar of the State of Connecticut.

3. I make these statements based on personal knowledge and would so testify if called as a witness.

### My Knowledge of Class Counsel and *Strauch v. Computer Sciences Corporation*

4. I am familiar with Outten & Golden LLP, both because of their reputation as practitioners in the field of plaintiffs' employment law, and because I have co-counseled with them several times, particularly on class and collective wage and hour cases.

5. As a practicing member of the Connecticut bar and frequent practitioner in the wage and hour field, I am aware of the *Strauch* case because I have cited it (and seen it cited) in several briefs for various legal propositions. In addition, I have reviewed the Declaration of Jahan C. Sagafi submitted in support of Class Counsel's Fee Petition, ECF No. 520-1, and Exhibits C, D, H, I, J, N, and O attached thereto.

6. I understand that defense counsel for Computer Sciences Corporation identified my firm in its opposition to the Fee Petition, arguing that my qualifications and experience made

2

me well-suited to prosecute this case, as part of an argument regarding Plaintiff's selection of counsel. I file this declaration to address that issue.

### My Background and Experience as a Plaintiffs' Employment Lawyer

7.     I received a Juris Doctor degree from the University of Connecticut, School of Law in 1992 with honors. Since then, I have represented plaintiffs in employment litigation and other employee rights matters. Since 1999, I have represented plaintiffs in wage and hour class and collective actions.

8.     I have represented collectives of plaintiffs in FLSA collective and class actions including but not limited to plaintiffs in *Ouellette v. The Fresh Market, Inc.*, No. 3:13 Civ. 1027 (AWT) (D. Conn. July 17, 2013); *Lassen v. Hoyt Livery, Inc., et al*, No. 3:13 Civ. 1529 (VAB) (D. Conn. Oct. 18, 2013); *Monk v. Elite Limousine Service, Inc.*, No. 3:13 Civ. 01880 (SRU) (D. Conn. Dec. 19, 2013); *Zouanat v. Serline Transportation*, LLC, No. 3:13 Civ. 1886 (SRU) (D. Conn. Dec. 20, 2013); *Kiefer v. Moran Foods, Inc.*, No. 3:12 Civ. 756 (WGY) (D. Conn. May 18, 2012); *Zaniewski v. PriceRite, Inc.*, No. 3:11 Civ. 1535 (CSH) (D. Conn. Oct. 6, 2011); *Bozak v. FedEx Ground*, No. 3:11 Civ. 738 (RNC) (D. Conn. May 5, 2011); *Aros v. United Rentals, Inc.*, No. 3:10 Civ. 73 (JCH) (D. Conn. Jan 15, 2010); *Alli v. Boston Market*, No. 3:10 Civ. 4 (JCH) (D. Conn. Jan 4, 2010); *Morrison v. Ocean State Jobbers, Inc.*, No. 3:09 Civ. 1285 (AWT) (D. Conn. Aug. 18, 2009); *Lumia v. Hanover Insurance Company*, No. 3:07 Civ. 1094 (JBA) (D. Conn. July 19, 2007); *Holbrook v. Smith & Hawken, LTD.*, 3:06 Civ. 1232 (VLB) (D. Conn. Aug. 8, 2006); *Neary v. Metropolitan Property and Casualty Insurance Company*, No. 3:06 Civ. 536 (JBA) (D. Conn. Apr. 6, 2006); *Sancomb v. Motherhood Maternity*, No. 3:05 Civ. 71 (AWT) (D. Conn. Jan. 12, 2005); *Gregory v. Home Depot, U.S.A. Inc.*, No.

2

3:01 Civ. 372 (AWT) (D. Conn. Mar. 9, 2001); and *Scott v. Aetna Services, Inc.*, No. 99 Civ. 46 (CFD) (D. Conn. Jan. 11, 1999).

9. I have presented seminars on the topic of wage and hour litigation, including class and collective action litigation, and frequently attend seminars, including national conferences of NELA (the National Employment Lawyers Association) and keep up with the developments of the law in this area by reading articles and cases as they are published.

10. I am skilled and experienced in representing employees in wage and hour class and collective actions. This work currently makes up over 75% of my practice.

11. HM&D currently has five attorneys, including myself. Over the past five years, the firm has fluctuated in size from two to five attorneys. I am one of the leading wage & hour practitioners representing plaintiffs in the state of Connecticut.

## The Connecticut Legal Market for Representation of Workers in Litigation

12. While it is true that HM&D regularly handles class or collective wage cases, those cases are quite risky because of their contingent nature, and because of the expense involved in prosecuting them. As the cases grow in size, that risk expands, as does the out-of-pocket cost that a firm must put forward to litigate the case effectively. For these reasons, when I have a wage and hour case that involves a substantial number of potential plaintiffs, opt-ins, or class members, significant out-of-pocket costs, or other complicating factors, I usually seek out co-counsel to share in the risk, workload, and expense of the litigation.

13. There are currently a small handful of firms in Connecticut that also practice wage and hour law, to varying degrees, and which sometimes handle collective or class actions. The largest I am aware of is Madsen, Prestley & Parenteau, LLC, which has six attorneys.

