# Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ADELINA GARCIA, ANTONIO GARCIA, and JERONIMO VARGAS-VERA, individually, and on behalf of a class of others similarly situated<br>Plaintiffs,<br>v.<br><br>TYSON FOODS, INC., and TYSON FRESH MEATS, INC.,<br>Defendants. | Case No.  06-2198-JTM |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS

**STUEVE SIEGEL HANSON LLP**

/s/ George A. Hanson
George A. Hanson     KS Bar #16805
Eric L. Dirks          D. Kan. Bar #77996
Lee R. Anderson        KS Bar #22755
460 Nichols Rd., Ste. 200
Kansas City, Missouri 64112
PH:    816-714-7100
FAX:  816-714-7101

**GARCIA & ANTOSH LLP**
Peter J. Antosh    KS Bar #21334
1401 Central Ave.
Dodge City, KS 67801
PH:    620-225-7400
FAX:  620-225-4339

**OUTTEN & GOLDEN LLP**
Adam T. Klein (admitted pro hac vice)
Justin M. Swartz (admitted pro hac vice)
3 Park Avenue, 29th Floor
New York, New York 10016
PH:    212-245-1000
FAX:  212-977-4005

# TABLE OF CONTENTS

I.    Introduction and Summary of the Record. ................................................................ 1

II.   Certification and Statement of Consultation Pursuant to Local Rule 54.2. .......................... 2

III.  Question Presented. ........................................................................................ 3

IV.   Procedural History of the Litigation. ..................................................................... 3

V.    Argument. .................................................................................................... 5

  A.  Legal Standard. ........................................................................................ 5

  B.  The Amount of Time Spent by Plaintiffs' Counsel Was Reasonable. ................................. 7

  C.  Class Counsel's Rates Are Reasonable. ............................................................. 8

  D.  No Reduction in Plaintiffs' Lodestar is Warranted. ............................................... 17

  E.  The *Johnson* Factors Support Plaintiffs' Fee Application. ....................................... 18

      1.  The Time and Labor Required. ................................................................... 19

      2.  The Novelty and Difficulty of the Questions. .................................................. 19

      3.  The Skill Requisite to Perform the Legal Service Properly. ..................................... 20

      4.  The Preclusion of Employment by the Attorney Due to The Acceptance of the Case. .. 20

      5.  The Customary Fee. ............................................................................. 20

      6.  Whether the Fee is Fixed or Contingent. ....................................................... 20

      7.  Time Limitations Imposed by the Client or the Circumstances. ................................ 21

      8.  The Amount Involved and the Results Obtained. ................................................ 21

      9.  The Experience, Reputation, and Ability of the Attorneys. ..................................... 22

      10. The "Undesirability" of the Case. .............................................................. 22

      11. The Nature and Length of the Professional Relationship With the Client. ..................... 22

      12. Awards in Similar Cases. ....................................................................... 23

  F.  The Court Should Award Reasonable Attorneys' Expenses and Costs. ............................. 23

VI.   Conclusion. .................................................................................................. 24

# TABLE OF AUTHORITIES

Cases

Alvarez v. IBP,
  546 U.S. 21 (2005)..................................................................................... 4, 5

Anderson v. Mt. Clemens Pottery Co.,
  328 U.S. 680 (1946) ...................................................................................... 6

Blum v. Stenson,
  465 U.S. 886 (1984)....................................................................................... 8

Burlington v. Dague,
  505 U.S. 557 (1992) ..................................................................................... 21

Calderon v. Witvoet,
  112 F.3d 275 (7th Cir. 1997) ...................................................................... 23

Case v. Unified Sch. Dist. No. 233,
  157 F.3d 1243 (10th Cir. 1998) ................................................................ 6, 8

Fegley v. Higgins,
  19 F.3d 1126 (6th Cir. 1994) ........................................................................ 6

Flitton v. Primary Residential Mortgage, Inc.,
  614 F.3d 1173 (10th Cir. 2010) ...................................................... 7, 17, 18

Hensley v. Eckerhart,
  461 U.S. 424 (1983)..................................................................................... 18

In re Continental Illinois Securities Litigation,
  962 F.2d 566 (7th Cir. 1992) ...................................................................... 21

Jeffboat LLC. v. Director, Office of Workers' Comp Programs,
  553 F.3d 487 (7th Cir. 2009) ................................................................ 10, 14

Johnson v. Georgia Highway Express, Inc.,
  488 F.2d 714 (5th Cir. 1974) ...................................................................... 19

Lamon v. City of Shawnee, Kan.,
  754 F.Supp. 1518 (D. Kan. 1991) .............................................................. 23

Perdue v. Kenny A.,
  130 S. Ct. 1662 (2010)..................................................................... 17, 19, 22

Sand v. Greenberg,
  No. 08-CV-07840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ..................... 6

Seamands v. Sears Holding Corp.,
  No. 09-2054-JWL, 2011 WL 884391 (D. Kan. March 11, 2011) ............. 10

Smith v. Diffee Ford Lincoln-Mercury, Inc.,
  298 F.3d 955 (10th Cir. 2002) .................................................................... 23

Sprint v. Bruner,
  2009 WL 2058762 (D. Kan. July 14, 2009) ........................................ 16, 19

Statutes

28 U.S.C. § 1920 .................................................................................................... 23

29 U.S.C § 1407 ..................................................................................................... 4

29 U.S.C. § 1920 .................................................................................................... 23

29 U.S.C. § 216(b) (2008) ..................................................................................... 5

29 U.S.C. 216 ......................................................................................................... 23

42 U.S.C. § 1988(b) ............................................................................................... 5

Rules

Fed.R.Civ.P 54(d) ................................................................................................. 23

## I.      INTRODUCTION AND SUMMARY OF THE RECORD.

This vigorously contested wage and hour class litigation spanned five years and culminated with a jury verdict in favor of Plaintiffs.  The Fair Labor Standard Act ("FLSA"), through its remedial policy and by its express terms, requires defendants to pay prevailing plaintiffs their reasonable attorneys' fees and costs.  Excluding hours that have been eliminated through the exercise of billing judgment, Plaintiffs' counsel have expended 10,253.4 hours prosecuting this case through May 31, 2011.  Plaintiffs' current lodestar is $3,236,000.25 – which translates to an effective "blended" hourly rate of $298.12.[1]  Total case expenses (excluding non-recoverable expert fees and other expenses that have been eliminated through the exercise of billing judgment) are $239,421.78.  Having been unable to resolve the issue of attorneys' fees and expenses through negotiations as required by local rule, Plaintiffs now ask this Court to award counsel $3,475,422.03 in fees and expenses through May 31, 2011.[2]

District of Kansas Local Rule 54.2 states: "The memorandum in support of the Rule 54 motion must be supported by time records, affidavits, or other evidence."  In support of their application for fees, Plaintiffs provide the Court with: (1) records reflecting counsels' time and expenses invested in this action through May 31, 2011,[3] (2) nine declarations (four from the principal lawyers representing Plaintiffs, and five third-party declarations from some of the

---

[1] The effective "blended" hourly rate is calculated by taking total lodestar ($3,236,000.25), subtracting non-recoverable expenses ($179,275.61) and dividing by total time (10,253.4).

