**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
Michael N. Litrownik (ct 28845)
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct 19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

**FEINBERG JACKSON WORTHMAN & WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

*admitted *pro hac vice*

*Attorneys for Plaintiffs and the Classes and Collective*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>Defendant. | No.: 3:14-cv-956 (JBA) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR NOTICE AND TOLLING**

## **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

    I.       The Court Should Equitably Toll the Claims of the Ineligible Opt-Ins................... 1

            A.       The Ineligible Opt-Ins Properly Joined the Action and Are Before the Court. ........................................................................................................2

            B.       Tolling Is Routinely Granted in Similar Circumstances..............................3

    II.      The New Notice Should Advise the Unnoticed Class Members of Information that is Material to Make an Informed and Intelligent Decision. .................................... 6

CONCLUSION................................................................................................................................. 8

**INTRODUCTION**

Plaintiffs' Motion for Notice and Tolling, ECF No. 554, makes two routine docket-management requests that are an outgrowth of the Special Master process. First, Plaintiffs request that the Court toll the claims of 114 individuals who previously opted in to the case but now appear to lack the criteria for inclusion ("Ineligible Opt-Ins"). *See* ECF No. 555-2 (List of Ineligible Opt-Ins). Courts routinely grant similar requests to avoid prejudice to opt-in plaintiffs, and CSC's opposition misconstrues the nature of statutory and equitable tolling in FLSA collective actions.

Second, Plaintiffs request that the Court approve Plaintiffs' proposed Rule 23 Notice (ECF No. 555-1) and direct its distribution to 30 Rule 23 class members who were not previously identifiable as class members due to errors and omissions in CSC's original data ("Unnoticed Class Members"). *See* ECF No. 555-3 (List of Unnoticed Class Members). CSC's opposition asks the Court to approve a notice that would fail to apprise the Unnoticed Class Members of crucial facts material to their decision to opt out or remain bound by the judgment and ignores controlling case law. This position is contrary to the dictates of Rule 23 and should be rejected.

**I.   The Court Should Equitably Toll the Claims of the Ineligible Opt-Ins.**

CSC's opposition belabors a flawed premise to attempt to defeat tolling for the Ineligible Opt-Ins. According to CSC, the Court cannot toll the claims of the Ineligible Opt-Ins because "it is not this Court's responsibility to assess tolling for a group of individuals who are indisputably not part of this case." ECF No. 556 (Def.'s Br.) at 5; *see also id.* at 1-2, 4, 6. However, this argument ignores well-settled authority governing the function of an FLSA consent form and

authority governing equitable tolling for plaintiffs who are not similarly situated to the certified collective.

> ### A. The Ineligible Opt-Ins Properly Joined the Action and Are Before the Court.

"Once a plaintiff opts in to a collective action by filing notice with the court, the statute of limitations on their FLSA claim is tolled." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 351 (E.D.N.Y. 2008); *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006) ("the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form"); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) ("only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled"). CSC appears to suggest that this statutory tolling is inapplicable if the opt-in plaintiffs are "not a group that ever were [*sic*] should have filed opt-in notices," ECF No. 556 (Def.'s Br.) at 6, but it cites no authority for this proposition.

CSC's logic proceeds from the mistaken premise that an FLSA "collective" has an independent legal status akin to that of a Rule 23 class. That is incorrect. As the Supreme Court has explained,

> . . . a putative [Rule 23] class acquires an independent legal status once it is certified under Rule 23. Under the FLSA, by contrast, "conditional certification" does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, *see* [*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989)], who in turn become parties to a collective action only by filing written consent with the court, § 216(b).

*Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Thus, although it is common for courts and litigants to speak in terms of "certifying" a collective action, that term is actually a misnomer borrowed from class action jurisprudence. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) ("while courts speak of 'certifying' a FLSA collective action, it is

2

important to stress that the 'certification' we refer to here is only the district court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members."). Contrary to CSC's suggestion, there is nothing improper about a worker opting in to an FLSA suit where she believes she is similarly situated to the named plaintiff. *Id*. The only caveat is that the act of joining the case is subject to the Court's later determination that the worker may not be "similarly situated" to her coworkers. But CSC cites no case holding that the Court's later determination nullifies the tolling effect of the original consent filing.

