UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH and TIMOTHY COLBY, individually and on behalf of all others similarly situated,<br>  *Plaintiffs*,<br>  v.<br>COMPUTER SCIENCES CORPORATION,<br>  *Defendant*. | Civil No. 3:14-cv-956 (JBA)<br><br>April 9, 2020 |

**RULING ON MOTIONS TO SEAL AND MOTION FOR PROTECTIVE ORDER**

Plaintiffs and their counsel ("Class Counsel") seek leave to file under seal a "compendium of confidential and non-public detailed time records" that has been submitted as Exhibit Q [Doc. # 522] to their Motion for Attorneys' Fees and Expenses. (Pls.' Mot. for Protective Order and Sealing [Doc. # 521] at 2.)[1] They also move "for a protective order limiting use of the detailed time records only for the purpose of defending Class Counsel's Motion for [Attorneys'] Fees and Expenses." (*Id.* at 3.) Defendant Computer Sciences Corporation ("CSC") objects on both points.

For the reasons that follow, the Court denies Plaintiffs' Motion.

**I. Class Counsel's Request to Seal Time Records**

The Court's Standing Protective Order explains that documents filed with the Court are "public documents" which will be sealed not automatically but "only upon motion and in accordance with applicable law." Any order to seal issued by the Court must include

---

[1] Defendant Computer Sciences Corporation has also filed related motions [Docs. ## 529, 542, 548] to seal documents that quote from Class Counsel's time records "until such time that the Court orders Plaintiffs' Exhibit Q to Declaration of Jahan C. Sagafi, Docket Entry No. 522, unsealed." (Def.'s Mots. to Seal [Doc. # 529] at 1, [Doc. # 542] at 2, [Doc. # 548] at 2.) The Court will address those motions separately.

1

"particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to support those reasons." D. Conn. L. Civ. R. 5(e)(3). For a document to be properly sealed, the Court must determine the weight of the presumption of public access to that document and balance against it any competing considerations, such as the privacy interests of those resisting disclosure. *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.").

Class Counsel assert that the "voluminous, detailed time records Plaintiffs seek to file under seal contain confidential descriptions of communications with clients, particular areas of research, and other details of the work performed by attorneys in this case that are protected by the attorney-client privilege and the work product doctrine." (Pls.' Mot. for Protective Order and Sealing at 3.) They further claim that there are clear and compelling reasons to seal these time records as these records "disclose confidential case strategies, including a detailed accounting of the work performed and the attorneys who performed that work" and "contain communications between counsel and class representatives (as well as class members who requested that their identities not be shared with Defendant)." (*Id.* at 4.) Class Counsel compare their time records to a novel, stating that "[w]hile the plot . . . may not be evident from eleven sentences, it is certainly clear when the whole novel is revealed." (Pls.' Reply [Doc. # 540] at 5.) They claim that these "time records tell the story of this litigation" and that the individual entries—even those that "may appear to be vague and unimportant"—reveal "timing, resources, and attorneys dedicated to specific tasks [that] provide insights into Class Counsel's confidential strategy and the nature of the services provided." (*Id.*) Class Counsel contend that sealing these time records in their entirety is "a 'narrowly tailored'

2

remedy," because Class Counsel have publicly filed other exhibits to their attorneys' fees motion and because the redaction of "the privileged information throughout the detailed billing records[, which] span[s] more than five years" and totals 743 pages, "would be overly burdensome and impractical." (Pls.' Mot. for Protective Order and Sealing at 6.)

Defendant opposes Class Counsel's motion to seal, "in light of the generally applicable presumption against sealing court documents and the enhanced public interest in access to class action records." (Def.'s Opp. [Doc. # 531] at 3.)[2] Defendant contends that there is no compelling reason for sealing, as Class Counsel's "vague time entries are not protected under the attorney-client privilege or work-product doctrine, nor as confidential business information." (*Id.* at 7.) Defendant asks that "if this Court finds that any of the time entries are privileged, it should require redaction of those select entries instead of granting Plaintiffs' motion." (*Id.* at 9). Defendant asserts that "this should not be an excessively time-consuming task given that all, or at the very least a healthy majority, of the entries are not privileged." (*Id.* at 11.)

---

[2] On reply, Class Counsel ask the Court to disregard Defendant's opposition on the grounds that "CSC filed its opposition seven days late, despite having three weeks to respond to a five-page motion," in violation of Local Rule 7(b)(1). (Pls.' Reply at 1.) The Court agrees that untimely filings are "antithetical to efficient case management." *A Slice of Pie Prods., LLC v. Wayans Bros. Entm't*, 487 F. Supp. 2d 33, 39 (D. Conn. 2007) (striking expert report that "was not served until more than eight months late[], . . . *after* the filing of the pending summary judgment motions"). However, the Court observes that, in making this request, Class Counsel violated Local Rule 7(a)(5), which provides that "memoranda shall be double-spaced." An examination of their ten-page reply memorandum demonstrates that Class Counsel instead used 1.5-line spacing, circumventing the District's length requirements.

