UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE individually and on behalf of all others similarly situated,<br>*Plaintiffs*,<br>*v.*<br>COMPUTER SCIENCES CORPORATION,<br>*Defendant*. | Civil No. 3:14-cv-956 (JBA)<br><br>July 27, 2020 |

**RULING ON POST-TRIAL MOTIONS FOR SERVICE AWARDS,
ATTORNEYS' FEES, AND COSTS**

Plaintiffs and their counsel bring two post-trial motions for attorneys' fees, costs, and service awards.

The four law firms (collectively, "Class Counsel") representing Plaintiffs move for fees and costs under the Fair Labor Standards Act, Connecticut law, and California law. (Pls.' Mot. Att'ys' Fees and Costs [Doc. # 520].) Specifically, Outten & Golden LLP; Feinberg, Jackson, Wortham & Wasow, LLP; Lieff Cabraser Heimann & Bernstein LLP; and Susman, Duffy & Segaloff, P.C., request a multiplied fee award of $13,616,063,17 and $584,560.54 in costs. (*See* Pls.' Notice of Updated Costs [Doc. # 537] at 2-3.) Defendant Computer Sciences Corporation ("CSC") opposes the motion, arguing for a reduced lodestar.

The named plaintiffs in this action—Timothy Colby, Joseph Strauch, Charles Turner, and Vernon Carre ("Class Representatives")—separately move for service awards in the amount of $10,000 each, for a total of $40,000. (Pls.' Mot. Service Awards [Doc. # 523].) CSC again opposes this motion.

For the reasons that follow, Class Counsel's motion for attorneys' fees and costs is granted with modification, and Class Representatives' motion for service awards is granted.

1

## I.  Background

The Court assumes the parties' familiarity with the underlying facts and history of this case. In brief, Class Representatives Joseph Strauch, Timothy Colby, Charles Turner, and Vernon Carre brought this overtime misclassification suit on behalf of Associate Professional and Professional System Administrators (collectively, "SAs") that had been employed by CSC. Plaintiffs brought this action under the Fair Labor Standards Act ("FLSA") and the state laws of Connecticut, California and North Carolina, claiming that Defendant CSC unlawfully classified the SAs as overtime-exempt computer employees.

On June 9, 2015, the Court conditionally certified an FLSA collective composed of all SAs who had the titles "Associate Professional System Administrator," "Professional System Administrator," or "Senior Professional System Administrator" and whose yearly earnings were less than $100,000. (*See* [Doc. # 168].) On June 30, 2017, the Court certified Connecticut and California Rule 23 subclasses of Professional and Associate Professional System Administrators. (Class Certification Ruling [Doc. # 327].)

On July 14, 2017, Defendant petitioned the Second Circuit to appeal this class certification. (Pet. for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f) at 1, *Strauch v. Comput. Scis. Corp.*, No. 17-2185 (2d Cir. July 14, 2017).) The Second Circuit denied this petition on November 21, 2017, finding that "an immediate appeal is unwarranted." (Mandate Granting Mot. to File Reply and Denying Rule 23(f) Pet. [Doc. # 410].)

Separately, Defendant submitted to this Court a motion to decertify the California class of SAs, claiming that Mr. Strauch was an inadequate class representative. ([Doc. # 343].) The Court denied that motion on October 18, 2017. ([Doc. # 358].) Defendant then filed a Second Motion to Decertify, ([Doc. # 373]), on October 27, 2017, arguing that Plaintiffs' trial plan was deficient and

that both the California and Connecticut classes should thus be decertified. The Court denied that Motion on November 30, 2017. ([Doc. # 412].)

Trial commenced on December 7, 2017. At the close of Plaintiffs' evidence, Defendant moved for a directed verdict, ([Doc. # 424]), which the Court denied, ([Doc. # 425]). Defendant renewed that motion at the close of all evidence. ([Doc. # 435].) Again, the Court denied that motion without prejudice. ([Doc. # 438].)

On December 20, 2017, the jury returned a verdict in Plaintiffs' favor on liability on Plaintiffs' claims under the FLSA and Connecticut and California wage-and-hour law. The jury made a specific finding that Defendant acted willfully in classifying Plaintiffs as exempt. ([Doc. # 442].) However, the jury also found in Defendant's favor that Defendant had proved that it and the SAs had a clear, mutual understanding that their fixed salaries were intended as compensation (apart from overtime premiums) for the hours worked each workweek. ([Doc. # 442-1].)

On February 2, 2018, Defendant moved for a judgment as a matter of law, ([Doc. # 446]), and again moved to decertify the FLSA collective and the Rule 23 California and Connecticut classes, ([Doc. # 447]). The Court denied both motions. ([Doc. # 476].)

On November 9, 2018, the Court issued its ruling on remedies, ([Doc. # 479]), and then, on January 24, 2019, appointed a Special Master to address the calculation of damages, ([Doc. # 491]). On August 12, 2019, the Court adopted the Special Master's recommendation as to damages and entered an amended judgment in favor of the Plaintiffs in the amount of $18,755,016.46. ([Docs. ## 514, 515].)

On September 4, 2019, Defendant notified the Court that it was appealing the post-trial rulings, ([Docs. ## 477, 479, 514, 515]), to the Second Circuit. ([Doc. # 519].)

On September 18, 2019, Class Counsel brought these motions for attorneys' fees and costs, ([Doc. # 520]), and for service awards, ([Doc. # 523]).

## II.  Discussion

### A.  Attorneys' Fees

In this action, it is undisputed that Plaintiffs are the prevailing party and so are eligible to recoup "reasonable" attorneys' fees under the Fair Labor Standard Act, Connecticut law, and California law. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the . . . plaintiffs, allow a reasonable attorney's fee to be paid by the defendant."); Conn. Gen. Stat. § 31-68 (authorizing "reasonable attorney's fees" in wage and hour cases); Cal. Lab. Code § 218.5 (same).

Accordingly, Class Counsel petition for fees under these statutes. In their Lodestar Summary Report, Class Counsel calculate their collective lodestar to be $10,369,189, based on the 20,607 hours billed on this matter. (*See* Exhibit N-2 (Lodestar Summ. Report) to Pls.' Notice of Updated Costs and Errata [Doc. # 537-3] at 4.)[1] After auditing their time entries, Class Counsel

---

[1] In their Notice of Updated Costs, Class Counsel assert that their proposed total lodestar amount is $10,682.429.50. (*See* Pls.' Notice of Updated Costs and Errata [Doc. # 537] at 2). However, that figure appears nowhere in Class Counsel's various exhibits tabulating their rates and accrued hours, which consistently list $10,369,189 as the total lodestar amount. (*See* Exhibit C-2 (Lodestar by Seniority of Timekeeper Table) to Pls.' Notice of Updated Costs and Errata [Doc. # 537-3] at 1 (calculating total lodestar to be $10,369,189; Exhibit I-2 (Lodestar by Phase of Litigation Table) to Pls.' Notice of Updated Costs and Errata [Doc. # 537-2] at 1 (same).)

Because the Lodestar Summary Report is consistent with Class Counsel's other documentation and provides detail as to the aggregate hours billed by individual attorneys and paralegals, the Court will treat its figures as definitive when making its calculations as to the correct lodestar, as it is otherwise lacks the data necessary to make tailored deductions as to Class Counsel's rate and hours.

propose a "reduced lodestar" of $10,163,289, (*see* Pls.' Notice of Updated Costs and Errata [Doc. # 537] at 2), which "reduced all travel time by 50%" as is "consistent with Second Circuit practice," "eliminated all entries by timekeepers who billed fewer than 10 hours total," and "eliminated time spent on depositions of Senior Professional SAs, who are not members of the ultimately certified FLSA collective and state-law classes." (Pls.' Mot. Att'ys' Fees and Costs at 13.) Working from this proposed lodestar, Class Counsel ask the Court to "apply a 1.5x multiplier to the portion of their fees attributable to work performed for the benefit of the state law class members" and "request a 10% per-year enhancement based on federal law . . . [to] apply to the remaining portion" of the proposed lodestar. (*Id.* at 32.) In all, Class Counsel's total requested fee amounts to $13,616,063.17. (*See* Pls.' Notice of Updated Costs and Errata at 2.)

Defendant raises a number of objections to Class Counsel's claimed fees, which the Court will detail below.

### 1. Legal Standard

"[T]he FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). Both the Second Circuit and the Supreme Court "have held that the lodestar method — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) ("*Arbor Hill II*")).[2] The Court should determine the "presumptively reasonable fee"

---

[2] California and Connecticut law also follow the lodestar approach. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) ("[T]he lodestar is the basic fee for comparable legal services in the community[.]"); *Francini v. Riggione*, 193 Conn. App. 321, 327 n.12 (2019) ("A lodestar calculation

by looking to "what a reasonable client would be willing to pay." *Arbor Hill II*, 522 F.3d at 183-84. Under this approach, district courts are directed to "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" in considering "what a reasonable, paying client would be willing to pay." *Id.* at 184. In doing so, courts should utilize both the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989),[3] as well as certain client-related factors:

> [T]he district court, in exercising its considerable discretion, [should] bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

---

is the initial estimate of a reasonable attorney's fee which is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." (internal alterations omitted)).

