UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH and TIMOTHY COLBY, individually and on behalf of all others similarly situated,<br>        *Plaintiffs*,<br>        *v.*<br>COMPUTER SCIENCES CORPORATION,<br>        *Defendant*. | Civil No. 3:14-cv-956 (JBA)<br><br>July 29, 2020 |

**RULING ON PLAINTIFFS' MOTION FOR NOTICE AND TOLLING**

Before the Court is Plaintiffs' Motion for Notice and Tolling, which concerns two separate issues related to the management of the Fair Labor Standards Act collective and Rule 23 state law classes in this case. ([Doc. # 554].)

First, Plaintiffs request that the Court dismiss the claims of "114 individuals who previously opted in to the case but who now appear to lack the criteria for inclusion in the collective, because their job title, salary, or dates of employment do not match the collective definition that the Court has adopted," and toll their claims "for the pendency of this action through a period of 60 days following the Court's decision on this motion." (*Id.* at 1.) Second, Plaintiffs request that the Court approve a Rule 23 notice for the purposes of dissemination to "30 individuals included in the final class list as Rule 23 state law class members who were not identified as class members in the notice data [Defendant Computer Sciences Corporation] provided in advance of issuance of the class notice in November 2017" and "who consequently did not receive a Rule 23 notice." (*Id.*)

Defendant Computer Sciences Corporation ("CSC") opposes Plaintiff's request for tolling, and objects to certain language in Plaintiff's proposed Rule 23 notice.

For the reasons that follow, Plaintiffs' motion is granted in its entirety.

1

## I.  Background

The Court assumes the parties' familiarity with the underlying facts and history of this case. In brief, Class Representatives Joseph Strauch, Timothy Colby, Charles Turner, and Vernon Carre brought this overtime misclassification suit on behalf of Associate Professional and Professional System Administrators (collectively, "SAs") that had been employed by CSC. Plaintiffs brought this action under the Fair Labor Standards Act ("FLSA") and the state laws of Connecticut, California, and North Carolina, claiming that Defendant CSC unlawfully classified the SAs as overtime-exempt computer employees.

On June 9, 2015, the Court conditionally certified an FLSA collective composed of all SAs who had the titles "Associate Professional System Administrator," "Professional System Administrator," or "Senior Professional System Administrator" and whose yearly earnings were less than $100,000. (*See* [Doc. # 168].) The Court also ordered issuance of notice pursuant to 29 U.S.C. § 216(b), and required Defendant to provide Plaintiffs with a "list of the names, last known addresses, email addresses, and dates of employment of all potential collective action members employed by CSC during the relevant time period." (*Id.* at 12.) Following issuance of this notice, approximately 1,034 individuals opted into the collective. (*See* Stip. re FLSA Collective Cert. [Doc. # 339] at 2.)[1]

On June 30, 2017, the Court certified Connecticut and California Rule 23 subclasses of Professional and Associate Professional System Administrators, ([Doc. # 327]), and notice

---

[1] As provided in this stipulation, employees with the title "Senior Professional System Administrator" were ultimately not included in the FLSA collective. (*See* Joint Stip. re Tolling at 4.)

subsequently issued to state law class members later that year, (*see* Joint Stip. re Tolling [Doc. # 371).

On August 1, 2017, the parties stipulated to amend "the definition of the FLSA Collective so that it includes only Opt-Ins who were or are employed as Associate Professional System Administrators or Professional System Administrators" and "agree[d] that the statute of limitations for the individual FLSA claims of any Opt-Ins not within the Revised FLSA Collective definition [would] remain tolled" for ninety days. (Stip. re FLSA Collective Certification at 3.) Class Counsel subsequently "sent notice of this ruling to those individuals whom they were able to identify at that time as not conforming to the collective definition." (Pls.' Mot. for Notice and Tolling at 2.)

Trial in this case commenced on December 7, 2017, and on December 20, 2017, the jury returned a verdict in Plaintiffs' favor on liability on Plaintiffs' claims under the FLSA and Connecticut and California wage-and-hour law. ([Doc. # 442].)

