**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Michael J. Scimone*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct 19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

*Attorneys for Plaintiffs, the Classes, and the
Collective*

**FEINBERG JACKSON
WORTHMAN &
WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
2030 Addison St., Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998

**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

*admitted pro hac vice

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>COMPUTER SCIENCES CORPORATION,<br><br>    Defendant. | Case No.: 3:14-cv-956 (JBA)<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT** |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ...................................................................................................1

    A.    The Litigation...............................................................................................1

    B.    Negotiation of the Proposed Settlement ......................................................2

    C.    Risks on Appeal ...........................................................................................3

III.   SUMMARY OF THE SETTLEMENT ................................................................3

    A.    The Settlement's Benefits ............................................................................3

    B.    Releases........................................................................................................4

    C.    Plan of Allocation ........................................................................................4

    D.    Attorneys' Fees and Expenses .....................................................................5

IV.    ARGUMENT .........................................................................................................5

    A.    The Settlement Meets 23(e) Final Approval Standards. ..............................5

        1.    Plaintiffs and Class Counsel Adequately Represented the Class (Rule 23(e)(2)(A)).................................................................................8

        2.    The Settlement was Negotiated at Arm's-Length, With No Evidence of Fraud or Collusion (Rule 23(e)(2)(B), *Wolinsky* Factors 4 and 5)...................................................................................9

        3.    The Settlement Provides Fair, Adequate and Reasonable Relief to the Class (Rule 23(e)(2)(C)). ...........................................................11

            a.    The Complexity, Cost, and Duration of Litigation Through Appeal Favor Final Approval (Rule 23(e)(2)(C)(i), *Grinnell* Factor 1, *Wolinsky* Factor 2). .....................................11

            b.    The Substantial Risks of Litigation on Appeal Favor Final Approval (*Grinnell* Factors 4, 5, and 6, *Wolinsky* Factor 3)..........12

            c.    The Late Stage and Substantial Discovery Completed Favor Final Approval (*Grinnell* Factor 3). ...................................13

            d.    The Settlement is Reasonable in Light of the Best Possible Recovery and Attendant Risks (Rule 23(e)(2)(C)), *Grinnell* Factors 8 and 9, and *Wolinsky* Factor 1) ........................................14

            e.    The Ability to Withstand Greater Judgment Does Not Weigh Against Final Approval (*Grinnell* Factor 7).......................16

        4.    The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D))..............................................................16

        5.    The Overwhelmingly Positive Reaction of the Settlement Class Supports Final Approval (*Grinnell* Factor 2)..............................................17

            a.    The Reaction of the Classes and the Collective Have Been Overwhelmingly Positive..................................................17

            b.    Objection of John Saffos.............................................................18

**TABLE OF CONTENTS**
**(continued)**

Page

B.    The Court-approved Notice Program is Providing the Best Practicable Notice....................................................................................................18

VI.    CONCLUSION...............................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) ................................................................ 8

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................... 10

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015) ........................................................ 7, 8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................... passim

*Clark v. Ecolab, Inc.*,
   No. 04 CIV. 4488 (PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009)................................. 6

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) .............................................................. 8

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .............................................................. 6

*Douglas v. Allied Universal Sec. Servs.*,
   371 F. Supp. 3d 78 (E.D.N.Y. 2019) ......................................... 8, 15

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .............................................................. 7

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)................................. 14

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78
   (2d Cir. 2001)..............................................................................16, 18

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................. 18

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ................................................... 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................... 6

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   MDL No. 12–2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................... 13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ..................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................................ 11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................ 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................8

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................................ 11

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .................................................................................. 5

*Larrea v. FPC Coffees Realty Co.*,
   No. 15-CV-1515, 2017 WL 1857246 (S.D.N.Y. May 5, 2017) ............................ 15

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................. 17

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998) .................................................................................. 6

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................................ 14

*Quizhpi v. PSSP NY Inc.*,
   No. 17-CV-693 (OTW), 2018 WL 2926150 (S.D.N.Y. June 11, 2018) ................ 10

*Shapiro v. JPMorgan Chase & Co.*,
   Nos. 11-cv-8331, 11-cv-7961, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)........................ 16

