**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
Jared W. Goldman*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Michael J. Scimone*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct 19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

**FEINBERG JACKSON WORTHMAN & WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
2030 Addison St., Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

*admitted *pro hac vice*

*Attorneys for Plaintiffs, the Classes, and the Collective*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>COMPUTER SCIENCES CORPORATION,<br><br>Defendant. | No.: 3:14-cv-956 (JBA) |

## PLAINTIFFS' MOTION FOR APPROVAL OF
## ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

    I.     District Court Proceedings ......................................................... 2

           A.    Pre-Trial Proceedings ................................................. 2

           B.    Trial ........................................................................ 3

           C.    Post-Trial Proceedings ................................................ 3

           D.    Ruling on Service Awards, Attorneys' Fees, and Costs .............. 4

                 1.    Hourly Rates ................................................... 5

                 2.    Hours ............................................................. 5

                 3.    Costs ............................................................. 5

                 4.    Service Awards ................................................ 6

    II.    The Risks of the Fee Appeals ..................................................... 6

    III.   Risks on the Merits Appeal ........................................................ 7

    IV.   Settlement Negotiations ............................................................. 9

ARGUMENT ................................................................................................... 10

    I.     Plaintiffs Are Entitled to Recover Reasonable Attorneys' Fees and Costs. ......... 11

           A.    Fees under the FLSA Are Awarded Based on Work Performed, Without a Proportionality Limit, to "Prevent Abuses by Unscrupulous Employers." ........................................ 11

           B.    The CMWA and California Labor Code Are Remedial Statutes Designed to Protect Workers from Wage Theft .................... 13

    II.    The Litigated Fee Award Is Presumptively Reasonable, Especially in Light of Counsel's Substantial Uncompensated Work Since Then. ........ 14

           A.    Class Counsel Obtained Exceptional Results. ......................... 14

           B.    The Hourly Rates Approved by the Court in 2020 Are Reasonable Today. .................................................. 16

1. Plaintiffs Acted Reasonably in Hiring Out-of-District Counsel. ... 17

2. The *Johnson* Factors Support Class Counsel's Adjusted Rates. ... 18

    a. The Time and Skill Needed to Prosecute This Case Were Substantial (*Johnson* Factors 1-3). ................................... 18

    b. Class Counsel Have Experience and the Proven Ability to Successfully Prosecute Complex Class Actions (*Johnson* Factors 4-5, 9, and 12). .................................................... 19

    c. Class Counsel Obtained an Excellent Result in the Face of Significant Risk (*Johnson* Factors 6, 8, 10). .................... 20

    d. Client-Specific Factors Support Class Counsel's Fee Award (*Johnson* Factors 7 and 11). ............................................. 20

C. Class Counsel's Adjusted Hours Are Reasonable. .................................. 21

III. The Limited Costs Approved by the Court in 2020 Are Reasonable And Should Be Reaffirmed. ................................................................................................... 22

IV. The Court's 2020 Decision Granting Four Class Representative Service Awards Should Be Reaffirmed. ............................................................................................ 22

CONCLUSION .............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**CASES**      **PAGE(S)**

*Alli v. Bos. Mkt. Corp.*,
  No. 10 Civ. 00004, 2012 WL 1356478 (D. Conn. Apr. 17, 2012) ........................................... 13

*Alvarado v. Dart Container Corp. of Cal.*,
  411 P.3d 528 (2018) ................................................................................................................ 7

*Amaral v. Cintas Corp. No. 2*,
  78 Cal. Rptr. 3d 572 (2008) .................................................................................................... 13

*Anwar v. Fairfield Greenwich Ltd.*,
  No. 09 Civ. 118, 2012 WL 1981505 (S.D.N.Y. June 1, 2012) ................................................ 23

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*,
  522 F.3d 182 (2d Cir. 2008) ........................................................................................ 16, 17, 18

*Aros v. United Rentals, Inc.*,
  No. 10 Civ. 73, 2012 WL 3060470 (D. Conn. July 26, 2012) ................................................. 23

*Atempa v. Pedrazzani*,
  238 Cal. Rptr. 3d 465 (2018) .................................................................................................. 13

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
  537 F.3d 132 (2d Cir. 2008) .................................................................................................... 11

*Blackmon v. Brookshire Grocery Co.*,
  835 F.2d 1135 (5th Cir. 1988) .................................................................................................. 7

*Bobadilla v. MDRC*,
  No. 03 Civ. 9217, 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) ........................................... 20

*Bonnette v. Cal. Health & Welfare Agency*,
  704 F.2d 1465 (9th Cir. 1983) ................................................................................................ 12

*Bozak v. FedEx Ground Package Sys., Inc.*,
  No. 11 Civ. 00738, 2014 WL 3778211 (D. Conn. July 31, 2014) ..................................... 22, 23

*Butler v. Hartford Tech. Inst., Inc.*,
  704 A.2d 222 (1997) ............................................................................................................... 13

*Cabala v. Crowley*,
  736 F.3d 226 (2d Cir. 2013) ...................................................................................................... 9

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015).............................................................. 11, 15

*Clarke v. JPMorgan Chase Bank, N.A.*,
   No. 08 Civ. 2400, 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ............................................. 20

*Clements v. Serco, Inc.*,
   530 F.3d 1224 (10th Cir. 2008) ....................................................................... 7

*Cox v. Brookshire Grocery Co.*,
   919 F.2d 354 (5th Cir. 1990) ......................................................................... 12

*Desmond v. PNGI Charles Town Gaming, L.L.C.*,
   630 F.3d 351 (4th Cir. 2011) ......................................................................... 7

*Farrar v. Hobby*,
   506 U.S. 103 (1992)................................................................................. 14

*Fegley v. Higgins*,
   19 F.3d 1126 (6th Cir. 1994) ........................................................................ 12

*Fisher v. SD Prot. Inc.*,
   948 F.3d 593 (2d Cir. 2020)......................................................................... 11

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................... 23

*Garcia v. Tyson Foods, Inc.*,
   No. 06 Civ. 2198, 2012 WL 5985561 (D. Kan. Nov. 29, 2012)........................................... 12

*Good Nite Inn Mgmt., Inc. v. Ahmed*,
   No. A129488, 2011 WL 2565257 (Cal. Ct. App. June 29, 2011) ........................................... 13

*Grochowski v. Ajet Const. Corp.*,
   No. 97 Civ. 6269, 2002 WL 465272 (S.D.N.Y. Mar. 27, 2002) ............................................ 11

*Guallpa v. N.Y. Pro Signs Inc.*,
   No. 11 Civ. 3133, 2014 WL 2200393 (S.D.N.Y. May 27, 2014)............................................ 12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)................................................................................. 14

