## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JOSEPH STRAUCH, TIMOTHY COLBY, CHARLES TURNER, and VERNON CARRE, on behalf of themselves and all those similarly situated,** | **Case No.: 3:14-cv-956 (JBA)** |
| Plaintiffs, | |
| v. | |
| **COMPUTER SCIENCES CORPORATION,** | |
| Defendant. | |

## ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT AND MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

Plaintiffs are individuals who worked as Associate Professional and Professional Systems Administrators (collectively, "SAs") for Defendant Computer Sciences Corporation ("CSC"). On July 1, 2014, Plaintiffs commenced this collective and class action bringing claims against CSC for failure to pay overtime wages under the Fair Labor Standards Act ("FLSA") and California and Connecticut wage and hour laws. ECF No. 1.

On June 9, 2015, the Court granted Plaintiffs' motion for FLSA conditional certification. ECF No. 168. On June 30, 2017, the Court granted Plaintiffs' Rule 23 motion, certifying classes under California and Connecticut law. ECF No. 327.

A December 2017 jury trial concluded with the Court entering a judgment for Plaintiffs and the Class and Collective Members. ECF No. 444. In November 2018, the Court issued a Ruling on Remedies (ECF No. 479), followed by a Ruling on Report and Recommendation of

Special Master (ECF No. 514), and an Amended Judgment (ECF No. 515), awarding the Classes and Collective $18,755,016.46 in damages.

CSC appealed the judgment, and the Parties have fully briefed the appeal. ECF No. 519; Hutchinson Decl. in Support of Motion for Final Approval ("Hutchinson Decl.") ¶ 8 (ECF 584-1). CSC argued on appeal that the Classes and Collective should be decertified and that the fluctuating workweek methodology should be used to calculate damages under the FLSA and Connecticut law. Hutchinson Decl. ¶ 9. On July 27, 2020, the Court issued a Ruling on Post-Trial Motions for Service Awards, Attorneys Fees, and Costs in favor of Plaintiffs, awarding Class Counsel and the Named Plaintiffs $8,094,720.41 in fees, costs, and service awards. ECF No. 563. The Parties each appealed this decision, but stayed the appeals pending determination of the merits appeal. *See* ECF Nos. 565, 567; Hutchinson Decl. ¶ 11.

Over the years of litigation, the Parties engaged in multiple mediations and settlement negotiations with the guidance of experienced mediator Hunter R. Hughes, III, Esq. Hutchinson Decl. ¶¶ 15-19. These negotiations were adversarial and conducted at arm's length, with extended discussions of the Parties' arguments regarding liability, class certification, and damages. *Id.* After years of ongoing negotiations, the Parties accepted a mediator's proposal and executed the Joint Stipulation for Class and Collective Action Settlement (the "Settlement Agreement"). *Id.*, ECF No. 580-2.

On March 16, 2021, the Court preliminarily approved the Settlement, ruling that the Court would "likely be able to approve the Settlement Agreement under Rule 23(e)(2)." ECF No. 581.

On April 13, 2021, a claims administrator sent Court-approved notices to all Class and Collective Members informing them of their rights under the settlement. Decl. of Lisa Pavlik

11

(ECF No. 584-1) ¶ 10.  On June 1, 2021, Plaintiffs moved for final approval of the proposed

Class and Collective Action Settlement (ECF No. 584) and final approval of attorneys' fees and

costs and service awards (ECF No. 585).  Plaintiffs filed a supplemental brief in support of final

approval on June 28, 2021.

Having considered the Motion for Final Approval of the Class and Collective Action

Settlement, the Motion for Approval of Attorneys' Fees and Costs and Service Awards, the

supporting declarations and exhibits, the single objection submitted to the settlement, and the

complete record in this matter, for the reasons set forth herein and for good cause shown, the

motions will be granted.

**THEREFORE, THE COURT HEREBY ENTERS THE FOLLOWING ORDER:**

**SETTLEMENT COLLECTIVE**

      1.    For settlement purposes the Court grants final certification of the FLSA

Collective, defined as follows:

> "Collective Members" means all persons who joined this Litigation by filing
> consent to join forms and who work or worked as an Associate Professional System
> Administrator and/or Professional System Administrator for Defendant, who have not
> withdrawn such consent to join forms, and whose claims were resolved by the Judgment
> in this Litigation.

**SETTLEMENT CLASSES**

      2.    For settlement purposes, the already-certified classes in this Action are defined

as follows:

> "California Class" means all persons who were employed by CSC in California as
> Associate Professional System Administrators or Professional System Administrators, at
> any time from July 1, 2010 through January 5, 2018 who earned less than $100,000 in total
> annual compensation and who were not members of the "Test and Training Ranges"
> segment ("TTR") of CSC.