14. For this reason, when I litigate larger class or collective actions, I have found that

it is usually necessary to seek out co-counsel outside of Connecticut, particularly at larger firms that have substantial staff and back-office support, infrastructure, and the capacity to share in the heavy workload and out-of-pocket costs of litigation. For many years, I co-counseled such cases with Outten & Golden LLP in New York. In recent years, I have developed an ongoing working relationship with Lichten & Liss-Riordan, P.C., located in Boston.

### How I Would Have Handled a Case Like *Strauch* and My Comparable Experience

15. Based on my review of the Sagafi Declaration and its supporting exhibits, the *Strauch* litigation is the kind of case for which I would need to seek out-of-district counsel to prosecute the case effectively. I believe it would be irresponsible of me to attempt to handle the case otherwise, both in terms of my professional obligations to the clients and in terms of my obligations to my law practice. As a business matter, the potential for a loss (or even a significant delay or setback) in the case would simply pose too great a risk and financial strain on my firm.

16. Several factors lead me to this conclusion. This case involved a total of 911 plaintiffs, with 471 opt-in plaintiffs (many of whom are typically subject to discovery). That is far larger than the cases that I typically handle on my own, or even cases that I might handle in cooperation with another firm of similar size, such as Madsen, Prestley & Parenteau. For example, *Scott v. Aetna Services*, 210 F.R.D. 261, 268 (D. Conn. 2002), which the Defendant cites at page 15 of its opposition brief, involved a Rule 23 class of 281 individuals, but only 22 opt-in plaintiffs. Even so, we had two co-counsel firms in *Scott*, one of which, Pollack & Green, was based in New York City.

17. Another comparator case that I handled is *Morrison v. Ocean State Jobbers*, No. 09 Civ. 1285 (AWT) (D. Conn. Aug. 18, 2009), which went to trial twice in 2016, with hung

2

juries on both occasions. The case settled after the second trial, which ended with the jury deadlocked 9-1 in favor of the plaintiffs. *Morrison* began as an FLSA-only case, which by the time of trial had approximately 25 opt-in plaintiffs. It was later consolidated with other related cases for settlement, which covered approximately 600 employees. I was lead counsel in the trial and litigation, but I was not alone. There were a total of six firms representing the plaintiffs in *Morrison*, including Lichten & Liss-Riordan, P.C.

18. Apart from discovery burdens, one way in which the size of a class and collective make a wage case more challenging is that the number of clients places greater demands on the firm to respond to class members' inquiries, reach out to class members to investigate their claims, and update them about the status of the case. In the *Strauch* litigation, I understand from the documents I have reviewed that Class Counsel undertook a great deal of informal investigation by speaking with clients. That work can be invaluable, but it requires significant resources, particularly a substantial and well-trained paralegal staff working in concert with the attorneys to make calls, respond to incoming calls, and do follow-up. My office does not have the resources to conduct the outreach and respond to inquiries on the scale conducted in *Strauch*.

19. Aside from the number of employees, the *Strauch* case has other features that would preclude my firm from handling a similar case without out-of-state counsel. For example, the amount of opt-in discovery was significant, with 37 opt-in depositions (plus several more taken by Class Counsel) in locations around the country, over a relatively short period of time. Handling discovery like this is extremely burdensome, both in terms of time spent outside the office and the out-of-pocket cost for court reporters, deposition transcripts, and travel.

20. Specifically, the costs in this case exceeded $500,000. That is not a level of out-of-pocket expense that my firm could comfortably sustain over four years of litigation. Although

my firm can and does put significant investment into the cases we litigate, costs above a certain level can be prohibitive, and would normally cause me to seek out one or more co-counsel firms to share that burden.

21. I am familiar with Jackson Lewis, P.C., the defense counsel in this case, having litigated many cases against them in the past. In my experience, Jackson Lewis, like many large national firms that defend wage and hour cases, typically defends wage and hour cases by trying to overwhelm plaintiffs' firms with broad discovery, excessive motion practice, or a combination of both. That contributes to the burdens of litigating these cases, which is one more reason that I often seek out-of-state co-counsel in larger cases – to help shoulder the burden of responding to these demands on plaintiffs' counsel's time and financial resources.

22. All of these factors would limit my firm's ability to prosecute the *Strauch* case without significant assistance from out-of-state counsel. That is true even now, when my firm is at its current size. Class Counsel in *Strauch* spent over 20,000 hours on the litigation. Assuming that an attorney will bill 2,000 hours in a given year, and that work on the *Strauch* case began in 2014, that is approximately equivalent to having two lawyers working full-time on *Strauch* for five years straight, realizing no revenue during that timeframe. In a firm of five lawyers, that would not be sustainable.

23. During December 2017, when *Strauch* went to trial, my firm had only three attorneys, which would have made the case even more challenging and an even greater strain on our firm's resources. Moreover, the intensity of a class action trial, which I experienced firsthand in the *Morrison* case, would likely have required a much greater investment of effort over a short timeframe than even a combination of Connecticut firms would be able to sustain.

2

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: December 4, 2019
       Hartford, Connecticut

_____
Richard E. Hayber