[2] Plaintiffs continue to spend significant time on the case and will seek additional fees for litigating the issue of attorneys' fees and expenses as the case continues.  *See, e.g.*, *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir. 1998) (noting a plaintiff is entitled to attorneys' fees relating to the fee application).

[3] If requested, Plaintiffs' counsel's detailed daily time can be provided to the Court for inspection *in camera* to protect the privileged and work product nature of the information. The content of Plaintiffs' counsel's daily time entries is particularly sensitive in these circumstances because the Emporia facility has been bifurcated and will be tried at a later date.

1

region's most prominent and experienced defense, plaintiff and corporate attorneys),[4] and (3) a plethora of additional evidence, including (i) the hourly rates charged by Defendants' Kansas City lawyers in this case, and (ii) judicial orders on Plaintiffs' counsel's fees from state and federal courts in Kansas City and across the country.

Because Defendants have stated they will not contest the amount of time expended by Plaintiffs' counsel, the focus of this brief is on the reasonableness of the hourly rates requested. From each one of five critical reference points, the rates (and overall fees requested) are reasonable.  These benchmarks are: (i) Plaintiffs' counsel's rates are commensurate with the Kansas City and national market for complex wage and hour litigation; (ii) Tyson paid its Kansas City lawyers similar rates to defend this case; (iii) courts routinely award rates to Plaintiffs' counsel comparable to or higher than the rates requested here; (iv) the requested blended hourly rate of $298.12 is reasonable; and (v) the requested rates closely track Plaintiffs' counsel's non-contingent hourly rates.  Accordingly, Plaintiffs' counsel's request for attorneys' fees and expenses through May 31, 2011 should be approved in its entirety and without reduction.

## II.   CERTIFICATION AND STATEMENT OF CONSULTATION PURSUANT TO LOCAL RULE 54.2.

The parties have complied with Local Rule 54.2 requiring consultation prior to moving the Court for an award of statutory attorneys' fees.  Beginning soon after the end of trial, the parties have had numerous and ongoing conversations regarding the issue of attorneys' fees and costs.  These include (i) an in-person meeting on April 18, 2011 at the offices of Bryan Cave attended by George Hanson and Eric Dirks for Plaintiffs, and Craig O'Dear, Robert Hoffman,

---

[4]  These include (i) former Kansas City lawyer and current Missouri Attorney General, Christopher Koster; (ii) leading Kansas City commercial litigator and partner at SNR Denton, Curtis Woods; (iii) former corporate counsel for H&R Block and General Electric, Rowdy Meeks; (iv) leading authority on employment law in Kansas and partner at Foulston Siefkin in Wichita, Boyd Byers; and (v) nationally recognized wage and hour litigator and partner at Nichols Kaster in Minneapolis, Paul Lukas.

Terry Thum, and Evangeline Paschal (by telephone) for Defendants, and (ii) a formal mediation on May 9, 2011 with former U.S Magistrate Judge Richard Ralston and attended by George Hanson, Eric Dirks and Norman Siegel for Plaintiffs, and Craig O'Dear, Terry Thum and corporate counsel Paul Kirchner for Defendants.  As of this filing, however, the parties have been unable to reach an agreement with regard to the fee award and Plaintiffs believe there should be no further delay in the resolution of this matter.  The undersigned hereby makes this certification pursuant to Local Rule 54.2.

## III.   QUESTION PRESENTED.

Should the Court award attorneys' fees and expenses to the Plaintiffs in the amount of $3,475,422.03 for Plaintiffs' counsel's work prosecuting this lengthy, novel and complex class action that resulted in Tyson changing its pay policies and a jury verdict in favor of Plaintiffs?

## IV.   PROCEDURAL HISTORY OF THE LITIGATION. [5]

Plaintiffs filed their Complaint on May 15, 2006, alleging that Tyson failed to pay its workers for all time spent during the continuous workday, including performing pre- and post-shift donning, doffing and walking.  (Doc. 1; *see also* Amended Complaint, Doc. 694).  Shortly after filing, many class members began filing Consent to Join forms.[6]  On July 6, 2006, Defendants filed their Answer denying all the material allegations in Plaintiffs' Complaint and asserting 22 separate affirmative defenses.  (Doc. 187).

On September 29, 2006, Tyson filed an early summary judgment motion arguing that Plaintiffs' claims were precluded by the so called "*Reich* litigation" and a subsequent alleged

---

[5] A more detailed procedural history and discussion of discovery conducted is found in the Declaration of Eric Dirks ("Dirks Decl.") ¶¶ 16-37.

[6] *See* Docs. 1-52, 56-65, 69-154, 157-180, 188-189, 191-219, 221-302, 304-338, 341-360, 366-421, 423-443, 446-527, 531-554, 559-598, 600-673, 675-678, 684-687, 733, 759-762, 764-766, 768, 770-772, 774, 776-780, 782-791, 793, 796-820, 822, 825-827.

settlement with the Department of Labor.  (Docs. 363-64).  After extensive discovery and briefing on the issue (Dirks Decl. ¶ 19; Doc. 557), the Court denied Tyson's motion on February 16, 2007 and issued a detailed order that addressed the *Reich* litigation and the impact of the recent United States Supreme Court case *Alvarez v. IBP,* 546 U.S. 21 (2005).  (Doc. 599).  On March 5, 2007, Tyson filed a motion to alter or amend the Court's order denying summary judgment. (Doc. 674).  The parties conducted yet another full round of briefing on Tyson's motion (Docs. 681, 682) and on May 2, 2007, the Court again rejected Tyson's arguments in a lengthy order.  (Doc. 695).  On June 1, 2007, Tyson appealed the trial court's rulings to the Tenth Circuit Court of Appeals.  (Doc. 699).  The appeal was lengthy.  First, the parties were ordered to conduct briefing on whether the case should be dismissed on jurisdictional grounds. See Tenth Cir. Docket (attached as Ex. A). After the threshold jurisdictional issues were resolved, the parties then fully briefed the merits of Tyson's appeal.  *Id*.  The Tenth Circuit ultimately dismissed Tyson's appeal and issued a mandate on August 19, 2008.  *Id.*

While on appeal before the Tenth Circuit, Tyson moved under 29 U.S.C § 1407 to coordinate several similar cases pending around the country before the Judicial Panel on Multidistrict Litigation ("JPML").  On October 10, 2008, after full briefing and oral argument at Harvard Law School, the JPML denied Tyson's bid for coordination and consolidation through MDL proceedings.  (Doc. 715).  Five days later, Plaintiffs filed their motion for FLSA collective action certification and Rule 23 class action certification under Kansas state law.  (Doc. 716). The certification issues were fully briefed, and after a hearing before the Honorable John W. Lungstrum on January 26, 2009, the Court granted Plaintiffs' motion and ordered that notice be sent to the FLSA collective and Rule 23 class.  (Docs. 741, 748).