CSC's opposition attempts to blame Plaintiffs for information they did not possess until it was produced in the Special Master process. This is illogical because CSC had greater access to employment data from the outset of this action. Thus, if CSC truly believed that "these Ineligible Opt-ins never should have filed opt-in notices to start with because . . . they do not meet the criteria to be part of the collective," ECF No. 556 (Def.'s Br.) at 5, the appropriate recourse would have been for CSC to move to strike those consent forms from the docket. *See, e.g.*, *Arciello v. Cty. of Nassau*, No. 16 Civ. 3974, 2019 WL 4575145, at *9-10 (E.D.N.Y. Sept. 20, 2019) (adjudicating motion to strike consent forms based on alleged inaccuracies); *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078, 2007 WL 3171342, at *4-6 (S.D.N.Y. Oct. 9, 2007) (adjudicating motion to strike untimely consent forms); *Chavira v. OS Rest. Servs., LLC*, No. 18 Civ. 10029, 2019 WL 4769101, at *7 (D. Mass. Sept. 30, 2019) (granting motion to strike consent forms based on lack of jurisdiction).

**B.    Tolling Is Routinely Granted in Similar Circumstances.**

In collective actions (as in class actions), the statute of limitations resumes if there is a finding that plaintiffs are not similarly situated to one another. *See McEarchen v. Urban Outfitters, Inc.*, No. 13 Civ. 3569, 2017 WL 3912345, at *2 (E.D.N.Y. Sept. 6, 2017). However,

"to avoid prejudice to opt-in plaintiffs, courts may toll the statute of limitations in FLSA collective actions that have been decertified, and they often do so in cases involving many opt-in plaintiffs." *Id.*; *see also Buehlman v. Ide Pontiac, Inc.*, 345 F. Supp. 3d 305, 314 (W.D.N.Y. 2018) (same); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333, 2017 WL 1434498, at *1 (S.D.N.Y. Apr. 19, 2017) (tolling claims of several hundred opt-in plaintiffs for 90 days). This approach is favored, in part, because CSC's alternative proposal – that "[e]quitable tolling . . . be addressed if and only if any of [the Ineligible Opt-Ins] ultimately attempt to pursue a claim" would result in enormous inefficiencies and could result in inconsistent adjudications involving the same core set of facts. ECF No. 556 (Def.'s Br.) at 1.

The remedy Plaintiffs seek here is no different from the grace period routinely afforded individual plaintiffs who join a case but are later found not to be similarly situated. As a consummation of the Special Master process, in May 2019, the parties agreed to a list of 907 individuals who met the criteria for inclusion in the class and collective based on the audited Human Resources and compensation data CSC re-extracted over the course of approximately four months. *See* ECF No. 503 (Report and Recommendation ("R&R")) at 17; ECF No. 554 (Pls' Opening Br.) at 3. By comparing the complete class list to the list of individual plaintiffs who filed consent-to-join forms, Plaintiffs determined that the Ineligible Opt-Ins were not similarly situated pursuant to the Court's prior rulings and had not previously received notice of their ineligibility. Given that CSC does not appear to have recognized the existence of the Ineligible Opt-Ins either (as evidenced by its failure to move to strike their consent forms), it is unlikely to suffer any prejudice as a result of tolling.