Rather than strike both briefs for rules violations, the Court will, in the interest of justice, consider their respective arguments on the merits.

The Court begins by addressing Class Counsel's claimed basis for sealing. "With respect to the attorney-client privilege, it is well-settled within the Second Circuit that the attorney-client privilege may be a sufficiently compelling reason to defeat the public's right of access to judicial documents." *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, No. 3:11-CV-1209 CSH, 2013 WL 4012772, at *5 (D. Conn. Aug. 5, 2013) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125 (2d Cir. 2006)). "But where the communication is not confidential and is not necessary to obtain informed legal advice for the client, no privilege exists." *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 247 (2d Cir. 1986) (en banc). Accordingly, "absent special circumstances, client identity and fee information are not privileged," as "their disclosure does not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously." *Id.* at 247-48. Applying this principle, "courts in this circuit have found" that administrative documents such as "time records, diary entries, time sheets, [and] billing reports . . . fall under the attorney-client privilege only if they reveal litigation strategy or other confidential information." *Bernstein v. Mafcote, Inc.*, 43 F. Supp. 3d 109, 114 (D. Conn. 2014); *see also Bria v. United States*, 2002 WL 663862, at *5 (D. Conn. Mar. 26, 2002) ("Similarly, 'the attorney-client privilege does not extend to billing records and expense reports.'" (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir.1999))); *Loftis v. Amica Mut. Ins. Co.*, 175 F.R.D. 5, 10 (D. Conn. 1997) ("Billing statements from an attorney to a client which do not reveal a client's confidential communications are not protected by the attorney-client privilege.").

Class Counsel have not identified any exemplar entries from the 743-page document that they claim to be privileged. Instead, to support their request for blanket sealing, Class Counsel make broad claims that the entries—read individually and as a whole—reveal their strategy and provide descriptions of their confidential client communications. Lacking any specific direction as

4

to what exact portions are claimed to be protected, the Court summarily reviewed these entries for evidence of confidential and privileged information. However, the Court was unable to readily identify any entries clearly subject to the attorney-client privilege. Indeed, the vast majority of the 22,278 entries are too vague to "reveal litigation strategy or other confidential information."[3] *Bernstein*, 43 F. Supp. 3d at 114. As such, their disclosure would "not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously." *In re Grand Jury Subpoena*, 781 F.2d at 248.

Importantly, the Court notes that nothing precluded Class Counsel from redacting or editing times entries that they considered privileged prior to submitting their time records. When petitioning for attorneys' fees, a party is required to provide "billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "[C]ounsel, of course, is not required to record in great detail how each minute of . . . time was expended," as it is enough to "identify the general subject matter of [the] time expenditures." *Id.* As such, courts have allowed counsel to "redact[] certain entries in the time records" that contain privileged information, so long as the court "can discern the activity that took place." *Balu v. City of New York*, No. 12 CIV. 1071 (KPF), 2016 WL 884666, at *7 (S.D.N.Y. Mar. 8, 2016). Here, Class Counsel had, in the first instance, the opportunity to omit any information that they believed to be privileged. However, apparently deeming the task to be "overly burdensome and impractical," Class Counsel instead submitted their complete and unedited time records. (Pls.' Mot. for Protective Order and Sealing at 6.) This was a voluntary and intentional decision, not one

---

[3] For example, variations on the entry "doc review" appear 201 times. Variations of the entry "trial prep" appear 276 times. Of the more than 2,000 entries describing e-mail work, only a fraction specify the subject or recipient—typically another attorney—of the e-mail.

that was inadvertent or that Class Counsel was compelled to take.[4] The mere fact that Class Counsel considered the task of redacting these documents to be cumbersome does not now entitle them to blanket sealing from the public or to entirely shift this review function to the Court.

Thus, even if some time entries contain attorney-client privileged information, the Court finds that the privilege is waived. *See Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 90 (S.D.N.Y. 2016) ("Both the attorney-client and work product privileges may be waived if a party puts the privileged communication at issue by relying on it to support a claim." (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000))).[5]

---

[4] For this reason, Class Counsel's reliance on *Ring v. Commercial Union Ins. Co.*, 159 F.R.D. 653 (M.D.N.C. 1995), and *Nesse v. Pittman*, 202 F.R.D. 344, 346 (D.D.C. 2001), is misplaced. Both of these cases involved discovery disputes, and in neither did the party asserting the privilege intentionally docket the information that it sought to protect.