[3] The *Johnson* factors include "(1) the time and labor required by an attorney; (2) the novelty and difficulty of the questions presented by the litigation; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney because of acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill II*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19).

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007) ("*Arbor Hill I*"), *amended on other grounds by Arbor Hill II*, 522 F.3d 182 (2d Cir. 2008).

In determining a reasonable hourly rate in connection with an application for attorneys' fees, district courts attempt to "ascertain whether 'the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  In the general run of cases, a court presumes "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill II*, 522 F.3d at 191. Thus, courts generally assess the reasonableness of counsel's hourly rate by reference to "the hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). "This presumption may be rebutted—albeit only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." *Arbor Hill II*, 522 F.3d at 191. To do this, the party seeking higher rates must "persuasively establish[] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 175. "Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise," or if "local counsel possessing requisite experience were unwilling or unable to take the case." *Id.* (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)). A court may also use "some rate in between the out-of-district rate sought and the rates charged by

local attorneys[] in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill II*, 522 F.3d at 191.

Once a court has determined the "presumptively reasonable fee," it "may still adjust that amount" upward or downward "based on relevant factors specific to the instant case," such as the level of success the plaintiff attained. *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. 3:03-CV-599 (CFD), 2011 WL 721582, at *3 (D. Conn. Feb. 22, 2011); *see also Robinson v. City of New York*, No. 05 CIV. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009) ("Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of plaintiffs' success in the litigation.").

Regarding hours, counsel seeking fees are "not required to record in great detail how each minute of [their] time was expended," *Hensley v. Eckerhart*, 461 U.S. 424, 437 n. 12 (1983), but they are obliged "to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested," *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987). "[C]ounsel should at least identify the general subject matter of his [or her] time expenditures," and in the absence of such identification, a court may refuse to award fees based on those entries. *Electro–Methods, Inc. v. Adolf Meller Co.*, 473 F. Supp. 2d 281, 305–06 (D. Conn. 2007). For example, while "preparation for hearing" is a permissible time entry not subject to reduction because it refers to a specific event and allows for a determination of the reasonableness of time spent, entries like "work on various items" and "work on documents" are too vague for a court to determine the reasonableness of time spent. *Electro–Methods*, 473 F. Supp. 2d at 305–06; *see also*

*Rabin v. Wilson–Coker*, 425 F. Supp. 2d 269, 272–73 (D. Conn. 2006) (reducing the number of hours by five percent because the billing records contained entries such as "work on brief," even though most of the time entries were sufficiently detailed).

While the Court is not required to determine a fee award with exactitude, as this determination "should not result in a second major litigation" *see Hensley*, 461 U.S. at 437, the fee applicant must "submit appropriate documentation to meet their burden of establishing entitlement to an award[, and] . . . trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838–39 (2011) (internal quotation marks and citations omitted). Ultimately, the goal "is to do rough justice, not to achieve auditing perfection." *Id.*

### 2.  Reasonableness of Hourly Rates

Class Counsel seek fees for forty-seven attorneys and thirty-seven named staff members, spread across four law firms. (*See* Lodestar Summ. Report.)

At Outten & Golden ("O&G"), which is an employment law firm "with offices in New York, San Francisco, Chicago, and Washington, D.C.," (Sagafi Decl. [Doc. # 520-1] ¶ 5), the hourly rates range from $775 to $975 for a partner. (*See* Lodestar Summ. Report at 1). The rates range from $550 to $750 for counsel, $350 to $600 for an associate, $280 to $600 for a staff attorney, and $240 to $400 for a project or contract attorney. (*See id.*) For an administrative staff member such as a paralegal, the hourly rates range from $200 to $285. (*See id.*) In total, O&G asks for $5,394,556 in fees. (*See id.*)

Feinberg, Jackson, Wortham & Wasow, LLP ("FJWW") is a California-based law firm with a "nationwide practice focused on plaintiffs' public interest class actions and complex litigation."

(Jackson Decl. [Doc. # 520-18] ¶ 3.)[4] There, the hourly rates for a partner range from $590 to $840. (*See* Lodestar Summ. Report at 2.) The rates for counsel and associates range from $375 to $625 per hour. (*See id.*) FJWW's portion of the lodestar amounts to $3,071,477. (*See id.*)

Lieff Cabraser Heimann & Bernstein LLP ("LCHB") is "a national law firm with offices in San Francisco, New York, and Nashville." (Hutchinson Decl. [Doc. # 520-20] ¶ 5.) At LCHB, the hourly rates range from $590 to $675 for a partner. (*See* Lodestar Summ. Report at 2.) The hourly rates for its junior attorneys range from $370 to $490. (*See id.*) The hourly rates for administrative staff members range from $260 to $405. (*See id.*) LCHB asks for $1,898,926.50 in fees. (*See id.*)

Susman, Duffy & Segaloff, P.C. ("SDS") is Plaintiffs' local counsel, and the firm maintains an office in New Haven, Connecticut. SDS's compensation rates for partners ranges from $250 to $300. (*See id.* at 3.) Compensation for associates ranges from $125 to $180. (*See id.*) SDS has an hourly rate of $125 for its administrative staff. (*See id.*) SDS seeks $4,229.50 in fees.

Class Counsel assert that these figures "are reasonable given that Class Counsel are among a very small number of firms that have successfully tried complex wage and hour cases to verdict." (Pls.' Mot. Att'ys' Fees and Costs at 18.) Class Counsel have not offered affidavits from employment attorneys in this District describing local prevailing rates, as is often customary when petitioning for attorneys' fees. *See, e.g., Doe by & through Doe v. E. Lyme Bd. of Educ.*, No. 3:11CV291(JBA), 2019 WL 1397455, at *13 (D. Conn. Mar. 27, 2019) (fee petition supported by affidavits from "experienced attorneys who practice special education law in Connecticut"); *United States ex rel. Rai v. KS2 TX, P.C.*, No. 3:17-CV-834(JBA), 2019 WL 1397290, at *4 (D. Conn. Mar.

---

[4] For this motion, the Court is treating the fees accumulated by Lewis, Feinberg, Lee & Jackson—the former firm of FJWW Partner Todd Jackson—as attributable to FJWW. (*See* Jackson Decl. ¶¶ 1, 3, 13, 18-20, 36.)

27, 2019), *order amended on reconsideration on other grounds*, No. 3:17-CV-834 (JBA), 2019 WL

3854301 (D. Conn. Aug. 16, 2019) (fee petition supported by affidavit discussing propriety of a

$725 hourly rate for a False Claims Act attorney); *Barati v. Metro-N. R. Co.*, 939 F. Supp. 2d 153,

155 (D. Conn. 2013) (fee petition supported by affidavits stating that billing rates between $375

and $550 "represent reasonable rates for attorneys in this District with their respective experience

and expertise"). Instead, Class Counsel contend that "clients regularly pay Class Counsel's

customary hourly rates" in this district, as demonstrated by the fact that the State of Connecticut

has used LCHB's services and "approved hourly rates starting at $240 for support staff up to $800

for LCHB partners." (Pls.' Mot. Att'ys' Fees and Costs at 19.) Class Counsel also argue that the

*Johnson* factors support their rates given that "this case required substantial time and skill to

prosecute," (*id.* at 22), that counsel themselves have "reputation[s] as effective trial, complex class

action, and employment lawyers," (*id.* at 24), and that the firms "obtained the best possible

outcome—a recovery of over $18.75 million, including liquidated damages and damages calculated

at 1.5x Plaintiffs' hourly rate—for their clients . . . in the face of enormous risk," (*id.* at 26).

Class Counsel also argue that "[a]lthough [they] have been paid their customary rates in

this District, courts have found that prevailing fees in the District of Connecticut are generally

lower than the rates in the districts where Class Counsel have their offices." (*Id.* at 19-20.) Class

Counsel further argue that "to the extent prevailing rates in Connecticut for other attorneys are

lower than the rates Plaintiffs request here, it is appropriate to adopt Class Counsel's rates because,

'given the breadth and complexity of this case, a reasonable, paying client would likely hire national

counsel experienced in the type of investigation and litigation implicated here.'" (*Id.* at 20 (quoting

*Rai*, 2019 WL 1397290, at *5).) Class Counsel contend that "[a]lthough there are many qualified

practitioners of wage and hour law in this District and elsewhere, very few have the experience,

expertise, and size to effectively prosecute large, national hybrid class/collective actions requiring a large outlay of up-front costs," and that "[e]ven fewer have the ability and resources to carry those cases through trial." (*Id.* at 20.) Class Counsel explain that, "[b]y working together," these four firms were able to "incur substantial out-of-pocket costs of $535,201.54[5] and counting, and proceed unpaid for half a decade without the temptation to agree to an unreasonably weak settlement due to financial strain." (*Id.*) In support of this contention, Class Counsel offer a declaration from Connecticut class action employment attorney Richard Hayber who states that, "when [he] ha[s] a wage and hour case that involves a substantial number of potential plaintiffs, opt-ins, or class members, significant out-of-pocket costs, or other complicating factors, [he] usually seek[s] out co-counsel to share in the risk, workload, and expense of the litigation," and that, when this is the case, "it is usually necessary to seek out co-counsel outside of Connecticut, particularly at larger firms that have substantial staff and back-office support, infrastructure, and the capacity to share in the heavy workload and out-of-pocket costs of litigation." (Ex. B (Richard Hayber Decl.) to Sagafi Reply Decl. [Doc. # 551-2] ¶¶ 12, 14).