On January 24, 2019, the Court appointed a Special Master "to monitor and address issues related to damages data and calculation." ([Doc. # 491]). The Special Master "determined that it was necessary to re-run all of the Layer Data from the three [Human Resource Information Systems] . . . for all potential class members" in order to develop a "complete and reliable Class List," as explained in his Report and Recommendation. (R & R [Doc. # 503] at 11.) After this data was audited and exchanged, the parties "exchanged several versions of the Class List" and then "submitted an agreed-upon Summary of Damages" that covered 907 individuals who satisfied the criteria for inclusion in the FLSA collective and state law classes. (*Id.* at 5-7.)

On August 6, 2019, the Court adopted the Special Master's Report and Recommendation and the resulting Class List. ([Doc. # 514].)

Class Counsel have now audited and "reviewed the final list of class and collective members against the list of individuals who have opted into this action, and identified 114 CSC employees who filed consent-to-join forms, but are not on the agreed list of eligible collective members and who were not previously notified of their ineligibility ('Ineligible opt-ins')." (Pls.' Mot. for Notice and Tolling at 3 (citing Ex. B (List of Ineligible Opt-Ins) to Sagafi Aff. Supp. Pls.' Mot. for Notice and Tolling [Doc. # 552-2]).) Class Counsel have also "identified 30 individuals who are members of the Connecticut or California classes, but who were not issued a Rule 23 notice in November 2017 (Unnoticed Class Members)." (*Id.* (citing Ex. B (List of Unnoticed Class Members) to Sagafi Aff. Supp. Pls.' Mot. for Notice and Tolling [Doc. # 552-3]).)

## II. Discussion

### A. Tolling

The Court will first consider Plaintiffs' request for equitable tolling of the Ineligible Opt-Ins' claims.

Plaintiffs assert that tolling is warranted here because these Ineligible Opt-Ins "never received notice that they were no longer part of the case because accurate data had not yet been produced," (*id.* at 3), and because this remedy is "no different from the grace period routinely afforded individual plaintiffs who join a case but are later found not to be similarly situated," (Pls.' Reply Supp. Mot. for Notice and Tolling [Doc. # 558] at 4). Plaintiffs further assert that "[g]iven that CSC d[id] not appear to have recognized the existence of the Ineligible Opt-Ins either (as evidenced by its failure to move to strike their consent forms), it is unlikely to suffer any prejudice as a result of tolling." (*Id.* at 4.) Plaintiffs contend that courts possess and regularly use their equity powers to toll the FLSA statute of limitations in collective actions that have been decertified and that their "instant request is unique only insofar as CSC's data errors meant that the parties did

not have a complete and accurate list of collective members until the conclusion of the Special Master process." (*Id.* at 6.)

Defendant responds that this Court lacks the authority to toll the claims of the Ineligible Opt-Ins because these are "individuals who, while they opted in, are not part of this case and never were properly part of the collective." (Def.'s Opp. to Pls.' Mot. for Notice and Tolling [Doc. # 556] at 1.) Defendant thus reasons that "it is not this Court's responsibility to assess tolling for a group of individuals who are undisputedly not part of this case" and that this Court cannot therefore "issue a tolling order in this case since it is a remedy for *another*, unknown case (or cases) that has not been filed." (*Id.* at 4-5.) Put otherwise, Defendant contends that "[a]ny claim for tolling for these individuals should be assessed by a court if, and only if, these Ineligible Opt-ins file their own claims for which they would necessarily be a party." (*Id.* at 5.) In the alternative, Defendant also opposes the motion for tolling on the basis that "Plaintiffs fail to advise this Court why each Ineligible Opt-in is not a party to this case and when each eligible Ineligible Opt-in knew or should have known they were not a party to this case, thus failing to establish diligence," as required by a party seeking equitable tolling. (*Id.* at 7.) Defendant notes that the Court has previously denied equitable tolling to opt-ins who sought to be "awarded damages for the period beginning three years before the date the original complaint was filed rather than three years before the varying dates of their consents to join," (Pls.' Br. on Remedies [Doc. # 449] at 13), because "Plaintiffs failed to meet the burden for this 'rare' remedy in that context," (Def.'s Opp. to Pls.' Mot. for Notice and Tolling at 6).