*Siddiky v. Union Square Hosp. Grp., LLC*,
   No. 15-CV-9705, 2017 WL 2198158 (S.D.N.Y. May 17, 2017) ........................... 15

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................. 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................... 5, 6

*Wolinsky v. Scholastic Inc.*,
   900 F. Supp. 2d 332 (S.D.N.Y. 2012) .......................................................... passim

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................. 17

*Yang v. Focus Media Holding Ltd.*,
   No. 11-cv-9051, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ 16

Fed. R. Civ. P. 23(3)(2) ...................................................................................................... 1

Fed. R. Civ. P. 23(a)(4) ....................................................................................................... 8

Fed. R. Civ. P. 23(e) ....................................................................................................... 6, 8

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................................. 8

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................................ 9, 10

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................... 11, 14, 15

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(iii) ......................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C)(iv) ......................................................................................... 16

Fed. R. Civ. P. 23(e)(3) ............................................................................................... 7, 15

# I.    <u>INTRODUCTION</u>

After more than six years of litigation including trial and appeal, Plaintiffs respectfully submit this motion seeking final approval of the proposed Class and Collective Action Settlement Agreement.[1]  Plaintiffs, Associate Professional and Professional Systems Administrators (collectively, "SAs") who worked for Defendant Computer Sciences Corporation ("CSC"), reached a $9,505,259.59 settlement to resolve their wage and hour claims against CSC on a classwide basis.  Joint Stip. for Class and Collective Action Settlement (the "Settlement Agreement"), ECF No. 580-2.  On March 16, 2021, the Court preliminarily approved the Settlement, ruling that the Court would "likely be able to approve the Settlement Agreement under Rule 23(e)(2)."  ECF No. 581.

Class member response to the settlement has been overwhelmingly positive, with zero written exclusion requests and only one objection out of 909 class members (0% and 0.1%, respectively) to whom notice was sent by mail and email.  Pavlik Decl. ¶¶ 16-17. This strong response from a group of class members who have been very engaged in the litigation over the past six years supports final approval.

Plaintiffs thus respectfully request that the Court grant final approval.

# II.    <u>BACKGROUND</u>

Plaintiffs' Motion for Preliminary Approval sets forth in detail the procedural and factual background.  ECF No. 577.  Below is a brief summary.

## A.    <u>The Litigation</u>

On July 1, 2014, Plaintiffs filed this collective and class action bringing claims against CSC for failure to pay overtime wages under the Fair Labor Standards and California and

---

[1] Plaintiffs have concurrently filed a separate application for attorneys' fees and costs, and for service awards to the named Plaintiffs.

Connecticut wage and hour laws.  ECF No. 1.  On October 23, 2017, Plaintiffs filed the Third Amended Complaint ("TAC"), which is the operative complaint.  ECF No. 361.

On June 9, 2015, the Court granted Plaintiffs' motion for FLSA conditional certification. ECF No. 168.  On June 30, 2017, the Court granted Plaintiffs' Rule 23 motion, certifying classes under California and Connecticut law.  ECF No. 327.

A December 2017 jury trial concluded with the Court entering a judgment for Plaintiffs and the Class and Collective Members.  ECF No. 444.  In November 2018, the Court issued a Ruling on Remedies (ECF No. 479), followed by a Ruling on Report and Recommendation of Special Master (ECF No. 514), and an Amended Judgment (ECF No. 515), awarding the Classes and Collective $18,755,016.46 in damages.

CSC appealed the judgment, and the Parties have fully briefed the appeal.  ECF No. 519; Hutchinson Decl. ¶ 8.  CSC argued on appeal that the Classes and Collective should be decertified and that the fluctuating workweek methodology should be used to calculate damages under the FLSA and Connecticut law.  Hutchinson Decl. ¶ 9.  On July 27, 2020, the Court issued a Ruling on Post-Trial Motions for Service Awards, Attorneys Fees, and Costs in favor of Plaintiffs, awarding Class Counsel and the named Plaintiffs $8,094,720.41 in fees, costs, and service awards.  ECF No. 563.  The Parties each appealed this decision, but stayed the appeals pending determination of the pending merits appeal.  *See* ECF Nos. 565, 567; Hutchinson Decl. ¶ 11.