*Holyfield v. F.P. Quinn & Co.*,
   No. 90 Civ. 507, 1991 WL 65928 (N.D. Ill. Apr. 22, 1991) .............................................. 12

*Howe v. Hoffman-Curtis Partners Ltd.*,
   215 F. App'x 341 (5th Cir. 2007) .................................................................... 12

*Hui Luo v. L & S Acupuncture, P.C.*,
    649 F. App'x 1 (2d Cir. 2016) ................................................................. 8

*James v. Wash Depot Holdings, Inc.*,
    489 F. Supp. 2d 1341 (S.D. Fla. 2007) ................................................... 12

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................. 17, 18

*Karic v. Major Auto. Co., Inc.*,
    No. 09 Civ. 5708, 2016 WL 1745037 (E.D.N.Y. April 27, 2016) .......... 23

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) .................................................................. 22

*Lopes v. Brazilian Travel Serv., Ltd.*,
    No. 17 Civ. 820, 2017 WL 10311218 (D. Conn. Sept. 26, 2017) .......... 11

*Lucio-Cantu v. Vela*,
    239 F. App'x 866 (5th Cir. 2007) ........................................................... 12

*M.D. v. N.Y.C. Dep't of Educ.*,
    No. 17 Civ. 2417, 2018 WL 4386086 (S.D.N.Y. Sept. 14, 2018) .......... 19

*Mentor v. Imperial Parking Sys., Inc.*,
    No. 05 Civ. 7993, 2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010) ...... 23, 24

*Merino v. Beverage Plus Am. Corp.*,
    No. 10 Civ. 706, 2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012) ............ 12

*Morales v. MW Bronx*,
    No. 15 Civ. 6296, 2017 WL 4444663 (S.D.N.Y. Oct. 5, 2017) ............. 12

*Olorode v. Streamingedge, Inc.*,
    No. 11 Civ. 6934, 2014 WL 1689039 (S.D.N.Y. Apr. 29, 2014) ............ 20

*Ontiveros v. Zamora*,
    No. 08 Civ. 567, 2009 WL 425962 (E.D. Cal. Feb. 20, 2009) ............... 13

*Ortiz v. Regan*,
    980 F.2d 138 (2d Cir. 1992) .................................................................... 9

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............... 23

*Pellegrino v. Robert Half Internat., Inc.*,
    106 Cal. Rptr. 3d 265 (2010) ................................................................. 13

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
    818 F.2d 278 (2d Cir. 1987)....................................................................................... 22

*Robinson v. Open Top Sightseeing S.F., LLC*,
    No. 14 Civ. 00852, 2018 WL 2088392 (N.D. Cal. May 4, 2018) ............................ 11

*Siddiky v. Union Square Hosp. Grp., LLC*,
    No. 15 Civ. 9705, 2017 WL 2198158 (S.D.N.Y. May 17, 2017)............................ 16

*Stevens v. Vito's By The Water, LLC*,
    No. HHDCV156062506S, 2018 WL 2749694 (Conn. Super. Ct. May 17, 2018) ................. 13

*Summa v. Hofstra Univ.*,
    No. 07 Civ. 3307, 2012 WL 13046732 (E.D.N.Y. Feb. 22, 2012)............................ 12

*Thomas v. Bed Bath & Beyond Inc.*,
    961 F.3d 598 (2d Cir. 2020)................................................................................. 8, 15

*Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*,
    No. 10 Civ. 60, 2012 WL 4092515 (JBA) .............................................................. 14

*Urnikis–Negro v. Am. Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) ................................................................................... 7

*Valerio v. Putnam Assocs. Inc.*,
    173 F.3d 35 (1st Cir. 1999)....................................................................................... 7

*Wales v. Jack M. Berry, Inc.*,
    192 F. Supp. 2d 1313 (M.D. Fla. 2001).................................................................. 12

*Young v. Cooper Cameron Corp.*,
    586 F.3d 201 (2d Cir. 2009).................................................................................... 21

**STATUTES**

28 U.S.C. § 1961...................................................................................................... 5

29 U.S.C. § 216(b).................................................................................................. 11

Cal. Lab. Code § 218.5 ........................................................................................... 11

Conn. Gen. Stat. § 31-68........................................................................................ 11

**RULES**

Fed. R. Civ. P. 23(h) ......................................................................................... 5, 10

**REGULATIONS**

29 C.F.R. § 541.400 ................................................................................................................... 20

29 C.F.R. § 778.114 ..................................................................................................................... 7

## **INTRODUCTION**

Plaintiffs respectfully move for a fee and cost award of $8,094,720.41, which is the amount awarded by this Court in its thoroughly reasoned, 42-page order in July 2020 following vigorously contested motion practice.  ECF No. 563.  This requested award is a reasonable compromise of Defendant Computer Science Corporation's ("CSC") exposure for Class Counsel's fees and costs, for several reasons.  First, it resulted from a litigated adversarial process, unlike the vast majority of class fee awards, which are wholly a product of the parties' agreement.  Second, the Court's 42-page fee order carefully analyzed the facts and law governing the fee petition.  Third, it incorporates Plaintiffs' earlier concessions to exclude all hours from specific categories of time, and it incorporates the Court's earlier decisions to decrease hourly rates, make an across-the-board 12% reduction of all hours, and exclude 39% of costs requested.  Fourth, it omits Class Counsel's lodestar from the most recent 20 months of litigation (the time post-dating the litigated fee petition).  Fifth, it constitutes a reasonable estimate of the outcome of the litigation, taking into account the possibility that the Second Circuit could award full requested fees or decrease them below the award of the Court.  Any reasonable estimate of the outcome of litigation on fees should reflect the reality that the Second Circuit defers to district courts' "considerable discretion" in awarding fees.

In short, based on the Court's careful analysis after a contested adversarial process, the compromises described above, and the realistic appellate outcomes, the requested fee is reasonable.  Finally, Plaintiffs request that the fee and cost award be reduced by $40,000 in order to provide a service award of $10,000 to each of the Named Plaintiffs in recognition of their service to the Classes and Collective, and consistent with Second Circuit precedent.

## FACTUAL AND PROCEDURAL BACKGROUND

While the Court is aware of the seven years of litigation preceding this fee and cost request, Plaintiffs briefly summarize the relevant factual and procedural background here.

### I.     District Court Proceedings

#### A.     Pre-Trial Proceedings

On July 1, 2014, Plaintiffs filed this collective and class action in the U.S. District Court for the District of Connecticut on behalf of themselves and all others similarly situated, alleging violations of the Fair Labor Standards Act ("FLSA") and Connecticut and California's wage and hour laws for failure to pay premium overtime wages.  *See* ECF No. 1.