> "Connecticut Class" means all persons who were employed by CSC in Connecticut as
> Associate Professional System Administrators or Professional System Administrators at any
> time from July 1, 2012 through January 5, 2018 who earned less than $100,000 in total annual
> compensation and who were not members of the TTR of CSC.

The proposed Settlement does not call for any change in the classes certified, or of the claims, defenses, or issues for which certification was previously granted. The Court finds that class certification under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that: (a) the Members of each Class are so numerous that joinder of all Class Members in the class action is impracticable; (b) there are questions of law and fact common to each Class which predominate over any individual question; (c) the claims of the Plaintiffs are typical of the claims of each Class Member; (d) the Plaintiffs will fairly and adequately represent and protect the interests of the Class Members because their interests are co-extensive with those of the Class Members, and they have retained experienced counsel to represent them and the Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See also* ECF No. 327.

3.      The Court confirms the prior appointments of the Plaintiffs Joseph Strauch, Timothy Colby, Charles Turner, and Vernon Carre as Class Representatives for the Settlement Class and Collective Members, and the counsel of record representing the Plaintiffs in the Action as Class Counsel. *See also* ECF No. 327.

4.      The form and means of disseminating the Class and Collective Notice as provided for in the Order granting Preliminary Approval of Class and Collective Action Settlement and Approval of Plaintiffs' Proposed Notice of Settlement (ECF No. 581) constituted the best notice practicable under the circumstances, including individual notice to all Members of the Classes and Collective who could be identified through reasonable effort. The Notice described the proposed Settlement set forth in the Agreement and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution.

**APPROVAL OF THE SETTLEMENT AGREEMENT**

1.      The Court hereby grants the Motion for Final Approval of the Class and

Collective Action Settlement and finally approves the Settlement as set forth in the Settlement Agreement.

2.      This order incorporates by reference the definitions in the Parties' Settlement Agreement.

3.      Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts examine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000):

> "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."

In addition, courts evaluate whether the settlement meets the factors set forth in Federal Rule of Civil Procedure 23(e)(2), including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

11

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

4.      Courts view procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

5.      A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

6.      Court approval of an FLSA collective action settlement requires an examination of a non-exclusive set of five factors which apply the principles in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), as set out in *Wolinsky v. Scholastic Inc.*: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.  900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)

(quotation marks and citation omitted).

7.      The Class Representatives and Class Counsel adequately represented the Classes, thus supporting final approval. No conflicting interests exist between the Class Representatives and the Classes, all of whom share a strong interest in obtaining compensation from CSC for the economic losses they incurred. Class Counsel are well-qualified to represent the Classes and have diligently advocated on the Classes' behalf through more than six years of highly complex litigation (resulting in a substantial jury verdict for the Classes).

8.      The Settlement was negotiated at arm's length with no evidence of fraud or collusion. The parties reached the settlement after multiple mediations spanning several years with an experienced and respected mediator. Hutchinson Decl. (ECF No. 584-1) ¶¶ 15-19. These arm's-length negotiations under the guidance of a skilled mediator "[raise] a presumption that the settlement . . . meets the requirements of due process." *See Wal-Mart Stores*, 396 F.3d at 116; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010).

9.      The complexity, cost, and duration of litigation through appeal also favor final approval. The parties have undertaken significant costs in litigating this matter over the course of nearly seven years. Settlement would avoid further expense and delay, particularly considering the outstanding issues pending on appeal.

10.     These appellate issues pose considerable risks to Plaintiffs. If CSC were to prevail on either the issue of the fluctuating workweek method of calculating damages or the issue of class certification, the Classes' damages would be dramatically reduced. This uncertainty and risk of the appellate process favor final approval.

11.     The advanced stage of the proceedings and comprehensive discovery conducted

to date also support final approval. After nearly seven years of litigation, the completion of

discovery, and a ten-day trial, the Court appreciates the merits and facts underlying this matter.

The final damages calculations provide the Court with further information to approve the

settlement.

12.     The settlement is also substantively fair and reasonable, providing the Classes

and Collective with a robust recovery of $9,505,259.59. This relief is substantial given the

appellate risk of (1) a significant reduction in damages if the fluctuating workweek calculation

were to prevail and (2) the possibility of class decertification, which would eliminate any

recovery for Class Members unwilling to endure additional years of individual litigation.

Measured against these risks, the settlement provides a substantial and fair recovery. Moreover,

the release is limited to claims through January 5, 2018, the date of judgment in this matter, and

does not release claims arising after that date.