Tyson produced over one million pages of documents, exclusive of the millions of time and pay records it produced electronically.  Dirks Decl. ¶ 32.  The parties took a total of eighteen depositions. *Id.*  At the close of discovery, both sides filed *Daubert* related motions and motions for summary judgment. *Id.* at 27.  (Docs. 875-881)

During the latter part of 2010, trial preparation began in earnest.  The parties focused on the controlling legal authority and submitted a lengthy Pretrial Order which was entered on October 27, 2010.  (Doc. 873; Dirks Decl. ¶ 29).  The parties also filed numerous pretrial motions and had several pretrial hearings.  Dirks Decl. ¶ 28.  The case was tried before a jury in Kansas City, Kansas from March 1, 2011 to March 16, 2011.  The trial involved numerous, complex and vigorously disputed legal and factual issues.

The jury returned a verdict for Plaintiffs and against Tyson on March 16, 2011 (Doc. 1045), and judgment was entered on March 17, 2011.  (Doc. 1046).  Since trial, the parties have briefed numerous post-trial motions, including Tyson's motion for judgment as a matter of law and for remittitur.  (Docs. 1056, 1058).  Plaintiffs also filed a motion for liquidated damages and interest.  (Doc. 1055).

## V.    ARGUMENT.

### A.    <u>Legal Standard.</u>

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b) (2008).  Unlike most fee-shifting statutes, the attorney fee award under the FLSA is mandatory.  *Compare* 29 U.S.C. § 216(b) (stating the court "shall" award fees) *with* 42 U.S.C. § 1988(b) (noting the court "may" award fees "in its discretion").

Plaintiffs' counsel who successfully pursue wage and hour claims "must be adequately compensated for their efforts," otherwise "wage and hour abuses would go without remedy

because attorneys would be unwilling to take on the risk." *Prasker v. Asia Five Eight LLC*, No. 08-CV-05811, 2010 WL 47600, at *6 (S.D.N.Y. Jan. 6, 2010); *see also Sand v. Greenberg*, No. 08-CV-07840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Civil enforcement of wage and hour laws is an important supplement to the work of government regulators in carrying out the public policy of the FLSA. *See, e.g.,* Declaration of Missouri Attorney General Christopher Koster ("Koster Decl.") at ¶ 6 ("the full and effective enforcement of our state and federal labor laws also requires lawyers like Mr. Hanson and law firms like Stueve Siegel Hanson to bring private civil actions"); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946) (noting the FLSA is a "remedial" statute that embodies "great public policy"); *Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir. 1994) ("The purpose of the FLSA attorney fees provision is 'to insure effective access to the judicial process'"). This is especially so in light of the well-documented decline in the quantity and effectiveness of enforcement efforts by the United States Department of Labor.[7]

The formula for determining a reasonable statutory attorney's fee after trial in a contested fee dispute is simple and straightforward: the trial court multiplies (i) the hours plaintiffs' counsel reasonably spent on the litigation by (ii) reasonable hourly rates. *See, e.g., Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *Flitton v. Primary Residential*

---

[7] *See* Ex. B, July 15, 2008 GAO Report, Fair Labor Standards Act, Better Use of Available Resources Consistent Reporting Could Improve Compliance, http://www.gao.gov/new.items/d08962t.pdf (last visited June 2, 2011). In that report, the GAO observed the importance of wage and hour enforcement and that the number of enforcement actions has significantly decreased from 1997-2007. *Id.* It also observed that especially vulnerable are foreign born workers who make up 19 percent of low wage workers. *Id.* at 3-4. In response, the DOL has begun referring cases to private attorneys in order to carry out the significant public policy of the FLSA. *See* Dep't. of Labor Wage and Hour Division, *BRIDGE TO JUSTICE: Wage and Hour Connects Workers to New ABA-Approved Attorney Referral System*, http://www.dol.gov/whd/resources/ABAReferralPolicy.htm (last visited June 2, 2011).

*Mortgage, Inc.*, 614 F.3d 1173, 1176 (10th Cir. 2010). The time spent and hourly rates identified in Ex. C. are reasonable and should be approved by the Court without modification.

### B.    The Amount of Time Spent by Plaintiffs' Counsel Was Reasonable.

Tyson does not challenge the amount of time spent by Plaintiffs in prosecuting this matter. *See* Memorandum and Order Denying Plaintiffs' Request for Discovery Related to its Application for Attorneys' Fees, at 4 (Doc. 1068) ("Defendants have stated they do not intend to challenge the amount of hours plaintiffs spent on the case."); Declaration of George Hanson ("Hanson Decl.") ¶ 19 ("Tyson's counsel has indicated to me and to the Court that Tyson does not intend to argue that the total amount of Class Counsel's time is excessive"). Tyson's position is only appropriate as there can be no question that the total time expended by Plaintiffs' counsel is reasonable. As an initial matter, Plaintiffs' counsel staffed and managed this case as efficiently as possible. Hanson Decl. ¶ 26; Dirks Decl. ¶ 12. Responsibilities were not duplicated, and much of the work – such as initial document review and basic client communications – was performed by qualified professional staff as opposed to lawyers. Hanson Decl. ¶ 26; Dirks Decl. ¶ 12. It was only in the final year preceding trial that a third lawyer was added to the litigation team. Hanson Decl. ¶ 13. All of the time being submitted to the Court for compensation is (i) of the kind and character that Plaintiffs' counsel would normally bill to paying clients, (ii) time that counsel normally tracks and seeks to be paid for at the conclusion of successful contingency litigation, and (iii) added value to the case and was reasonably necessary to give the Plaintiff class the best possible chance for a favorable outcome. Hanson Decl. ¶ 26.

Importantly, the total time on Exhibit C does <u>not</u> include (i) the hours that could be reasonably segregated for time spent on the recently bifurcated and yet to be tried Emporia matter, or (ii) hours removed in the exercise of billing judgment. Hanson Decl. ¶ 19; Dirks Decl. ¶ 10. Routine secretarial and clerical time has not been recorded. Hanson Decl. ¶ 19; Dirks

Decl. ¶ 10. Lead lawyers for Plaintiffs George Hanson and Eric Dirks have reviewed all of the time entries recorded by attorneys and staff assigned to this case. Hanson Decl. ¶ 20; Dirks Decl. ¶10. In the exercise of billing judgment, numerous entries have been eliminated because they were not sufficiently descriptive, appeared to be duplicative, and/or appeared to include non-essential tasks. Hanson Decl. ¶ 20; Dirks Decl. ¶10. Plaintiffs' counsel have also reduced entries that reflected more time expended than may have been reasonable necessary. Hanson Decl. ¶¶ 20, 26; Dirks Decl. ¶10. In total, more than 500 hours have been excluded from Exhibit C through an exercise of billing judgment. Hanson Decl. ¶ 20; Dirks Decl. ¶10.