The cases cited by CSC are irrelevant to this motion because they involve an application for tolling *before* a consent-to-join form has been filed.[1] The circumstances in which courts have granted requests for tolling prior to the filing of consents involve a different issue than the issue at bar – delay occasioned by motion practice, employers' failure to post notices advising employees of their FLSA rights, and other factual circumstances unique to the start date for initiating a claim. CSC's demand that Plaintiffs conduct a detailed and resource-intensive inquiry into the specific reason each Ineligible Opt-In is not on the final class list is based on a mistaken reliance on these cases, which deal with a plaintiff's diligence in filing a claim in the first instance, not with consent forms already filed with the court.[2]

On the other hand, in *Armstrong v. Homebridge Mortg. Bankers Corp.*, No. 07 Civ. 1024, 2009 WL 3253945 (E.D.N.Y. Sept. 30, 2009), the sole case CSC cites that involves an application for tolling *after* filing a consent form, the court *granted* the plaintiff's request because "doing so comports with elementary principles of justice." *Id*. at *2. Moreover, as the *Armstrong* court noted, even if the court found that the opt-in plaintiffs were not similarly

---

[1] *See Gordon v. Kaleida Health*, No. 08 Civ. 378, 2009 WL 3334784, at *12 (W.D.N.Y. Oct. 14, 2009) (seeking tolling for potential opt-ins to account for thirteen-month delay between filing and adjudication of 216(b) motion); *Lee*, 236 F.R.D. at 200 (seeking tolling for "potential plaintiffs who have not yet opted into the collective action"); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 240 n.10 (N.D.N.Y. 2002) (requesting tolling pursuant to stipulation); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. at 260 n.14 (S.D.N.Y. 1997) (same); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) (recognizing that "the failure to post the required notice equitably tolls the statute of limitations unless and until an employee has actual notice of his rights" and granting plaintiffs discovery into adequacy of notice); *Baba v. Grand Cent. P'ship, Inc.*, No. 99 Civ. 5818, 2000 WL 1808971, at *2 (S.D.N.Y. Dec. 8, 2000) (same).

[2] CSC's insistence that Plaintiffs should be required to undertake such a data-mining operation, like its opposition to the commonplace relief sought by this motion, is yet another illustration of CSC's scorched-earth defense, which needlessly drives up costs and delays final resolution. *See also* ECF No. 520 (Class Counsel's Post-Trial Motion for Attorneys' Fees and Costs) at 2-7 (requesting award of fees expended litigating Class Members' claims and describing CSC's pattern of scorched-earth defense tactics).

situated (an issue which was not before it), "tolling would still have been appropriate" because it was "reasonable for the opt-in [p]laintiffs to have relied on their consents . . . rather than to file their own individual actions." *Id*. (internal brackets and quotation marks omitted). Courts in this Circuit routinely reach the same conclusion and also equitably extend tolling for a period after the determination that an individual plaintiff is not similarly situated. *See, e.g.*, *Scott*, No. 2017 WL 1434498, at *1 (granting 90 days' tolling "in order to avoid prejudice to individual plaintiffs who wish to file their claims"); *Buehlman*, 345 F. Supp. 3d 305, 314 (W.D.N.Y. 2018) (granting 30-day tolling period to dismissed opt-in plaintiffs). The instant request is unique only insofar as CSC's data errors meant that the parties did not have a complete and accurate list of collective members until the conclusion of the Special Master process. The Ineligible Opt-Ins should not be penalized as a consequence.

      CSC's other arguments fall flat. CSC advances a frivolous argument that individuals who opted in to this case prior to the issuance of notice should be treated differently because they were "not part of the court-authorized notice process." ECF No. 556 (Def.'s Br.) at 2. However, it is well established that issuance of notice is simply a case management tool and is not required for individual plaintiffs to opt in to an FLSA action. *See Myers*, 624 F.3d at 555 n.10 ("nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in *Hoffmann–La Roche* has not been sent").

## II.    The New Notice Should Advise the Unnoticed Class Members of Information that is Material to Make an Informed and Intelligent Decision.

      CSC lodges two objections to the content of the new Notice, each of which should be rejected because it seeks to limit information that is "material" for the Unnoticed Class Members to make "an informed, intelligent decision of whether to opt out or remain a member of the class

and be bound by the final judgment." *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 57 (D. Conn. 2001) (JBA), *on reconsideration* (May 11, 2001).