[5] Class Counsel's argument that the time records are wholly protected by the work-product doctrine fails for similar reasons. As the Second Circuit has held, a "party impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue." *N.Y. Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479, 494 (2d Cir. 2019) (cleaned up). A motion for attorneys' fees necessarily places documentation of litigation time records at issue. Moreover, documents such as time records generally fall "outside the scope of the work-product doctrine," as they are prepared in the regular course of business, rather than in specific anticipation of litigation. *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2017 WL 1361308, at *11 (N.D. Ind. Apr. 14, 2017); *see also Monroe's Estate v. Bottle Rock Power Corp.*, 2004 WL 737463, at *11 (E.D. La. Apr. 2, 2004) ("[I]nformation relating billing, . . . hourly rates, hours spent by attorneys working on the litigation, and payment [of] attorney's fees does not fall within either the attorney-client or the work product privilege."); *Leach v. Quality Health Servs.*, 162 F.R.D. 499, 502 (E.D. Pa. 1995) ("We find it unlikely that the billing records would be protected by the attorney work product doctrine. . . . Billing records are commonly created in the regular course of business, which removes them from this doctrine's coverage.").

Class Counsel's alternative argument that the time records should be sealed entirely because they are confidential business records is also unavailing. Time records prepared in the course of litigation are not the sort of "[confidential business] records which would aid '[c]ommercial competitors seeking an advantage over rivals'" which "may outweigh the public's

Because the Court concludes that the time records are not privileged, Class Counsel's motion to seal is denied.

## II. Class Counsel's Request for Protective Order

Class Counsel also move under Federal Rule of Evidence 502(d) for "a protective order limiting the use of their detailed time records to solely litigation regarding Class Counsel's Post-Trial Motion for Attorneys' Fees and Costs." (Pls.' Mot. for Protective Order and Sealing at 1). Class Counsel contend that "[a]bsent the Court's intervention," there is a risk that "CSC may receive key insights into Class Counsel's litigation strategy and gain an undue advantage in a pending class action for which Defendant already filed a notice of appeal." (*Id.* at 5.) Class Counsel further contend that because "Plaintiffs do not even have access to Defendant's counsel's detailed time records[,] [i]t is only fair that Defendant should not have unlimited use of Plaintiffs' counsel's detailed time records." (*Id.*)

Defendant opposes the granting of such a protective order "[f]or the same reasons established above in the context of sealing the time records," arguing that the "time records are not protected by attorney-client privilege or the work-product doctrine as alleged by Plaintiffs, therefore, their disclosure and use will not result in 'serious injury' or any injury whatsoever." (Def.'s Opp. at 13.)

Under the Federal Rules of Evidence, a "federal court may order that the *privilege or protection* is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state *proceeding*." Fed. R.

---

presumption of access." *SEC v. Ahmed*, No. 3:15CV675 (JBA), 2018 WL 4266079, at *3 (D. Conn. Sept. 6, 2018). If Class Counsel's argument were accepted, all time records submitted in any case in support of attorneys' fees motions would be entitled to sealing as a matter of course.

Evid. 502(d) (emphasis added). But having concluded that the time records are *not* privileged, the Court lacks any basis to grant such a protective order.[6]

III. Conclusion

Accordingly, Class Counsel's Motion for Protective Order and Sealing [Doc. # 521] is DENIED. The Court directs the Clerk to unseal Document 522.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of April 2020.

---

[6] Additionally, the Court has doubts that such an order would be appropriate even if the time records were privileged. Illustrating the unusual nature of Class Counsel's request, the Court was able to find only one case addressing the applicability of Rule 502 in the context of a post-judgment motion for attorneys' fees. In *Jeanbaptiste v. Wells Fargo Bank, N.A.*, the court interpreted the Rule and posited that the "plain language of Rule 502(d) and its legislative history suggest that it was designed to protect disclosures made in the context of discovery," not intentional disclosures made post-trial. No. 3:14-CV-0264-K, 2014 WL 6790737, at *3 (N.D. Tex. Dec. 1, 2014); *see* Fed. R. Evid. 502(d) advisory committee's note (explaining that Rule 502 was "designed to enable a court to enter an order . . . that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery"); S. Rep. No. 110–264, at 3 (Feb. 25, 2008) ("The bill provides a new Federal Rule of Evidence 502 to limit the consequences of inadvertent disclosure, thereby relieving litigants of the burden that a single mistake during the discovery process can cost them the protection of a privilege."). This Court agrees with *Jeanbaptiste*'s analysis that Congress intended Rule 502(d) to apply to inadvertent disclosures made during discovery, as opposed to intentional disclosures made post-trial as here.

8