Defendant objects that Class Counsel's requested rates are unreasonable for the District of Connecticut, and so proposes "that all attorney rates above $500 be reduced to $500" and that rates for paralegals and staff be reduced to "$150 per hour." (Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs [Doc. # 541] at 10.)[6] Defendant argues that Class Counsel's "excessively high rates . . . are

---

[5] As noted *supra* n.1, Class Counsel submitted a Notice of Updated Costs subsequent to their fee petition, which adjusted their out-of-pocket expenditures upward from $535,201.54 to $584,560.54. (*See* Pls.' Notice of Updated Costs and Errata at 3.)

[6] In support of this request, Defendant has offered the declaration of California attorney and legal fee auditor James P. Schratz. ([Doc. # 541-3].) In this declaration, Mr. Schratz "recommend[s] that Class Counsel's hourly rates for Partners (and Associates with rates above

particularly unreasonable" because "Class Counsel chose to file this matter in Connecticut after engaging in forum shopping." (*Id.*) Specifically, Defendant believes that out-of-district rates are inappropriate because "(1) Class Counsel [is] located in California, (2) the original named plaintiff was located in California, (3) plaintiffs forum shopped to avoid California courts, [and] (4) the Connecticut plaintiff did not hire Class Counsel but was recruited by class counsel to join the case." (*Id.* at 12.) Defendant thus argues that, in light of this claimed forum-shopping, "the standard 'forum rule' analysis should not apply," and that the Court should automatically reject Class Counsel's out-of-district request without engaging in the inquiry required by *Arbor Hill*. (*Id.* at 10.)

Defendant also contends that, even if the forum rule applies, "Class Counsel [have] failed to establish the requisite particularized showing required to establish an entitlement to receive out-of-district rates." (*Id.*) Defendant argues that Class Counsel has not sufficiently demonstrated why specific "expertise in litigating computer technical support worker class actions was required for this case." (*Id.* at 14.) Defendant also asserts that, in any event, such expertise exists in Connecticut,

─────────────────────

$500) be reduced to $500 per hour which is still well above the $300 hourly rate approved for wage and hour cases in this district" and "that Paralegal hourly rates be reduced to $150." (Schratz Decl. ¶ 57.) Mr. Schratz states that such rates "tak[e] into account Class Counsel's reputation and experience, and the nature of this case." (*Id.*)

Class Counsel contend that this affidavit is not "[e]ntitled to [a]ny [w]eight" because Mr. Schratz "fails to disclose any methodology for categorizing or evaluating entries" and his affidavit is "effectively a legal brief." (Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs [Doc. # 550] at 6-7.)

As it has done with other fee requests, the Court will take Mr. Schratz's declaration into consideration when determining the proper fee award. *See, e.g., Barati*, 939 F. Supp. 2d 153, 155 (D. Conn. 2013) (considering affidavits concerning "reasonable rates for attorneys in this District").

as "the District of Connecticut is home to numerous excellent employment lawyers who handle FLSA cases, including FLSA collective or Rule 23 class actions, and charge rates commensurate with the prevailing rate in the community." (*Id.* at 15.) As an example, Defendant notes that one Connecticut attorney was counsel on a "case where class certification was granted on behalf of systems engineers," undermining Class Counsel's argument that only out-of-district counsel were able to litigate Plaintiffs' claims. (*Id.* at 15 (citing *Scott v. Aetna Servs.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (class certified prior to settlement)).)

Applying the *Johnson* factors, the Court agrees with Class Counsel that the complexity of this action and the degree of success that Class Counsel achieved warrant an award at the higher end of the fee spectrum. As Class Counsel have detailed, they represented one nationwide FLSA collective and two state-law classes, made up of more than 900 SAs. Issues were contested at every stage of this five-year litigation, culminating in a two-week trial. Class Counsel bore the risk of investing considerable time and resources into this litigation, expending more than half a million dollars in out-of-pocket costs, all with no guarantee of recovery. Moreover, the many attorneys who participated in this litigation are well experienced and credentialed, having built strong reputations as leading employment lawyers in their field. Lead counsel, for example, have "litigated ten large class/collective actions asserting overtime misclassification claims for computer technical support workers," making them effective advocates for Plaintiffs in this case. (Pls.' Mot. Att'ys' Fees and Costs at 2.)

Class Counsel have also overcome the presumption expressed in *Arbor Hill* "that a reasonable, paying client would in most cases hire counsel from within the client's district," as they have persuaded the Court that, "given the breadth and complexity of this case, a reasonable, paying client would likely hire national counsel experienced in the type of investigation and litigation

implicated here." *Rai*, 2019 WL 1397290, at *5.[7] As demonstrated by the Hayber Declaration, the "*Strauch* litigation is the kind of case for which" a leading local employment attorney "would need to seek out-of-district counsel to prosecute the case effectively." (Hayber Decl. ¶ 15.) Mr. Hayber notes that when he litigated a FLSA class action by systems engineers designated as "exempt from [FLSA's] overtime pay requirements," he worked with "two co-counsel firms . . ., one of which . . . was based in New York City." (*Id.* ¶ 16 (referring to *Scott*, 210 F.R.D. 261).) The class in that case was composed of 281 systems engineers, and so was less than a third of the size of the group of Plaintiffs involved here. Further underscoring the national nature of this case, the four named Class Representatives each come from different states: Connecticut, California, North Carolina, and Colorado. (*See* Class Certification Ruling at 11-20). Indeed, Defendant's "argument that paying out-of-district rates in this case is unreasonable is belied by their own choice to be represented" by Jackson Lewis, a large law firm with offices nationwide. *S. New England Tel. Co. v. Glob. Naps, Inc.*, No. 3:04–cv–2075 (JCH), 2008 WL 1848899, at *2 (D. Conn. Apr. 25, 2008). Thus, the Court is satisfied that a "reasonable, paying client would be likely to hire national counsel to investigate and litigate this case." *Rai*, 2019 WL 1397290, at *5. As such, Class Counsel are entitled to rates in excess of those that prevail in this district, which typically range between $375 and $535 for experienced partners. *See Lavatec Laundry Tech. GmbH v. Voss Laundry Sols.*, No. 3:13-CV-

---

[7] Defendant's argument that the Court may bypass the *Arbor Hill* inquiry entirely because of purported forum shopping—and thus automatically decline Class Counsel's request for out-of-district rates—does not appear to be supported by any caselaw. However, the Court agrees with Defendant that forum- and venue-shopping should not be encouraged, *see Mohamed v. Tesfaye*, 2019 WL 1460401, at *6 (S.D.N.Y. Jan. 24, 2019) ("[T]he interests of justice require that this Court not reward forum shopping." (internal quotation marks omitted)), and so concludes that venue-shopping is among the "other factors" that a court may consider when determining a reasonable fee award, *Arbor Hill II*, 522 F.3d at 194.

00056 (SRU), 2018 WL 2426655, at *15 (D. Conn. Jan. 9, 2018) (noting that a "rate of $525 per hour would be among the highest ever awarded in Connecticut" and approving hourly rates of $472.50 for in-district counsel and $535.50 for out-of-district counsel); *E. Lyme Bd. of Educ.*, 2019 WL 1397455, at *13 (approving requested hourly rate of $375 for a partner and discussing expert opinion that prevailing rates for experienced lawyers in this district range from "$425 to $500 per hour").

However, while Class Counsel have demonstrated that they are entitled to out-of-district rates, they have not adequately justified the specific hourly rates they seek, which are as high as $975. Class Counsel have not offered any affidavits describing the prevailing rates in the district where their offices are located, nor have they provided examples of awards derived from rates commensurate with those they request here. Class Counsel only offer one piece of outside evidence beyond their own affidavits and time records to support their requested hourly rates: a contract between the State of Connecticut and LCHB, securing LCHB's services as asset recovery counsel and setting the hourly compensation rates at $412 to $800 for partners and $388 for associates. (Ex. C (LCHB State Contract) to Hutchinson Decl. [Doc. # 520-23] §3.1.) This contract is of limited value, as the consulting services described in that contract differ from the litigation services provided here. (*See id.* § 1.1 (describing services such as "[d]rafting, reviewing or preparing comments to state or federal legislation or administrative rulemaking as requested" and "advising the TREASURER or General Counsel concerning administrative law matters").) Additionally, this contract provides no information as to the payment of the hourly rates set by O&G and FJWW, and so cannot be used to justify the high rates requested by those firms.