The FLSA has a statute of limitations that bars an action "unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). An

FLSA collective action "shall be considered to be commenced in the case of any individual claimant":

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> (b) if such written consent was not so filed or if his name did not so appear--on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256. Put otherwise, "all plaintiffs, including named plaintiffs, must file a consent to suit with the court in which the action is brought." *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1132–33 (D. Nev. 1999). "'[E]very plaintiff who opts in to a collective action has party status.'" *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 279 (S.D.N.Y. 2019) (quoting 7B Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 1807 (3d ed.)).

However, in FLSA collective actions, the statute of limitations for putative class members "resumes after a court's determination to decertify a class." *McEarchen v. Urban Outfitters, Inc.*, No. 13CV3569RRMJO, 2017 WL 3912345, at *2 (E.D.N.Y. Sept. 6, 2017). In a case where decertification is appropriate because "class members are not similarly situated, the opt-in plaintiffs' claims are dismissed without prejudice, and the original party or parties may proceed individually." *Radford v. Pevator Companies, Ltd.*, No. CV 17-3381, 2019 WL 7282110, at *3 (S.D. Tex. Dec. 27, 2019). "In order to avoid prejudice to opt-in plaintiffs, courts may toll the statute of limitations in FLSA collective actions that have been decertified, and they often do so in cases involving many opt-in plaintiffs." *McEarchen*, 2017 WL 3912345, at *2 (collecting cases); *see also Foster v. Sitel Operating Corp.*, No. 3:19-CV-00148, 2020 WL 3485576, at *2 (M.D. Tenn. May 22, 2020) (explaining that "equitable tolling doctrine is read into every federal statute" and that courts "routinely apply equitable tolling to FLSA claims"). "To qualify for equitable tolling, the plaintiff[s]

6

must establish that extraordinary circumstances prevented [them] from filing [their] claim[s] on time, and that [they] acted with reasonable diligence throughout the period [they] seek[] to toll." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014).

The Court notes that this case differs from the ordinary FLSA tolling circumstance, as typified by *Buehlman v. Ide Pontiac, Inc.*, 345 F. Supp. 3d 305, 314 (W.D.N.Y. 2018), where a court "tolls the applicable statute of limitations as to the Opt-In Plaintiffs' FLSA overtime claims" when it dismisses those opt-in plaintiffs subsequent to the decertification of the whole collective. *See also Radford*, 2019 WL 7282110, at *3 (tolling statute of limitations for sixty days for forty-four opt-in plaintiffs); *McEarchen*, 2017 WL 3912345, at *2 (tolling for sixty days when there were 165 opt-in plaintiffs); *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-8333 (ALC)(SN), 2017 WL 1434498, at *1 (S.D.N.Y. Apr. 19, 2017) (tolling claims of several hundred opt-in plaintiffs for ninety days); *Reyes v. Texas Ezpawn, L.P.*, No. CIV.A. V-03-128, 2007 WL 101808, at *7 (S.D. Tex. Jan. 8, 2007) (tolling claims of eighty-two opt-in plaintiffs for thirty days). Here, the collective itself has been certified, and Plaintiffs instead seek tolling for those opt-in plaintiffs who now must be dismissed following a data audit and a determination of their individual ineligibility.