### B.  Negotiation of the Proposed Settlement

Over the years of litigation, the Parties engaged in multiple arm's length mediations and settlement negotiations with the guidance of experienced wage and hour class and collective action mediator, Hunter R. Hughes, III, Esq.  Hutchinson Decl. ¶¶ 15-19.  These negotiations were adversarial and conducted at arm's-length, with extended discussions of the parties'

arguments regarding liability, class certification, and damages.  *Id.*  After years of ongoing negotiations, the parties accepted a mediator's proposal and executed the settlement agreement. *Id.*

### Risks on Appeal

Plaintiffs would have faced two substantial risks on appeal.

First, if CSC were to prevail on its view of the fluctuating workweek calculation, the FLSA and Connecticut damages would be reduced by approximately $9.4 million.  Though Plaintiffs are confident in their argument that the fluctuating workweek method cannot be forced on misclassified workers, Plaintiffs' risk of loss on this issue has increased due to recent Second Circuit authority supporting CSC's argument.

Second, if the Second Circuit were to reverse class and collective certification, the class members would be left with no way to recover other than individually filing suit and proving liability and damages independently.  As a practical matter, that onerous process would result in many class members deciding that the time investment, burdens, and cost of individual litigation outweighed the potential benefits, leaving them without a remedy at all.

## III.   SUMMARY OF THE SETTLEMENT

### A.   The Settlement's Benefits

The Parties agreed to resolve this case for a total of $9,505.259.59 exclusive of fees (the "Fund").  Settlement Agreement § 3.2(a).  The Fund covers payments to Class and Collective Members (the "Net Settlement Amount"), plus costs of settlement administration and a $75,000 PAGA payment to California's Labor and Workforce Development Agency.  *Id.*  CSC will pay the employer's share of payroll taxes. *Id.* § 3.2(b), § 1.25.

B.    **Releases**

The Settlement Agreement narrowly releases exactly, and only, the claims resolved by the Judgment through the date of Judgment. Accordingly, Class and Collective Members will release CSC from all state and/or federal wage and hour claims that were resolved by the Judgment (the "Release"), nothing more and nothing less.  Settlement Agreement § 3.9.  This narrow Release applies for the time period applicable to each Class or Collective Member, based on their individualized opt-in date and/or state-law-based Rule 23 class period, through the January 5, 2018 date of the Judgment.  *Id.*  The temporal scope is therefore only for time up to Judgment: This time period is more beneficial to the Class and Collective Members than the typical settlement class period, which usually ends at preliminary approval (here, over three years later than the actual end date for the release period).

C.    **Plan of Allocation**

All Class and Collective Members will receive an award based primarily on the damages, penalties, and interest they were awarded in the heavily litigated post-trial damages process.  The damages figures for each non-California Collective Member and each Connecticut Class Member will be multiplied by 35% to reflect the meaningful risk that their recoveries would be slashed to less than one-third if the Second Circuit were to rule in CSC's favor on the fluctuating workweek.  The damages figures for each California Class Member will be multiplied by 75% to reflect any risk of reversal of class and/or collective action certification by the Second Circuit. Each individual will then receive the greater of the resulting amount or $30 per workweek. Settlement Agreement § 3.4(d).

The parties selected Rust Consulting as the Settlement Administrator.  Hutchinson Decl. ¶ 23.  The Settlement Administrator has been and will be responsible for establishing a Qualified Settlement Fund ("QSF") account; sending the Notice; locating Settlement Class members;

responding to Settlement Class member inquiries in conjunction with Class Counsel; preparing, monitoring, and maintaining a website and maintaining a telephone number with phone answerers to provide information to Settlement Class Members; receiving opt-outs and objections and conveying them to the parties; calculating each class member's individual settlement award and tax withholdings; cutting the settlement checks; and mailing checks to class members. Settlement Agreement § 2.1. Class Counsel will report to the Court regarding implementation of the settlement, supported by evidence from the Settlement Administrator.