On June 9, 2015, the Court granted Plaintiffs' motion for conditional certification under the FLSA, with the collective comprised of CSC technical support workers known as System Administrators.  *See* ECF No. 168.  On June 30, 2017, the Court certified a Connecticut and California Class of Associate Professional and Professional System Administrators ("SAs").  *See* ECF No. 327.  On July 14, 2017, CSC filed a petition for interlocutory review of this class certification pursuant to Fed. R. Civ. P. 23(f).  *In Re: Comput. Scis. Corp.*, No. 17-2185, ECF No. 1 (2d Cir. July 14, 2017).  The Second Circuit denied CSC's petition on November 21, 2017. *See* ECF No. 410.

Around the same time, in August 2017, CSC filed a motion for decertification, arguing that the Court should decertify the California Class because Plaintiff Strauch was an inadequate class representative.  *See* ECF No. 343.  The Court denied CSC's motion.  *See* ECF No. 358.  On October 27, 2017, CSC filed a second motion for decertification, this time arguing that Plaintiffs' trial plan was deficient and that both state law Classes should be decertified.  *See* ECF No. 373. The Court denied this motion too.  *See* ECF No. 412.

### B.     Trial

A 10-day jury trial began on December 7, 2017.  At the close of Plaintiffs' evidence,

CSC moved for a directed verdict pursuant to Fed. R. Civ. P. 50, ECF No. 424, which the Court

denied, ECF No. 425.  CSC renewed that motion after the close of all evidence.  *See* ECF No.

435.  Again, the Court denied the motion.  ECF No. 438.

On December 20, 2017, the jury returned a unanimous verdict for Plaintiffs, finding that

CSC had misclassified SAs as exempt under the FLSA and Connecticut and California state

wage laws, and that its misclassification had been willful.  *See* ECF No. 442.  The Court entered

judgment for Plaintiffs and the Class and Collective Members on January 5, 2018.  *See* ECF No.

444.

### C.     Post-Trial Proceedings

On February 2, 2018, CSC moved for judgment as a matter of law, ECF No. 446, and

moved to decertify the state law classes for a third time, ECF No. 447.  The Court denied both

motions.  *See* ECF No. 476.  On October 28, 2018, CSC appealed this ruling, together with "all

adverse rulings subsumed therein" while reserving the right to supplement its notice of appeal in

light of future rulings on remedies.  ECF No. 477.

On November 9, 2018, the Court issued its Ruling on Remedies, finding, among other

things, that "the [fluctuating workweek] method cannot be applied as a matter of law here, where

Defendant chose not to contract for or pay contemporaneous overtime premiums."  ECF No.

479.  After CSC advised the Court and Plaintiffs of errors in the timekeeping data CSC had

produced during discovery, on January 24, 2019, the Court appointed a Special Master to address

the calculation of damages.  ECF No. 491.

During the winter, spring, and summer of 2019, the parties engaged in intensive litigation

regarding the measure of damages, under the supervision of Special Master Charles Stohler.  The

Special Master made recommendations to the Court regarding damages after an exhaustive

process.  On August 12, 2019, the Court adopted the Special Master's Report and

Recommendation as to damages in substantial part and entered an Amended Judgment in favor

of Plaintiffs in the amount of $18,755,016.46.  *See* ECF Nos. 514, 515.  On September 4, 2019,

CSC amended its Notice of Appeal to appeal from the Court's Ruling on Remedies, the adoption

of the Special Master's Report and Recommendation, and the Amended Judgment.  *See* ECF No.

517.

  **D.**  <u>**Ruling on Service Awards, Attorneys' Fees, and Costs**</u>

  On September 18, 2019, Plaintiffs moved for an award of attorneys' fees and costs as

prevailing parties under the FLSA and state wage laws, and for service awards for the Named

Plaintiffs.  *See* ECF Nos. 520, 523.  Based on 20,607 hours of work performed for the Class and

Collective Members, and $584,560.54 in litigation costs expended for their benefit, Plaintiffs'

motion requested reimbursement of all costs and an award of $13,616,063.17 in attorneys' fees.[1]

*See* ECF No. 563 at 1.  Plaintiffs voluntarily reduced their fee request by discounting travel time,

removing time related to depositions of Senior Professional-level SAs (who were not included in

the certified Classes or Collective), and removing hours worked by professionals who performed

less than 10 hours of work on the case.  *See* ECF No. 563 at 4-5.

  On July 27, 2020, the Court issued a 42-page Ruling on Post-Trial Motions for Service

Awards, Attorneys' Fees, and Costs ("July 2020 Fee Order"), which awarded $7,740,152.51 in

fees plus $354,567.90 in costs, for a total of $8,094,720.41.  *Id*. at 41.

---

[1] Class Counsel's contemporaneous billing records, totaling over 700 pages, were filed on the docket in this matter at ECF No. 522.

Pursuant to Fed. R. Civ. P. 23(h) and in accordance with the July 2020 Fee Order, this motion seeks approval for fees and costs for those same amounts even though Plaintiffs' counsel have spent a significant amount of time litigating this matter for an additional twenty months.

### 1.   Hourly Rates

With respect to Class Counsel's hourly rates, the July 2020 Fee Order found that Class Counsel were entitled to rates consistent with "the highest out-of-district rates that [the Court] has previously applied." *Id*. at 17. Specifically, the Court awarded Class Counsel rates of up to $725 for partners, $450 for all other attorneys, and $195 for staff, including paralegals. *Id*. These rate adjustments reduced Class Counsel's lodestar from $10,369,189 to $8,795,051.10. *See id.* at 18.

### 2.   Hours

The Court applied a 12% across-the-board reduction to Class Counsel's hours to address various concerns such as inefficient staffing, vague billing entries, and time expended on issues on which Plaintiffs did not ultimately prevail. *See id*. at 21-24. This across-the-board reduction further reduced Class Counsel's lodestar from $8,795,051.10 to $7,740,152.51. The Court ultimately awarded Class Counsel this amount, together with post-judgment interest pursuant to 28 U.S.C. § 1961.[2] *See id*. at 24, 29-31.

### 3.   Costs

Class Counsel sought $584,560.54 in out-of-pocket costs and expenses in the September 2019 fees motion. *See id*. at 31. Of these, the Court awarded $354,567.90 after reductions

---

[2] The Court denied Plaintiffs' request for an upward adjustment to the federal and state portions of their lodestar and denied CSC's request for a downward adjustment. *See* ECF No. 563 at 26-31.

related to a withdrawn expert report and insufficiently detailed itemizations.[3] *See id*. at 31-37, 41.

### 4.   Service Awards

The Court granted Plaintiffs' request for four service awards of $10,000 each ($40,000 total) in light of the risks Named Plaintiffs bore, the time and effort they expended on the litigation, and the benefit they conferred on the Class and Collective Members. *See id*. at 40-41. The Court further granted Plaintiffs' request that the service awards be paid from Class Counsel's attorneys' fees award. *See id*. at 41.