13.     Beyond the factors identified above, the relief provided for the California and

Connecticut classes is adequate under Rule 23(e)(2) in light of the costs, risks, and delay of

appeal, as well as any potential re-trial following appeal; the effectiveness of the proposed

method of distributing relief to the class, which does not require any claims process; the terms of

the proposed award of attorney's fees, which adhere to the Court's previous award; and the lack

of any other agreements required to be identified under Rule 23(e)(3). In addition, the proposal

treats class members equitably relative to each other, as it relies on a standard, neutral formula

that takes into account each class member's underlying damages award, concomitant risks

associated with their respective underlying claims, and the fact that they are releasing the claims

resolved by the judgment in this case.

14.     The Classes and the Collective have reacted positively to the settlement. Of the

nearly one thousand individuals who received notice, none have opted out, and only one (0.1%) has objected. Pavlik Declaration (ECF No. 584-2) at ¶¶ 10, 16-17. The single objector, John Saffos, recorded an average of 0.75 hours of overtime per week for roughly 16 weeks and was offered a fair and proportional award of $640.90. This overwhelming approval, with a sole objector who was offered a reasonable award, favors final approval of the Settlement.

## AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS

15.     Plaintiffs moved for a fee and cost award of $8,094,720.41: the amount awarded by this Court in July 2020 following vigorously contested motion practice. ECF No. 563. The Court hereby approves of Class Counsel attorneys' fees, costs, and expenses in this amount, finding that this award is fair and reasonable.

16.     Courts in the Second Circuit apply a four-step approach to calculate a fee award: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multipl[y] the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award" based on "case-specific factors." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 10 Civ. 60, 2012 WL 4092515, at *1 (JBA) (D. Conn. Sept. 17, 2012) (quoting *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010)).

17.     This Court has already carefully considered the facts and law governing Plaintiffs' fees and costs petition and found that an award of $8,094,720.41 is fair and reasonable. This award, which resulted from extended fee litigation, reflects the excellent result Counsel achieved for the Classes and Collective.

18.     The attorneys' fee was based on reductions made by the Court to the hourly rates charged by Class Counsel. The Court previously found that those adjustments resulted in a

reasonable hourly rate when considering the substantial time and skill necessary to litigate this matter, the experience and proven ability of Counsel in similar complex class actions, their obligation to hundreds of Class Members, and the result achieved by Counsel considering the risks involved.

19. This fee is based on 20,607 hours of work claimed by Class Counsel, which was approved by this Court in its July 27, 2020 Ruling on Post-Trial Motions for Service Awards, Attorneys' Fees, and Costs (ECF No. 563) ("July 2020 Fee Order"). This figure does not account for additional hours of work expended by Counsel over the last 21 months, including appeal and settlement. The amount includes this Court's 12% reduction in the number of hours for which Class Counsel could recover fees.

20. The $8,094,720.41 includes $354,567.90 in costs in accordance with the July 2020 Fee Order and Class Counsel do not seek additional costs incurred since Plaintiffs' September 2019 fee motion. The Court reviewed the costs claimed by Class Counsel and reduced certain costs in the July 2020 Fee Order. Because the resulting amount remains reasonable, these costs are hereby affirmed.

21. Finally, the Court finds reasonable $10,000 service awards for each of the four Named Plaintiffs to be paid from the attorneys' fee award in accordance with this Court's July 2020 Fee Order.

22. Service awards are common in class action cases and "are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *O'Connor v. AR Res., Inc.*, No. 08 Civ. 1703, 2012 WL 12743, at *9 (D. Conn. Jan. 4, 2012) (quoting *Castagna v. Madison Square Garden, L .P.,* No. 09 Civ.

10211, 2011 WL 2208614, at *8 (S.D.N.Y. June 7, 2011)). "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) (citing *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

23.     The named Plaintiffs incurred significant risks by serving as Class Representatives in this case. They dedicated considerable time to this matter through depositions and trial. A $10,000 award is consistent with awards given in similar actions. *See also Karic v. Major Auto. Co., Inc.*, No. 09 Civ. 5708, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (awarding $20,000 to each of the seven named plaintiffs); *Mentor v. Imperial Parking Sys., Inc.*, No. 05 Civ. 7993, 2010 WL 5129068, at *1-2 (S.D.N.Y. Dec. 15, 2010) (awarding $40,000 and $15,000 as service payments to named plaintiffs).

24.     The Parties are hereby ordered to comply with the terms of the Settlement Agreement. Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Agreement.

25.     The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this 12th day of July, 2021.

_____
Janet Bond Arterton, U.S.D.J.