### C.   Class Counsel's Rates Are Reasonable.

Exhibit C reflects hourly rates for all Plaintiffs' counsel ranging from $225 to $600 per hour. Professional staff rates range from $100 to $175 per hour. Stueve Siegel Hanson has almost 95% of all time in the case, and the three lawyers who appeared at trial – George Hanson ($600 per hour), Eric Dirks ($400 per hour) and Lee Anderson ($325 per hour) have invested the vast majority of attorney time. The identified rates for Messrs. Hanson, Dirks and Anderson are amply justified in light of their skill, experience (particularly in the field of wage and hour law) and excellent reputations in the community.[8]

In determining the reasonableness of the hourly rates, the court must set rates according to what the record evidence demonstrates the market commands for analogous litigation. *Case*, 157 F.3d at 1255-56. "[A] district court abuses its discretion when it ignores the parties' market evidence . . . ." *Id.*; *see also Blum v. Stenson,* 465 U.S. 886, 895 (1984) (ruling reasonable fees

---

[8] In light of the significant proportion of time committed, this memorandum and the record submitted focuses largely on Stueve Siegel Hanson. However, co-counsel also made valuable contributions and the rates of Peter Antosh ($400) (who is bilingual and appeared at trial) and the lawyers at Outten & Golden in New York ($290-$600) (a leading national wage and hour firm) are specifically addressed and supported by the record. *See generally*, Declaration of Justin Swartz ("Swartz Decl.") and Declaration of Peter Antosh ("Antosh Decl."); *see also*, Hanson Decl., ¶¶ 15-16; Declaration of Rowdy Meeks ("Meeks Decl.") ¶ 8; and Declaration of Paul Lukas ("Lukas Decl.") ¶¶ 2, 5.

should be "calculated according to the prevailing market rates in the relevant community"). When viewed from any one of the relevant benchmarks, the rates for Plaintiffs' counsel listed in Ex. C are reasonable and should be approved.

***Benchmark 1: Plaintiffs' Counsel's Rates Are Commensurate With Either the Kansas City Market or a National Market.***

In addition to the declarations of Class Counsel, the declarations submitted in support of this memorandum by highly-qualified and experienced lawyers support the reasonableness of the rates submitted on Exhibit C.  *See* Declaration of Curtis Woods ("Woods Decl.") ¶¶ 5-6 ("I have reviewed the hourly rates submitted by Stueve Siegel Hanson in this case, and I believe they are reasonable and consistent with the market rates for complex commercial and class litigation in the Kansas City region, especially in light of the unique qualifications and excellent reputation the lawyers and law firm of Stueve Siegel Hanson enjoy in this legal community."); Declaration of Boyd Byers ("Byers Decl.") ¶ 9 ("I have reviewed the hourly rates submitted by Stueve Siegel Hanson in the summary time report and believe they are reasonable, given the skill and experience of the lawyers and law firm of Stueve Siegel Hanson, and the complex nature, size and scope of this case."); Meeks Decl. ¶ 8 ("From my experience retaining and working with other national practitioners in this field, I believe the rates submitted are eminently reasonable. As an initial matter, these rates are lower than the rates of many top defense lawyers who bill by the hour to litigate complex cases in the Kansas City market and who are assured payment whether a case is won or lost."); and Lukas Decl. ¶ 5 ("I have reviewed the hourly rates of the Stueve Siegel Hanson and Outten & Golden firms . . . .  Based on my experience, these rates are both reasonable and appropriate given their skill, expertise, and reputations, and are well within the range of rates awarded to attorneys with similar backgrounds and expertise and under similar

situations."); *see also*, Affidavit of Thomas V. Bender, ¶ 11 (identifying spectrum of hourly rates in Kansas City area) (attached as Ex. A to Woods Decl.).

The requested rates are further supported by the unique qualifications and considerable experience of Plaintiffs' counsel in the field of wage and hour law – the specific subject matter of this case. *See* Hanson Decl. ¶¶ 8-10 (identifying experience prosecuting wage and hour class and collective actions, as well as speaking engagements and publications on wage and hour law); Dirks Decl. ¶¶ 5-6 (same); *see also* Koster Decl. ¶ 6 ("no lawyers in this area do a better job of enforcing the rights of workers than George Hanson and his colleagues at Stueve Siegel Hanson."); Byers Decl. ¶ 9 ("George Hanson and his law firm Stueve Siegel Hanson enjoy the strongest of reputations for their exceptional skill and experience in the field of wage-and-hour class/collective action litigation."); Meeks Decl. ¶ 6 ("George Hanson and his firm, including the other team members on this case Eric Dirks and Lee Anderson, are considered the leading practitioners of wage and hour cases in the Kansas City region."); Lukas Decl. ¶ 2 (Stueve Siegel Hanson and Outten & Golden "represent the best of the best with respect to wage and hour Plaintiff lawyers in the country."). Specific experience in the subject matter of the litigation in question has recently been held by this Court to be a consideration of utmost importance in assigning reasonable hourly rates. *See Seamands v. Sears Holding Corp.*, No. 09-2054-JWL, 2011 WL 884391, at * 15 (D. Kan. March 11, 2011).

The requested rates are amply supported by the Kansas City market alone; however, there are compelling reasons to view this litigation from the perspective of a national market. *See Jeffboat LLC. v. Director, Office of Workers' Comp Programs,* 553 F.3d 487, 490 (7th Cir. 2009) (appropriate to view relevant community as a community of practitioners, particularly when "the subject matter of the litigation is one where the attorneys practicing are highly specialized and

the market for legal services in that area is a national market.").  As an initial matter, trial of a wage an hour case of this magnitude brought in private civil litigation is a rare – if not singular – event.  *See* Byers Decl. ¶ 9(d) ("The jury trial of a wage-and-hour class/collective action of this magnitude is an unusual event.  I am not aware of any other wage-and-hour action of this size and scope being tried to a jury in Kansas City or in the District of Kansas.").  Apart from Stueve Siegel Hanson, there are likely no other law firms in the region with the experience and resources necessary to see a case of this scope through a successful conclusion at trial.  *See* Hanson Decl. ¶ 6.  Most companies litigating large wage and hour cases in Kansas City prefer to hire experienced national counsel to manage the defense – a precedent Tyson followed here by hiring Akin, Gump, Strauss, Hauer & Feld and Hunton & Williams (both out of Washington, D.C.) to spearhead the defense of this case.  *See* Meeks Decl. ¶ 7 ("in my experience, most large local companies prefer to seek national counsel to defend against wage and hour class actions, including cases filed in the Kansas City region.  This is true even though the hourly billing rates of national law firms are generally substantially higher than local lawyers because national counsel are believed to possess the greater experience and resources necessary to successfully defend such litigation."); Byers Decl. ¶ 9(d) ("Tyson hired national counsel out of Washington, D.C. as its primary defense lawyers in this case, which suggests that it believed it was necessary to look outside Kansas City for skilled and experienced counsel to handle a case of this unusual complexity, size and scope being litigated in this community.").