First, CSC objects to language in the Notice advising the Unnoticed Class Members that this lawsuit does not cover time spent working as a Senior Professional SA (or in other ineligible positions) and does not include certain claims under California law. *See* ECF No. 556 (Def.'s Br.) at 9. CSC fails to note that this language is substantially similar to the language included in the original Rule 23 Notice that the Court approved pursuant to stipulation in October 2017. *See* ECF No. 371-1 (Class Notice), at 1.[3] Other than minor edits intended to simplify the language, the main substantive difference between the new Notice and the original Notice is the addition of language advising the Unnoticed Class Members that "Plaintiffs did not prevail on their claim for wage statement violations under California law." ECF No. 555-1 (New Notice), at 1; *see also* Ex. A to Declaration of Jahan C. Sagafi in Further Support of Plaintiffs' Motion for Notice and Tolling ("Sagafi Reply Decl.") (Redline of relevant provision of new Notice and original Notice). CSC does not explain how this addition "is tantamount to attorney advertising and goes well beyond the purpose of the notice." ECF No. 556 (Def.'s Br.) at 9.[4]

Second, CSC contends that the amount of damages each recipient is due should not be included in the new Notice. As set forth in Plaintiffs' moving brief, this Court has held that the

---

[3] Plaintiffs advised CSC of the similarity between the content of the new Notice and the original Notice prior to filing this motion. *See* Sagafi Reply Decl. ¶ 6.

[4] As with CSC's misguided arguments about alleged "solicitation," its references to "attorney advertising" rest on a basic misunderstanding of attorney ethics rules. "Attorney advertising," which is governed in Connecticut by Rule of Professional Conduct 7.2, refers to a lawyer's communications about legal services, not a court's notification about the claims at issue in a Rule 23 class action. Solicitation, which is governed by Rule of Professional Conduct 7.3, is distinct from attorney advertising and refers to specific forms of communication directed to specific persons. CSC makes no effort to show that Class Counsel has engaged in any conduct barred by the latter rule, and its unsupported allegations, ECF No. 556 (Def.'s Br.) at 7, are not pertinent to this motion.

content of Rule 23 notice should apprise class members of information that is material to their decision whether to opt out of the class or remain bound by the judgment.  *See Macarz*, 201 F.R.D. at 57.  CSC does not respond to this authority and provides no basis for its assertion that Unnoticed Class Members should be deprived of relevant information that will undoubtedly affect their decision.

CSC's argument that the Court should follow the Special Master's ruling, ECF No. 503 (R&R) at 13-15, is misguided because that recommendation dealt with a different issue.  Unlike the Rule 23 class members at issue here, the issue before the Special Master was whether *potential opt-in plaintiffs* who moved into covered positions should have a renewed chance to opt in.  The Special Master recommended sending that notice, but the Court rejected that recommendation based on CSC's objection.  *See* ECF No. 514 (Ruling on Report and Recommendation of Special Master), at 7-8.  The Court never reached the issue of whether to include the unpaid overtime, so CSC's argument that Plaintiffs fail to "establish [any] alleged disagreement" between the Court and Special Master," ECF No. 556 (Def.'s Br.) at 9, is irrelevant.

## CONCLUSION

For the reasons set forth above, and also as provided in Plaintiffs' Memorandum of Law in Support of Motion for Notice and Tolling, Plaintiffs respectfully request that the Court (1) toll the claims of the Ineligible Opt-Ins for a period of 60 days from the date of the Court's decision on this motion; and (2) approve the new Notice and direct its distribution to the Unnoticed Class Members.

Dated: March 19, 2020

Respectfully submitted,

By: /s/ *Jahan C. Sagafi*
    Jahan C. Sagafi

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
Michael N. Litrownik (ct28845)
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

**FEINBERG JACKSON WORTHMAN & WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
383 4th Street, Suite 201
Oakland, CA 94607
Telephone: (510) 269-7998

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

*Attorneys for Plaintiffs, the Classes, and the Collective*

*admitted *pro hac vice*