Moreover, the Court has some reservations about awarding the out-of-district fees requested by Class Counsel, when this nationwide class action could have been filed in Class

Counsel's own district. The Court fears that it would incentivize venue-shopping to apply the favorable laws of one district, while applying the more favorable rates of another. *See Statek Corp. v. Coudert Bros. LLP*, No. 3:07-CV-00456 (SRU), 2018 WL 834227, at *6 (D. Conn. Feb. 12, 2018) (explaining that forum- and venue-shopping should be discouraged when making choices of law).

Because of these concerns and in the absence of evidence justifying hourly rates as high as $975, the Court will adopt the highest out-of-district rates that it has previously applied. In *United States ex rel. Rai v. KS2 TX*, this Court approved hourly rates of $725 for highly experienced partners, and, in the process, rejected requests for rates as high $975 per hour. 2019 WL 1397290, at *4. The Court will do the same here and approve out-of-district hourly rates as high as $725 for the partners who litigated this action, as there is otherwise "no basis provided for approving fees above $725." *Id.* The hourly rate of all other attorneys—counsel, associates, staff attorneys, etc.— shall be capped at $450, which is within the range of rates generally approved for partners in this district. Staff, such as paralegals, shall be capped at an hourly rate of $195, which is higher than the prevailing rate for such positions in this district. *See KX Tech LLC v. Dilmen LLC*, No. 3:16CV00745(CSH), 2017 WL 2798248, at *10 (D. Conn. July 13, 2017) (concluding that an hourly rate of $150 is "commensurate with the hourly rates typically awarded for the work of paralegals in this District"); *see also, e.g., A. v. Hartford Bd. of Educ.*, 2017 WL 187138, at *7 (D. Conn. Jan. 17, 2017) (awarding $140 per hour for paralegal work); *Bank of N.Y. Mellon v. Bell*, 2015 WL 778668, at *2 (D. Conn. Feb. 24, 2015) (awarding $150 per hour for paralegal work).

Accordingly, after recalculating the billers' hourly rates and prior to making any adjustments to the billers' respective hours, the Court reduces O&G's proposed fee from $5,394,556 down to $4,552,811.10. FJWW's proposed fee is similarly adjusted from $3,071,477 down to $2,617,627. Likewise, LCHB's proposed fee is reduced from $1,898,926.50 to

17

$1,620,383.50. No hourly rate adjustments are made to SDS's proposed fee of $4,229.50. In total, the Court's hourly rate revision reduces Class Counsel's proposed lodestar of $10,369,189, as stated in the Lodestar Summary Report, to $8,795,051.10.

### 3. Reasonableness of Hours

Class Counsel seek remuneration for 20,607 hours billed on this matter.

Class Counsel assert that these hours "reflect their efficient prosecution of the case," and that their prior expertise allowed them "to focus their discovery efforts" and "to identify a narrow class." (Pls.' Mot. Att'ys' Fees and Costs at 29.) They contend that they "took appropriate steps to avoid duplication of effort, including use of conference calls and email to communicate and form strategy, sharing databases and discovery technology, and using in-person meetings only when necessary," and that their "[t]ime spent on such internal conferences should be compensable" because of the complexity of this "large-scale litigation." (*Id.*) Class Counsel also assert that they "assigned work to the timekeeper with the lowest billing rate who could capably do the job," reflecting an "efficient allocation of work that kept fees at the lowest level consistent with sound billing judgment." (*Id.* at 30-31.) Acknowledging that they "did not win every battle in this case," Class Counsel note that "they won the trial and most of the battles that preceded it," and that "all of the hours that they have spent on this case were reasonable and necessarily incurred as part of Class Counsel's zealous and vigorous representation of the Class." (*Id.* at 31.) Class Counsel also describe Defendant as "vigorously" engaging in a "[s]corched-[e]arth [d]efense," which "required Class Counsel to work harder, increasing costs and time expended, to reach a successful outcome for the class members." (*Id.* at 2.) As examples of "CSC's aggressive defense," Class Counsel assert that "CSC unsuccessfully moved to transfer venue to its home state of Virginia," that "CSC objected to producing job classification data" and "forced Plaintiffs to seek Court intervention and take

additional discovery," and that "CSC[] refus[ed] to identify relevant corporate witnesses" thereby "dr[iving] a significant amount of the 4,621 hours that Class Counsel recovered during the principal period of class certification discovery." (*Id.* at 3-4.) Class Counsel also assert that Defendant sought "the maximum amount of discovery possible from opt-in Plaintiffs," requiring Class Counsel to spend 1,710 hours on thirty-seven depositions, only three of which were used at trial. (*Id.* at 5-6.) Class Counsel further assert Defendant's "tactics" of "threaten[ing] to introduce 700 exhibits and 69 witnesses" "forced" Class Counsel to spend 3,433 hours "prepar[ing] for a trial defense that CSC never mounted." (Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 6.) Class Counsel also note that Defendant "brought five attorneys (from California, New York, and Connecticut) to the courtroom every day" of trial, "plus two in-house attorneys, demonstrating that Class Counsel's staffing was proportional" to Defendant's own trial staffing. (*Id.*)

Defendant generally responds that the number of hours billed in this case is "excessive," elaborating that the hours billed are in part the result of overstaffing and duplication of work. (Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 16-17.) Defendant asserts that "the 20,607 hours that Class Counsel claim in this case is in stark contrast to another FLSA case that went to trial where Outten and Golden requested fees, but where the Court deemed only 10,618.7 hours as reasonable." (*Id.* at 17.) Defendant contends that the trial here was overstaffed with "7 attorneys and 4 paralegals billing for attending trial," and that one of Plaintiffs' lead attorneys "billed an inordinate number of hours (180 hours, amounting to $162,000 in fees) at trial alone," "despite handling only two witnesses." (*Id.*) Defendant also asserts that the "use of four firms here is excessive, unreasonable, and has led to overstaffing, [with] multiple attorneys billing for the same task, excessive interoffice conferencing . . . , and duplication of effort." (*Id.* at 18.) Citing the Schratz

19

Declaration, Defendant contends that "'a reasonable amount of billing for conferencing should not exceed 4% of fees'" and that "[h]ere, approximately 6,397 single-task (i.e. non-block billed) entries [were] . . . for interoffice/intraoffice conferencing, amounting to 28.71% of all total 22,278 entries in this case." (*Id.* at 19 (quoting Schratz Decl. ¶ 67).) Accordingly, Defendant requests a "reduction of 20%" to the lodestar "for overstaffing, including, but not limited to intraoffice conferencing." (*Id.* at 20.)

Defendant also makes numerous requests for specific reductions. Defendant asserts that "$535,088 in fee entries [were] identified as excessively vague by Attorney Schratz," and so asks the Court to make a fifty percent reduction to these entries, "thereby further reducing Class Counsel's fees by $267,544.00 due to vagueness." (*Id.* at 21.) Defendant elaborates that "[m]any of Plaintiff's attorneys' billing entries are vague, block billed, or both, which makes it impossible for CSC or this Court to assess (1) whether a particular task is compensable, and (2) whether the time spent completing such a task is reasonable or excessive." (*Id.*) As examples, Defendant identifies billing entries "such as 'check in,' 'damages,' 'draft letter,' 'discovery,' [and] 'review case email.'" (*Id.* at 22 (citing Schratz Decl. ¶ 81).) Additionally, Defendant seeks a $146,295 reduction to the lodestar for "clerical and secretarial work that is unrecoverable overhead," identifying billing entry examples "such as 'scheduling,' 'filing,' [']finalizing and filing,' and 'printing.'" (*Id.* at 22 (citing Schratz Decl. ¶ 84).) Defendant also seeks reductions to account for "(1) Class Counsel's excessive travel time resulting from their forum shopping";[8] "(2) fees incurred soliciting potential plaintiffs," which

---

[8] Defendant asserts that Class Counsel spent "828.8 hours" on travel time, amounting to "$373,790.50 in fees." (Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 29.) However, according to their own documentation, Class Counsel logged 657 hours in travel times, translating into $390,180 in fees. (Lodestar by Seniority of Timekeeper Table at 1.) Although these figures are close, the Court will rely on Class Counsel's calculation when determining its deduction.

amount to $79,979 for 195.9 hours billed; "(3) fees related to issues on which Plaintiffs lost (conditional certification, Senior Professionals, North Carolina subclass), withdrew (Breshears Report), or did not pursue (ERISA, Missouri, Maine and Maryland subclasses)," which total $295,778 for 858.1 hours billed; and "(4) all fees billed for preparing their fee petition and related motions," which amount to $113,450 for 358.2 hours billed. (*Id.* at 29; *see generally id.* at 30-36.) In total, Defendant's requests for specific reductions amount to $1,276,836.

Having reviewed the voluminous time entries presented here, the Court agrees with Defendant that this case was overstaffed and that a number of the hours billed by Class Counsel were not "usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). Although it is true that "[i]n complex litigation[,] multiple attorneys will often be required to work together," *Fendi Adele S.R.L. v. Ashley Reed Trading, Inc.*, No. 06 Civ. 243, 2011 WL 13257268, at *6 (S.D.N.Y. May 16, 2011), the involvement of four firms and forty-seven attorneys on this matter inevitably resulted in an excess of time spent on communication, making up eleven percent of Class Counsel's total hours expended in this litigation, (*see* Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 7). Even if some of the duplication and "inefficiency was not entirely the fault of Plaintiffs' counsel," they bear some responsibility for it, making an "across the board reduction" appropriate. *Essaid v. HD Hotel, LLC*, No. 312CV627MPSWIG, 2015 WL 13624404, at *4 (D. Conn. Mar. 13, 2015), *report and recommendation adopted sub nom. Essaid v. Stamford Marriot Hotel & Spa*, No. 3:12-CV-627 (MPS), 2015 WL 13625848 (D. Conn. Apr. 9, 2015).