Despite this difference in posture, the principle applied in these aforementioned cases is also applicable here. Contrary to Defendant's insistence otherwise, the ineligible plaintiffs attained party status in this case by filing their consent forms. *See Pettenato*, 425 F. Supp. 3d at 279. Additionally, these cases make clear that a court, when dismissing opt-in plaintiffs who are not similarly situated, may "invoke[] its equity powers to toll the applicable statute of limitations" prospectively to "avoid prejudice to individual opt-in Plaintiffs who may choose to file their own cases," even though those cases are necessarily not before the court. *Reyes*, 2007 WL 101808, at *7.

The Court thus concludes that it may—in order to avoid prejudice to the Ineligible Opt-Ins who provided their consents and were properly parties to this case—invoke its equity powers to toll the statute of limitations here. The Ineligible Opt-Ins took action to file their claims in a timely fashion by submitting their consents, and Defendant took no action at any point to strike their consents. By submitting these consents, the Ineligible Opt-Ins necessarily acted with diligence in pursuing their FLSA claims.[2] Accordingly, the Ineligible Opt-Ins' claims are dismissed without prejudice and tolled for a period of sixty days from the entry of this order.[3]

---

[2] In these previously discussed cases where tolling was ordered subsequent to decertification, the courts did not engage in detailed individual inquiries as to whether the dismissed opt-ins, who were deemed dissimilar to the named plaintiff, showed diligence in pursuing their claims. These courts apparently assumed that the opt-in plaintiffs acted with diligence by submitting their consents and by attempting to pursue these claims as a collective. This Court, too, determines that such individualized inquiries, as requested by Defendant, are unnecessary, as each of the Ineligible Plaintiffs endeavored to pursue their claims against CSC through this collective action.

[3] In making this ruling, the Court notes that the request here differs markedly from Plaintiffs' earlier request for equitable tolling, which the Court rejected. (*See* Ruling on Remedies [Doc. # 479] at 11-13.)

In that instance, Plaintiffs did not seek to preserve claims but rather sought an expansion of the damages period that would have allowed them to be "awarded damages for the period beginning three years before the date the original complaint was filed rather than three years before the varying dates of their consents to join." (Pls.' Br. on Remedies at 13.) The Court explained that Plaintiffs had not shown "that the amount of the delay . . . between the filing of the complaint and the issuance of FLSA notice constituted extraordinary circumstances, nor that the delay or Defendant's actions effectively prevented opt-in Plaintiffs from exercising their rights," as individual opt-ins could have asserted their rights under the FLSA prior to the conditional certification of the collective. (Ruling on Remedies at 12.)

### B.  Notice

In their motion, Plaintiffs also ask the Court to authorize the issuance of a Rule 23 notice to "30 individuals included in the final class list as members of the Rule 23 state law classes who were not identified as class members in the notice data CSC produced in October 2017 because the data provided for them was incorrect or missing." (Pls.' Mot. for Notice and Tolling at 5.)

Defendant "objects to this notice as drafted" because "it includes language that spells out claims that are not covered, which amounts to attorney adver[tis]ing." (Def.'s Opp. to Pls.' Mot. for Notice and Tolling at 9.) Specifically, Defendant objects to the following language:

> This lawsuit does not cover any time you may have spent working as a Senior Professional level SA or other job titles you held at CSC. Moreover the lawsuit does not cover claims for meal and rest period violations for SAs in the Associate Professional and Professional levels under California law, and Plaintiffs did not prevail on their claim for wage statement violations under California law. If you want to seek overtime compensation for any time spent as a senior professional SA or assert claims for meal and rest period or wage statement violations under California law for any time spent as an Associate Professional SA or Professional SA, you would need to file a separate lawsuit to cover those claims.

(Ex. A (Pls.' Proposed Rule 23 Notice) to Sagafi Aff. Supp. Pls.' Mot. for Notice and Tolling [Doc. # 552-1] at 2.) Defendant also objects to the inclusion of "the amount of damages on the notice, which previously was denied by the Special Master in his Report and Recommendation." (Def.'s Opp. to Pls.' Mot. for Notice and Tolling at 9.)