### D.      Attorneys' Fees and Expenses

On July 27, 2020, the Court awarded Class Counsel $8,094,740.41 in attorneys' fees and costs plus interest after a fully litigated motion. ECF No. 563. This amount includes the Class Representative Service Awards ("Service Awards"). Both parties appealed this order, and those appeals are stayed pending a decision on CSC's appeal of the certification and damages issues. If the settlement becomes final, the parties will withdraw their appeals, leaving in place this Court's fee and cost award of $8,094,740.41 plus interest. The Court's previous award is sought in a separate Motion for Attorneys' Fees. As noted therein, that award is appropriate given the excellent result of this settlement, the risks of appeal, the work done by Class Counsel, and in seeking such an award Class Counsel forego compensation for the very substantial amount work done since July 2020 and interest on the award.

## IV.      ARGUMENT

### A.      The Settlement Meets 23(e) Final Approval Standards.

The law favors the compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)

("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  The approval of a proposed class action settlement is a matter of discretion for the trial court, though courts are encouraged to defer to the "private consensual decision of the parties."  *Clark v. Ecolab, Inc.*, No. 04 CIV. 4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009); *see also Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.").

Under Rule 23(e), the Court must "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted).  This evaluation requires the Court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores* at 116.  Specifically, the Court must determine whether the proposed settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees,

including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, courts in the Second Circuit have long considered the following factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Not every factor must weigh in favor of settlement; "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

To adjudicate approval of an FLSA collective action settlement, courts in the Second Circuit regularly consider a non-exclusive set of five factors which apply the principles in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as set out in *Wolinsky v. Scholastic Inc.*:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks and citation omitted); *see also*

*Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 82 (E.D.N.Y. 2019) ("This is a

FLSA case, and whether the settlement is fair and reasonable under Rule 23(e) is determined by

*Cheeks* and *Wolinsky*").

As demonstrated below, the Settlement readily satisfies all Rule 23, *Grinnell*, and

*Wolinsky* factors, and warrants the Court's final approval.

### 1.    Plaintiffs and Class Counsel Adequately Represented the Class (Rule 23(e)(2)(A)).

In determining whether to approve a class action settlement, the court should consider

whether "the class representatives and class counsel have adequately represented the class."  Fed.

R. Civ. P. 23(e)(2)(A).  This standard is "nearly identical to the Rule 23(a)(4) prerequisite of

adequate representation in the class certification context."  Thus courts typically use case law

regarding Rule 23(a)(4) to guide assessments of this factor.  *In re Payment Card Interchange Fee

& Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 n.25 (E.D.N.Y. 2019); *see also Rosenfeld v.

Lenich*, No. 18CV6720NGGPK, 2021 WL 508339, at *4 n.3 (E.D.N.Y. Feb. 11, 2021).

"Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are

antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are

qualified, experienced and able to conduct the litigation.'"  *Cordes & Co. Fin. Servs. v. A.G.

Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin &

Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

Four times, this Court has already found the Class Representatives and Class Counsel to

be adequate.  These findings resulted from fully adversarial motions: (1) Plaintiffs' Rule 23 class

certification motion, ECF No. 327 at 44 n.15, (2) CSC's motion to decertify the Classes and

Collective, ECF No. 358 at 6-12, (3) the parties' post-trial Motions, ECF No. 476 at 31, and (4)

CSC's Second Motion to Decertify, ECF No. 412.  The reasons for this Court's prior adequacy findings remain true today.

First, the Class Representatives are adequate because no conflicting interests exist between them and the Classes, all of whom suffered economic losses from the same course of conduct.  All Plaintiffs share co-extensive interests, as they all have a strong interest in obtaining compensation from CSC for the losses they incurred.

Second, Class Counsel are well-qualified, experienced wage and hour class action attorneys who diligently litigated this matter on behalf of the Classes for more than six years. Indeed, the Court noted that "the complexity of this action and the degree of success that Class Counsel achieved warrant an award at the higher end of the fee spectrum" in awarding class counsel's fees.  ECF No. 563 at 14.  Class Counsel demonstrated their adequacy by successfully litigating this difficult case up to, and including, trying this complex case to verdict before a jury in the face of substantial opposition. ECF No. 515.