In total, the Court awarded $7,740,152.51 in fees plus $354,567.90 in costs, for a total of $8,094,720.31.

## II.   The Risks of the Fee Appeals

The parties respectfully disagreed with the Court's July 2020 Fee Order.  CSC filed a Notice of Appeal to the Second Circuit on August 21, 2020, which sought a further reduction of the award to $4,459,009.50.  *See* ECF Nos. 565.  Plaintiffs respectfully cross-appealed to seek the full amounts requested of $13,616,063.17 in attorneys' fees and $584,560.54 in litigation costs expended for the Classes' and Collective's benefit.  *See* ECF No. 567.

Throughout the appeal, the parties maintained that their respective positions before the District Court would be adopted by the Second Circuit.  Thus, the result awarded on appeal would necessarily fall somewhere between $4,459,009.50 and $14,200,623.71.

---

[3] At one point in the Fee Order, the cost award is listed as a slightly higher amount: $372,552.10.  *See* ECF No. 563 at 37.  Plaintiffs are using the lower of the two figures.

### III.   **Risks on the Merits Appeal**

Separately, the parties appealed the Judgment.  However, unlike the fee appeals, the risks on the merits fell solely on Plaintiffs.

After entry of the Amended Judgment in August 2019 (and while the Court was adjudicating Plaintiffs' 2019 fees motion), the parties proceeded to litigate CSC's appeals, with CSC filing its opening brief to the Second Circuit on December 23, 2019, Plaintiffs opposition on April 14, 2020, and CSC's reply on May 26.  *See Strauch v. Comput. Scis. Corp.*, No. 18-3136, ECF Nos. 69, 87, 118 (2d Cir.).  These appeals presented two substantial risks to the Judgment.

First, CSC argued that the Court's Ruling on Remedies (ECF No. 479) should have applied the fluctuating workweek ("FWW") method to Connecticut Class[4] and FLSA Collective Members' overtime damages, arguing that these workers agreed to receive a fixed salary as compensation for all hours worked.  *See id.*, ECF No. 69, at 43-58; 29 C.F.R. § 778.114.  While Plaintiffs believe they would have defeated CSC's argument that the FWW method can be used to decrease a defendant's obligation to pay overtime wages to misclassified workers who did not receive contemporaneous overtime compensation, several circuit-level decisions have applied the FWW method to misclassified workers seeking overtime damages.  *See, e.g.*, *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011); *Urnikis–Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230-31 (10th Cir. 2008), *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 39 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988).  Moreover, after CSC's appeals were

---

[4] California law protects workers by prohibiting application of the FWW method for calculating overtime damages.  *See Alvarado v. Dart Container Corp. of Cal.*, 411 P.3d 528, 540 (2018), *as modified* (Apr. 25, 2018).

fully briefed, the Second Circuit issued its decision in *Thomas v. Bed Bath & Beyond Inc.*, holding that the FWW method does not require a showing that employees' hours fluctuate both above and below 40 hours each week.  961 F.3d 598, 610 (2d Cir. 2020).  CSC argued that *Thomas* lent further support to their position on the FWW.

Had CSC prevailed on the FWW issue, total damages for Class and Collective Members would have been decreased by slightly more than half, resulting in total damages of approximately $9,400,000—less than the $9.5 million settlement fund here.  *See* ECF No. 577-1 ¶ 17.  And even if CSC were not to prevail in this aspect of the appeal, a favorable ruling for Plaintiffs would have created a circuit split and an opportunity for U.S. Supreme Court review.

Second, CSC sought to decertify the Classes and Collective on appeal, arguing that individual questions precluded certification, including variations in SAs' duties, applicable exemptions, and relevant policies throughout the class period.  *See Strauch*, No. 18-3136, ECF No. 69 at 19-41.  While Plaintiffs are confident that the Class and Collective definitions could withstand such challenges, there is no guarantee that the Second Circuit would agree.  If the Classes and Collective were decertified on appeal, each individual Class and Collective Member would have to file a new individual lawsuit in or outside this District and litigate the applicability of the jury's liability verdict and other aspects of the case, and the damages judgment would be erased.[5]

---

[5] While these class certification and damages appeals would have either decreased or left untouched the Class and Collective Members' recovery, the fee appeal would have either decreased, increased, or left untouched the fee award.  Realistically, the most likely outcome is that the Second Circuit would not disturb the Court's July 2020 Fee Order in either direction. *See, e.g.*, *Hui Luo v. L & S Acupuncture, P.C.*, 649 F. App'x 1, 2 (2d Cir. 2016) (summary order) ("We afford a 'district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'")

Thus, CSC's appeal of the Amended Judgment presented a so-called one-way ratchet. The appeal threatened to reduce the class damages to $0 or $9,400,000. Under no circumstances would the class receive more than the Amended Judgement amount.

## IV.   Settlement Negotiations

After years of unsuccessful settlement attempts (*see* ECF No. 520 at 11-12), the parties renewed settlement discussions with the assistance of experienced wage and hour class and collective action mediator Hunter R. Hughes, III, Esq. around August 2020, after the merits appeals were fully briefed. Declaration of Jahan C. Sagafi in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and Service Awards ("Sagafi Decl.") ¶ 19. Mr. Hughes independently analyzed and assessed the parties' respective risks on appeal in light of his 21 years of experience mediating similar actions. *Id.* ¶ 20. Under the guidance and direction of Mr. Hughes, the parties separately negotiated the settlement fund and the fee and cost amount. *Id.* ¶ 21. Those negotiations necessarily reflected the risks faced by the parties on the Amended Judgment and fee appeals, respectively. *Id.* ¶ 22. Unfortunately, only Plaintiffs faced risk on the Amended Judgement. For the fee appeals, both parties faced risk, although, in absolute dollar terms, CSC faced more risk if the Second Circuit adopted Plaintiffs' position. After months of negotiations, the parties reached impasse. *Id.* ¶ 23.

---

(quoting *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014)); *Cabala v. Crowley*, 736 F.3d 226, 229 (2d Cir. 2013) ("The district court observes the parties' litigation directly and is thus best situated to consider the case-specific factors relevant to a reasonable fee assessment. Thus, we accord 'substantial deference' to a district court's fee determinations.") (internal quotation marks and citation omitted); *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992) ("A district court is in the best position to determine the amount of work that was necessary to achieve the results in a particular case and, therefore, is entitled to ample discretion in its decision.").

The mediator therefore made a mediator's proposal to break the impasse.  *Id*. ¶ 24.  That mediator's proposal consisted of a separate amount for damages ($9,505,259.59) and for Class Counsel's fees and costs ($8,094,720.41).  *Id*. ¶ 25.