In light of these unique circumstances, Plaintiffs submit that there is not a definable "Kansas City" market for large and complex wage and hour class action litigation, and the relevant point of reference is more appropriately a national market.  *See* Meeks Decl. ¶ 7 ("these cases are more appropriately viewed from the perspective of a national – rather than local –

market for qualified counsel."); Byers Decl. ¶ 9(d) ("the legal market for this type of case is not defined solely by geography."); Lukas Decl. ¶ 2 ("appropriate to view complex wage and hour litigation from the perspective of a national market rather than from a local one.").  And there is no question that Stueve Siegel Hanson is widely regarded as one of the premier national law firms prosecuting large and complex wage and hour class and collective actions. *See* Meeks Decl. ¶ 6 ("On a national scale, George and his firm are widely regarded as one of a small handful of top tier plaintiffs' firms prosecuting wage and hour cases across the country."); Byers Decl. ¶ 9(d) ("Stueve Siegel Hanson, while based in Kansas City, has a national practice and enjoys an outstanding reputation nationally for its skill and experience in the area of wage-and-hour class/collective action litigation."); Declaration of Christopher Koster ("Koster Decl.") ¶ 5 ("Stueve Siegel Hanson's excellent reputation is not limited to the Kansas City region but is truly national in scope."); Lukas Decl. ¶ 2 ("Class clients pursuing litigation on this scale would need to look to a national firm like Stueve Siegel Hanson or Outten & Golden in order to obtain top notch wage and hour representation on a contingency basis.").[9]

Whether viewed from the perspective of a Kansas City or a national community, Plaintiffs' counsel's rates are in line with the relevant market and are reasonable.

**Benchmark 2:  *Tyson's Lawyers' Hourly Rates Confirm the Reasonableness of Plaintiffs' Counsel's Rates.***

Tyson retained the Kansas City law firm Bryan Cave to take a co-lead role in the trial of this litigation.  For their non-contingent representation, Tyson paid Bryan Cave from $395 to

---

[9] Because Class Counsel litigates across the country, the prevailing rates for experienced litigators in various forums nationwide are routinely monitored.  As a guide in setting our hourly rates, counsel regularly reviews published hourly rates received in contingent and non-contingent fee litigation, including the annual rate survey conducted by the National Law Journal ("NLJ").  Based on data published by the National Law Journal, Class Counsel's rates are commensurate with hourly lawyers of similar experience handling complex litigation on a national basis. *See, e.g.,* December 6, 2010, Nat'l L.J. 12, (Col. 1).  For example, three labor/employment law firms handling wage and hour cases reported billing ranges that are comparable or higher to those submitted here: Jackson Lewis (top range of $715); Littler Mendelson, (top range of $650); and Winston & Strawn, top range $1,075. *See* Hanson Decl. ¶ 24.

$575 per hour for attorney time, and $175 per hour for legal assistant time.[10]  *See* Hanson Decl. ¶

17.  These rates are comparable to the rates submitted by Plaintiffs' counsel here which range

between $225 and $600 per hour for attorney time and $125 to $175 for legal assistant time.

Bryan Cave's rates are perhaps the most objective reference point for determining an appropriate

market for this litigation.  To the extent that Plaintiffs' lead trial lawyer's hourly rate is slightly

higher than his counterpart at Bryan Cave, this difference is easily justified by the wide gap in

substantive experience and expertise in wage and hour law.  *See* Meeks Decl. ¶ 8 ("Bryan Cave

is an excellent law firm with excellent lawyers, but in my opinion (and in the opinion of many

other lawyers and in-house counsel in Kansas City), Stueve Siegel Hanson LLP enjoys at least

the same – if not a higher reputation – for achieving outstanding results in high-stakes litigation. .

. .  If in this case Tyson paid Bryan Cave's first and second chair trial lawyers $575 and $425 per

hour respectively (with no risk of non-payment), than Stueve Siegel Hanson's trial team rates of

$600/$400/$325 are fully justified, and are probably on the low side when the risk of non-

payment and the need to advance litigation costs are factored in."); Byers Decl. ¶ 9(c)

("Particularly when taking into account the considerable and specialized wage-and-hour

class/collective-action experience and skill of Stueve Siegel Hanson's trial team, and also

considering the financial risk and delay in payment for taking this case on a contingency fee

basis, it is my opinion that Stueve Siegel Hanson's requested rates, which are comparable to and

slightly higher than the rates charged by Bryan Cave in this case, are reasonable and justified.");

Hanson Decl. ¶ 17 ("Tyson's Kansas City-based counsel Bryan Cave is without question one of

---

[10] Plaintiffs respectfully request that the Court reconsider its order denying disclosure of the hourly rates charged by Hunton & Williams in this litigation.  (Doc. 1068).  Plaintiffs' counsel continues to believe that the rates Tyson chose to pay its primary counsel is a relevant factor (if not perhaps dispositive) in establishing both (i) the Kansas City market and (ii) the national market for this type of litigation.  In any event, in the absence of those rates, it can safely be assumed that Hunton & Williams' rates are higher than Bryan Cave's rates.  *See* Ex. D, Fee Application made by Hunton & Williams (partner rates for Hunton & Williams at $590-$735 per hour, associate rates at $260-$455 per hour, and paralegal rates at $135-$210 per hour).

the region's leading law firms.  I know each of Bryan Cave's trial team - Craig O'Dear, Robert

Hoffman and Terry Thum – and hold them in the highest regard.  Based on my conversations

with these gentlemen, as well as my review of their biographies, it does not appear that any of

these lawyers has any appreciable experience in the litigation or trial of wage and hour cases.").

It would be an incongruous result for the attorneys of the losing party, with less experience and

no contingent risk, to receive a higher hourly rate than the successful Plaintiffs' attorneys with

more relevant experience and enormous risk.