The Court also agrees with Defendant that some of Class Counsel's billing entries are too vague to permit a determination of the reasonableness of time spent. *See Mr. & Mrs. B. v. Weston Bd. of Educ.*, 34 F. Supp. 2d 777, 781 (D. Conn. 1999) ("Entries stating such vague references as

'review of file,' 'review of correspondence,' 'research,' 'conference with client,' and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter."). For example, variations on the entry "doc review" appear 201 times in Class Counsel's time records, while variations of the entry "trial prep" appear 276 times. (*See* Ex. Q (Class Counsel Time Records) to Sagafi Decl. [Doc. # 522].) More than 2,000 entries describe e-mail work, but only a fraction specify the subject or the recipient of the correspondence. (*Id.*) Additionally, the Court agrees with Defendant that some of Class Counsel's entries concern non-legal work like printing and filing, and that this "non-legal work" should "command a lesser rate." *Johnson*, 488 F.2d at 717.

A reduction only somewhat in excess of the fifty percent reduction of travel time, to which Class Counsel have already agreed, is appropriate here. (Pls.' Mot. Att'ys' Fees and Costs at 13 ("[C]onsistent with Second Circuit practice, Class Counsel have reduced all travel time by 50%." (citing *Wong v. Yoo*, No. 04 Civ. 4569, 2010 WL 4137532, at *2 (E.D.N.Y. Oct. 19, 2010), *aff'd sub nom. Wong v. Mangone*, 450 F. App'x 27 (2d Cir. 2011)))).) Although it is true that "hours spent traveling by out-of-district attorneys into the district are not hours 'reasonably expended' where competent counsel is available within the district,'" *E. Lyme Bd. of Educ.*, 2019 WL 1397455, at *11, Class Counsel have established that it was reasonable for Plaintiffs to hire out-of-district attorneys in this case. Moreover, Class Counsel have represented that "53% (428.4 of 812.8 hours) of travel was for depositions noticed by CSC," and that "[a]nother 12% (99.8 hours) was for 30(b)(6) depositions or settlement talks at locations CSC insisted on for its convenience." (Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 6 n.8.) Nonetheless, Class Counsel's request for $390,180 to compensate for travel time is notably sizeable and is accordingly factored into the Court's determination of the lodestar.

The Court will also make a slight discount to the lodestar for the roughly 800 hours spent on issues that Class Counsel lost or ultimately did not fully pursue, such as conditional certification and the certification of North Carolina and Missouri subclasses. *See Hensley*, 461 U.S. at 435 ("[W]ork on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." (internal quotation marks omitted)).[9]

---

[9] The Court does not find merit in Defendant's remaining objections regarding time spent on asserted solicitation and time spent on the instant fee petition.

Having reviewed Class Counsel's billing records, the Court determines that Class Counsel's time spent on client intake and outreach, which Defendant characterizes as "solicitation," is compensable. (*See* Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 31.) "[I]n a complex class action such as this one, it is reasonable to conclude that the identification of class representatives is a strategic decision that contributed to the success of the litigation and that necessary legal research into the viability of claims would take place before potential class representatives were identified." *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, No. C 09-3329 CW, 2016 WL 1255454, at *9 (N.D. Cal. Mar. 31, 2016), *aff'd*, 739 F. App'x 890 (9th Cir. 2018); *see also In re Home Depot Inc.*, 931 F.3d 1065, 1088 (11th Cir. 2019) ("[I]n a class action . . . , it is not true that a case does not exist until the class names a representative. . . . [I]t would be seriously misguided to say that Class Counsel cannot be paid for time spent vetting class representatives. Selecting proper class representatives is an important part of what class counsel does."). The entries that Defendant specifically challenges, which describe tasks such as making "[e]dits to outreach letter" and sending "[e]mails re plaintiff search" and "to potential class representatives," do not appear to be overt solicitations, nor do any of the other entries presented in Defendant's 19-page compendium of asserted solicitation activity billed by Class Counsel. (*See* Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 31; *see also* Ex. 8 (Entries Challenged on Solicitation Grounds) to Farmer Decl. [Doc. # 544].)

Additionally, Defendant's challenge to the inclusion of time spent on Class Counsel's fee petition is contrary to law. Defendant cites *E. Point Sys., Inc. v. Steven Maxim, S2K, Inc.*, No. 3:13-CV-00215-VAB, 2015 WL 2381079, at *1 (D. Conn. May 18, 2015), for the proposition that "[t]ime entries related to the preparation of fee petitions are not recoverable," (*see* Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 35), but that order was subsequently amended because the court had "overlooked controlling decisions providing that a party is entitled to compensation 'for time spent reasonably in preparing and defending' an application for fees," 2016 WL 1169553, at *1 (D. Conn. Mar. 22, 2016) (quoting *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir.1999)).

23

In light of the aforementioned deficiencies, the Court orders an across-the-board reduction of twelve percent to the fees paid to O&G, FJWW, and LCHB, which is five percent greater than the seven percent reduction suggested by Class Counsel.[10] (*See* Pls.' Mot. Att'ys' Fees and Costs at 14-15 ("Should the Court deem . . . an across-the-board cut more appropriate than auditing 21,000+ time entries . . . the Court might choose a cut of 7%[.]") The Court believes that a twelve-percent reduction takes into account the overstaffing and over-billing that occurred here, while still recognizing Defendant's role in this case's overlitigation. Accordingly, the Court reduces O&G's proposed fee from $4,552,811.10 to $4,006,473.77. FJWW's proposed fee is reduced from $2,617,627 to $2,303,511.76. Finally, LCHB's proposed fee is adjusted from $1,620,383.50 to $1,425,937.48. In total, the Court determines that the lodestar in this case amounts to $7,740,152.51.

### 4. Fee Adjustments

Both parties ask that the lodestar be adjusted, with Class Counsel asserting that the lodestar is too low and with Defendant taking the position that the lodestar is too high.

Lodestar adjustments are permitted under both California and Connecticut law. Under California law, the "lodestar figure may . . . be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "California courts consider the following '*Ketchum* factors' when determining if a lodestar enhancement is warranted: (1) the novelty and difficulty of the questions involved; (2) the skill counsel displayed in litigating the issues; (3) the extent to which

---

[10] The Court has reviewed the billing entries provided by local counsel SDS and did not identify any of the aforementioned shortcomings in these records. SDS's compensable fees thus remain at $4,229.50.

the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award." *Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018). "Enhancements, or multipliers, are 'intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees.'" *Id.* (quoting *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001)). Connecticut law is similar, permitting that "courts may . . . adjust th[e] lodestar calculation" up or down using the "twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Ernst v. Deere & Co.*, 92 Conn. App. 572, 576 (2005).

Under federal law, a court also has the discretion "to adjust the [lodestar] amount upward or downward based on the case-specific factors." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10CV60 JBA, 2012 WL 4092515, at *1 (D. Conn. Sept. 17, 2012). The Supreme Court has identified a "few such circumstances" where an upward adjustment of the lodestar is permissible, but cautioned "that these circumstances are indeed 'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). "First, an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Id.* at 554-55. "Second, an enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Id.* at 555. "Third, there may be extraordinary circumstances in which an attorney's performance involves exceptional delay in the

payment of fees." *Id.* at 556. Critically, an "enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Id.* at 553.

The Court will consider the two adjustment requests in turn.

### a.   Class Counsel's Request for an Upward Adjustment

Class Counsel "request that the Court apply a 1.5x multiplier to the portion of their fees attributable to work performed for the benefit" of the 440 class members that "had California or Connecticut claims." (Pls.' Mot. Att'ys' Fees and Costs at 32.) Class Counsel also "request a 10% per-year enhancement based on federal law" for the remaining 471 class members, (*id.*), or, in the alternative, to the full amount of the lodestar, in the event "the Court declines to award a multiplier under state law . . . to treat work done on state-law claims on par with federal claims," (*id.* at 32 n.11).