Plaintiffs respond that each of these objections "seeks to limit information that is 'material' for the Unnoticed Class Members to make "an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." (Pls.' Reply Supp. Mot. for Notice and Tolling at 6-7 (quoting *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 57 (D. Conn. 2001)).) Plaintiffs assert that the language describing claims that are not covered "is substantially

similar to the language included in the original Rule 23 Notice that the Court approved pursuant to stipulation in October 2017," and that "the main substantive difference between the new Notice and the original Notice is the addition of language advising the Unnoticed Class Members that 'Plaintiffs did not prevail on their claim for wage statement violations under California law.'" (*Id.* at 7 (quoting Ex. A (Notice Redline) to Sagafi Reply Decl. [Doc. # 555-1] at 1).)[4] As to the inclusion of the amount of damages each recipient is due, Plaintiffs assert that such language is material and that "CSC's argument that the Court should follow the Special Master's ruling" as to the inclusion of damages "is misguided because that recommendation dealt with a different issue"—namely, "whether *potential opt-in plaintiffs* who moved into covered positions should have a renewed chance to opt in." (*Id.* at 8 (emphasis in original).)

The Court has reviewed the original Rule 23 notice that was sent to state law class members and the proposed Rule 23 notice intended for the Unnoticed Class Members. From this review, the Court has determined that the two notices do not differ in any meaningful way apart from the inclusion of language that "Plaintiffs did not prevail on their claim for wage statement violations

---

[4] The original Rule 23 notice, which was approved on October 26, 2017, provided:

> The Court has *not* allowed the lawsuit to proceed as a class action under California or Connecticut law on behalf of **SAs in the Senior Professional level** subject to the same salary, employment date, and hours requirements. Moreover, the lawsuit is no longer pursuing claims for meal and rest period violations for SAs in the **Associate Professional** and **Professional** levels under California law. If you want to seek overtime compensation for any time spent as a Senior Professional SA or assert claims for meal and rest period violations under California law for any time spent as an Associate Professional SA, Professional SA, or Senior Professional SA, you would need to file a separate lawsuit to cover those claims.

(Ex. A (Proposed Class Notice) to Joint Stip. re Tolling [Doc. # 371-1] at 1.)

under California law." (Notice Redline at 1.) Where the original notice describes claims that were not permitted or not pursued, the new notice simply states that such claims are not covered. Accordingly, the Court sees no reason to excise the language to which Defendant objects.

The Court also agrees with Plaintiffs that information regarding the amount of damages due to each recipient is material to making an "informed" decision as to whether to remain a member of the class or pursue an individual action. In *Macarz v. Transworld Systems*, this Court approved a settlement notice which included "the fact that the Court has ruled on liability in plaintiff's favor," explaining that this fact was necessary to informed decision-making and that class members "are more likely to remain in the class if they are aware that liability has been determined in their favor, thus preserving judicial resources and their rights." 201 F.R.D. at 58. Similarly, information as to damages is "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

Thus, the Court concludes that Plaintiffs' proposed Rule 23 notice is proper and so approves this notice for dissemination to the Unnoticed Class Members.[5]

---

[5] The parties' dispute as to whether the Special Master rejected specific language as to damages and as to whether the Court, in turn, rejected the Special Master's position on this point, (*see* Pls.' Mot. for Notice and Tolling at 5 n.2; Def.'s Opp. to Pls.' Mot. for Notice and Tolling at 9), is ultimately irrelevant to this determination. The Special Master made no mention of this issue when he recommended that notice should issue to 40 potential FLSA collective members, (*see* R & R 13-15), and the Court also did not address this point when rejecting that recommendation on notice, (*see* Ruling on Remedies at 7-8).

**III. Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Notice and Tolling [Doc. # 554] is GRANTED. The Court orders the dismissal of the Ineligible Opt-Ins' claims and tolls the time for their asserting any individual claims for a period of sixty days from the entry of this order. The Court approves Plaintiffs' proposed Rule 23 Notice and directs its dissemination to the thirty individuals identified in the List of Unnoticed Class Members.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of July 2020.