> **2.    The Settlement Was Negotiated at Arm's-Length, With No Evidence of Fraud or Collusion (Rule 23(e)(2)(B), *Wolinsky* Factors 4 and 5).**

Rule 23(e)(2)(B) further supports final approval because the Settlement was reached only after protracted, arm's-length negotiations facilitated by an experienced and well-respected mediator, as discussed above.  Hutchinson Decl. ¶¶ 15-19 ("[T]he Parties participated in a series of arm's-length mediations and settlement discussions with the assistance of experienced wage-and-hour, class, and collective action mediator, Hunter R. Hughes, III, Esq. . . . .  At all times, the settlement negotiations were highly adversarial, non-collusive, and at arm's length.").  *See, e.g., In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (fact that "settlement was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator" established that it was "procedurally fair"); *Yang v. Focus Media Holding*

*Ltd.*, No. 11-cv-9051, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (participation of "highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion.").

The procedural background shows that there was no fraud or collusion.  The parties reached the Settlement Agreement after an extensive trial and hard-fought litigation, following multiple mediations with a respected mediator spanning many years, including required settlement conferences with the Second Circuit.  *See Russell v. Broder & Orland, LLC*, No. 3:17-CV-1237 (VAB), 2018 WL 3104101, at *5 (D. Conn. June 22, 2018) (FLSA collective settlement devoid of fraud or collusion where it was negotiated at arm's length before a Magistrate Judge and the plaintiff was represented by two attorneys); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."); *Quizhpi v. PSSP NY Inc.*, No. 17-CV-693 (OTW), 2018 WL 2926150, at *2 (S.D.N.Y. June 11, 2018) (finding settlement reached at conference before magistrate judge was "product of arm's-length bargaining between experienced counsel.").  Mr. Hughes, the Parties' mediator, is regularly recognized as one of the nation's most distinguished neutrals with a specialization in mediating complex employment class and collective actions.[2]

In sum, Rule 23(e)(2)(B) and *Wolinsky* factors 4 and 5 weigh in favor of granting final approval of the settlement.  Because the settlement is fair, adequate, and reasonable, and not a product of collusion, the Court should grant final approval.

---

[2] Mr. Hughes' qualifications and experience are described in more detail at: https://www.hunteradr.com.

3.   **The Settlement Provides Fair, Adequate and Reasonable Relief to the Class (Rule 23(e)(2)(C)).**

   a.   **The Complexity, Cost, and Duration of Litigation Through Appeal Favor Final Approval (Rule 23(e)(2)(C)(i), *Grinnell* Factor 1, *Wolinsky* Factor 2).**

Courts consistently recognize that the expense, complexity, and duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) ("[T]he more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court.").

Class actions are generally complex and time-consuming. *See, e.g.*, *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (noting class action suits generally "have a well-deserved reputation as being most complex."). This particular case was especially so, with federal and multiple states' laws at issue, two procedural structures for representative treatment, a trial, and multiple appeals and with the litigation spanning seven years. Hutchinson Decl. ¶¶ 5-10.

The Parties have undertaken considerable time and expense litigating this case over the past six years. *Id.* ¶ 12. As of October 28, 2019, Plaintiffs filed a notice of costs demonstrating that they had already billed 20,607.48 hours and incurred out-of-pocket costs of $584,560.54. *See* ECF No. 537 at 3; ECF No. 537-3 at 3. To date, Class Counsel have collectively expended an additional 1,795 hours of work since the filing of that notice in October 2019. *Id.* ¶ 13.

Absent settlement, further litigation would result in further expense and delay. The Parties have yet to conduct oral argument on appeal, which would lead to an additional wait for

the Second Circuit's decision following oral argument, and possibly require the recalculation of

damages on remand (and Court approval of such recalculation, and possibly another appeal).  *Id.*

¶ 14.  If the Second Circuit were to overturn the Court's Rule 23 and FLSA Collective

certification decisions, the resulting proliferation of individual litigations would yield additional

significant expense and delay.  The settlement, on the other hand, makes substantial monetary

relief available to Class Members now.  Rule 23(2)(C)(i), the first *Grinnell* factor and the second

*Wolinsky* factor thus weigh in favor of final approval.