The parties executed a Memorandum of Understanding ("MOU") on October 26, 2020, two weeks before the appellate merits argument scheduled for November 9, 2020.[6]  *Id*. ¶ 26. Over the next four months, the parties negotiated the terms of the final Settlement Agreement, which was fully executed on February 24, 2021.  Sagafi Decl. ¶ 27.

## ARGUMENT

After nearly seven years of litigation, including obtaining class and collective certification for over 900 SAs, defending more than 37 depositions, defeating three decertification motions, securing a liability and willfulness verdict at trial, painstakingly litigating each individual's damages, penalties, and interest amounts based on detailed records, and litigating CSC's appeals to the brink of oral argument, Plaintiffs seek approval of $8,094,720.41 in attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(h).[7]  This amount is identical to the July 2020 Fee Order amount, although it excludes post-judgment interest, which is also called for in the Order.  *See* ECF No. 563 at 41.

The requested fee represents 91% of Class Counsel's total lodestar under the Court-ordered rates set forth in the July 2020 Fee Order.  Sagafi Decl. ¶ 28.  Class Counsel's lodestar using the Court-approved rates for the time period after the fee motion is $756,134.50, representing 1,795 additional hours of work.  *Id*.  This additional time spent by Class Counsel represents work briefing and preparing for argument of CSC's merits appeals, negotiating and

---

[6] The following day, the parties moved to adjourn the oral argument, which request was granted. *See Strauch*, No. 18-3136, ECF Nos 153, 156.

[7] As discussed *supra*, Plaintiffs' fees and costs request is inclusive of the Named Plaintiff service awards.

seeking approval for the settlement, communicating with and assisting Class and Collective

Members during the litigation and settlement process, and litigating the 2019 fee motion. *Id*. ¶

29. Class Counsel do not seek compensation for these hours.

**I.      Plaintiffs Are Entitled to Recover Reasonable Attorneys' Fees and Costs.**

Plaintiffs are entitled to recover reasonable attorneys' fees under the FLSA, Connecticut,

and California state law. *See* ECF No. 563 at 4; 29 U.S.C. § 216(b); Conn. Gen. Stat. § 31-68

(authorizing "reasonable attorneys' fees" in wage and hour cases); Cal. Lab. Code § 218.5

(same); *see also Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008);

*Lopes v. Brazilian Travel Serv., Ltd.*, No. 17 Civ. 820, 2017 WL 10311218, at *3 (D. Conn. Sept.

26, 2017); *Robinson v. Open Top Sightseeing S.F., LLC*, No. 14 Civ. 00852, 2018 WL 2088392,

at *1 (N.D. Cal. May 4, 2018).

**A.      Fees under the FLSA Are Awarded Based on Work Performed, Without a Proportionality Limit, to "Prevent Abuses by Unscrupulous Employers."**

The FLSA is a "uniquely protective statute" designed to "prevent abuses by unscrupulous

employers[ ] and remedy the disparate bargaining power between employers and employees."

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015). "The purpose of the

FLSA attorney fees provision is 'to insure effective access to the judicial process by providing

attorney fees for prevailing plaintiffs with wage and hour grievances.'" *Grochowski v. Ajet*

*Const. Corp.*, No. 97 Civ. 6269, 2002 WL 465272, at *2 (S.D.N.Y. Mar. 27, 2002) (quoting

*Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994)). As with other civil rights statutes,

there is no proportionality limit for fees awarded under the FLSA. *See Fisher v. SD Prot. Inc.*,

948 F.3d 593, 602-03 (2d Cir. 2020) ("Neither the text nor the purpose of the FLSA . . . supports

imposing a proportionality limit on recoverable attorneys' fees").

11

While the damages at stake in a wage case are a function of the employees' regular rate of pay and the number of overtime hours at issue, "the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Morales v. MW Bronx*, No. 15 Civ. 6296, 2017 WL 4444663, at *2 (S.D.N.Y. Oct. 5, 2017) (quoting *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011); *see also Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133, 2014 WL 2200393, at *11 (S.D.N.Y. May 27, 2014), *report and recommendation adopted*, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014) (same); *Merino v. Beverage Plus Am. Corp.*, No. 10 Civ. 706, 2012 WL 4468182, at *1 (S.D.N.Y. Sept. 25, 2012) (same); *Summa v. Hofstra Univ.*, No. 07 Civ. 3307, 2012 WL 13046732, at *4 (E.D.N.Y. Feb. 22, 2012) ("[T]he fact that the requested attorneys' fees exceed the [net settlement fund] does not render them unreasonable.").[8]  As explained below, the results obtained in this case, the Court's prior analysis, and all of the relevant factors support approval of Plaintiffs' fees and costs request.

---

[8] *See also Garcia v. Tyson Foods, Inc.*, No. 06 Civ. 2198, 2012 WL 5985561, at *1-2 (D. Kan. Nov. 29, 2012) (awarding over $3.2 million in fees on a jury verdict of $533,011 in a collective action); *Howe v. Hoffman-Curtis Partners Ltd.,* 215 F. App'x 341, 342 (5th Cir. 2007) (affirming fees of $129,805.50 on $23,357.30 in damages); *Lucio-Cantu v. Vela*, 239 F. App'x 866 (5th Cir. 2007) (finding no abuse of discretion in award of $51,750 in fees on a recovery of $4,697); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1345, 1354 (S.D. Fla. 2007) (awarding fees of $114,021 on a judgment of $3,493.62); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1316 (M.D. Fla. 2001) (awarding fees of $352,225.40 on an FLSA recovery of $21,000); *Fegley*, 19 F.3d at 1134-35 (6th Cir. 1994) (affirming fees of $40,000 on a judgment of $7,680 for overtime compensation; courts have "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.") (internal citation omitted); *Holyfield v. F.P. Quinn & Co.*, No. 90 Civ. 507, 1991 WL 65928, at *1-2 (N.D. Ill. Apr. 22, 1991) ($6,922.25 in fees and costs on a $921 judgment; "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of the judgment in the case"); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) (affirming an award of $9,250 in fees on a $1,181 judgment for overtime compensation); *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1468, 1473 (9th Cir. 1983) (affirming $100,000 in fees on a judgment of $18,455 in damages).