### Benchmark 3: Courts Routinely Award Rates To Plaintiffs' Counsel Comparable To or Higher Than Those Requested Here.

On May 3, 2011, a local Kansas City court expressly approved hourly rates for Stueve

Siegel Hanson at the same – or slightly higher – rates than being requested here.  In *Berry v.*

*Volkswagen of America*, after a vigorously contested fee application involving a three-day

evidentiary hearing on the reasonableness of Stueve Siegel Hanson's fee, the Honorable Michael

Manners approved fees for Stueve Siegel Hanson at rates of $400 to $650 for partners, $252 to

$375 for associates, and $140 to $196 for professional staff.  The court expressly found that "The

hourly rates charged by class counsel were reasonable."  Findings of Fact, Conclusions of Law

and Judgment, *Berry v. Volkswagen of Am.*, No. 0516-cv-01171-01 (Mo. 16th Cir. Div. 2, May 3,

2011) (Attached as Ex. E).  In that case, Eric Dirks was approved at $400 per hour (the same rate

requested here), and lead trial paralegal in this case Mary Rose Marquart was approved at $196.

*Id.*

Other courts in Kansas City have also approved Kansas City rates higher than those

requested here as reasonable for Stueve Siegel Hanson.  *See* Hanson Decl. ¶ 22 (noting the

United States District Court for the Western District of Missouri recently approved Stueve Siegel

Hanson's rates as follows: $575-$650 per hour for partners, $325-$450 per hour for associates

and $125-$225 per hour for paraprofessionals); Order, *In re: Pre-Filled Propane Tank Mktg. Litig.*, Case No. 09-md-2086 (W.D. Mo. October 20, 2010) (approving an overall blended rate of $495) (attached as Ex. F); Order, *In re: H&R Block Inc. Express Mktg. Litig.,* No. 4:06-md-01786 (W.D. Mo. May 17, 2010) (approving Stueve Siegel Hanson's rates of $425-$650 per hour for partner time, $225-$475 per hour for associate time and $75-$195 in professional staff time as reasonable) (attached as Ex. G).

Courts across the country have similarly approved attorneys' fees for Plaintiffs' counsel applying a lodestar crosscheck and using comparable and often higher hourly rates than those applied for here.  For example, in *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, MDL 1770, November 2, 2010 (N.D. Cal.) the court approved a fee request at 25% of the settlement fund after conducting a lodestar crosscheck with rates of $675 per hour submitted for George Hanson, $500 per hour for Eric Dirks, and rates of $125 to $225 per hour for professional staff. *See* Ex. H.  *See also Chavez, et al. v. WIS Holding Corp.,* 07cv1932 (S.D. Cal.) (approving fees approximate to 25% of the settlement fund in wage and hour case, and counsel submitted comparable rates as in the Wells Fargo case for a lodestar crosscheck) (Ex. I); *Raikos v. JPMorgan Chase & Co.,* 08-CV-01274 (S.D.N.Y.) (approving fees as a percentage of the fund, and applying a lodestar crosscheck with George Hanson at $700 per hour and Eric Dirks at $500 per hour) (Ex. J); Hanson Decl. ¶ 22.

### Benchmark 4: The Requested Blended Rate is Reasonable.

Another reference point commonly used to determine the overall reasonableness of requested attorneys' fees is the "blended" hourly rate.  Taking the total fees requested ($3,236,000.25) and dividing it by the total time in the case (10,253.4), results in an overall blended rate of $315.61.  When accounting for $179,275.61 in out-of-pocket expenses that are

not recoverable (primarily expert witness fees), the effective blended hourly rate drops to $298.12. Considerably higher blended rates have recently been approved by this Court as reasonable. For example, in *Bruner v. Sprint*, the Court awarded Stueve Siegel Hanson a blended rate of $590.91 as part of the settlement of a FLSA collective action. No. 07-2164, 08-2133, 08-2149, 2009 WL 2058762, *10 (D. Kan. July 14, 2009). *Bruner* involved a non-contested fee application, but that procedural posture should not alter the fact that a blended rate 50% higher than the one sought here was approved as a reasonable fee in litigation that was far less demanding. *See* Hanson Decl. ¶ 18 ("This case involved myriad and unsettled issues of law, evidenced by Tyson's early motion for summary judgment and subsequent appeal to the Tenth Circuit. Given the challenges managing a large class of both FLSA and KWPA class members – almost all of whom spoke little or no English – it is fair to say that this case has been by far the most demanding wage and hour case my firm has ever undertaken."); *see also* Ex. F, Order, *In re: Pre-Filled Propane Tank Mktg. Litig.* (approving overall blended rate of $495 in Kansas City).

### Benchmark 5: The Requested Rates Closely Track Class Counsel's Non-Contingent Hourly Rates.

While Stueve Siegel Hanson primarily represents plaintiffs on a contingency basis, the firm does take cases on an hourly non-contingent basis. When Stueve Siegel Hanson is retained by the hour, its rates closely track the rates requested here. In the firm's current non-contingent billable matters, named partner rates range from $560-$675 per hour; other partner rates range from $400-$450 per hour; and associate attorneys range from $220-$375 per hour. *See* Hanson Decl. at ¶ 25. The fact that Stueve Siegel Hanson receives comparable – or higher – billable rates on a non-contingency basis only further underscores the reasonableness of the hourly rates sought in this application.

16

### D.   __No Reduction in Plaintiffs' Lodestar is Warranted.__

Tyson has suggested that it will request a reduction of Plaintiffs' counsel's lodestar because Plaintiffs did not recover all of the damages requested at trial.  The Supreme Court in *Perdue v. Kenny A.*, has articulated that there is a strong presumption in favor of lodestar in most circumstances, and departures (whether upward or downward) are reserved only for the most exceptional cases.  130 S. Ct. 1662, 1669 (2010).[11]  In addition to the policy articulated by the Supreme Court, any reduction in Plaintiffs' lodestar for so-called "lack of success" would run counter to clear Tenth Circuit precedent.

In *Flitton v. Primary Residential Mortgage, Inc.*, the plaintiff in a Title VII case recovered "only about one percent of the total damages she sought" and "succeeded on only one out of five causes of action listed in her initial complaint."  614 F.3d 1173, 1178 (10th Cir. 2010).  The plaintiff in *Flitton* raised separate claims for discrimination and retaliation, won the retaliation claim in a first trial, then lost the second trial (after remand) on the discrimination claim and punitive damages.  *Id.* at 1176.  The plaintiff ultimately received $354,703 in damages, just a little more than 1% of the $27,902,065 she sought.  *Id.* at 1177-78.  Despite plaintiff's "limited success," the District Court granted, and the Tenth Circuit affirmed, an attorney fee award that made *no reduction* in the fees for plaintiff's limited success, either as to the number of claims on which she succeeded or the damages award.  *Id.* at 1178.  The Tenth Circuit held, "failure on some claims should not preclude *full recovery* [of attorney's fees] if [the] plaintiff achieves success on a significant, interrelated claim."  *Id.* at 1177 (emphasis added and internal citation omitted).  The appellate court quoted Supreme Court precedent for its holding that a plaintiff's attorney fee should not be reduced "simply because the district court did not adopt each contention raised," and further reiterated this Circuit's existing law that "[i]n the context of

---

[11] If anything, the unique circumstances of this case present compelling arguments for an upward departure.

fee awards,… claims are related if they are based on a common core of facts or are based on related legal theories." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)).