Class Counsel assert that, "[a]pplying the *Ketchum* or *Johnson* factors, a 1.5x enhancement is reasonable here on the portion" of the lodestar "that is attributable to work done for the California and Connecticut class," because "Plaintiffs achieved an exceptional result" and "benefitted from Class Counsel's unique combination of class litigation, trial, industry, and defendant-specific expertise." (Pls.' Mot. Att'ys' Fees and Costs at 33.) Class Counsel contend that an enhancement is warranted because they "accepted significant risk by representing these workers on a contingency basis, which precluded other endeavors and created significant risk of non-payment." (*Id.*)

Class Counsel also assert that an upward fee enhancement of ten percent is appropriate under federal law because "this case required 'an extraordinary outlay of expenses' over the course of litigation that was 'exceptionally protracted,'" expending $584,560.54 "in out-of-pocket expenses to prosecute this case," which is "far more than typically spent in comparable cases." (*Id.*

at 34 (quoting *Perdue*, 559 U.S. at 555).) Class Counsel contend that an enhancement is also merited because "this case 'involves exceptional delay in the payment of fees'"—a delay that Class Counsel attribute to Defendant's "aggressive[]" litigation of the case, as well as Defendant's efforts to "resist[] discovery" and its "dilatory conduct during the damages phase." (*Id.* at 34-35 (quoting *Perdue*, 559 U.S. at 556).) Specifically, Class Counsel assert that, "[t]hroughout the Special Master process, CSC resisted producing usable data," and that the "entirety of the Special Master process could have been avoided if CSC had reasonably engaged with Plaintiffs when they first identified the data errors." (*Id.* at 35.) More generally, Class Counsel also argue that public policy favors a fee enhancement in this case, and that "FLSA's remedial purpose would be severely undermined" if Class Counsel were not "compensated fairly . . . for their risk-taking, tenacity, and success." (Pls.' Mot. Att'ys' Fees and Costs at 37.) Class Counsel make an alternative request for "post-judgment interest on fees and costs pursuant to 28 U.S.C. § 1961," (*id.*), which allows interest "on any money judgment in a civil case recovered in a district court," 28 U.S.C. § 1961.

Defendant responds that "extraordinary request for a $3.5 million dollar 'bonus' on their already bloated lodestar should be denied," (Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 23), because the factors that Class Counsel identify for consideration—such as the complexity and novelty of the case— "have already been subsumed into the lodestar," so "considering these factors for a lodestar-enhancement would create a windfall," (*id.* at 24-25). Defendant also asserts that Class Counsel have not carried their "burden of producing specific evidence to demonstrate that a lodestar enhancement is necessary to provide fair and reasonable compensation that is adequate to attract competent counsel." (*Id.* at 24.) Additionally, Defendant notes that fee enhancements are discretionary under California and Connecticut law, and that courts in Connecticut have ordinarily "used the *Johnson* factors to decrease the lodestar figure." (*Id.* at 28.) Defendant also

asserts that Class Counsel is not entitled to a fee enhancement under federal law because they have not satisfied the factors enumerated in *Perdue*. (*See id.* at 25-26.) Defendant contends that there has been "no exceptional delay here," and that "Class Counsel's argument that they incurred an extraordinary outlay of expenses is circular" and "lacks merit" as "Class Counsel has grossly inflated their fees and over-lawyered this case." (*Id.* at 27.) Defendant has not offered any position on Class Counsel's alternative request for post-judgment interest on fees and costs pursuant to 28 U.S.C. § 1961.

The Court will first consider the propriety of fee enhancement under California law. As previously stated, fee enhancements are "intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees." *Ketchum*, 24 Cal. 4th at 1138. Here, Class Counsel is already being awarded hourly rates that are at the upper limit for out-of-district attorneys, with Class Counsel's associates being compensated at a rate that is with the range paid to in-district partners. Thus, even factoring in the premium for the risk that Class Counsel took in litigating this action, no upward adjustment is needed in this case to "fix the fee at the fair market value for the legal services provided." *PLCM Grp.*, 22 Cal. 4th at 1095.

Nor is an upward adjustment merited under Connecticut law. In its efforts to determine a lodestar that constitutes a reasonable attorneys' fee in this case, the Court has already considered the *Johnson* factors and accounted for the quality of representation, the risk of non-payment, and the successful result achieved. Accordingly, "[n]o adjustment is required" because each of these "factors [is] subsumed within the lodestar." *Freeman v. A Better Way Wholesale Autos, Inc.*, No. HHDCV136045900S, 2018 WL 2306605, at *9 (Conn. Super. Ct. May 3, 2018), *aff'd*, 213 A.3d 542 (Conn. App. Ct. 2019).

The Court also concludes that a fee enhancement is unwarranted under federal law. "An attorney who agrees to represent the named plaintiff in a class action governed by a fee shifting statute understands that reimbursement is not likely to be received until the successful resolution of the case." *Dungee v. Davison Design & Dev., Inc.*, No. CV 10-325-GMS, 2018 WL 1110249, at *5 (D. Del. Mar. 1, 2018) (citing *Perdue*, 559 U.S. at 555). "Thus, for an enhancement to compensate for expenses, a plaintiff must establish specific facts on the record to show that its case was 'unusual' or outside the normal range of delay expected by attorneys" who litigate FLSA actions. *Id.* Although this class action took multiple years, Class Counsel have not carried their burden of showing that their delay in payment was "unusual" for this type of complex litigation. Indeed, a similar FLSA class action litigated by Class Counsel also took six years from the filing of the complaint to the award of attorneys' fees, and yet they "d[id] not ask for a specific increase in their hourly rates to reflect the contingency risk" or delay in payment in that case. *Garcia v. Tyson Foods, Inc.*, No. 06-2198-JTM, 2012 WL 5985561, at *4 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014). Class Counsel's attempt to seek an enhancement due to their outlay of $584,560.54 in out-of-pocket expenses is also unavailing, as the Court has already factored the litigation risk into its calculation of the lodestar. Accordingly, the Court is not persuaded that it should depart from the "'strong presumption' that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554.

The Court does, however, agree with Class Counsel that post-judgment interest should be permitted in this case, pursuant to 28 U.S.C. § 1961. An "award of attorney's fees is a 'judgment' under the terms of th[at] statute." *Hubbard v. Total Commc'ns, Inc.*, 623 F. Supp. 2d 270, 272 (D. Conn. 2009). Likewise, litigation costs are also covered by § 1961. *See, e.g., Seaport Glob. Holdings LLC. v. Petaquilla Minerals Ltd.*, No. 19 CIV. 9347 (ER), 2020 WL 2747729, at *4 (S.D.N.Y. May 27, 2020) (ordering post-judgment interest on both attorneys' fees and costs); *see also Wheeler v.*

*John Deere Co.*, 986 F.2d 413, 415 (10th Cir. 1993) (explaining that all circuits to consider the issue "agree that § 1961 mandates interest on cost awards"). "Determining whether § 1961 postjudgment interest should accrue from the date of judgment establishing the right to an award of attorneys' fees and costs or from the date of the judgment 'establishing its quantum' has resulted in a split amongst the Circuits that have addressed it and remains an open issue for both the Supreme Court and the Second Circuit." *Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 196 (E.D.N.Y) (internal quotation marks omitted). Under the majority approach, which is followed by the Fifth, Sixth, Eighth, Ninth, Eleventh, and Federal Circuits and which this Court has previously adopted, "interest should accrue from the date the party becomes entitled to the award even if that award is not quantified until a later point." *Albahary v. City & Town of Bristol, Conn.*, 96 F. Supp. 2d 121, 123 (D. Conn. 2000); *see also Barrella*, 43 F. Supp. 3d at 197 (describing circuit split); *Hubbard*, 623 F. Supp. 2d at 272 (describing the majority approach as the "dominant standard within the Second Circuit"). The Court remains persuaded that the majority approach is the correct one.

Accordingly, the Court concludes that Class Counsel is entitled to post-judgment interest on attorneys' fees and costs calculated from January 5, 2018, the date on which Judgment entered against Defendant as to liability, (*see* [Doc. # 444]), until payment is received.[11] Post-judgment interest shall accrue on the entirety of the fee award, as California and Connecticut law also allow post-judgment interest well in excess of the U.S. Treasury Bill rate. *See* Cal. Civ. Proc. Code § 685.010 ("Interest accrues at the rate of 10 percent per annum on the principal amount of a money

---

[11] In allowing post-judgment interest, the Court recognizes "that the Defendant judgment debtor bears no responsibility for the delay in quantifying the amount of attorneys fees awarded, other than vigorously opposing Plaintiffs' petition, in the interim, however Defendant suffered no actual prejudice since it had use of this money and is only accruing an interest liability at the U.S. Treasury Bill rate." *Albahary*, 96 F. Supp. 2d at 124.

judgment remaining unsatisfied."); Conn. Gen. Stat. § 37-3a(a) ("[I]nterest at the rate of ten per

cent a year, and no more, may be recovered and allowed in civil actions[.]").

### b. Defendant's Request for a Downward Adjustment

In its opposition, Defendant asserts that the lodestar, as originally calculated by Class

Counsel, amounts to an "over-inflated starting bid," (Def.'s Opp. to Pls.' Mot. Att'ys' Fees and

Costs at 2), and so asks the Court to impose an additional ten percent reduction to the lodestar to

account for certain billing deficiencies and "failure to properly manage this litigation." (*Id.* at 29.)

Defendant asserts that Class Counsel's "excessively high rates, . . . excessive overstaffing . .

., vague entries," and billing of "purely clerical tasks"—all of which are considerations the Court

has already factored into its lodestar—demonstrate "a lack of billing judgment that warrants an

additional across-the-board reduction of 10% to account for remaining deficiencies[ and Class

Counsel's] lack of credibility in billing given these deficiencies." (*Id.*)

Class Counsel respond that this proposed reduction amount to an "arbitrary cut" that

"simply double-counts . . . other reductions." (Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees

and Costs at 8.)