> **b.** **The Substantial Risks of Litigation on Appeal Favor Final**
> **Approval (*Grinnell* Factors 4, 5, and 6, *Wolinsky* Factor 3).**

Plaintiffs face considerable risks as to both damages and class certification on appeal.  In

weighing these risks, the Court "must only weigh the likelihood of success by the plaintiff class

against the relief offered by the settlement."  *In re Austrian & German Bank Holocaust Litig.*, 80

F. Supp. 2d 164, 177 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 at

177 (2d Cir. 2001) (internal quotation marks omitted); *see also Beckman,* 293 F.R.D. at 476

(same for FLSA collective).

If the Second Circuit were to agree with CSC that the FWW method should apply, the

FLSA and Connecticut damages would be reduced to less than one-third of what they are now,

halving the Court's $18.8 million damages award to approximately $9.4 million.  *See* ECF No.

503; *see also* Hutchinson Decl. ¶ 17.  *Thomas v. Bed, Bath and Beyond Inc.*, which the Second

Circuit decided following the Court's award of damages, bolsters CSC's argument in favor of the

FWW method, increasing the risk of Plaintiffs' loss on this issue.  961 F.3d 598 (2d Cir. 2020).

The Department of Labor's recent Final Rule addressing certain aspects of the FWW method,

codified in the Code of Federal Regulations on June 8, 2020, presents further challenges to

Plaintiffs' arguments against the FWW method of damages calculation.  *See* 29 C.F.R. § 778.14.

Furthermore, on appeal, the Second Circuit could decertify both the Classes and the Collective.  Though Plaintiffs are confident they could withstand this challenge, such a decision could wipe out the entire judgment for nearly 1,000 Class and Collective Members, leaving them with the options of filing individual lawsuits, possibly in courthouses across the country, or giving up with nothing.

The resolution of damages issues, possible decertification, and lengthy appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement resolves these uncertainties and adjusts the calculation of FLSA damages accordingly.  Settlement Agreement § 3.4(b).  Evaluated against these risks, the proposed Settlement is an excellent result for the Class, weighing in favor of final approval.

**c.**      **The Late Stage and Substantial Discovery Completed Favor Final Approval (*Grinnell* Factor 3).**

The advanced stage of the proceedings also supports approval of the settlement.  Under the third *Grinnell* factor, settlement is especially favored when the litigation is at an "advanced stage" with an "extensive amount of discovery completed." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009).  This factor goes to "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Facebook IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015).

After almost seven years of extensive litigation, the Court and the Parties appreciate the merits and facts of this case.  Discovery is complete, and the case was litigated through merits and appeal.  This factor supports final approval: The preparation for and completion of

comprehensive discovery, multiple class and collective certification and decertification proceedings, a ten-day trial on the merits, damages calculations, and appellate briefing have provided both Parties with ample information to recommend settlement.

**d.**   **The Settlement Is Reasonable in Light of the Best Possible Recovery and Attendant Risks (Rule 23(e)(2)(C)), *Grinnell* Factors 8 and 9, and *Wolinsky* Factor 1).**

The Court must also balance the risks of establishing liability and damages against the benefits afforded to the Class, and the immediacy and certainty of a substantial recovery against the risks of continuing litigation. *Grinnell*, 495 F.2d at 463. In considering the reasonableness of a Settlement Amount, "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987). Consequently, the Second Circuit has recognized that "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

The determination of whether a settlement amount is reasonable also does not involve the use of a "mathematical equation yielding a particularized sum." *In re Austrian*, 80 F. Supp. 2d at 178. "Instead, 'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

In considering the adequacy of the relief to the California and Connecticut classes, the Court must also consider the costs, risks, and delay of appeal and the potential for additional trial proceedings, the effectiveness of any proposed method of distributing relief to the class,

- 14 -

including the method of processing class member claims, the terms of any proposed award of attorney's fees, including timing of payment, and the existence of any agreements required to be disclosed under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