**B.      The CMWA and California Labor Code Are Remedial Statutes Designed to Protect Workers from Wage Theft.**

Like the FLSA, the Connecticut Minimum Wage Act ("CMWA") and the California Labor Code are remedial statutes designed to protect workers from wage theft. *See, e.g.*, *Butler v. Hartford Tech. Inst., Inc.*, 704 A.2d 222, 227 (1997) (Connecticut wage statutes are designed to "effectuate[ ] the statutory policies of compensating employees and deterring employers from failing to pay wages"); *Ontiveros v. Zamora*, No. 08 Civ. 567, 2009 WL 425962, at *3 (E.D. Cal. Feb. 20, 2009) ("[A]though California labor law was partially patterned on federal law, the California statutes reveal a clear legislative intent to protect the minimum wage rights of California employees to a greater extent than federally.") (internal quotation marks omitted). Given this important public purpose, courts award multipliers under both statutes. *See, e.g.*, *Good Nite Inn Mgmt., Inc. v. Ahmed*, No. A129488, 2011 WL 2565257, at *12 (Cal. Ct. App. June 29, 2011); *Pellegrino v. Robert Half Internat., Inc.*, 106 Cal. Rptr. 3d 265, 273 (2010); *Amaral v. Cintas Corp. No. 2*, 78 Cal. Rptr. 3d 572, 620 (2008); *Alli v. Bos. Mkt. Corp.*, No. 10 Civ. 00004, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012).  On appeal Plaintiffs therefore had a reasonable chance of receiving a fee award higher than their counsel's lodestar.

For many of the same reasons, fees under both statutes are often in excess of the amount of damages. *See, e.g.*, *Stevens v. Vito's By The Water, LLC*, No. HHDCV156062506S, 2018 WL 2749694, at *1 (Conn. Super. Ct. May 17, 2018) (awarding fees of 1.5 times damages in post-trial fee application in wage case); *Atempa v. Pedrazzani*, 238 Cal. Rptr. 3d 465, 469 (2018) (affirming fee award of over 10 times damages amount in wage case); *Amaral*, 78 Cal. Rptr. 3d at 620 (affirming fees of 114% of damages award).

13

II.   **The Litigated Fee Award Is Presumptively Reasonable, Especially in Light of Counsel's Substantial Uncompensated Work Since Then.**

The Court "has discretion in determining the amount of a fee award" as the "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). To calculate a fee award, district courts in the Second Circuit take a four-step approach: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multipl[y] the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award" based on "case-specific factors." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 10 Civ. 60, 2012 WL 4092515, at *1 (JBA) (D. Conn. Sept. 17, 2012) (quoting *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010)). Plaintiffs respectfully suggest that the Supreme Court's guidance applies with even greater force where, as here, there has already been extended fee litigation. Indeed, the same factors that supported the Court's original July 2020 Fee Order still apply with equal force.

A.   **Class Counsel Obtained Exceptional Results.**

The results obtained are generally considered the most important factor in determining an appropriate fee. *Hensley*, 461 U.S. at 434-35; *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). Here, Class Counsel obtained exceptional results for their clients. Among other things, Class Counsel certified two state law classes and a nationwide collective consisting of over 900 individuals, defeated three motions for decertification (and a 23(f) petition), and obtained a jury verdict on liability and willfulness. Class Counsel further defeated CSC's JNOV motion, obtained a ruling that SAs' damages should be calculated using the time and one-half method, engaged in a month's-long data extraction process overseen by a Special Master, and litigated CSC's appeals to the brink of oral argument.

14

The settlement recovery is substantial.  While Plaintiffs believe they may have ultimately prevailed on the FWW issue, the headwinds they faced were substantial.  CSC had strong arguments, including numerous other circuit level decisions and the Second Circuit's ruling in *Thomas*.  *See* 961 F.3d 598, 610 (2d Cir. 2020).  Had the Second Circuit ruled against Plaintiffs, total damages would have been reduced to less than half of the Court's original damages award (approximately $9.4 million), which is less than Class and Collective Members will recover under the settlement.  *See* ECF No. 577-1 ¶ 17.  Similarly, had the appellate court decertified the Classes, the results would have been catastrophic.  Had the Circuit agreed with CSC and decertified the Classes and Collective, each Class and Collective Member would have had to determine whether to prosecute their claim in individual litigation, including responding to written discovery, producing documents, and testifying at deposition and (potentially) trial, over the course of many months or years of further litigation.  Some might have made such a choice; others may not have.  Any individual who did not choose to proceed individually would forsake their opportunity to recover any money, despite Plaintiffs' trial victory and the jury's finding of willful misclassification.  This concern is particularly acute in this case, as several clients have passed away in the interim since certification and Class Counsel have heard from several others who are seriously ill.  Sagafi Decl. ¶ 34.

By contrast, the settlement provides for a significant recovery now.  The $9.5 million settlement fund represents approximately 50.6% of Class and Collective Members' damages, penalties, and interest, including liquidated damages as awarded.  *See* ECF No. 515.  Equally importantly, that amount *exceeds* the amount of Class and Collective Members' FWW-based damages.  *See* ECF No. 577-1 ¶ 17; *see also Cheeks*, 796 F.3d at 207 (noting that FLSA cases often settle for between $500 and $2,000 in unpaid wages); ECF No. 520-14 at 7, 36, *Roseman v.*

15

*Bloomberg*, No. 14 Civ. 2657 (court approved settlement reached mid-trial representing 34% of what class counsel considered "Plaintiffs' best reasonable outcome" and granted fees over three times counsel's lodestar); *Siddiky v. Union Square Hosp. Grp., LLC*, No. 15 Civ. 9705, 2017 WL 2198158, at *6 (S.D.N.Y. May 17, 2017) (collecting FLSA cases approving settlements where range of recovery for class members ranged from 13 to 25%).

### B.      The Hourly Rates Approved by the Court in 2020 Are Reasonable Today.

Plaintiffs seek approval for the adjusted rates the Court approved in its July 2020 Fee Order. *See* ECF No. 563-1. These adjusted rates are less than Class Counsel's customary rates were in 2019.[9] Moreover, because this motion reflects the Court's July 2020 Order, Plaintiffs hourly rates are based on the rates and positions of attorneys in September 2019, and do not account for subsequent rate increases below the rate ceiling, nor for the promotion of multiple attorneys involved in this litigation. For example, Mr. Michael Scimone was an important part of the Class Counsel team and was promoted from counsel to partner—based in part on his exemplary work on this case.[10]

Determining the "presumptively reasonable fee" requires considering "the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). This analysis must consider the rates that are customary in the district (the "forum rule") but may account for the

---

[9] The Court approved the requested hourly rates for Connecticut counsel Susman, Duffy & Segaloff, P.C.