Plaintiffs are well aware that the jury in this case did not award the full measure of damages requested; but there can be no doubt that Plaintiffs' success at trial in this matter was far greater than that of the claimant in *Flitton*. Here, Plaintiffs prevailed on both their FLSA and KWPA claims. Thus, there can and should be no reduction simply because they did not recover a larger amount of damages for those claims. In addition, Plaintiffs' measure of success cannot be evaluated solely by the dollar amount awarded in the judgment. Tyson fully acknowledged during trial that first in 2007, and again in 2010, the company added substantial time to class members' compensable work day – all in direct response to this litigation.

And finally, there can be no question that the foundation of Plaintiffs' claims from the inception of the case was the theory that Tyson had violated the "continuous workday" principle under the FLSA – every one of Plaintiffs' claims at trial flowed from that single legal and factual wellspring. As all claims were connected by a "common core of facts" and constituted "related legal theories, and because Plaintiffs' unequivocally won the core FLSA claim (with a jury finding Tyson's conduct to be "willful"), Supreme Court and Tenth Circuit precedent prohibits a downward departure from Plaintiffs' counsel's lodestar.

###   E.   The *Johnson* Factors Support Plaintiffs' Fee Application.

Traditionally the District of Kansas has analyzed some or all of the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (the "*Johnson* factors") in determining whether to enhance or reduce lodestar after it has determined a reasonable

lodestar amount.  *See e.g., Bruner*, 2009 WL 2058762, at *4.[12]  Each of the *Johnson* factors

supports the reasonableness of Plaintiffs' counsel's requested fees.

### 1.    The Time and Labor Required.

There is no dispute that the case was hard fought, complex and lengthy.  Through May

31, 2011, Plaintiffs' counsel has spent 10,253.4 hours prosecuting the case (excluding hours

spent on the bifurcated Emporia matter, and many hundreds of hours reduced in the exercise of

billing judgment).  Work on this case is far from done, and many hundreds of hours will be spent

on post-trial issues, possible appeal by one or both sides, and administering payment of the

judgment to the class.  Tyson does not contest the amount of time and labor required to date.

This factor supports Plaintiffs' application.

### 2.    The Novelty and Difficulty of the Questions.

As the Court is aware, this litigation involved a myriad of novel and difficult legal issues,

including questions regarding (i) the contours of the continuous workday (including paid rest and

unpaid meal periods), (ii) application of the *de minimis* defense, (iii) the interplay between the

federal FLSA and state KWPA, (iv) the meaning of "integral and indispensable" activities, (v)

the impact of Tyson's alleged prior settlement with the U.S. Department of Labor and the *Reich*

injunction, and (vi) the proper standards for representative evidence in the trial of a FLSA

collective and Rule 23 class action.  Both parties and the Court (with all good humor) readily

acknowledged during pre-trial and trial proceedings the difficulty of the issues and the fact that

the body of jurisprudence presented something less than "a model of clarity."  This factor

supports Plaintiffs' application.

---

[12] *Compare Perdue*, 130 S. Ct. at 1671-72.

3.      **The Skill Requisite to Perform the Legal Service Properly.**

As the declarations submitted demonstrate, all the lawyers involved in this litigation are highly skilled.  Plaintiffs' counsel are (as are Tyson's counsel from Hunton & Williams) among the most experienced and effective wage and hour litigators in the country.  This factor supports Plaintiffs' application.

4.      **The Preclusion of Employment by the Attorney Due to The Acceptance of the Case.**

The sheer volume of the time committed to this case over its five year (and counting) life-span necessarily resulted in the preclusion of other employment opportunities by Plaintiffs' counsel.  The 10,253.4 hours of attorney and staff time invested in this case equates to 5 to 10 normal wage and hour cases that resolve in the usual course of business.  Dirks Decl. ¶ 15.  As a result, there is no doubt that Plaintiffs' counsel experienced the loss of significant other case opportunities.  This factor supports Plaintiffs' application.

5.      **The Customary Fee.**

Plaintiffs' counsel's customary fees are comparable to – or higher than – the fees being sought here.  This fact is amply supported by the record, including by the five "benchmarks" identified in Section IV.C. above.  This factor supports Plaintiffs' application.

6.      **Whether the Fee is Fixed or Contingent.**

Class members in this case – low wage earning beef processing workers – were not in a financial position to retain lawyers on an hourly basis or to pay the costs of litigation.  As a result, Stueve Siegel Hanson, Outten & Golden and Garcia & Antosh all undertook the representation of the class on a fully contingent basis, and would recover no amount for expenses or time incurred unless the case succeeded.  Hanson Decl. ¶ 18.  It is well recognized that contingency representation ought to be compensated at a higher rate, and is appropriately

20

considered when assessing the hourly rates of Plaintiffs' counsel.  *See, e.g., Burlington v. Dague*, 505 U.S. 557, 562 (1992) (noting the contingency basis of the representation is "already subsumed in the lodestar"); *see also In re Continental Illinois Securities Litigation*, 962 F.2d 566, 569,574 (7th Cir. 1992) (reversing trial court for refusing to award class action contingency lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking); Woods Decl. ¶ 6 ("In order for me to take a case on a contingency basis, I would need to have a reasonable anticipation of recovering an hourly rate of at least $600 per hour, and likely substantially more"); Byers Decl. ¶ 8 ("I typically would not agree to represent employees in an FLSA collective action without the potential for obtaining attorneys' fees significantly higher than could be earned by charging standard hourly rates for defense work.").  This factor supports Plaintiffs' application.

### 7.    Time Limitations Imposed by the Client or the Circumstances.

This case did not involve any artificially compressed time periods, but it did involve an enormous time commitment over many years which inevitably imposed personal and professional time constraints on Plaintiffs' counsel.  This factor supports Plaintiffs' application.

### 8.    The Amount Involved and the Results Obtained.

Plaintiffs won at trial.  In addition to a monetary judgment for the class that will exceed $750,000 after liquidated damages and interest, Plaintiffs' litigation was the catalyst for Tyson's changing its pay policies and adding substantial additional minutes to the compensable work day. Plaintiffs also won a vigorously contested finding of a "willful" violation of the FLSA.   Relief other than monetary damages is appropriately considered in evaluating the relief obtained.  *See, e.g., Perdue,* 130 S.Ct. at 1669-70 (obtaining injunctive and declaratory relief as a result of settlement).