The Court agrees with Class Counsel that further reduction of the lodestar is inappropriate.

The Court has already made discounts to the lodestar to account for Class Counsel's vague and

disallowed billing entries and for their overstaffing of this case. The Court sees no reason to further

penalize Class Counsel for these deficiencies. Thus, the Court rejects Defendant's request for an

additional ten-percent across-the-board reduction to the lodestar.

### B. Costs

Class Counsel also seek an award of out-of-pocket costs totaling $584,560.54, (*see* Pls.'

Notice of Updated Costs and Errata at 3), pursuant to various fee-shifting statutes, (*see* Pls.' Mot.

Att'ys' Fees and Costs at 1 (citing 29 U.S.C. § 216(b); Conn. Gen. Stat. §§ 31-68 and 31-72; and Cal. Lab. Code § 218.5)).

Class Counsel describe the costs incurred as "attributable to telephonic conferences, copies, travel, and expenses associated with the preparation, research, and filing of the papers in this matter." (Sagafi Decl. ¶ 75.) As to their costs for expert consultants, Class Counsel note that courts have "allowed costs for consultants like the accountants at Hemming Morse, LLP that Class Counsel hired to analyze CSC's flawed data, identify errors, and compute damages," as "retaining consultants to analyze data is indispensable" in "a complex case like this." (Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 10.) Class Counsel assert that such costs "are reasonable and of the type normally charged to fee-paying clients." (Pls.' Mot. Att'ys' Fees and Costs at 38.)

Defendant responds that all of these "costs should be rejected because Class Counsel failed to provide any receipts, invoices, or documentation to validate such charges." (Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 36.) Defendant also asserts that "[e]ven if Class Counsel had provided receipts and documentation supporting such enormous charges," the claimed costs" consist "almost entirely of items for which the Local Rules do not allow reimbursement." (*Id.* (citing D. Conn. L. Civ. R. 54(c)7).) Specifically, Defendant seeks the exclusion of the following costs, for a total reduction of $406,050.60:

- Computerized Research: $48,155.18
- Consultant Costs and Fees (including withdrawn expert, David Breshears): $165,137.54
- Telephone Charges: $10,406.72
- Postage: $371.38
- FedEx/UPS: $5,632.49
- Travel: $115,681.53
- Meals: $9,817.67
- Website Design/Hosting: $1,166.53
- Media Costs: $2,205.00

- Excessive Printing/Copying: $37,070.17

(*Id.* at 37 (footnotes omitted).)[12] As to the proposed exclusion of consultant costs and fees, Defendant elaborates that it should "not be responsible" for these expenditures because Mr. Breshears was ultimately withdrawn as an expert. (*Id.*) Defendant additionally argues that Class Counsel's travel expenses should not be permitted because they "chose to file this matter in Connecticut making frequent cross country travel necessary." (*Id.* at 37 n.57.) Defendant also describes Class Counsel's paper costs as "patently excessive," because, assuming a cost of ten cents per page, each timekeeper averaged more than four thousand pages printed or copied. (*Id.* at 37 n.59.) Finally, relying on the Schratz Declaration, Defendant "question[s] why '[$10,406.39 in] phone charges were incurred when phone plans typically include unlimited nationwide calling and free conferencing services are available through companies such as AT&T." (*Id.* at 37 n.60 (quoting Schratz Decl. ¶ 95).)

To begin, "Defendant is mistaken about the authority under which the Plaintiff seeks costs." *Pappas v. Watson Wyatt & Co.*, No. 3:04CV304EBB, 2008 WL 45385, at *9 (D. Conn. Jan. 2, 2008). Class Counsel do "not seek costs under Fed. R. Civ. P. 54, codified at 28 U.S.C. § 1920, or the local rule based on that statute," but rather seek costs pursuant to the FLSA and California and Connecticut fee-shifting statutes, which "allow plaintiffs to recover costs of litigation that are not otherwise recoverable under § 1920." *Id.*

Additionally, Defendant is incorrect that the Court must deny an award of costs in this case because Class Counsel have not submitted receipts for their expenses. It is true that "the moving

---

[12] Defendant has made no objection to Class Counsel's expenses for court filing fees, which the Court agrees "are compensable" in full. *Estrada v. Giovanni's Italian Pizzeria, Inc.*, No. 16CIV6162PGGGWG, 2020 WL 3166964, at *9 (S.D.N.Y. June 15, 2020).

party must provide some explanation as to why the costs were necessary and some supporting documentation to show that these costs were incurred in connection with the relevant claims" in order for a court to determine whether costs were reasonably expended. *Doe v. Darien Bd. of Educ.*, No. 3:11CV1581 (JBA), 2015 WL 8770003, at *11 (D. Conn. Dec. 14, 2015) (internal quotation marks and alterations omitted). However, receipts are not specifically required. A court may award costs to prevailing parties on the basis of their affidavits, as a "sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is . . . sufficient" to substantiate such expenses. *Guo v. Tommy's Sushi, Inc.*, No. 14 CIV. 3964 (PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); *see also Thor 725 8th Ave. LLC v. Goonetilleke*, No. 14 CIV. 4968 (PAE), 2015 WL 8784211, at *16 (S.D.N.Y. Dec. 15, 2015) (noting that "statement of costs incurred, made under penalty of perjury in declaration, constitutes adequate documentation"). Here, Class Counsel has provided a 545-page spreadsheet itemizing the various costs incurred over the course of litigation, and lead counsel has attested to their veracity in a declaration. (*See* Ex. P (Cost Detail) to Sagafi Decl. [Doc. # 520-17]; *see also* Sagafi Decl. ¶ 75.) Although some of the individual entries may be too vague to illuminate the purpose of the expense, the Court may address these deficiencies through an across-the-board reduction rather than denying Class Counsel's request for costs in its entirety. *See Fox*, 563 U.S. at 838 ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. . . [Thus,] trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating [fee awards].").[13]

---

[13] On reply, Class Counsel stated that "[i]f the Court requires additional documentation of Class Counsel's costs (including receipts and invoices), Class Counsel would be happy to provide them." (Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 10 n.15.) The Court declines Class Counsel's invitation, as Class Counsel has already had opportunity to submit invoices and receipts in the first instance or—after Defendant put them on notice as to this deficiency—to

First, the Court will address Defendant's specific objection to Class Counsel's computerized research expenses, which amount to $48,155.18. The Second Circuit has explained that "use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 369 F.3d 91, 98 (2d Cir. 2004); *see also In re Ridgemour Meyer Properties, LLC*, No. 08-13153 (SMB), 2018 WL 2305765, at *19 (Bankr. S.D.N.Y. May 18, 2018) ("[C]ourts in this Circuit have routinely allowed an applicant under a fee-shifting statute to recover the charges for computerized legal research."), *aff'd*, 599 B.R. 215 (S.D.N.Y. 2019), *aff'd*, 791 F. App'x 279 (2d Cir. 2020). Defendant has offered no objection to Class Counsel's computerized research expenditures beyond its general objection that Class Counsel has not provided the invoices for these expenditures. Accordingly the Court will award these costs for computerized research in full.

Defendant next objects to Class Counsel's consultant costs and makes specific reference to the inclusion of fees paid to Mr. Breshears, whose expert report was withdrawn. Courts in this circuit have granted awards for consulting fees. *See, e.g.*, *Star Ins. Co. v. A&J Constr. of New York, Inc.*, No. 15CV8798CSJCM, 2018 WL 6177857, at *9 (S.D.N.Y. Nov. 26, 2018); *Corp. v. Rowe Int'l Corp.*, No. 07 CIV. 11450, 2014 WL 12798024, at *14 (S.D.N.Y. Apr. 3, 2014). This Court, too, recognizes the value that consultants may provide in complex litigation, and understands that the

---

provide them as an exhibit to their Reply Brief. In light of Class Counsel's experience and commensurate familiarity with fee petitions, the Court sees no reason to further protract this litigation by offering them a third opportunity to demonstrate the reasonableness of their expenditures.

"work on the Breshears Report" in this action "helped Class Counsel analyze CSC's flawed data to sort out the errors and omissions in CSC's data productions, which CSC was compelled to fix, to the benefit of the classes." (Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 3.) However, because the Breshears Report was ultimately withdrawn, the Court will use its discretion to reduce Class Counsel's claimed consultant fees by fifty percent, to $82,568.77.

Defendant also objects to Class Counsel's $10,406.72 in telephone charges. Although their itemized bill of costs provides the telephone numbers called, the duration of the call, and the amount charged, Class Counsel have not provided any detail as to the *purpose* of these calls or the individuals involved. (*See, e.g.*, Cost Detail at 121 ("Date: 10/12/15. Description: Telephone - 1(773)372-2867 Ext:2225 CHICAGO IL, USA Dur:1398 sec Time:10:24:00AM, Amount: $28.56, Categories: Telephone Charges").) Thus the Court is unable to ascertain the reasonableness of these telephone expenses and will deduct $10,406.72 from its award of costs.