For FLSA Collectives, Courts have approved settlement amounts that are 13% to 50% of the full value of the wage claims. *See Douglas v. Allied Universal Sec. Serv.*, No. 17-CV-6093-SJB, 2019 WL 10960255, at *4 (E.D.N.Y. Oct. 10, 2019) (approving an FLSA settlement that was 50% of the wage claim value); *Siddiky v. Union Square Hosp. Grp., LLC*, No. 15-CV-9705, 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (collecting FLSA cases approving settlements where range of recovery for class members ranged from 13 to 25%); *Larrea v. FPC Coffees Realty Co.*, No. 15-CV-1515, 2017 WL 1857246, at *2 (S.D.N.Y. May 5, 2017) (finding recovery of 43% of the anticipated maximum recovery was fair and reasonable).

Through this Settlement, the Class and Collective will receive a robust recovery of $9,505,259.59.  This relief is substantial given the appellate risks.  At just over half of the damages award, the settlement amount is an excellent result, given the risk that the Second Circuit would halve the award using the FWW damages calculation method.  There was also appellate risk on certification, which would effectively zero out damages for all Class and Collective Members unwilling to face years of individual litigation.  Thus, a reasonable assessment of further litigation would be a substantially lower damages amount, possibly for many fewer individuals, after years more of litigation.  The Settlement, by contrast, provides recovery to Class Members now.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii); Settlement Agreement § 2.6.

The attorneys' fees are also reasonable, as discussed above and below, and in Plaintiffs' accompanying fee motion.  The proposed fee award fairly compensates counsel for the risk of

pursuing class litigation for nearly seven years, with no promise of return. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The requested fee represents roughly 75.8% of Class Counsel's total lodestar in this case, measured by their normal billing rates. Hutchinson Decl. ¶ 22. Class Counsel's fees will not be paid until after final approval, at the same time that CSC provides the settlement administrator with the Class and Collective Members' settlement fund. Settlement Agreement § 2.6(a). Finally, no separate agreement was made in connection with the proposed settlement. *See* Fed. R. Civ. Proc. 23(e)(2)(C)(iv).

Measured against the risks of appeal, the Settlement represents a substantial, tangible recovery. The $9,505,259.59 Fund readily falls within the range of reasonable results, given the complexity of this action and the significant risks and delays presented by the FWW and decertification issues that await review by the Second Circuit.

### e.    The Ability to Withstand Greater Judgment Does Not Weigh Against Final Approval (*Grinnell* Factor 7).

While CSC could withstand a greater judgment, "a defendant is not required to empty its coffers before a settlement can be found adequate." *Shapiro v. JPMorgan Chase & Co.*, Nos. 11-cv-8331, 11-cv-7961, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014). CSC's financial wherewithal "do[es] not ameliorate the force of the other *Grinnell* factors, which lead to the conclusion that the settlement is fair, reasonable and adequate." *Id.*

### 4.    The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).

In determining whether the proposed settlement agreement "treats class members equitably relative to each other," courts may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Rosenfeld*, 2021 WL 508339, at *7 (quoting Fed. R. Civ. P. 23 advisory committee's

note to 2018 amendment).  "A plan for allocating settlement funds need not be perfect. Rather, it

need only have a reasonable, rational basis, particularly if recommended by experienced and

competent class counsel."  *Id.* at *6 (internal quotation marks and citations omitted).

Here, the plan of allocation fairly accounts for the strengths of different Class and

Collective Members' claims.  Specifically, the plan of allocation accounts for the strength of

California claims as to the FWW issue, and it provides an approximately $30 per workweek

floor, which fairly compensates those individuals who did not record all of their overtime hours

in CSC's systems.  Settlement Agreement § 3.4.

### 5.   The Overwhelmingly Positive Reaction of the Settlement Class Supports Final Approval (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.*,

186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  Here, "[t]he fact that the vast majority of class

members neither objected nor opted out is a strong indication that the proposed settlement is fair,

reasonable, and adequate."  *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008).