[10] The September 2019 Fee Petition includes 1,901 hours expended by O&G attorney Michael Scimone, who was counsel at that time. *See* ECF No. 561-1. Accordingly, the Court awarded Mr. Scimone the maximum rate for non-partner attorneys of $450. *See id.* However, Mr. Scimone is now a partner with an hourly rate of $650 (*i.e.* below the $725 ceiling for partner attorneys). Sagafi Decl. ¶ 30. Were Plaintiffs to seek fees in accordance with the Court's prior ruling, but based on current positions, the adjustment to Mr. Scimone's rates, alone, would increase the amount of Plaintiffs' award by $380,200.

likelihood that a reasonable client would have sought counsel from outside the district, which would permit a deviation from the forum rule. *Id.* at 190-91. Additionally, courts evaluate the reasonableness of the rate using a range of case-specific variables known as the *Johnson* factors, and by relying on their own "experience as lawyers within their districts." *See id.* at 188, 190, 194 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

### 1.   Plaintiffs Acted Reasonably in Hiring Out-of-District Counsel.

In its July 2020 Fee Order, the Court determined that this case merited departure from the forum rule, finding that "given the breadth and complexity of this case, a reasonable paying client would likely hire national counsel experienced in the type of investigation and litigation implicated here." ECF No. 563 at 11 (quoting *United States ex rel. Rai v. KS2 TX, P.C.*, No. 17 Civ. 834, 2019 WL 1397290, at *5 (JBA) (D. Conn. Mar. 27, 2019), *order amended on reconsideration on other grounds*, 2019 WL 3854301 (D. Conn. Aug. 16, 2019)). This remains true today. Among other things, the circumstances implicating the need for national counsel discussed in the Declaration of Richard Hayber (ECF No. 551-2) have grown more acute since the Court's ruling. For example, since September 2019, Class Counsel have responded to over 208 inquiries from their clients regarding the status of the litigation and proposed settlement. Sagafi Decl. ¶ 33. These communications require a "substantial and well-trained paralegal staff working in concert with the attorneys," beyond the resources of a "leading local employment attorney" such as Mr. Hayber. ECF No. 551-2 ¶ 18; ECF No. 563 at 15. Class Counsel's opposition to CSC's appeals also involved combing through an eleven-volume joint appendix consisting of more than 3,000 pages and compiling a four-volume supplemental appendix of approximately 900 pages, both of which required significant paralegal and staff resources. *See Strauch v. Comput. Scis. Corp.*, No. 18-3136, ECF Nos. 58-68, 83-86. Further, since September

17

2019, Class Counsel have incurred approximately $39,826.33 in additional out-of-pocket costs, beyond the nearly $600,000 they had already incurred.  Sagafi Decl. ¶ 32.

      **2.**      **The _Johnson_ Factors Support Class Counsel's Adjusted Rates.**

Courts may consider "all of the case-specific variables that [may be] relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including the following factors enunciated in _Johnson v. Ga. Highway Express, Inc._:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

_Arbor Hill_, 522 F.3d at 186 n.3 (citing _Johnson_, 488 F.2d at 717-19).

      **a.**      **The Time and Skill Needed to Prosecute This Case Were Substantial (_Johnson_ Factors 1-3).**

This Court has found that application of the _Johnson_ factors "warrant an award at the higher end of the fee spectrum."  ECF No. 563 at 14.  Among other things, this case involved contested issues "at every stage of [the] litigation," including opt-in discovery, class certification, decertification, trial, and post-trial motion practice.  _Id._  The appellate stage of the litigation involved additional expenditure of time and resources, as evidenced by the 1,795 hours Class Counsel expended after September 2019.  _See_ Sagafi Decl. ¶ 28.

This case also involved analysis of four exemptions (computer employee, administrative, learned professional, and combination) as applied to two state law classes and a nationwide collective of over 900 workers in two job titles, performing work for various corporate clients in various specific roles.  Class Counsel were uniquely qualified to prosecute this case, having

litigated ten large class/collective actions asserting overtime misclassification claims for computer technical support workers.  *See* ECF No. 563 at 14.  Most importantly, after the Classes and Collective were certified, Class Counsel possessed the requisite skill to distill the complex legal claims and the enormous factual record into a trial strategy that succeeded in convincing a jury of lay persons that CSC willfully misclassified SAs.  These factors therefore favor approval.

> **b.**     **Class Counsel Have Experience and the Proven Ability to Successfully Prosecute Complex Class Actions (*Johnson* Factors 4-5, 9, and 12).**

As discussed above, the rates Class Counsel seek here are less than their customary rates in 2019.  Class Counsel's prosecution of this case involved an exceptional outlay of time and resources, which precluded Class Counsel from taking other matters during the seven years this case has been pending.  *See M.D. v. N.Y.C. Dep't of Educ.,* No. 17 Civ. 2417, 2018 WL 4386086, at *4 (S.D.N.Y. Sept. 14, 2018) (recognizing that "the market rate foregone by an hour spent on a given task" strongly supports a fee award "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case") (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)) (internal quotation marks and emphasis omitted); Sagafi Decl. ¶¶ 36-37.  Finally, this Court has previously recognized that "the many attorneys who participated in this litigation are well-experienced and credentialed, having built strong reputations as leading employment lawyers in their field" and the fee amount sought here compares favorably to other cases where counsel have achieved a lesser degree of success.  ECF 563 at 14; *see* ECF No. 520-14 at 7, 36, *Roseman v. Bloomberg*, No. 14 Civ. 2657 (court approved settlement reached mid-trial representing 34% of what class counsel considered "Plaintiffs' best reasonable outcome" and granted fees over three times counsel's lodestar).

### c.   Class Counsel Obtained an Excellent Result in the Face of Significant Risk (*Johnson* Factors 6, 8, 10).

Class Counsel prosecuted this case on a wholly contingent basis, bearing "the risk of investing considerable time and resources into this litigation, expending more than half a million dollars in out-of-pocket costs, all with no guarantee of recovery."  ECF No. 563 at 14.  Further, as discussed above, Class Counsel obtained an excellent result for the Class and Collective Members.  The $9.5 million settlement fund exceeds the amount of Class and Collective Members' liquidated FWW damages.

To achieve this result, Plaintiffs had to defeat CSC's computer employee exemption defense, among other things, which requires understanding job duties and interpreting regulatory terms (e.g., "Computer systems analysts, computer programmers, software engineers or other similarly skilled workers," "systems analysis techniques and procedures," "hardware, software or system functional specifications," "machine operating systems," *see* 29 C.F.R. § 541.400) that sound technical and specialized, making them difficult to explain to a jury.  Moreover, this case was challenging from the outset, as numerous courts have granted summary judgment to employers in cases involving similar claims.  *See, e.g., Olorode v. Streamingedge, Inc.*, No. 11 Civ. 6934, 2014 WL 1689039, at *1 (S.D.N.Y. Apr. 29, 2014), *report & recommendation adopted*, 2014 WL 3974581 (S.D.N.Y. Aug. 13, 2014); *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400, 2010 WL 1379778, at *1 (S.D.N.Y. Mar. 26, 2010); *Bobadilla v. MDRC*, No. 03 Civ. 9217, 2005 WL 2044938, at *9 (S.D.N.Y. Aug. 24, 2005).