In addition, the results obtained must also be considered in light of Tyson's defense strategy of never giving ground, never conceding, and refusing to engage in settlement discussions at any time prior to trial.  Hanson Decl. ¶ 27.  From Tyson's perspective, the "amount involved" was always nothing – consequently every dollar Plaintiffs obtained in the monetary judgment was a dollar more than Tyson was ever willing to pay voluntarily.  This factor supports Plaintiffs' application.

### 9.      The Experience, Reputation, and Ability of the Attorneys.

As discussed above in detail, Plaintiffs' counsel are highly skilled, deeply experienced and enjoy the strongest of reputations in Kansas City and nationwide. This factor supports Plaintiffs' application.

### 10.      The "Undesirability" of the Case.

There are likely no other firms in the Kansas City area that would be willing or capable of handling litigation of this magnitude on a fully contingent basis.  This is especially true where, as here, Defendants are well-known for an aggressive defense strategy and have a consistent history of taking donning and doffing cases like this one to trial and through the appellate process.  Hanson Decl. ¶ 6.  This case also presented a host of significant challenges, including clients who did not speak English and who resided in a community that is a seven hour drive away from Kansas City.  This litigation constitutes the most demanding and difficult wage and hour case Stueve Siegel Hanson has undertaken.  Hanson Decl. ¶ 18.  This factor supports Plaintiffs' application.

### 11.      The Nature and Length of the Professional Relationship With the Client.

Plaintiffs' counsel has worked closely with the class representatives and many of the opt-in clients.  Over a five year period, Plaintiffs' counsel made numerous trips to Garden City and

Dodge City, Kansas in order to interact with class clients and in order to understand the working conditions in the facility as much as possible. Finally, Mr. Antosh has a unique professional relationship with the community of class clients in this case. *See* Antosh Decl. ¶ 6. This factor supports Plaintiffs' application.

### 12.    Awards in Similar Cases.

As noted in Section IV.C. above, Plaintiffs' counsel have consistently recovered substantially higher fees at substantially higher rates than those requested here. This factor supports Plaintiffs' application.

### F.    The Court Should Award Reasonable Attorneys' Expenses and Costs.

An award of reasonable attorneys' costs and expenses is also mandatory. *See* 29 U.S.C. 216. Under the FLSA, this may include "reasonable out of pocket expenses" that go "beyond those normally allowed under Fed.R.Civ.P 54(d) and 28 U.S.C. § 1920." *Smith v. Diffee Ford Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Lamon v. City of Shawnee, Kan.*, 754 F.Supp. 1518, 1524 (D. Kan. 1991) (noting expenses under the FLSA generally include "all reasonable out-of-pocket expenditures" that are not "normally absorbed as part of law firm overhead"), *rev'd* in part on other grounds by 972 F.2d 1145; *Calderon v. Witvoet,* 112 F.3d 275, 276 (7th Cir. 1997) (observing that expenses such as travel are not "costs" under 29 U.S.C. § 1920, but "are nonetheless reimbursable-but as part of the award for attorneys' fees, because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services.").

Plaintiffs' counsel request reimbursement for $239,421.78 in expenses. *See* Ex. C (summaries of expenses). These expenses were reasonably and necessarily incurred in the prosecution of the case, are the types of expenses included in a bill for professional services and that are not absorbed as part of firm overhead. Hanson Decl. at ¶ 26. Further, Plaintiffs have

exercised billing judgment in eliminating numerous expenses that are not ordinarily passed on to the client or that could be considered too high.  Dirks Dec. at ¶ 10.  Plaintiffs have also segregated expenses relating entirely to the Emporia matter and are not seeking those expenses at this time.  Finally, Plaintiffs recognize that expert witness fees are likely not recoverable.  *Id.* at ¶ 11.  Plaintiffs, therefore, do not include $171,653.58 in expert witness fees that Plaintiffs' counsel paid for out-of-pocket.[13]

## VI.   CONCLUSION.

There is a strong public policy encouraging the protection of workers' wages in the United States as well as in the State of Kansas.  Because individual claims are often too small to justify paying attorneys by the hour, those rights are protected only if capable plaintiff's lawyers are willing to take wage and hour cases on a contingency basis.  If attorneys are not appropriately compensated for their time, expenses and risk in bringing these important cases, good lawyers will make a living elsewhere and fundamental public policy will go unfulfilled.   It is, therefore, necessary to carry out congressional intent and the purpose behind the FLSA for this Court to fully and fairly compensate Plaintiffs and their counsel for their victory at trial in this complex and vigorously contested litigation.

Importantly, this is not case against a governmental entity with limited coffers and taxpayers who ultimately bear the liability, nor does it involve a small company that tried but failed to follow the rules in good faith.  This is Tyson – a Fortune 100 company with a long and unfortunate track record of running afoul of wage and hour law.  Every hour expended on this litigation, and every dollar requested in lodestar and expense reimbursement, is fully supported and justified by the extensive record.  As Plaintiffs' counsel has already exercised billing

---

[13] If requested, Plaintiffs' counsel are happy to provide additional detail to the Court, including itemized expense reports.

judgment, any further reduction in Plaintiffs' lodestar would amount to an unjust windfall to the

benefit of a corporation that – as the jury expressly found at trial – made a deliberate and *willful*

choice to violate the FLSA.  Accordingly, Plaintiffs' counsel respectfully request that the Court

award $3,475,422.03 in fees and expenses through May 31, 2011.

Respectfully submitted,

Dated: June 17, 2011

**GARCIA & ANTOSH LLP**                                   **STUEVE SIEGEL HANSON LLP**
Peter J. Antosh    KS Bar #21334
pja22@yahoo.com                                          /s/ George A. Hanson
1401 Central Ave.                                        George A. Hanson      KS Bar #16805
Dodge City, KS 67801                                     hanson@stuevesiegel.com
PH:    620-225-7400                                      Eric L. Dirks         D. Kan. Bar #77996
FAX:  620-225-4339                                       dirks@stuevesiegel.com
                                                         Lee R. Anderson       KS Bar #22755
**OUTTEN & GOLDEN LLP**                                   anderson@stuevesiegel.com
Adam T. Klein (admitted pro hac vice)                    460 Nichols Rd., Ste. 200
ATK@outtengolden.com                                     Kansas City, Missouri 64112
Justin M. Swartz (admitted pro hac vice)                 PH:    816-714-7100
JSM@outtengolden.com                                     FAX:  816-714-7101
3 Park Avenue, 29th Floor
New York, New York 10016
PH:    212-245-1000
FAX:  212-977-4005

Respectfully Submitted,

**ATTORNEYS FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2011, I electronically filed the foregoing with the clerk
of court using the CM/ECF system which will send a notice of the electronic filing to all counsel
of record.

/s/ George A. Hanson
An Attorney for Plaintiffs