Class Counsel's entries for website and media costs suffer from the same problem of vagueness. For example, entries for website hosting identify the service provider, but do not offer any other description as to the website hosted or its purpose. (*See, e.g., id.* at 289 (Date: 5/21/2014 Description: 5/6 - VCO - GoDaddy.com Amount: $42.25 Categories: Website Design/Hosting Cost).) As the Court cannot determine the reasonableness of these expenditures, it will deduct $3,371.53 from Class Counsel's fee award.

Class Counsel's entries for postage, FedEx and UPS services, and printing costs also lack specificity. Although the Court understands that these many expenses were related to standard litigation activities such as the production and delivery of courtesy copies, (*See* Pls.' Reply to Def.'s Opp. to Pls.' Mot. Att'ys' Fees and Costs at 9 n.13 (explaining that copying costs "were reasonably incurred and necessary because CSC designated nearly all the documents it produced

'confidential,' limiting Class Counsel's ability to use an outside vendor to prepare courtesy copies")), the Court finds it appropriate halve these costs for lack of specificity, reducing Class Counsel's fee award by $21,537.02.

Class Counsel's travel and meal costs offer varying levels of specificity, with only a fraction of the entries identifying the destination and purpose of the trip. (*Compare* Cost Detail at 1 ("Date: 11/3/2015 Description: Airfare to and from Denver, CO for depositions. Amount: $410.91 Categories: Travel") *to id.* at 272 ("Date: 12/15/17, Description: Travel VENDOR: Miscellaneous Reimbursement: Meals, Amount: $196.77, Categories: Travel").) To account for this general vagueness and in recognition of the Court's earlier modest deduction for travel, the Court will reduce these fees by seventy-five percent, to $31,374.80.

In total, the Court will deduct $212,008.44 from Class Counsel's out-of-pocket expenditures of $584,560.54. Accordingly, Class Counsel is entitled to $372,552.10 in litigation costs.

## C.  Service Awards

Class Representatives Timothy Colby, Joseph Strauch, Charles Turner, and Vernon Carre each request service awards[14] of $10,000, for a total of $40,000. They argue that various factors supporting such awards—namely, "(1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights"—weigh in their favor. (Pls.' Mot. Service Awards at 2 (quoting *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-CV-00738- (RNC), 2014

---

[14] Such awards are also commonly referred to as "incentive awards." *See* 5 NEWBERG ON CLASS ACTIONS § 17:1 (5th ed.) "("Most courts call that payment an 'incentive award,' though some courts label it a 'service award' or 'case contribution award.'").

WL 3778211, at *4 (D. Conn. July 31, 2014)).) They contend that they experienced or risked retaliation as a result of the litigation, and that they "expended significant time and effort to prosecute the class claims and personally contributed to the trial verdict by traveling throughout the country to testify and advise Class Counsel at trial for several days in New Haven." (*Id.* at 2-3.) Additionally, they contend that service awards in the amount of $10,000 are "modest and reasonable compensation for Plaintiffs' time and effort in recovering an $18.75 million judgment that would not have been possible without them," as such awards come out to less than "$44 per class member." (*Id.* at 4.) Class Representatives ask that the service awards "be paid from the amount that would otherwise be awarded to Class Counsel as fees" or, in the alternative, be "paid out of the class recovery." (*Id.* at 5-6.)

Defendant opposes the motion, but not on the merits. Instead, Defendant argues that "[b]ecause this case proceeded to trial, there is neither a settlement agreement nor a common fund from which Plaintiffs' proposed $40,000 in service awards can be drawn," and "[a]bsent a settlement agreement or a common fund, the Court lacks the statutory authority to allow such an award." (Def.'s Opp. to Pls.' Mot. Service Awards [Doc. # 527] at 1.) Defendant asserts that the Fair Labor Standards Act and Federal Rule of Civil Procedure 23 only contemplate the payment of reasonable attorneys' fees and the costs of the action, as neither make any mention of service awards. (*See id.* at 2.)

The Court will first address Defendant's challenge before addressing the merits of Plaintiffs' request. As Defendant notes, the Fair Labor Standards Act only provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action," 29 U.S.C. § 216(b), which Defendant takes to mean that service awards may not be granted "absent a settlement agreement or common fund,"

(Def.'s Opp. to Pls.' Mot. Service Awards at 3). The Court agrees with Defendant that the FLSA, which only authorizes a defendant's payment of "reasonable attorney's fee[s]" and "costs," *id.*, "does not encompass the requested incentive awards." *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1332 (D. Nev. 2014); *see also* 5 NEWBERG ON CLASS ACTIONS § 17:1 (5th ed.) (explaining that service awards are a common law invention and are not authorized by Rule 23 or by statute).

However, Class Representatives do not seek to obtain service awards from *Defendant*. Class Representatives' principal request is that the service awards be paid out of *Class Counsel's fees*, to which Class Counsel have expressly consented. (*See* Pls.' Mot. Att'ys' Fees and Costs at 40 ("Class Counsel request that if the Court grants the request for service awards, the Court reduce the amount of fees awarded to Class Counsel by the total amount of the service awards.").) Moreover, other courts have authorized service awards in the absence of a settlement or common fund. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951, 961 (8th Cir. 2017) (explaining that service awards may be authorized post-trial and "paid out of the class recovery" in order to "compensate lead plaintiffs for their work and the benefit they have conveyed on the rest of the class," but noting that there is "no sound reason to make defendants pay for these awards"); *Karraker v. Rent-A-Ctr., Inc.*, 492 F.3d 896, 900 (7th Cir. 2007) (discussing incentive payment in the absence of a common fund); *Hurt v. Commerce Energy, Inc.*, 2018 WL 4658734, at *5 (N.D. Ohio Sept. 28, 2018) ("[T]he lack of a settlement agreement or common fund does not foreclose incentive awards entirely[.]"); *Schaff v. Chateau Cmty., Inc.*, No. 19-CX-03-6402, 2004 WL 1908209, at *1-2 (Minn. Dist. Ct. May 27, 2004), *aff'd*, No. A04- 1246, 2005 WL 1734031 (Minn. Ct. App. July 26, 2005) (approving service awards absent a common fund).

In light of the common judicial practice of approving incentive awards and in consideration of Class Counsel's clear consent as the affected party, the Court concludes that it

may, in its discretion, grant the relief that Class Representatives seek, as "[i]ncentive awards are not uncommon in class action cases and are within the discretion of the court," and "are particularly appropriate in the employment context," as in "employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005); *see also Bryant v. Potbelly Sandwich Works, LLC*, 2020 WL 563804, at *8 (S.D.N.Y. Feb. 4, 2020) ("Courts routinely approve service payments in wage and hour class and collective actions.").

As previously stated, "[i]n examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights." *Bozak*, 2014 WL 3778211, at *4. After considering these factors, the Court concludes that service awards are appropriate in this case. Here, Class Representatives took on a "significant risk . . . by attaching [their] name[s] and reputation[s] to this litigation." *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019). Mr. Strauch has testified that he was "demoted from Senior Professional to Professional SA shortly after filing this case even though his job duties remained the same." (Pls.' Mot. Service Awards at 3 (citing Trial Tr. at 540:20-541:5).) And as other courts have held, "[e]ven where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members." *Guippone v. BH S & B Holdings, LLC*, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011); *see also Frank*, 228 F.R.D. at 187–88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere

40

or unfounded."). Class Representatives also dedicated considerable time and effort to this litigation by testifying at depositions and at trial. Finally, the requested $10,000 service awards are "consistent and reasonable with awards given in class and collective actions." *Bozak*, 2014 WL 3778211, at *5 (approving a $10,000 service award and collecting cases where service awards to class representatives ranged from $5,000 to $15,000).

Accordingly, the Court approves a $10,000 service award to each Class Representative, for a total of $40,000, to be paid out of Class Counsel's fees. *See Amara v. Cigna Corp.*, No. 3:01-CV-2361 (JBA), 2018 WL 6242496, at *3–4 (D. Conn. Nov. 29, 2018) (ordering class counsel to pay service award out of attorneys' fees); *Hurt*, 2018 WL 4658734, at *5 (ordering that "incentive awards should be taken from the attorney's fees granted in this Opinion").

### III. Conclusion

For the foregoing reasons, Class Counsel's Motion for Attorneys' Fees and Costs [Doc. # 520] is GRANTED with modification, and Class Counsel's Motion for Service Awards [Doc. # 523] is GRANTED.

Accordingly, the Court orders Defendants to pay Class Counsel $7,740,152.51 in attorneys' fees for their work on behalf of Plaintiffs, as detailed in this Opinion. From those attorneys' fees, the Court orders Class Counsel to pay a $10,000 service award to each Class Representative, for a total of $40,000, as detailed in this Opinion. The Court further orders Defendants to pay Class Counsel $354,567.90 in litigation costs.

Post-judgment interest on the entire amount of the judgment will accrue from January 5, 2018, which is the date of the trial judgment [Doc. # 444], at the rate provided by 28 U.S.C. § 1961(a).

IT IS SO ORDERED.

<u>                          /s/                          </u>
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 27th day of July 2020.