### a.   The Reaction of the Classes and the Collective Have Been Overwhelmingly Positive.

The reaction of Class Members to the proposed Settlement has been overwhelmingly

positive.  Notice was mailed to 909 individuals on April 13, 2021.  Pavlik Decl. ¶ 10.  Since

then, three self-identifying Class Members requested inclusion in the Settlement Class, with

these self-ids currently under review by CSC.  *Id.* at ¶ 15.  No individuals have opted out, and

only one individual (0.1%) has objected, with the objection deadline of June 12, 2021

approaching.  *Id.* at ¶¶ 10, 16-17.  *See In re Merrill Lynch & Co., Inc. Research Reports Sec.*

*Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (11 objections out of 1.8 million mailed notices

reflected "overwhelmingly positive reaction of the class . . . weigh[ing] heavily in favor of

approval of the Settlement").  This overwhelmingly positive initial response supports final approval of the settlement.

### b.      Objection of John Saffos

Collective Member John Saffos raised an objection to his settlement award on April 20, 2021.  *See* Letter, Ex. B to Pavlik Decl.  Mr. Saffos argues in his objection letter that his settlement award of $640.90 does not capture the work ethic of his team and the sacrifices made by System Administrators for the benefit of CSC.  Mr. Saffos worked in a covered position for 16.4 workweeks, from August to December 2014.  Hutchinson Decl. ¶ 24.  Thus, his award equals approximately $39 per workweek.  During this time, Mr. Saffos averaged 0.75 hours in overtime per week.  *Id.*

Plaintiffs appreciate that their colleagues worked incredibly hard in their time at CSC, and, as they themselves testified at trial, the class members' work often involved great personal sacrifice.  However, this fact does not bear on whether the Settlement is fair, reasonable, and adequate.  Given the risks of appeal and possible future litigation, including CSC's argument that the FWW damages method should apply, the settlement amount is fair and reasonable.

In sum, the Class and Collective Members' overwhelmingly positive reaction "weighs strongly in favor of" final approval of the Settlement.  *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266–67 (S.D.N.Y. 2012) (5.1% opt-out rate and less than 1% objection rate "weighs strongly in favor of approval")

### B.      The Court-Approved Notice Program Provided the Best Practicable Notice.

On March 16, 2021, the Court approved the Class and Collective Notice, finding "that distribution of the Class Notice . . . meets the requirements of due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto."  ECF No. 581 at ¶ 7.

Notice has now been provided to all Class and Collective Members in accordance with the court-approved Notice Settlement Agreement, ECF No. 581-1.  Notices were mailed to 909 Class Members via First Class mail on April 13, 2021.  Pavlik Decl. ¶ 10.  Notices were emailed to 631 Class Members that same day.  *Id.* at ¶ 11.  78 Notices were re-mailed after Rust performed address traces on 89 Notices which were returned as undeliverable.  *Id.* at ¶ 12.  These re-mailed notices were provided with an extended deadline of 45 days after the re-mail date.  *Id.* at ¶ 14.  Seven of these Notices were again returned as undeliverable.  *Id.* at ¶ 12.  Class Counsel has requested contact information for the 18 Notices which remain undeliverable.  *Id.*

V.  **CONCLUSION**

For the foregoing reasons, the Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated:  June 1, 2021                    Respectfully submitted,

                                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP


                                        By:_____
                                             Daniel M. Hutchinson

                                             Daniel M. Hutchinson
                                             Lin Y. Chan
                                             **LIEFF CABRASER HEIMANN &**
                                             **BERNSTEIN LLP**
                                             275 Battery Street, 29th Floor
                                             San Francisco, CA 94111
                                             Telephone: (415) 956-1000

                                             Jahan C. Sagafi
                                             **OUTTEN & GOLDEN LLP**
                                             One California Street, 12th Floor
                                             San Francisco, CA 94111
                                             Telephone: (415) 638-8800

Darnley D. Stewart
Michael J. Scimone
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

Karen B. Kravetz (ct 19665)
**SUSMAN, DUFFY & SEGALOFF, P.C.**
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

Todd Jackson
Darin Ranahan
Genevieve Casey
**FEINBERG JACKSON WORTHMAN &
WASOW**
2030 Addison St., Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998

*Attorneys for Plaintiffs, the Classes, and the
Collective*