### d.   Client-Specific Factors Support Class Counsel's Fee Award (*Johnson* Factors 7 and 11).

Class action plaintiffs, and Class Counsel's professional obligation to the Classes, impose burdens on Class Counsel that are not present in non-class cases.  For example, over the life of the case, Class Counsel have communicated with hundreds of Class and Collective Members

regarding the status of the litigation, including fielding large volumes of calls and emails during particularly active phases of the litigation such as the settlement notice phase.  Sagafi Decl. ¶ 33.

 Not only does Class Counsel owe a fiduciary obligation to the Class, but the time pressure of completing discovery and presenting a trial on behalf of hundreds of Class Member clients adds complexity and discovery burdens not present in individual cases.  Class Counsel defended 37 opt-in depositions in locations around the country in a relatively short period of time during the discovery phase of the litigation.  Class Counsel also engaged in a months-long extraction of CSC's timekeeping data to ensure the integrity of the data used to calculate damages for each client.

### C.    Class Counsel's Adjusted Hours Are Reasonable.

This motion is based on the 20,607 hours expended by Class Counsel and approved by the Court in July 2020, so it (a) includes the Court's downward adjustment of hourly rates below what Class Counsel typically charge clients, (b) includes the Court's 12% across-the-board reduction, (c) excludes additional hours worked over the last 20 months on the appeal, settlement, and other aspects of the litigation, and (d) excludes future work to be performed by Class Counsel in finalizing and implementing the settlement.  With respect to the across-the-board reduction, the Court specifically found that 12% was an appropriate percentage to account for staffing inefficiencies and other concerns, while "recognizing Defendant's role in the litigation."  ECF No. 563 at 24.  There is no reason to revisit this determination now, particularly as Class Counsel have expended an additional 1,795 hours since September 2019, the majority of which were expended in relation to CSC's appeals to the Second Circuit.  Significantly, were it not for this compromise, Class Counsel would be entitled to recover fees incurred for the appellate work performed for the benefit of the Class and Collective Members.  *See Young v. Cooper Cameron Corp.*, 586 F.3d 201, 208 (2d Cir. 2009).

III.     **The Limited Costs Approved by the Court in 2020 Are Reasonable And Should Be Reaffirmed.**

Plaintiffs are entitled to recover "reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients*." Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks and citations omitted); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) at 763 (abuse of discretion not to award plaintiff reasonable out-of-pocket costs).  Plaintiffs' 2019 fees motion sought $584,560.54 in out-of-pocket costs.  *See* ECF No. 563 at 31.  After reviewing Class Counsel's itemized costs,[11] the Court ultimately awarded Plaintiffs $354,567.90 in litigation costs, with reductions for consultant fees and insufficiently detailed telephone and website hosting charges, mail and printing costs, and travel and meals.  *See* ECF No. 563 at 41.

Since September 2019, Plaintiffs have incurred an additional $39,826.33 in out-of-pocket costs, including appellate printing fees, computerized research expenses, and Special Master fees.  Sagafi Decl. ¶ 32.  Plaintiffs do not seek reimbursement for these costs and instead ask the Court to approve costs in accordance with the July 2020 Fee Order.

IV.     **The Court's 2020 Decision Granting Four Class Representative Service Awards Should Be Reaffirmed.**

Under the proposed Settlement Agreement, and subject to Court approval, the four Named Plaintiffs will receive service awards of $10,000 each ($40,000 total) to be paid from the attorneys' fee award.  The Court granted Plaintiffs' request for service awards in the same amounts in its July 2020 Fee Order.  *See* ECF No. 563 at 41.

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in representing others." *Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 00738,

---

[11] Class Counsel's itemized costs are filed on the docket of this matter at ECF No. 520-17.

2014 WL 3778211, at *4 (D. Conn. July 31, 2014).  Because courts "recogniz[e] the risks

incurred by named plaintiffs and compensat[e] them for their additional efforts," service awards

are appropriate.  *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL

532960, at *1 (S.D.N.Y. Feb. 9, 2010); *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118,

2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Courts consistently approve [incentive]

awards in class action lawsuits to compensate named plaintiffs for the services they provide and

burdens they endure during litigation.").  Such awards "are not uncommon in class action cases

and are within the discretion of the court."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187

(W.D.N.Y. 2005).  Service awards "are particularly appropriate in the employment context."  *Id.*

To determine whether service awards are reasonable, courts consider three factors: "(1)

the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named

plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in

vindicating statutory rights."  *Bozak*, 2014 WL 3778211, at *4; *Aros v. United Rentals, Inc.*, No.

10 Civ. 73, 2012 WL 3060470, at *3 (D. Conn. July 26, 2012).  As this Court has found,

Plaintiffs satisfy this standard.  First, the Named Plaintiffs "took on a significant risk by

attaching their names and reputations to this litigation."  ECF No. 563 at 40 (quoting *Grice v.

Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) (internal quotation marks,

ellipses, and brackets omitted).  Second, the Named Plaintiffs "dedicated considerable time and

effort to this litigation by testifying at depositions and at trial."  *Id.* at 41.  Third, "the requested

$40,000 service awards are consistent and reasonable with awards given in class and collective

actions."  *Id.* (quoting *Bozak*, 2014 WL 3778211, at *5); *see also Karic v. Major Auto. Co., Inc.*,

No. 09 Civ. 5708, 2016 WL 1745037, at *8 (E.D.N.Y. April 27, 2016) (awarding $20,000 to

each of the seven named plaintiffs); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 Civ. 7993,

2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (awarding $40,000 and $15,000 as service payments to named plaintiffs).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court (1) award Class Counsel fees and costs in the amount of $8,094,720.41 for their work on behalf of the Class and Collective Members; and (2) approve four service awards of $10,000 each ($40,000 total) to be paid from the attorneys' fee award for the Class Representatives.

Dated: June 1, 2021

Respectfully submitted,

By: */s/ Jahan C. Sagafi*
      Jahan C. Sagafi

**OUTTEN & GOLDEN LLP**
Jahan C. Sagafi*
Jared W. Goldman*
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800

Darnley D. Stewart*
Michael J. Scimone*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000

**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
Daniel M. Hutchinson*
Lin Y. Chan*
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000

**FEINBERG JACKSON WORTHMAN &
WASOW**
Todd Jackson*
Darin Ranahan*
Genevieve Casey*
2030 Addison St., Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998

**SUSMAN, DUFFY & SEGALOFF, P.C.**
Karen B. Kravetz (ct19665)
P.O. Box 1684
New Haven, CT 06507
Telephone: (203) 624-9830

*Attorneys for Plaintiffs, the Classes, and the
Collective*

*admitted *pro hac vice*